> The Court will hold a pre-motion conference on January 7, 2022 at
> 1:30 p.m. The parties may access the pre-motion conference using
> the following dial-in: (888) 363-4749, with access code 8140049.
> The time to respond to the complaint is extended to a date to be
> set at the pre-motion conference.
>
> SO ORDERED.
>
> New York, NY              /s/ John G. Koeltl
> December 17, 2021         John G. Koeltl, U.S.D.J.

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

[Address]
, NY 10166-0193
51.4000
ondunn.com

mpion
212.351.5361
on@gibsondunn.com

December [...]

VIA [...]

The Honorable John G. Koeltl
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *GateGuard, Inc. v. Amazon.com, Inc. et al*., Case No. 21 Civ. 09321 (JGK)

Dear Judge Koeltl:

      We represent Defendants Amazon.com, Inc., Amazon.com Services LLC, and Amazon Logistics, Inc. (collectively "Amazon") in the above-captioned action.[1] Pursuant to Rule II.B of this Court's Individual Practices, Amazon respectfully requests a pre-motion conference in anticipation of filing a motion to dismiss (the "Motion") Plaintiff's complaint, Dkt. 1 (the "Complaint"). Amazon further requests that the December 23, 2021 deadline to respond to the Complaint be stayed, and a briefing schedule entered on its Motion following the pre-motion conference. Plaintiff consents to this request. This letter offers a high-level summary of the case and previews some of the arguments on which Amazon anticipates its Motion will be based. Plaintiff has indicated that it intends to file a response to this letter.

## BACKGROUND

      This is a simple case about alleged damages to Plaintiff GateGuard, Inc.'s security and intercom devices, allegedly caused by installations of Amazon's Key for Business, which allows Amazon delivery people to access apartment buildings and other secure housing using an electronic key "fob," in order to deliver packages safely. Notwithstanding the limited nature of the conduct complained of, Plaintiff seeks to turn this case into a referendum on Amazon's entire e-commerce business through conclusory, hyperbolic, and irrelevant allegations.

      Plaintiff's Complaint centers on Amazon's Key for Business, "a small device that can be inserted into existing [building] access devices or systems," so that "Amazon deliverers can use it to obtain building access" to deliver packages. Compl. ¶ 41. Plaintiff alleges that e-commerce deliveries in urban environments like New York City face problems that make it difficult to deliver packages and that "by ensuring more rapid, reliable deliveries" through Key for Business, "Amazon can market a faster, more efficient package delivery service" to customers and third-party sellers. *Id*. ¶ 47.

      Plaintiff is a "startup company that develops, manufactures and sells security technology for multi-tenant apartment buildings." *Id*. ¶ 2. Plaintiff sells a product called "AI Doorman," an intercom and access control system for residential buildings in New York City. *Id*. ¶ 3. Plaintiff does not allege that it competes with Amazon, or that its intercoms compete with Key

---

[1] Though Amazon.com Services, Inc. was named as a defendant in this action, that entity no longer exists.

The Honorable John G. Koeltl
December 16, 2021
Page 2

For Business. Instead, Plaintiff claims that, sometimes, when Amazon technicians install Key For Business at apartment buildings, the installation causes GateGuard intercoms to malfunction. *Id.* ¶ 92. Plaintiff alleges that this malfunctioning has, in some cases, led building owners to terminate contracts with Plaintiff. *Id.* ¶ 78. Plaintiff does not identify (i) any particular building at which this has occurred, (ii) any particular contract that has been terminated as a result, or (iii) the number of intercoms allegedly affected. Instead, Plaintiff makes conflicting and conclusory allegations about its own purported damages, claiming, for example, that installation by Amazon of Key for Business has caused "malfunctioning of GateGuard equipment" both at "over 40 buildings," (*id.* ¶ 77), and at "no fewer than a dozen buildings," (*id.* ¶ 82). Similarly, Plaintiff claims that "[o]n approximately 20 different occasions, building management have called GateGuard to repair or replace disabled intercom devices," (*id.* ¶ 99), yet also claims that it has "lost contracts covering a total of 310 buildings as a result of Amazon's tactics," (*id.* ¶ 78).

