UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                               :

GATEGUARD, INC.,                :

                           :

          Plaintiff,        :

                           :           Case No. 21 Civ. 9321 (JGK)

   -against-              :

                           :           ORAL ARGUMENT REQUESTED

AMAZON.COM, INC.,       :

AMAZON.COM SERVICES, INC., :

AMAZON.COM SERVICES, LLC, :

AMAZON LOGISTICS, INC.,   :

                           :

          Defendants.   :

---------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
AND TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

GIBSON, DUNN & CRUTCHER LLP
Anne Champion
Christopher D. Belelieu
Eric J. Stock
David P. Salant

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

*Attorneys for Defendants Amazon.com,
Inc., Amazon.com Services LLC, and
Amazon Logistics Inc.*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.    GATEGUARD'S UNPRECEDENTED CFAA CLAIM SHOULD BE
      REJECTED. ............................................................................................................ 2

      A.    GateGuard Cannot Allege Cognizable CFAA Injury. ............................. 3

      B.    The Alleged Physical Intrusion Did Not "Intentionally Access" Data. ... 5

      C.    Amazon Has Not Acted "Without Authorization." ................................... 6

II.   GATEGUARD'S TRADE SECRETS THEORY IS BASELESS. ................................. 6

III.  GATEGUARD'S TARNISHMENT AND LANHAM ACT CLAIMS FAIL. ................. 7

IV.   GATEGUARD'S STATE-LAW TORT CLAIMS FAIL. .................................................. 8

V.    GATEGUARD FAILS TO PLEAD A PLAUSIBLE ANTITRUST CLAIM. ................ 10

      A.    GateGuard Concedes Its Market Definition Is Implausible and Includes
            Non-Interchangeable Products. .............................................................. 10

      B.    GateGuard Lacks Antitrust Standing Because It Does Not Compete in the
            Relevant Market (or "Sub-sector") Allegedly Being Monopolized and
            Alleges Only Incidental Injury. .............................................................. 11

      C.    GateGuard Fails to Plead Amazon's Alleged Conduct Was
            Anticompetitive. ..................................................................................... 13

      D.    Alternatively, the Court Should Strike GateGuard's Class Allegations. ............. 14

CONCLUSION ................................................................................................................. 14

ATTORNEY CERTIFICATION PURSUANT TO INDIVIDUAL RULE II(D) ...................... 16

# TABLE OF AUTHORITIES

Page

**CASES**

*Amaranth LLC v. J.P. Morgan Chase & Co.*,
    71 A.D.3d 40 (1st Dep't 2009) ........................................................................8

*Apple Mortg. Corp. v. Barenblatt*,
    162 F. Supp. 3d 270 (S.D.N.Y. 2016)...............................................................3

*Better Holdco, Inc. v. Beeline Loans, Inc.*,
    2021 WL 3173736 (S.D.N.Y. July 26, 2021) ...................................................4

*C=Holdings B.V. v. Asiarim Corp.*,
    992 F. Supp. 2d 223 (S.D.N.Y. 2013)...............................................................7

*Carfax, Inc. v. Accu-Trade, LLC*,
    2022 WL 657976 (E.D. Va. Mar. 4, 2022) .......................................................5

*Chapman v. N.Y. State Div. for Youth*,
    546 F.3d 230 (2d Cir. 2008)............................................................................10

*Connolly v. Wood-Smith*,
    2014 WL 1257909 (S.D.N.Y. Mar. 27, 2014) ..................................................8

*Deere & Co. v. MTD Prods., Inc.*,
    41 F.3d 39 (2d Cir. 1994).................................................................................7

*El Omari v. Buchanan*,
    2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) ..................................................5

*In re EVIC Class Action Litig.*,
    2002 WL 1766554 (S.D.N.Y. July 31, 2002) .................................................10

*Feldman v. Comp Trading, LLC*,
    2021 WL 930222 (E.D.N.Y. Mar. 11, 2021) ....................................................4

*Georgia Malone & Co. v. Rieder*,
    19 N.Y.3d 511 (2012) ......................................................................................9

*Hancock v. County of Rensselaer*,
    882 F.3d 58 (2d Cir. 2018)...............................................................................2

*Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*,
    2007 WL 4976364 (C.D. Cal. Oct. 29, 2007).................................................13

