**Eden P. Quainton**

**Quainton Law, PLLC**
2 Park Ave., 20ᵗʰ Fl.
New York, NY 10016
245 Nassau St.
Princeton, NJ 08540

---

**Telephone (212) 419-0575, (609) 356-0526**
**Cell: (202) 360-6296**
**Eden.quainton@quaintonlaw.net**

September 10, 2023

**VIA ECF**

Honorable Valerie Figueredo
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <u>GateGuard, Inc. v. Amazon,com, Inc. et al., 21-cv-9321 –
September 13, 2023 Discovery Conference</u>

Dear Judge Figueredo,

      I represent the Plaintiff, GateGuard, Inc. ("Plaintiff" or "GateGuard"), in the above-captioned matter.

      I write pursuant to your Honor's order dated September 1, 2023 directing the parties to meet and confer and attempt to agree on a proposed modification to the discovery schedule to be submitted to your Honor. As directed, the parties met and conferred on September 7, 2023 but were unable to agree on a revised schedule. Plaintiff believes that an extension of 90 days for the completion of fact discovery is necessary, while Defendants maintain that an extension of 60 days would suffice. For the reasons set forth below, Plaintiff believes that an extension of 90 days is reasonable in light of the substantial areas of discovery remaining.

      1.    <u>Trade secret discovery</u>.  In its first Request for Production, attached hereto as Exhibit A, GateGuard made a number of trade secrets-related demands. *See* Ex. A, Requests No. 7-11. Amazon's response to these requests was that Judge Koelt held that Amazon's direct copying claims were overly speculative and that, therefore, any discovery relating to copying was beyond the scope of discovery. *See* Defendants' Responses and Objections to GateGuard's First Request for the Production of Documents, Ex. B, at 17-18, 20-21. However, Amazon misconstrues Judge Koelt's decision. Although the direct copying claim was deemed insufficiently plead, Judge Koelt upheld GateGuard's state and Federal trade secrets claims on a "piggybacking" or "commandeering" theory. *See* Memorandum and Order, dated February 16, 2023, Dkt. 30, at 42. Obviously, GateGuard is entitled to discovery into this "piggybacking" or "commandeering" cause of action, as Rule 26 permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Amazon's own production indicates the appropriate scope of proportional discovery. Amazon produced a slide showing that the shape of the Key was expressly modified so that it could fit within third-party intercom casings. AMZN___000182. This same slide also boasted of modifications to its wiring system, antenna and ethernet cabling that were designed to improve

installation into third-party devices, or, to use Judge Koelt's language, to facilitate improper "piggybacking" and commandeering. *Id.* Among the features that GateGuad alleges to be proprietary are the "configuration of its motherboard," the "inner casing of the intercom," its "mechanism of internet connectivity," its antenna, and its "custom-designed cables." *See* First Amended Complaint ¶ 165. These are all features Amazon claims to have improved to facilitate integration into (or misappropriation of) third-party devices. AMZN___000182. Moreover, discovery received from ClearHome, one of Amazon's "channel partners" reveals that Amazon instructed ClearHome to purchase two GateGuard devices. Ex. C, ClearHome-Amazon communication re purchase of devices. This communication supports an inference that Amazon specifically wanted to analyze the GateGuard device to determine how best to modify the Key to "piggyback," "commandeer," and misappropriate GateGuard's trade secrets for its own benefit. GateGuard intends to move to compel responses to its trade secret demands if Amazon does not modify its position.

      2.    <u>Amazon Non-Custodial Discovery</u>. Amazon has represented, in meet and confer sessions with Plaintiff, that its non-custodial discovery is now complete. Apparently, counsel has made inquiries of sources "likely" to contain responsive information and has satisfied itself that it has done all that is required. However, Amazon has not been able to articulate precisely how it determined that these internal inquiries have in fact uncovered all relevant non-custodial discovery. On August 31, Plaintiff served a supplementary interrogatory on Defendants demanding that Amazon detail the process by which "Defendants performed their 'non-custodial search' of sources of information within Defendants' custody and control, specifying which databases or other sources of information were searched, which individuals were consulted to determine the relevant databases or sources of information, and how Defendants' assured themselves that all potential sources of responsive information had been identified and searched." Ex. D, Plaintiff's Second Set of Interrogatories. Until Amazon has responded to this Interrogatory, it is premature for Amazon to claim that its non-custodial discovery is complete. In addition, Amazon's non-custodial discovery is incomplete on its face: for example, Amazon has produced extracts from its installation materials, but without the videos and drop-down information referenced in the materials, and which are essentially to understanding Amazon's Key installation practices. *See, e.g.*, AMZN__000186-000187 (missing instructional videos); AMZN___000208, 000216 (same); AMZN___000195, 000201, 000205, 000206, 000224, 000228, 000230, 000232 (missing drop-down information). If Amazon does not rectify these deficiencies, GateGuard will be forced to bring a motion to compel, that will necessarily delay the close of discovery.

