UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.

    *Plaintiff*,

v.

AMAZON.COM, INC.,
AMAZON.COM SERVICES, INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC.

    *Defendants*.

Civil Action No. 21-cv-9321 (JGK) (VF)

# GATEGUARD'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

QUAINTON LAW, PLLC
Eden P. Quainton
2 Park Ave., 20th Fl.
New York, NY 10016
212-419-0575
equainton@gmail.com
*Attorneys for Plaintiff GateGuard, Inc.*

## PRELIMINARY STATEMENT

In the present motion for leave to file a Second Amended Complaint, GateGuard is seeking to make a limited number of targeted changes necessary to reflect the tortious conduct of Amazon.com. Inc. and its affiliates ("Amazon" or "Defendants") brought to light through discovery in this case.[1]

GateGuard is making two basic new claims. First, GateGuard is making a claim of copying based on Amazon's conduct in illegally obtaining, sequestering and then destroying a GateGuard device procured by Amazon at the exact time it was developing its own intercom system and where subsequent product features show striking similarities with the GateGuard device. Second, GateGuard is making a class wide claim of unauthorized access and the

---

[1] A draft of Plaintiff's proposed Second Amended Complaint was provided to Defendants on January 31, 2024. Declaration of Eden P. Quainton dated February 9, 2024 (the "Quainton Decl.") at ¶ 2. As Plaintiff had advised the Court and opposing counsel, Plaintiff wanted to review the deposition transcripts for the depositions of Gerry Niviera, Odalis Tiburcio and Ramon Rodriguez before submitting a further version to Defendants for their review prior to filing. *Id.* at ¶ 3. Plaintiff only received copies of these deposition transcripts on February 8, 2024. *Id.* at ¶ 4.  Upon review of the transcripts, Plaintiff provided a revised version of the Second Amended Complaint with modest additional changes marked in bold for easy reference. *Id.* at ¶ 5. Plaintiff requested a reply as to these changes by 5:00 p.m. on Friday, February 9, 2024. *Id.* at ¶ 6.  Plaintiff also requested Amazon's views as to any sealing of the amended pleading that would be necessary. *Id.* at ¶ 7. Amazon did not reply to either request, although it had previously stated that the only amended pleading it would recognize would be the January 31 draft, the filing of which it opposed. *Id.* at ¶ 8. A response was sent at approximately 9:30 p.m., but Plaintiff was finalizing his documents and did not see it. In finalizing the amended pleading submitted herewith as Exhibit A to the Quainton Decl. (the "SAC"), Plaintiff corrected an unintentional omission. The class claim in the version submitted to Defendants included a class claim for tortious interference, trespass and conversion. Plaintiff added a few additional factual averments to support these claims. Plaintiff has bolded all language that was not included in the January 31, 2024 draft and notes the the minor additional changes are found in ¶¶128 and 192-194 of the SAC. Plaintiff submits that Defendants will not be prejudiced by consideration of these additional changes given that Defendants have stated they oppose the amended pleading and will have every opportunity to develop their arguments in opposition. Plaintiff, however, would be unfairly harmed by a course of conduct that sought to be as cautious as possible in advance claims dependent in part on recent deposition testimony that was only made available to Plaintiff in the last 48 hours.

resulting consequences of this conduct for property owners, property managers and access rights holders.

GateGuard has not delayed in bringing its proposed amended complaints because the way in which the various aspects of GateGuard's new claims fit together has only become evident with sufficient force to warrant an amended pleading recently. GateGuard has not delayed in seeking deposition or other testimony, but has faced scheduling constraints of third parties and Amazon witnesses. GateGuard is not acting in bad faith in bringing the present motion, as it has taken every effort to verify deposition transcripts and evidence to ensure that there is a sufficient basis for the claims. Amazon will not suffer any cognizable prejudice, because it has been on notice of GateGuard's copying theory since the beginning of the lawsuit and has had access to disclosure from GateGuard of the inner workings of its device and its claimed trade secrets from the beginning of the litigation. Discovery has simply revealed evidence that raises more than a plausible inference of copying and a systemic pattern of unauthorized installation and resulting harm likely affecting hundreds, if not thousands, of properties nationwide, where the damages suffered by any one property and the formidable reputation of Amazon as a litigant may dissuade individual claims for recovery of damages.

