153.166.          Defendants intentionally and wrongfully interfered with future economic advantage

to be received from existing customers through the extension of their contracts with Plaintiff and

from future customers who will be deceived into thinking Plaintiff's rival product to the Key for

Business is responsible for the equipment malfunctioning.

154.167.          Plaintiff has lost existing customers, future business from such customers and

prospective customers as a result of Defendants' wrongful conduct, including their unauthorized

access to Plaintiff's intercom devices and their tampering with and manipulating said devices to

cause them to malfunction.

155.168.          Plaintiff has also been delayed in fulfilling new, revenue-generating devices as its

installers were forced to rush to repair extensive damage caused by Amazon's illegal installations,

losing that revenue-generating time forever.

156.169.          As a result of Defendants' tortious interference with prospective economic

advantage, Plaintiff has suffered damages in an amount to be determined at trial, but no less than

FOURTY MILLION DOLLARS ($40,000,000).

### COUNT IV.

#### TRESPASS TO CHATTELS UNDER NEW YORK LAW
#### (AS TO ALL DEFENDANTS)

157.170.          GateGuard realleges and incorporates by reference each and every allegation set

forth in the foregoing paragraphs above.

158.171.          Defendants intentionally impaired the condition, quality and value of Plaintiff's

intercom devices by means of their unauthorized access to such devices and their manipulation

and tampering with the devices in such a manner as to impair their proper functioning and deprive

Plaintiff of the economic benefit therefrom.

~~159.~~172. _____ As a result of Defendants' intentional impairment of the condition, quality and

value of Plaintiff's intercom devices, Defendants have committed trespass to chattels and are liable

to Plaintiff for damages in an amount to be determined at trial, but no less than TEN MILLION

DOLLARS ($10,000,000).

## COUNT V.

### CONVERSION
### (AS TO ALL DEFENDANTS)

**Formatted:** Left

~~160.~~173. _____ GateGuard realleges and incorporates by reference each and every allegation set

**Formatted:** Left

forth in the foregoing paragraphs above.

~~161.~~174. _____ GateGuard is the legal owner of the intercom devices installed at residential

dwellings under contract with it.

~~162.~~175. _____ By accessing GateGuard's intercoms without authorization and using and misusing

the devices so as to install the Key for Business, Defendants wrongfully exercised dominion over

Plaintiff's intercom devices.

~~163.~~176. _____ As a result of the ensuing conversion of Plaintiff's property, Plaintiff has suffered

damages in an amount to be determined at trial, but no less than TEN MILLION DOLLARS

($10,000,000)

### COUNT VI.

### MISAPPROPRIATION OF TRADE SECRETS UNDER NEW YORK LAW
### (AS TO ALL DEFENDANTS)

~~164.~~177. _____ GateGuard realleges and incorporates by reference each and every allegation set

**Formatted:** Left

forth in the foregoing paragraphs above.

~~165.~~178. _____ GateGuard possesses trade secrets in its intercom devices, including the

configuration of its motherboard, the placement and type of electronic circuitry and other

components used, the insulation resistance between circuits, the voltages at which the device

operates, the mechanisms of internet connectivity, the antennae used, the inner casing of the

intercom, its system of wall-mounting and hinges, its waterproofing design, and its custom-

designed cables.

166.179. This proprietary technology is kept secret from competitors and customers, with

only authorized GateGuard agents permitted access to the devices for repairs and troubleshooting.

GateGuard developed its devices after thousands of hours of trial and error and years of painstaking

research and development, including by its founder Ari Teman, who sacrificed his personal life

and health to develop GateGuard's technology. The Company's trade secrets are the core of its

value, which has been established at $300 million for purposes of the Company's most recent

round of fundraising. Without acquiring GateGuard or illegally accessing the GateGuard devices,

Amazon would be unable to develop a device with the same or similar functionality.

167.180. Defendants wrongfully and dishonestly, by means of subterfuge, deceit, and other

illegal conduct, misappropriated Plaintiff's trade secrets, applied Plaintiff's intercom devices to

their own use, accessing the inner workings of the GateGuard devices and installing Key extenders

without authorization, paying compensation or obtaining consent

168.181. As a result of Defendants' wrongful misappropriation of Plaintiff's trade secrets,

Plaintiff has suffered damages in an amount to be determined at trial, but no less than ONE

HUNDRED MILLION DOLLARS ($100,000,000).