  Recognizing the infirmities of its allegations, Plaintiff attempts to dress up its Complaint by asserting alleged violations of federal computer intrusion laws and a laundry list of state law tort claims. *Id.* ¶¶ 119-151. Plaintiff also attempts to stretch its allegations into a vast antitrust conspiracy, alleging that because Key for Business purportedly reduces delivery costs, it is part of a "scheme that attempts to monopolize the e-commerce delivery market," to the alleged detriment of companies such as FedEx and UPS. *Id.* ¶¶ 1, 28, 46. Plaintiff alleges that as part of this scheme, Amazon has "lie[d] to building superintendents, claiming to have received authorization to install its device when it has not received such consent." *Id.* ¶ 42. But Plaintiff does not identify any antitrust injury that it allegedly suffered. Plaintiff makes a half-hearted attempt to allege a nationwide class action on behalf of unspecified "rival access control device providers," "package delivery services," "e-commerce retailers," and "property owners" who have "suffered anti-trust injury." *Id.* ¶¶ 156-58. Astoundingly, Plaintiff also asks the Court to appoint its owner —who is not a named Plaintiff and who was recently convicted of criminal bank and wire fraud for repeatedly writing fraudulent checks totaling $330,000 from *GateGuard customer* accounts[2] —as class representative (*id.* at 47).

## ARGUMENT

  Plaintiffs' antitrust claim (Count VIII) is frivolous and should be dismissed for multiple reasons, most significantly, lack of standing. Plaintiff is not a competitor of Amazon and its alleged injuries do not arise from a reduction of competition. Instead, Plaintiff's injuries arise from alleged technological problems occurring when Key for Business is installed on premises that also have Plaintiff's intercoms. "To demonstrate antitrust standing, a private plaintiff must show both that (1) it suffered a special kind of antitrust injury and that (2) it is a suitable plaintiff

---

[2] *United States v. Teman*, 465 F. Supp. 3d 277, 287 (S.D.N.Y. 2020). At Mr. Teman's sentencing, Judge Engelmayer noted Mr. Teman's "total lack of remorse" for his crimes and admonished him that "[i]n light of your tendency to blame others and not look with any clarity or objectivity at your own conduct, . . . if, again, you found yourself in tough economic circumstances and you were again presented with an opportunity to help yourself to someone else's money, whether a customer or a business partner or someone or something else, you would again attempt to rationalize baseless grounds on which you are entitled to take it for yourself and do so." Tr. of Sentencing Hearing at 16, 79, ECF No. 276.

GIBSON DUNN

The Honorable John G. Koeltl
December 16, 2021
Page 3

to pursue the alleged antitrust violations and thus is an efficient enforcer of the antitrust laws." *In re American Express Anti-Steering Rules Antitrust Litig.*, 2021 WL 5441263, at *4 (2d Cir. Nov. 22, 2021) (internal quotation marks omitted). "Generally, only those that are participants in the defendants' market can be said to have suffered antitrust injury." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016).

Plaintiff claims that Amazon is attempting to use Key for Business to monopolize "the e-commerce delivery market." Compl. ¶¶ 153-55. But Plaintiff does not claim to be a customer or competitor in that market or to be injured as such; instead, Plaintiff identifies the competitors in the market as package delivery companies and online retailers like Walmart.com. *See id.* ¶ 28. Plaintiff actually claims to participate in a different market: the access control or intercom market, in which there are "hundreds" of competitors. *Id.* ¶ 39. Plaintiff's alleged injury is thus not "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Plaintiff therefore has no standing to bring its alleged antitrust claims.

Plaintiff also cannot allege a claim under the Computer Fraud and Abuse Act ("CFAA") (Count I), 18 U.S.C. § 1030, which has no application here. The CFAA was enacted to "prevent[] the typical consequences of hacking" into protected computers. *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021) (internal quotation marks omitted). The claims Plaintiff alleges require it to show that Amazon has been "intentionally access[ing]" a computer "without authorization." §§ 1030(a)(2), (5). Plaintiff has not alleged that Amazon gained "access" to anything more than the "wiring that is connected directly to the [GateGuard] circuit board," which itself does no more than open or close doors. Compl. ¶ 87.

Plaintiff's tortious interference claims (Counts II & III) are also deficient. Plaintiff fails to identify a single specific contract or prospective business relationship with which Amazon allegedly interfered. Plaintiff does no more than provide conclusory allegations that it lost contracts because of Amazon's installations of Key for Business.

Plaintiff's remaining claims (Counts IV-VII) fail because it has not alleged sufficient facts to show a right to possession over the GateGuard devices. Plaintiff alleges "exclusive control" over the devices pursuant to its service contracts with building owners, but based on the language of those contracts, Plaintiff sold the devices to building owners.[3] Compl. ¶ 85. Accordingly, if Amazon altered or interfered with the building owners' devices against their will, any claim for that interference would belong to the building owners—not Plaintiff.

For the foregoing reasons, as well as those Amazon intends to fully brief in its Motion, Plaintiff's Complaint should be dismissed in its entirety.

Respectfully submitted,
*/s/ Anne Champion*
Anne Champion

---

[3] *See* GateGuard Service Agreement, § 2 (July 28, 2020), https://gateguard.xyz/legal/serviceagreement.php (last visited Dec. 13, 2021) (showing that subscribers purchase, rather than lease, the intercom devices).