**TABLE OF AUTHORITIES**
(continued)

Page

*JBCHoldings NY, LLC v. Pakter*,
    931 F. Supp. 2d 514 (S.D.N.Y. 2013)........................................................................3, 6

*Kraemer v. Gen. Motors Acceptance Corp.*,
    572 So. 2d 1363 (Fla. 1990)....................................................................................3

*Lee v. Bros.*,
    2021 WL 4652336 (S.D.N.Y. Oct. 6, 2021) ...........................................................8

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) ............................................................................................9

*Marnell v. United Parcel Serv. of Am., Inc.*,
    260 F. Supp. 391 (N.D. Cal. 1966) .......................................................................10

*Marvel Ent., Inc. v. Kellytoy (USA), Inc.*,
    769 F. Supp. 2d 520 (S.D.N.Y. 2011)....................................................................7

*Medtech Prod. Inc. v. Ranir, LLC*,
    596 F. Supp. 2d 778 (S.D.N.Y. 2008)....................................................................6

*Meese v. Miller*,
    436 N.Y.S.2d 496 (1st Dep't 1981) .......................................................................9

*In re Miami Metals I, Inc.*,
    603 B.R. 727 (Bankr. S.D.N.Y. 2019) ...................................................................3

*N.Y. v. Deutsche Telekom AG*,
    439 F. Supp. 3d 179 (S.D.N.Y. 2020)....................................................................11

*NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*,
    2021 WL 3038497 (S.D.N.Y. Jul. 16, 2021) .........................................................9

*People v. Mahoney*,
    6 A.D.3d 1104 (4th Dep't 2004)............................................................................9

*Res. Devs., Inc. v. Statue of Liberty-Ellis Island Found., Inc.*,
    926 F.2d 134 (2d Cir. 1991)...................................................................................7

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)........................8

*Speedry Chem. Prods., Inc. v. Carter's Ink Co.*,
    306 F.2d 328 (2d Cir. 1962)...................................................................................6

## TABLE OF AUTHORITIES
(continued)

Page

*Sporn v. MCA Recs., Inc.*,
    58 N.Y.2d 482 (1983) ...........................................................................................9

*United States v. Teman*,
    465 F. Supp. 3d 277 (S.D.N.Y. 2020) ..............................................................14

*United States v. Teman*,
    No. 19-CR-696 (PAE) (S.D.N.Y.) .......................................................................2

*Van Buren v. United States*,
    141 S. Ct. 1648 (2021) .......................................................................................5

*Volpe v. Abacus Software Sys. Corp.*,
    2021 WL 2451968 (D.N.J. June 16, 2021) ........................................................5

*W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*,
    190 F.3d 974 (9th Cir. 1999) ............................................................................10

## PRELIMINARY STATEMENT

GateGuard's opposition ("Opp'n") to Amazon's motion to dismiss continues its quixotic campaign to blame Amazon for a business downturn brought on by GateGuard's own mismanagement and fraud.  GateGuard cannot salvage any of its flawed causes of action, and its entire FAC[1] should be dismissed with prejudice.

*First*, GateGuard's CFAA claim pushes the statute past its breaking point.  GateGuard cites no authority for its novel theory that *physical damage* to its devices constitutes computer system "access" under the CFAA, which the Supreme Court has said means access *to data*.  And GateGuard is wrong that whether it "sells" intercom devices to customers—which it concedes would preclude statutory standing—cannot be decided as a matter of law.  It can, and GateGuard's own materials, including its purported *recommended sale prices*, prove GateGuard makes "sales," not "leases."  Finally, GateGuard cannot satisfy the CFAA's $5,000 loss-per-violation threshold, having conceded that it cannot aggregate damages across multiple alleged violations, and having advanced no repair or investigation costs to remedy *any* violation.

*Second*, GateGuard cites nothing to contradict black-letter law that products sold and installed in the public forum, as GateGuard's are, cannot be a trade secret.

*Third*, GateGuard concedes its products are starkly different from Amazon's, and that no customers are confusing them, thus defeating its tarnishment and unfair competition claims.

*Fourth*, GateGuard cannot salvage its claims for tortious interference, conversion, or unjust enrichment because it cannot specifically identify a third-party contract or relationship interfered with, any owned property to which it was fully excluded, or any quasi-contractual relationship with Amazon.