      3.    <u>GateGuard Ordered Properties</u>. Amazon has asserted that the properties at which GateGuard lost an order and at which Amazon subsequently installed the Key are outside the scope of discovery because Amazon cannot show a "particular claim of injury." Ex. E, Champion to Quainton Letter dated June 9, 2023, at 5 This is a puzzling argument. Amazon appears to be conflating GateGuard's initial identification of Amazon induced <u>breaches of contract</u>, *see* Ex. F, Plaintiff's Supplemental Objections and Responses to Defendants' Second Set of Interrogatories, dated June 2, at 5, with Amazon's interference with <u>orders</u>, which is an entirely different matter. Moreover, Amazon had not yet provided its list of ordered properties at which the Key was installed when GateGuard provided the interrogatory response identified in Ms. Champion's letter. *See* Ex.G, June 5 email from D. Salant to E. Quainton. GateGuard would not necessarily have known which orders it lost as a result of the Key until Amazon had provided its disclosure.

4. <u>Amazon Custodial Discovery</u>. After an exchange of proposed custodians and a follow-up meet and confer session, GateGuard provided a revised list of custodians, together with a revised list of search terms. *See* Ex. H, Proposed Custodians and Search Terms. It is unclear whether Amazon accepts GateGuard's proposed custodians and search terms, or whether additional time will be needed to resolve this issue.

5. <u>GateGuard ESI</u>. At the previous status conference in this matter, GateGuard requested that the Court order Amazon to bear the costs of engaging a professional ESI vendor. GateGuard had already produced thousands of pages of documents at that time and has since produced a total of over 3,500 documents. However, rather than waiting for the Court to issue a ruling on its request, GateGuard has now engaged a vendor who will collect data from the specified custodians, and apply the search terms proposed by Amazon, after which GateGuard will perform a customary attorney review and produce documents in the format requested by Amazon. GateGuard anticipates this process will take approximately 4-6 weeks.

6. <u>Depositions</u>. Scheduling depositions remains one of the biggest timing challenges going forward. Amazon has identified eight "channel partners" through which it installed the Key into GateGuard devices. GateGuard has been attempting to schedule a deposition with one of these parties, ClearHome, for several months now. GateGuard had already agreed on a date with ClearHome, but Amazon requested a rescheduling of the deposition so that it could review ClearHome's production, and it has been a challenge to find a new date. Scheduling depositions with other channel partners is likely to be difficult as well. In addition, GateGuard has already identified over 20 locations, within very substantial property portfolios, in which Amazon illegally installed the Key (either with no authorization, no record of authorization, the absence of appropriate authorization,[1] or highly questionable authorization[2]). GateGuard has also shown damage to its devices and the subsequent loss of the customer relationship. These facts alone raise a triable issue of fact as to whether the loss of customer relationships resulted from Amazon's damage to GateGuard devices. However, GateGuard will need to conduct Rule 30(b)(6) depositions of at least individuals with knowledge of: (1) Amazon's and its channel partners' procedures and practices for obtaining authorization to install the Key, (2) the modifications made to the Key to optimize "piggybacking" or "commandeering," (3) the processes for addressing property complaints about Key malfunctioning, and (4) the relationships (and any fee sharing arrangements) with intercom providers. This is not an exhaustive list given the incomplete state of Amazon's discovery to date.

7. <u>Personal Issues</u>. As I mentioned to the Court in my letter dated August 31, my father died earlier in August and I spent much of the month of August in Washington D.C., both in preparation for the funeral and the grieving period afterwards. In addition, just as I was returning to work full-time, I became very ill with a severe respiratory infection from which I have only just recovered. These personal matters have delayed discovery by approximately one month.

---

[1] In most instances produced by Amazon, any installation contract was signed by the building superintendent, *see* AMZN__000030, even though Amazon's own internal procedures required the signature of the "building owner." AMZN__000199.

[2] In one case, Amazon presented a large "X" as the signature of Harley Friedman. AMZN___417. In another instance, the signature block of the purported installation agreement reads simply "Docusign." AMZ__464.

For all the foregoing reasons, Plaintiff believes that a 90-day extension for fact discovery is reasonable under the circumstances, subject to Plaintiff's right to seek a further extension if there is motion practice or if deposition scheduling proves particularly challenging. Accordingly, Plaintiff proposes the following schedule, consistent with the overall approach approved by the Court in its prior scheduling order at Dkt. 40:

- December 15, 2023: Close of Fact Discovery
- February 15, 2024: Close of Expert Discovery
- March 31, 2024: Dispositive Motions.

                                                             Respectfully submitted,

                                                             *Eden Quainton*

                                                            Eden P. Quainton

cc: All counsel of record (via ECF)