**LEGAL ARGUMENT**

I.     LEAVE TO AMEND IS TO BE FREELY GIVEN.

Fed. R. Civ. P. 15(a) sets out a liberal standard for the amending of complaints, instructing that leave to amend should be freely granted. The Rule itself states, "the court should freely grant leave when justice so requires" before trial. F.R.C.P. 15(a)(2). *Schatzki v. Weiser Capital Mgmt.,* LLC, No. 10 CIV. 4685 RWS, 2015 WL 6206438, at *1 (S.D.N.Y. Oct. 16, 2015). Even where a case has been tried, appealed and remanded, leave to amend to state additional or different affirmative defenses has been upheld. *Id.* Indeed, the policy encouraging

liberality in permitting amended pleadings even extends to filing amended pleadings with additional causes of action or with a completely different theory of recovery. *Dombrovskis v. Murff,* 24 F.R.D. 302, 304 (S.D.N.Y. 1959). A motion to amend "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *Waite v. UMG Recordings, Inc.*, 477 F. Supp. 3d 265, 268 (S.D.N.Y. 2020) (citing *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603 (2d Cir. 2005). Neither delay nor an increased discovery burden are by themselves sufficient to overcome the liberal standard for amended pleadings set forth in Fed. R. Civ. P. 15(a). Waite, 477 F. Supp. 3d at 268-69.

II.  PLAINTIFF DID NOT ACT WITH UNDUE DELAY OR BAD FAITH

Plaintiff's direct copying claim is based on the accumulation of evidence obtained during discovery, the most recent piece of resulted from the deposition of Gerry Nievera, the Head Sales and Operations for the Amazon Key or Business (the "Amazon Key" or the "Key for Business"). *See* Deposition of Gerry Nievera, dated January 26, 2024 (the "Nievera Dep."). GateGuard had previously established that Amazon had procured a GateGuard device without GateGuard's consent through a company called ClearHome and, in or about March or April, 2021, had sent this device to a top-secret research center known as SJC13, A2Z Development Center Inc. *See* Quainton Decl." at ¶ 10 and Ex. B.

It is a reasonable inference that a core purpose                                                were designed to

improve the functionality of the Ring intercom device.



The actual Ring Intercom itself functions in a similar way to the GateGuard intercom, using the same integrated video camera technology to record pictures and videos of persons approaching and entering the door, and alerting the user of these events, a technology that

GateGuard pioneered. SAC ¶ 12. In addition, during discovery GateGuard learned that Amazon had rolled out an application that was intended to be directly marketed to property owners (unless the Key for Business that was installed without their knowledge or consent) and that strikingly resembled GateGuard's own Property Panel, the benefits of which Mr. Teman had pitched to Amazon in October, 2020. SAC ¶ 15-16. Ring also developed a system of "rich notifications" that strikingly resembles GateGuard's own system of notifications, but that encountered implementation difficulties, the resolution of which would be greatly facilitated by unauthorized access to the GateGuuard system. SAC ¶¶145-147.

s, the sequencing of its product introductions after the acquisition of the GateGuard device, the similarities in features of the GateGuard system and features of the Amazon Key and Ring products, the obfuscation surrounding the acquisition of the GateGuard device,

, all raise a plausible inference of copying sufficient to satisfy the pleading standards of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (to survive a motion to dismiss, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face"). GateGuard did not unduly delay in bringing this claim, because, as discussed, all the different pieces of discovery, from the ClearHome shipment of the device to Amazon's secret research center to its ultimate destruction during discovery, had to be pieced together to raise a sufficient inference for the direct copying claim to proceed. By definition, as GateGuard was prudently waiting to put all the pieces of the evidentiary puzzle together before seeking leave amend, and proceeding with appropriate caution in the face of different facts and recollections, here can be no serious claim of bad faith.