**Formatted:** Left

## COUNT VII

**VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016,
18 U.S.C.A. § 1832 *et seq.*)
(AS TO ALL DEFENDANTS)**

~~169.~~182._____GateGuard realleges and incorporates by reference each and every allegation set

forth in the foregoing paragraphs above.

~~170.~~183._____By illegally wiring into GateGuard's intercoms, Amazon has been able to

misappropriate valuable proprietary intellectual property, as described in paragraphs 86 and 165

above.

~~171.~~184._____GateGuard maintains and protects the secrecy of the foregoing information and

only provides access to authorized users pursuant to express contract or agreement.

~~172.~~185._____GateGuard is the owner of the intellectual property in its devices, including the

associated trade secrets.

~~173.~~186._____GateGuard devoted thousands of hours and years of research and development to

develop the GateGuard intercom.

~~174.~~187._____Defendants did, with intent to convert a trade secret, related to a product or service

used in or intended for use in interstate or foreign commerce, to its own unauthorized economic

benefit, and knowing that said conversion would injure GateGuard,

- steal, or without authorization appropriate, take, carry away, or conceal, or by fraud,
  artifice, or deception obtain GateGuard trade secrets;

- without authorization copy, duplicate, sketch, draw, photograph, download,
  upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail,
  communicate, or convey GateGuard trade secrets; and/or

- attempt to commit the foregoing.

68

Formatted: Left

Formatted: Left

Formatted: Left

175.188._____As a result of Defendants' willful and malicious conduct, GateGuard has suffered

damages, including exemplary damages equal to two times its actual damages, in an amount to be

determined at trial, but no less than TWO HUNDRED MILLION DOLLARS ($200,000,000)

together with the payment of attorney's fees and costs.

COUNT VIII

TARNISHMENT UNDER NEW YORK LAW
GENERAL BUSINESS LAW § 360 et seq.
(AS TO ALL DEFENDANTS)

176.____GateGuard realleges and incorporates by reference each and every allegation set forth in the

foregoing paragraphs above.

177.____GateGuard possesses a strong and distinctive registered trademark in the name "GateGuard"

applied to a smart intercom or access control devices.

178.____Defendants have damaged the GateGuard mark by installing the Key inside of the GateGuard

device without GateGuard's, landlords' and/or property managers' consent, wrongfully

displaying its Key as a GateGuard device, and damaging and tarnishing GateGuard's brand when

the devices malfunction as a result of Defendants' illegal conduct.

179.____As a result of Defendants' conduct GateGuard is entitled to damages, including treble damages,

under General Business Law § 360(m), in an amount to be determined at trial, but no less than

ONE HUNDRED AND TWENTY MILLION ($120,000,000), together with an award of

attorneys' fees and costs.

69

COUNT IX

UNFAIR COMPETITION
LANHAM ACT, 15 U.S.C. § 1125.
(AS TO ALL DEFENDANTS)

**Formatted:** Left

180. GateGuard realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

**Formatted:** Left

181. Plaintiff has a valid mark entitled to protection under the Lanham Act.

182. Defendants have used the GateGuard mark in commerce in connection with the sale or advertising of its Key device, without GateGuard's consent.

**Formatted:** Left

183. Defendants' use of the mark is likely to cause confusion as to the origin, sponsorship, or approval of Amazon's goods, services, or commercial activities by GateGuard, leading consumers to believe that perceived product defects resulting from Defendants' illegal conduct are in fact defects in GateGuard's devices, resulting in lost revenues.

184. In addition, Defendants are profiting from GateGuard's technology and brand in circumstances in which the Key device does not cause shorting and malfunctioning of the GateGuard device.

185. As a result of its illegal conduct, Defendants are liable for treble damages and disgorgement of profits in an amount to be determined at trial, but no less than ONE HUNDRED AND TWENTY MILLION DOLLARS ($120,000,000), together with attorneys' fees and costs.

COUNT X.

UNJUST ENRICHMENT
(AS TO ALL DEFENDANTS)

186. GateGuard realleges and incorporates by reference each and every allegation set forth in the foregoing paragraphs above.