---

[1]    Defined terms here have the same meanings as in Amazon's opening brief, ECF No. 19 ("Br.").

*Fifth*, ignoring settled antitrust law, GateGuard doubles down on its fantastical monopolization theory, acknowledging the lack of substitutability between products in its proposed relevant market, but alleging they belong to separate "sub-sector" markets. No antitrust market can include products that do not compete with one another, and GateGuard's admissions demonstrate lack of antitrust standing because it competes in a market different from the one Amazon is purportedly monopolizing.

*Finally*, Mr. Teman's protestations of innocence and promise to delegate management of his class action if incarcerated, Teman Decl. ¶¶ 4-5, only prove how GateGuard's class allegations are unworkable and should be stricken. In the criminal action, Judge Engelmayer described how Mr. Teman defrauded GateGuard's customers—purported class members here—and then abusively blamed them for his prosecution, "show[ing] no remorse," "call[ing] into question … whether [he has] a firm grip on business reality," and foreshadowing that he may "rationalize baseless grounds" for future theft and fraud. *United States v. Teman*, No. 19-CR-696 (PAE) (S.D.N.Y.), ECF No. 276 at 71-79 (Sentencing Tr. Jul. 28, 2021). In this context, neither Mr. Teman, his company GateGuard, nor any related person or entity, could lead any purported class.

The Court should therefore dismiss GateGuard's claims with prejudice, and strike its class allegations.

## ARGUMENT

## I.    GATEGUARD'S UNPRECEDENTED CFAA CLAIM SHOULD BE REJECTED.

As GateGuard acknowledges, "'[t]he CFAA is primarily a criminal statute'" redressing computer hacking, Opp'n 7 (citation omitted), and "[t]he scope of the civil actions permitted under [the CFAA] … has always been limited," *Hancock v. County of Rensselaer*, 882 F.3d 58, 63 (2d Cir. 2018). Given the ubiquity of computers today, over-reading the CFAA risks a

"breathtaking" and unwarranted expansion of federal civil jurisdiction. *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 524 (S.D.N.Y. 2013).  This is not a computer hacking case, and GateGuard cites no case upholding a CFAA claim in any similar situation.

### A.    GateGuard Cannot Allege Cognizable CFAA Injury.

*First*, GateGuard still cannot identify particular devices illegally accessed by Amazon, or where or when, rendering its injury too inchoate to be actionable.  Br. 10-11.  The video screenshots on which GateGuard relies, Opp'n 7-8, do not indicate the location of the alleged incident, the identity of the customer, or the nature of the damages, making investigation impossible.  *Cf. Apple Mortg. Corp. v. Barenblatt*, 162 F. Supp. 3d 270, 287 (S.D.N.Y. 2016) (dissimilar case where devices clearly alleged).  Nor do GateGuard's screenshots demonstrate the "approximately 20 different occasions" of alleged interference with its devices it claims.  FAC ¶ 118.

*Second*, GateGuard concedes it would lack standing if it "sells" its device to customers, and incorrectly claims that whether it sells or leases devices is not resolvable on a motion to dismiss.  Opp'n 8.  GateGuard's Service Agreement is governed by Florida law, which provides that whether a contract is for a "sale" or "lease" is a question of law that depends on whether the contract requires the return of the item to the transferor after some specified time period.  *See* Service Agreement § 21(E); *Kraemer v. Gen. Motors Acceptance Corp.*, 572 So. 2d 1363, 1366 (Fla. 1990) (holding lease contract did not pass ownership as matter of Florida law); *In re Miami Metals I, Inc.*, 603 B.R. 727, 734-36 (Bankr. S.D.N.Y. 2019) (holding contract a sale as matter of Florida law).  GateGuard supplies its "Products" without time limitation and therefore sells

them.[2]  Service Agreement § 2.  GateGuard even admits the obvious by claiming its devices

have a "manufacturer's suggested retail price," a suggested *sale price*.  Opp'n 10.  GateGuard

thus lacks standing.

     *Third*, GateGuard cannot plead losses in excess of $5,000 caused by any *single act* and

acknowledges it cannot aggregate losses across an alleged "related course of conduct."  Br. 12-

13.  The amount actually paid by GateGuard customers for the device is listed and undisputedly

less than $5,000, so its "suggested" retail sale price of $8,649 is irrelevant.  Opp'n 10; Br. 5, 12.