There is also no undue delay with GateGuard's class claim. While GateGuard suspected a widespread pattern of wrongful conduct with respect to the installation of the Amazon Key, it lacked sufficient evidence to bring a plausible class claim until discovery was well-advanced. First, Amazon produced a number of installation agreements that looked suspicious on their faces.

the General Counsel for the real estate company in question stated to Mr. Quainton that the property manager was unaware of any Key for Business ever being installed. Quainton Decl. ¶ 17.

Placing the depositions of Mr. Tiburcio and Mr. Rodriguez in proper context depended on understanding the general context during which the Amazon Key for Business had been installed.

The economics incentivized the pattern of shady, misleading,

deceptive and downright fraudulent conduct GateGuard has uncovered during discovery. Of these hundreds of thousands of new properties covering millions of new tenants, GateGuard believes there are hundreds, if not thousands, of properties at which no authorization was obtained, or authorization was obtained on a deceitful basis, frequently with resulting disruptions to service whose cause was hidden from landlords who had no reason to suspect the installation of a device that could interfere with the existing intercom system. GateGuard's CEO has had conversation with a major Chicago-area property owner and manager who testified to "many" problems caused by the Amazon Key. *See* Declaration of David Taxman, dated February 9, 2024 (the "Taxman Decl.") ¶ 3. Plaintiff's counsel was contacted on an unsolicited basis by a multi-family property owner in California who had discovered the installation of the Amazon Key and the resulting disabling of the building's door strike. Quainton Decl. ¶ 18.

stated unequivocally that his company had no knowledge of any installation of the Amazon Key at either location covered by Mr. Tiburcio and Mr. Rodriguez. Another significant property owner in New York with 32 multi-family residential buildings stated to Plaintiff's counsel that the Amazon Key caused the amplifiers at the buildings where it was installed to "blow out" and disable the buildings' intercoms. Quainton Decl. ¶ 19. There is a more than plausible basis to believe that a significant class of potential victims of Amazon's shady practices could be certified.

GateGuard did not delay in filing of the SAC out of bad faith or to gain a litigation advantage, but because it wanted to be sure that the evidence truly supported an inference of large-scale deceptive and damaging conduct, which required a careful assessment of all the evidence, and deposition testimony that was only obtained in the last few weeks. As with GateGuard's claims of copying, there cannot be any serious allegation of bad faith where GateGuard has proceeded cautiously and carefully, even verifying deposition testimony to

10

ensure its claim had a sufficient factual basis to raise a plausible inference of widespread misconduct for which a class action would be the most appropriate remedy.

III.     THERE WILL BE NO PREJUDICE TO AMAZON FROM THE ADDITION OF THE PROPOSED NEW COUNTS.

Obviously, Amazon would rather not be held to account for its conduct and would rather make this case about the personal difficulties of Ari Teman—which have nothing to do either with illegal copying or the large scale, industrial-level misconducgt through which Amazon obtained preferential access to buildings leaving the familiar pile of packages in building lobbies throughout major metropolitan areas throughout the United States. But Amazon's desire to avoid liability is not prejudice in a legally cognizable sense. Prejudice, in the context of litigation, an action that forecloses a defense or precludes a claim, or otherwise significantly interferes with a party's ability to defend or prosecute its claim. *See Eliya, Inc. v. Steven Madden, Ltd.*, No. 15CV01272DRHSIL, 2017 WL 8794774, at *6 (E.D.N.Y. Feb. 2, 2017), *report and recommendation adopted*, No. CV 15-1272(DRH)(SIL), 2017 WL 1190943 (E.D.N.Y. Mar. 30, 2017) ("Undue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof" ) (citing *Ruotolo v. City of N.Y.,* 514 F.3d 184, 192 (2d Cir. 2008); *see also State Tchrs. Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) (reversing denial of leave to amend where, "at the time plaintiffs requested leave to amend, no trial date had been set by the court and no motion for summary judgment had yet been filed by the defendants"). *Compare Bradick v. Israel*, 377 F.2d 262, 263 (2d Cir. 1967) (denying leave to amend where, on the eve of trial, more than four years after the filing of the original complaint, and after party had represented to the court that the case was ready for trial, party moved to amend his complaint by adding three new causes of action).  Here, fact discovery has not concluded, expert discovery has not begun, the parties are months from