**Formatted:** Left

187.   Defendants were enriched by their practice of installing the Key for Business inside Plaintiff's

intercom devices without consent by illegally "free-riding" on the work that Plaintiff had

performed to connect and wire its devices to the electrical circuits in the residential buildings

under contract to it, and accessing and misappropriating GateGuard's proprietary technology.

188.   Defendants' actions occurred at the expense of Plaintiff in that Defendants' free riding also

involved tampering with and manipulating the intercom devices in such a manner as to cause the

devices to malfunction while maintaining the functionality of Defendants' Key for Business

and/or enabling Defendants to market the Key as an "upgrade" to a system they themselves

damaged and degraded. Defendants' actions further occurred at the expense of Plaintiff in that

Defendants profited from Plaintiff's development of proprietary technology after several years

and thousands of hours of research and development.

189.   It would be against equity and good conscience to permit Defendants to profit from their

unauthorized, wrongful and damaging conduct.

190.   As a result of the foregoing, Defendants have been unjustly enriched in an amount to be

determined at trial, but no less than ONE HUNDRED MILLION DOLLARS ($100,000,000).

**COUNT XI – CLASS CLAIM.**

ATTEMPTED MONOPOLIZATION
UNDER THE SHERMAN ANTITRUST ACT OF 1890,
15 U.S.C. § 1 et seq.
CLAYTON ACT OF 1914 §
4**TRESPASS AND
CONVERSION TORTIOUS
INTERFERENCE WITH
PROSPECTIVE
ECONOMIC ADVANTAGE
(AS TO ALL DEFENDANTS)**

191.189.            GateGuard realleges and incorporates by reference each and every allegation set

forth in the foregoing paragraphs above.

Formatted: Left

Formatted: Left

Formatted: Left

192.    Amazon unquestionably exerts market power in the e-commerce delivery market.

Based on statistics showing dramatically increasing market share, at the end of 2020, Amazon

already controlled more than 60% of the e-commerce delivery market, an already staggeringly high percentage for a single company, and easily substantial enough for a determination that Amazon has market power in the relevant market. Moreover, the continued explosive growth of e-commerce and e-commerce deliveries as the economy entered its second year of the Covid pandemic indicate this percentage is likely now 5-10 points higher.

193. Amazon has a specific intent to monopolize the e-commerce delivery market, as can be easily inferred from the anti-competitive conduct Amazon has displayed in its dealings with GateGuard, third-party access device providers and property owner, and its specific comments to GateGuard. Proof of anticompetitive or exclusionary conduct may be used to infer specific intent to monopolize. *Volvo N. Am. Corp. v. Men's Int'l Pro. Tennis Council*, 857 F.2d 55, 74 (2d Cir. 1988).

194. The anti-competitive conduct detailed in this Complaint, consistent with the business practices identified by the House Antitrust Report and independent news agencies such as Reuters and the Wall Street Journal, combined with Amazon's unquestionable market power, give Amazon a dangerous probability of succeeding in monopolizing the e-commerce delivery market.

195. GateGuard and the other members of the proposed class are competitors of Amazon in the e-commerce delivery market and have suffered anti-trust injury for which Clayton Act treble damages and attorneys' fees are available.

190. Every property owner or property package management service has a legal and economic interest in controlling access to its buildings. Access to its buildings for package delivery services is, for Amazon, a billion dollar plus business that provides enormous cost savings and a tremendous competitive advantage. Amazon, however, does not own access control rights: these are owned by the individual buildings to which access is sought or to other entities, such as

73

GateGuard, with which the property has contracted for package delivery management services. In a competitive market functioning without lies and subterfuge, **if it wanted preferential access to residential buildings, Amazon** would be required to purchase access to buildings from those with the legal and economic rights control access. The price charged for such access would be set as a function of the value of the access to Amazon. By illegally and through subterfuge bypassing the landlords, property managers and package management services, there is an enormous wealth transfer to Amazon that is unearned by any innovation but is rather made possible by the pattern of installing the Amazon Key without authorization from those parties with true legal rights to control and charge for access to the buildings to which Amazon surreptitiously gains access.

191. Amazon thus robs those with the legal right to charge for access to **property** of a clear economic expectancy, as it is evident that access rights have a definite value that the owner can expect to bargain for.