Nor does GateGuard indicate why Amazon's alleged interference would yield loss equaling the

entire sale price, given its allegations of successfully repaired devices.  *See* FAC ¶¶ 83, 118.

Indeed, GateGuard fails to point to *any* particular investigation or repair costs it paid due to

Amazon's conduct.  *See Better Holdco, Inc. v. Beeline Loans, Inc.*, 2021 WL 3173736, at *4

(S.D.N.Y. July 26, 2021) (dismissing similarly vague allegations of CFAA loss); *cf. Feldman v.

Comp Trading, LLC*, 2021 WL 930222, at *5 (E.D.N.Y. Mar. 11, 2021) (alleging specific

"payments to information technology specialists and attorneys").[3]

---

[2]  The other Service Agreement provisions GateGuard cites do not show it retains ownership over

devices after selling them.  Opp'n 1, 4.  Section 8(D)(i) is a warranty that, upon termination of the

Service Agreement, the customer must "remove [GateGuard's] Products," *not* that it must return

them.  Section 16 allows GateGuard "broad surveillance rights" over its customers, Opp'n 15, and is

irrelevant to the ownership question.

[3]  GateGuard concedes that allegedly lost contracts or other consequential damages do not qualify

towards the CFAA's $5,000 loss-per-violation threshold.  Br. 13 n.8.  GateGuard's claim that the

"true value of the intercom panel" is $90,000, Opp'n 10, is thus unsupported and conflates one-time

sale of the device with ongoing software licensing fees, further proving GateGuard's sale-and-license

### B.     The Alleged Physical Intrusion Did Not "Intentionally Access" Data.

GateGuard cites no authority for its assertion that Amazon "accessed" GateGuard's computer system, which the Supreme Court defines as "the act of entering a computer system itself or a particular part of a computer system, such as files, folders, or databases." *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021). GateGuard's claim that Amazon's alleged physical intrusion entered the "guts" of its "computer system," Opp'n 9, is insufficient under *Van Buren*, which provides that "entering a computer system" has the "technical meaning" of accessing *data on the computer*; the six definitions of "access" provided there all require the reading, writing, or transferring of "data." *Van Buren*, 141 S. Ct. at 1657 & n.6; *see El Omari v. Buchanan*, 2021 WL 5889341, at *15 (S.D.N.Y. Dec. 10, 2021) (rejecting CFAA claim using same definition of "access").

Courts upholding CFAA claims post-*Van Buren* have universally addressed allegations of defendants accessing a computer's *data* without authorization—not its physical or electrical components. *See, e.g.*, *Carfax, Inc. v. Accu-Trade, LLC*, 2022 WL 657976, at *2 (E.D. Va. Mar. 4, 2022) (defendants accessed vehicle search database); *Volpe v. Abacus Software Sys. Corp.*, 2021 WL 2451968, at *1 (D.N.J. June 16, 2021) (defendant remotely accessed plaintiff's phone and "erased 'all of the data'"). The same is true of *DeSoto* and *Clarke-Smith*, Br. 13-14 n.9, which show that physically seizing a computer—and analogously, "disassembling" it, Opp'n 9—is inactionable under the CFAA.

GateGuard's allegations of "intentional" access and of data actually "obtained" are independently flawed. That Amazon's alleged *physical tampering* was intentional, Opp'n 10, is

---

approach. *Compare* Service Agreement § 4(C) ("Subscription Fees") *with id.* § 2 (sale of "Products").

immaterial: because Amazon's alleged intent was to "obtain building access, not computer access," FAC ¶ 46, any coincident *data access* was unintentional. Similarly, GateGuard's allegation that Amazon "obtained and used" GateGuard's data, Opp'n 9-10 (quoting FAC ¶ 122), is conclusory and contradicts Amazon's alleged motivations in the FAC. *See JBCHoldings*, 931 F. Supp. 2d at 526 (rejecting similarly speculative allegations).

> ### C.    Amazon Has Not Acted "Without Authorization."