11

summary judgment and the case is even further removed from trial. Amazon, with the army of eight lawyers it has devoted to the present case, will have no difficulty properly preparing for trial. Moreover, with respect to copying, GateGuard has already made clear that it is seeking evidence of the way in which the Amazon Key was redesigned or refined to enable the "piggybacking" claim sustained by Judge Koelt. Dkt. 30 at 5, 42. GateGuard has already provided an internal diagram of the GateGuard device to Amazon, and Amazon has already indicated that it will retain an expert to evaluate GateGuard's trade secret claims in the context of the Key for Business. Quainton Decl. ¶ 20. It will not be significantly more difficult for an expert to compare the GateGuard system to the Ring Intercom, the Ring Rich Notification system and the Key property management tool, all of which are alleged to be based on features of the GateGuard system to which Amazon illegally gain access by causing a device to be ordered under false pretenses then shipped to its research lab.

Similarly, with respect to GateGuard's proposed class claim, the incremental discovery with respect to Amazon is relatively minor, and will involve no new problems of proof other. The real burden will be on Plaintiffs, who will need to organize a process by which access rights holders can provide testimony as to the absence of authorization of the Key for Business in properties they control. But this burden is outweighed by the interests of justice and the need to provide a means for individual plaintiffs to recover their damages. Amazon has not waived or foregone any defenses or claims and will only need to face liability commensurate with the large-scale harm it has caused.

IV.   THE CLAIMS SET FORTH IN THE PROPOSED SECOND AMENDED COMPLAINT ARE NOT FUTILE.

To be allowed in an amended pleading, any additional claims cannot be futile, which Courts have interpreted to mean that the claims must be capable of surviving a motion to

dismiss. *Shargani v. New York City Dep't of Env't Protetion*, No. 21 CIV. 337 (AKH), 2022 WL 1046764, at *2 (S.D.N.Y. Apr. 7, 2022) ("whether amending a complaint is futile typically depends on whether the proposed amended complaint states a claim").  Here, there is no doubt that Plaintiff has adequately stated a claim. The Court has already held that GateGuard has sufficiently alleged the existence of trade secrets for its trade secrets claims under the Defend Trade Secrets and New York common

  GateGuard's class claims are not futile because discovery has strongly suggested – with easily enough support to pass the pleading test under *Twombly* and *Iqbal* – a systemic problem, likely affecting thousands of property owners, with the installation of the Amazon Key without authorization in a manner that damages landlord's and others' property and robs access rights holders of the economic expectancy from granting preferential access.  This systemic problem is illustrated by the documents produced in discovery which reveal a pattern of "red flags." These problems were tested in the crucible of the real world

As discussed, Plaintiff's due diligence during discovery has also provide examples of Amazon-Key related problems in New York, Chicago and California, strongly supporting Plaintiff's

13

theory that Amazon reckless installation of the Key for Business has caused widespread harm that cannot adequately be redressed by induvial claims—the classic case of a need for a class action.

## CONCLUSION

For the reasons set forth above, the Court permit the filing of the Second Amended Complaint in the form attached to the Quainton Decl. as Exhibit A.

Dated: New York, New York
      February 9, 2024

                                 Respectfully submitted,

                                 QUAINTON LAW, PLLC

                                 By: _/s/ Eden Quainton_____

                                 Eden P. Quainton
                                 2 Park Ave., 20th Floor
                                 New York, New York 10016
                                 Telephone: 212-419-00575
                                 Email: equainton@gmail.com

                                 *Attorneys for Plaintiff GateGuard, Inc.*