192. Defendants intentionally and wrongfully interfered with future economic advantage to charge Amazon for building access the price that would be set for such access in a competitive market operating without lies and subterfuge **and have damaged the property of landlords and third parties.**

193. Plaintiffs have lost a clear and concrete revenue stream by Amazon's diversion to itself of the economic value of building access and its capturing of the value of such access without the legal owners' or right holders' consents.

194. There are hundreds if not thousands of property owners, property managers and other access control rights holders who have been harmed by Amazon's surreptitious capturing of the economic value of building access and **damage to their property** to the detriment of such

74

owners, managers and other rights holders.

196.195.          As a result of Defendants' tortious interference with their prospective economic

advantage, trespass and conversionAs a result of the foregoing, GateGuard and the other

members of the class are entitled to treble damages in an amount to be determined at trial but no

less than ONE BILLION DOLLARS ($1,000,000,000), together with attorneys' fees and costs.

**Formatted:** Left

**Formatted:** Font: Bold, Complex Script Font: Bold

### CLASS REPRESENTATION ALLEGATIONS

197.196._____The Class Members are so numerous that their individual joinder herein is

impracticable. On information and belief, the Class Members number in the thousands. Members

of the class include property owners, property managers and package delivery and management

services not only rival package delivery management service providers whowho have suffered

similar injury to GateGuard's, but also other package delivery services, fulfillment centers, e-

commerce retailers, and property ownersGateGuard. The precise number of Class Members and

their identities are unknown at this time but may be determined through discovery. Class

Members may be notified of the pendency of this action by mail and/or publication through the

records of Defendants.

198.197._____Common questions of law and fact exist as to all Class Members and predominate

over questions affecting only individual Class members. Common legal and factual questions

include, but are not limited to, the extent to which Amazon and its representatives obtained

access to buildings without the authorization of the true owners of access rights, whether by

outright fraud, connivance or gross recklessness. of Amazon's market power in the relevant

market, whether Amazon Key for Business was installed at multi-family residential buildings

without consent, whether Amazon lied to building representatives about its authorization to

install its access "Key," whether Amazon tampered with intercom or other access devices,

whether Amazon sought to turn rivals into unwilling customers, whether Amazon has a specific

intent to monopolize the e-commerce delivery market and whether Amazon has a dangerous

probability of succeeding in monopolizing the market.

199.——The claims of GateGuard are typical of the claims of the Class Members in that GateGuard

**Formatted:** Left

had contracted with property managers for the right to control, monitor and regulate building access for the benefit of the property managers, and was bypassed by Amazon's system of deceit and subterfuge that enable the installation the Amazon Key and the resulting control of building access without GateGuard's control, in the same that property managers and property owners are deprived of their right to control, monitor, regulate and profits from third-party access to their buildings. allAll class members must prove Amazon's ~~market power in the relevant market, anti-competitive conduct on the part of Amazon, such as the~~ pattern of deceit ~~and/or~~ illegally accessing ~~and tampering with devices of which~~properties without the consent of the access control rights holder such as GateGuard. ~~GateGuard was a victim, all class members must prove~~

~~Amazon's specific intent to monopolize as directly expressed to GateGuard by an Amazon representative and all Class Members must establish that Amazon has a dangerous probability success.~~

~~200.~~198.        GateGuard is an adequate representative of the Class because its interests do not conflict with the interests of the Class Members it seeks to represent, it has retained competent counsel experienced in prosecuting class actions, and it intends to prosecute this action vigorously.

> **Formatted:** Left

~~201.~~199.        The interests of Class Members will be fairly and adequately protected by Plaintiff and its counsel.

~~202.~~200.        The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability, particularly against an entity such as Amazon that has a virtually unlimited budget for its legal defense. ~~-~~ Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

**JURY DEMAND**

> **Formatted:** Left

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial

by jury.

79

**WHEREFORE**, Plaintiff demands judgment:

(1)     Under Count I, for damages resulting from Defendants' violation of the Computer Fraud and Abuse Act in an amount to be determined at trial, but no less than FORTY MILLION DOLLARS ($40,000,000), together with attorneys' fees and costs.

(2)     Under Count II, for damages resulting from Defendants' tortious interference with contract in an amount to be determined at trial, but no less than TWENTY-SEVEN MILLION DOLLARS ($27,000,000), together with attorneys' fees and costs.