GateGuard never disputes or grapples with its heightened burden to plead with particularity Amazon's alleged fraudulent inducement of landlords to allow KFB installations. Br. 15. Instead, GateGuard recites generic allegations regarding Amazon's sales practices, which fail to state the time, place, or parties of any fraudulent communications *from* Amazon *to* landlords, let alone reliance on alleged deceptive statements. Opp'n 10-11. Nor does GateGuard identify any deceived landlord. And while GateGuard claims to have "brought forward specific evidence" of landlords' non-authorization, Opp'n 11 (citing FAC ¶¶ 84-85), it cites only one social media post discussing an unspecified "control access vendor" (never alleged to be GateGuard) indicating that this building manager paid for repairs. GateGuard's claim that *it* did not consent to any KFB installations, Opp'n 10, should be taken up with GateGuard's clients, who own and control the devices and allegedly violated a contractual consent right *they* gave to GateGuard.

## II.    GATEGUARD'S TRADE SECRETS THEORY IS BASELESS.

Answering none of Amazon's cited authorities, GateGuard cannot plead that it has trade secrets or that Amazon misappropriated them. Physical components of a product that are "ascertainable upon inspection once the product is placed on the market" simply do "not constitute trade secrets." *Medtech Prod. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 804 (S.D.N.Y. 2008); *see also Speedry Chem. Prods., Inc. v. Carter's Ink Co.*, 306 F.2d 328, 331 (2d Cir.

1962).  GateGuard calls this black-letter law "absurd," Opp'n 12, but offers no contrary authority

or reason why *patents* (as opposed to trade secrets) cannot adequately protect publicly sold

inventions.  Moreover, GateGuard's recitation that Amazon misappropriated GateGuard's

information, Opp'n 12-13, is conclusory and without support, Br. 17.

## III.    GATEGUARD'S TARNISHMENT AND LANHAM ACT CLAIMS FAIL.

GateGuard fails to address the fundamental tarnishment requirement that KFB and

GateGuard's marks be substantially similar, which they undisputedly are not.  *See* FAC ¶¶ 46,

49-52; Br. 17-19.  That one device is of "shoddy quality," as GateGuard believes KFB is,

Opp'n 14, is of no consequence if the marks are distinct and unlikely to cause consumer

confusion, as demonstrated here by alleged customer complaints distinguishing the two products,

FAC ¶¶ 81, 83, 99, 123.  *Cf. Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)

(defendant used minimally modified version of plaintiff's logo).  Further, GateGuard confesses it

lacks a New York-registered mark, as required for damages.  Teman Decl. ¶ 8; *see Marvel Ent.,

Inc. v. Kellytoy (USA), Inc.*, 769 F. Supp. 2d 520, 528 (S.D.N.Y. 2011).

GateGuard also cannot state an unfair competition claim because it fails to allege a single

false representation by Amazon that confused customers.  *See C=Holdings B.V. v. Asiarim

Corp.*, 992 F. Supp. 2d 223, 242 (S.D.N.Y. 2013).  GateGuard's new allegation that Amazon

markets KFB as "a necessary intercom 'upgrade,' falsely representing that GateGuard is a device

of inferior quality and unreliable," Opp'n 15, is nowhere in the FAC, which actually alleges that

Amazon markets KFB as a "necessary upgrade to *Amazon's* delivery system," without reference

to GateGuard, FAC ¶ 69 (emphasis added).  GateGuard also fails to allege "deliberate" false

representations or "introduce evidence of actual customer confusion."  *Res. Devs., Inc. v. Statue

of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991).

## IV.    GATEGUARD'S STATE-LAW TORT CLAIMS FAIL.

*Tortious Interference With Contract*.  GateGuard fails to allege with the requisite "factual specificity" that its Service Agreement was entered into with any particular third party, or that Amazon knew of it and induced a third-party breach.  Opp'n 15; *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 405 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).  And cancellation would not be a breach because GateGuard's customers were free to cancel their at-will contracts.[4]  GateGuard now says its clients' *giving of access* to Amazon to install KFB was the operative breach, Opp'n 16-17, but cannot show that Amazon knew those clients were contractually prohibited from providing access, nor any damages because Amazon's allegedly flawed KFB installation—not the granting of access—caused the alleged injury.