(3)     Under Count III, for damages resulting from Defendants' tortious interference with prospective economic advantage in an amount to be determined at trial, but no less than FORTY MILLION DOLLARS ($40,000,000), together with attorneys' fees and costs.

(4)     Under Count IV, for damages resulting from Defendants' trespass to chattels in an amount to be determined at trial, but no less than TEN MILLION DOLLARS ($10,000,000).

(5)     Under Count V, for damages resulting from Defendants' conversion of Plaintiff's property in an amount to be determined at trial, but no less than TEN MILLION DOLLARS ($10,000,000), together with attorneys' fees and costs.

(6)     Under Count VI, for damages resulting from Defendants' wrongful misappropriation of Plaintiff's trade secrets in an amount to be determined at trial, but no less than ONE HUNDRED MILLION DOLLARS ($100,000,000).

(7)     Under Count VII, for damages, including double damages for Amazon's willful and malicious conduct, for violation of the Defend Trade Secrets Act in an amount to be determined at trial, but no less than TWO HUNDRED MILLION DOLLARS ($200,000,000), together with attorneys' fees and costs.

**Formatted:** Indent: First line: 0.5"

(8) Under Count VIII, for damages, including treble damages, resulting from Amazon's tarnishment of the GateGuard brand under Section 360 of the General Business Law of New York, in an amount to be determined at trial, but no less than ONE HUNDRED AND TWENTY MILLION DOLLARS ($120,000,000), together with attorneys' fees and costs.

(9) Under Count IX, for treble damages and disgorgement of profits under the Lanham Act, 15 U.S.C. § 1125, in an amount to be determined at trial, but no less than ONE HUNDERED AND TWENTY MILLION DOLLARS ($120,000,000).

(10) Under Count X, for damages resulting from Defendants' unjust enrichment in an amount to be determined at trial, but no less than ONE HUNDRED MILLION DOLLARS ($100,000,000).

(11)(8) Certifying Count XI VIII as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure Rule and appointing GateGuard as class representative.

(12) Under Count XI, for an award of treble damages under § 4 of the Clayton Act in an amount to be determined at trial, but no less than ONE BILLION DOLLARS ($1,000,000,000), together with attorneys' fees and costs.

(13)(9) Awarding GateGuard a reasonable fee as class representative.

(14)(10) Issuing an injunction permanently enjoining Defendants from accessing Plaintiff's intercom devices without authorization, and modifying, altering or tampering with such devices in any manner without Plaintiff's express authorization, and accessing any properties without the consent of the property owner, manager or other authorized rights holder.

(15)(11) Such other relief as this Court deems just and proper.

Dated: New York, New York
January 31 24, 2024 22

81

Case 1:21-cv-09321-JGK-VF   Document 14   Filed 01/24/22   Page 82 of 86

**QUAINTON LAW, PLLC**
2 Park Ave., 2nd Floor
New York, New York 10016
(212) 419-0575
*Attorneys for Plaintiff*
*GateGuard, Inc.*

By: */s/ Eden P. Quainton*
          EDEN P.
QUAINTON

Formatted: Left, Indent: Before: 2.64", First line: 0.5"

Formatted: Left, Indent: Before: 3", First line: 0.5"

82

**Page 37: [1] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

List Paragraph, Justified, Indent: First line: 0.5", After: 0.57", Line spacing: Double, Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 32 + Alignment: Left + Aligned at: -0.36" + Indent at: 0.14", Tab stops: 1.14", Left

**Page 37: [2] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [3] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [4] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [5] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [6] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [7] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [8] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [9] Formatted    Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [10] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [11] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [12] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [13] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [14] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [15] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [16] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [17] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [18] Formatted  Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [19] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [20] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [21] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [22] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [23] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [24] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [25] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [26] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [27] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [28] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [29] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [30] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [31] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [32] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [33] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [34] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [35] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [36] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [37] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [38] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [39] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [40] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [41] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [42] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [43] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: 12 pt, Not Expanded by / Condensed by

**Page 37: [44] Formatted   Eden Quainton   1/31/2024 2:59:00 PM**

Font: (Default) Times New Roman, 12 pt, Complex Script Font: Times New Roman, 11 pt