*Tortious Interference With Prospective Economic Advantage*.  GateGuard's theory of Amazon's plot to destroy GateGuard, Opp'n 17-19, fails to identify a "particular, existing business relationship through which [it] would have done business but for the" alleged interference.  *Connolly v. Wood-Smith*, 2014 WL 1257909, at *5 (S.D.N.Y. Mar. 27, 2014). GateGuard's caselaw demonstrates how specific and improper this interference must be.  *See Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40 (1st Dep't 2009) (hedge fund pleaded tortious interference where broker's false statements that fund was insolvent caused counterparty to withdraw from large trade).  GateGuard pleads no statement by Amazon regarding GateGuard's "integrity" or "creditworthiness" to *anyone*, let alone a particular GateGuard customer with intent to harm GateGuard.  *Id.* at 41.

---

[4]  GateGuard's cases cited to assert that tortious interference may be based upon an at-will contract, Opp'n 17, reflect extreme circumstances not present here and conflict with most New York courts. *See Lee v. Bros.*, 2021 WL 4652336, at *4 (S.D.N.Y. Oct. 6, 2021) (citing cases).

***Conversion***.  GateGuard's conversion claim fails because GateGuard does not own the devices after it sells them, *supra* I.A, which GateGuard concedes is dispositive, Opp'n 19-20. GateGuard's inscrutable screenshots and allegations of "approximately 20" affected devices fail to "demonstrate legal ownership or an immediate superior right of possession to a specific identifiable thing."  *Meese v. Miller*, 436 N.Y.S.2d 496, 500 (1st Dep't 1981).  GateGuard also fails to allege its devices were rendered "completely useless" by Amazon, Opp'n 20; the alleged malfunctions are instead minor and reparable.  FAC ¶ 118.

***Trespass To Chattels***.  GateGuard fails to explain how Amazon "intentionally" damaged GateGuard's purported property, given that Amazon's alleged scheme was intended to facilitate package deliveries, not damage GateGuard.  FAC ¶ 46.  And GateGuard does not identify its damages, such as repair costs, or why it would not be indemnified under its Service Agreement. Br. 25.  Instead, GateGuard cites inapposite law.  Opp'n 21 (citing *Sporn v. MCA Recs., Inc.*, 58 N.Y.2d 482, 488 (1983) (discussing accrual rules for trespass and conversion); *People v. Mahoney*, 6 A.D.3d 1104, 1104 (4th Dep't 2004) (manslaughter case)).

***Unjust Enrichment***.  GateGuard mischaracterizes unjust enrichment as a cause of action remedying any perceived business injustice.  Even assuming Amazon was "aware" of GateGuard's activities, Opp'n 22, "mere awareness of how [Amazon's] conduct would affect [GateGuard]" does not establish the quasi-contract relationship needed to plead unjust enrichment.  *NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, 2021 WL 3038497, at *8 (S.D.N.Y. Jul. 16, 2021); *see Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517 (2012) ("[M]ere knowledge that [plaintiff] created [something defendant allegedly used is] insufficient[.]"); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (same).

## V.    GATEGUARD FAILS TO PLEAD A PLAUSIBLE ANTITRUST CLAIM.

GateGuard ignores the fundamental problem with its antitrust claim: GateGuard does not compete with Amazon in the e-commerce package delivery market that GateGuard alleges is being monopolized.  GateGuard instead proposes a legal fiction of a broader "e-commerce delivery market" comprising "sub-sectors," including both (1) package transportation services provided by Amazon, FedEx, and UPS, and (2) the building access services that GateGuard supplies with its intercoms.  Opp'n 25.  GateGuard's "sub-sectors" invention only confirms that the broad market defined in the FAC is legally untenable, a fictional construct to evade the rules of antitrust standing requiring GateGuard to participate *in the allegedly monopolized market*.

### A.    GateGuard Concedes Its Market Definition Is Implausible and Includes Non-Interchangeable Products.

Responding to none of Amazon's cited law, Br. 26-27, GateGuard asserts market definition is a "factual question," Opp'n 25, but an antitrust plaintiff must at least "define its proposed relevant market" plausibly and "with reference to the rule of reasonable interchangeability and cross-elasticity of demand."  *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008) (citation omitted).[5]  GateGuard is wrong that the multifaceted nature of e-commerce delivery permits GateGuard to collapse all so-called "sub-sectors" of that

---

[5]  GateGuard argues that courts have "upheld the pleading of similar relevant markets," Opp'n 25, but none of these cases involved plaintiffs *outside the market* shoehorning non-interchangeable services into those market definitions.  *See In re EVIC Class Action Litig.*, 2002 WL 1766554, at *3 (S.D.N.Y. July 31, 2002) (action brought by "nationwide class of shippers"); *W. Parcel Exp. v. United Parcel Serv. of Am., Inc.*, 190 F.3d 974, 975-76 (9th Cir. 1999) (dismissing action brought by parcel delivery service); *Marnell v. United Parcel Serv. of Am., Inc.*, 260 F. Supp. 391, 396 (N.D. Cal. 1966) ("plaintiff commenced the business of delivering retail packages").

industry, defining the relevant market however it wishes.  Opp'n 25-26.  GateGuard's sole cited

authority demonstrates that even in highly complex industries, "[a] relevant product market

consists of 'products that have reasonable interchangeability for the purposes for which they are

produced…,'" and must be alleged with care and with facts concerning that industry that render

the definition plausible.  *N.Y. v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 199 (S.D.N.Y.

2020) (citation omitted).

      In defining the entire "e-commerce delivery market," GateGuard squarely violates this

rule of substitutability.  GateGuard's discussion of "sub-sectors" concedes that these sub-sectors

are independent relevant markets, comprising numerous, non-substitutable products and services.

Opp'n 25.  GateGuard admits that the building access services provided by GateGuard's

intercoms are not reasonably substitutable for package transportation services, and that no one

would switch between such services based on price because they serve different functions.

Opp'n 26.  The FAC's market definition—which purports to include package transportation

services, building access services, and all other facets of the e-commerce industry—should be

rejected as implausible.

     **B.**    **GateGuard Lacks Antitrust Standing Because It Does Not Compete in the Relevant Market (or "Sub-sector") Allegedly Being Monopolized and Alleges Only Incidental Injury.**

      GateGuard's antitrust claims also fail because GateGuard does not claim to compete in

the market (or "sub-sector") Amazon is allegedly monopolizing, thus foreclosing GateGuard's

antitrust standing.  As GateGuard concedes, "[a]ntitrust standing is a threshold, pleading-stage

inquiry," and "generally, only competitors and consumers in the market where trade is allegedly

restrained can allege antitrust injury."  Opp'n 27-28 (citations omitted).

      GateGuard lacks antitrust standing because its allegations center on Amazon's market

position in, and alleged danger of monopolizing, the business of e-commerce *package*

*transportation* services, *see* FAC ¶¶ 36-40; Opp'n 23-24, an area in which GateGuard admits it does not compete, Opp'n 26. GateGuard does not plead that Amazon is monopolizing, nor has a dangerous probability of monopolizing, an undefined "market" for providing residential building access; indeed, GateGuard alleges that "Amazon's strategy is *not* to displace all competitors in the access control market," FAC ¶ 43 (emphasis added), and that KFB gives Amazon a competitive edge in the *package transportation* market, *id.* ¶¶ 51-55.[6]

Antitrust injury requires more than injury caused by an alleged antitrust violation, it requires that such injury be "of the type the antitrust laws were intended to prevent" and not mere "incidental" harm. Br. 28. Because residential building access is not the market allegedly being monopolized or in which GateGuard alleges competitive harm, antitrust injury is absent. Moreover, even if the market could be defined so broadly that GateGuard did compete in the allegedly restrained market, GateGuard would still lack antitrust standing because its alleged injuries do not derive from the *reduction in competition* claimed in the FAC—reduced competition between Amazon, FedEx, and UPS in providing e-commerce package transportation services. Br. 29 (citing cases).

Finally, GateGuard cannot support its assertion that harm to GateGuard was the "necessary means" by which Amazon monopolized the package transportation services market. Opp'n 28. GateGuard fails to explain how KFB allegedly "shorting" GateGuard's intercom

---

[6] GateGuard's claim to compete with Amazon in a separate market for building access services is not plausible because the products are admittedly non-substitutable: KFB lacks the intercom functionality allegedly required by law. *See* FAC ¶¶ 9, 42; Br. 27 n.14. Even if the products did compete, they would be competing in a different market from the one allegedly being monopolized.

circuitry connects to "Amazon gain[ing] a competitive advantage over transportation rivals," *id.*, or why KFB cannot be successful even where both products are functioning. *See* Br. 28 n.15.[7]

C.    **GateGuard Fails to Plead Amazon's Alleged Conduct Was Anticompetitive.**

GateGuard reasserts its implausible theory that the competitive benefits and increased efficiency from KFB are somehow anticompetitive and pose a dangerous risk of nationwide monopolization, simply because KFB has a technical incompatibility with GateGuard's intercoms or because Amazon allegedly misrepresented KFB's features and its authority to install KFB. Opp'n 29-30.[8] But GateGuard concedes KFB principally promotes, rather than degrades, competition, and the ancillary conduct GateGuard alleges amounts at most to the kind of "isolated business torts" that decidedly are not antitrust violations. Br. 31-33 (citing cases).

GateGuard's response that it alleges "a market-wide practice" is baseless. GateGuard alleges at most three instances where KFB was supposedly installed without a property owner's consent. FAC ¶¶ 83, 102-103, 117. And GateGuard offers nothing to "'overcome a presumption that the effect on competition of [misleading advertising] was *de minimis*,'" or that the allegedly misleading statements were "'not readily susceptible of neutralization or offset by rivals'" who could deploy technology similar to KFB or explain to the 40 allegedly affected building owners

---

[7]  GateGuard says it is the "ideal enforcer of the [antitrust] laws," Opp'n 29, but fails to address any part of the four-factor "efficient enforcer" test, or to address Amazon's corresponding arguments explaining why GateGuard is an unsuitable antitrust plaintiff. Br. 29-30 & n.16 (citing cases).

[8]  Grossly exaggerating a quotation it made up itself, GateGuard claims Amazon uses "extortionate threats to coerce GateGuard." Opp'n 23 (citing FAC ¶ 134). This falls far short of a plausible allegation of coercive anticompetitive conduct. *See Int'l Norcent Tech. v. Koninklijke Philips Elecs. N.V.*, 2007 WL 4976364, at *10-11 (C.D. Cal. Oct. 29, 2007).

why they should uninstall KFB.  Br. 32 (citing cases).  Moreover, GateGuard gives no plausible explanation how a handful of allegedly unfair incidents of Amazon installing or marketing KFB for urban apartment buildings poses a risk of Amazon monopolizing the entire nation's e-commerce delivery market.  *See* Br. 32-33.

### D.     Alternatively, the Court Should Strike GateGuard's Class Allegations.

It remains "'plain enough from the pleadings'" that no alleged class could be certified or represented by GateGuard.  Br. 33-34 (citing cases).  Mr. Teman's sworn protestation of innocence, the pendency of his appeal of his criminal conviction and sentence, and his promise to delegate management of the class action to another "senior officer of GateGuard" should his conviction be affirmed, Teman Decl. ¶¶ 4-5, only underscores the severe conflict of interest between GateGuard and other purported class members: defrauded GateGuard customers on whose testimony Mr. Teman was convicted.  *See United States v. Teman*, 465 F. Supp. 3d 277, 285-89 (S.D.N.Y. 2020).

GateGuard also highlights distinct theories of injury among GateGuard's putative class. The alleged antitrust injury will vary dramatically between "package delivery management services," "property owners," "shippers," and "e-commerce retailers,"  Opp'n 31, preventing the proposed class from proving injury with common evidence.  Br. 34 (citing cases).

### CONCLUSION

The Court should dismiss the FAC with prejudice and strike GateGuard's class allegations.

14

Dated:  New York, New York
      June 6, 2022

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  */s/  Anne Champion*

      Anne Champion
      Christopher D. Belelieu
      Eric J. Stock
      David P. Salant

      200 Park Avenue
      New York, NY 10166-0193
      Telephone: (212) 351-4000
      Email: achampion@gibsondunn.com
           cbelelieu@gibsondunn.com
           estock@gibsondunn.com
           dsalant@gibsondunn.com

      *Attorneys for Defendants Amazon.com, Inc.,*
      *Amazon.com Services LLC, and Amazon*
      *Logistics Inc.*

**ATTORNEY CERTIFICATION PURSUANT TO INDIVIDUAL RULE II(D)**

Pursuant to the Court's Individual Rule II(D), I, Anne Champion, an attorney duly admitted to practice law before this Court, hereby certify that the foregoing memorandum of law contains 3,994 words, in compliance with the Court's order of January 8, 2022 enlarging Defendants' word limit to 4,000 words (ECF No. 12), and that this memorandum complies with the Court's applicable formatting rules.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.


Dated: June 6, 2022                                          */s/ Anne Champion*
      New York, New York                                Anne Champion