**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
gibsondunn.com

David P. Salant
Direct: +1 212.351.2486
Fax: +1 212.817.9586
DSalant@gibsondunn.com

February 27, 2024

VIA ECF

The Honorable Valerie Figueredo, U.S.M.J.
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 1660
New York, NY 10007

Re:   *GateGuard, Inc. v. Amazon.com, Inc.*, No. 21 Civ. 9321 (JGK) (VF)

Dear Judge Figueredo:

Amazon respectfully submits this letter in opposition to Plaintiff GateGuard, Inc.'s pre-motion letter seeking Rule 37(b) discovery sanctions for "spoliation" and imposition of an undefined "adverse inference." ECF 123 at 3. Amazon did not spoliate anything, and GateGuard is not entitled to any discovery sanctions, let alone an "adverse inference." GateGuard's letter is just another attempt to focus this litigation on discovery and avoid the merits, because GateGuard has no evidence to support its claims, including its alleged trade secrets claim. Without that evidence, Plaintiff has concocted a fanciful story that Amazon stole GateGuard's trade secrets based on the inspection of one of its devices and then destroyed the device. But not only is the device in question irrelevant to GateGuard's surviving "piggybacking" trade secrets claim, there is no evidence to support GateGuard's made-for litigation story. In fact, there is not a single email, document, note, message or any other piece of evidence that Amazon has any interest whatsoever in learning about the "trade secrets" of the GateGuard device. GateGuard should not be permitted to substitute innuendo and "adverse inferences" for facts. Its motion should be denied.

Leaving aside that GateGuard has failed to establish that it has any trade secrets, the undisputed evidence shows that an Amazon consultant received, and then discarded, a GateGuard device *without ever having examined it.* Beginning in 2018, Amazon engaged Paul Donovan, an electrical engineer with his own consultancy business, to help design Key for Business ("KfB"). Because of his work designing KfB and ensuring its compatibility with building access systems, Mr. Donovan is knowledgeable about the compatibility of KfB with such systems. In October 2020, GateGuard contacted Amazon, alleging that KfB installations were causing "malfunctions and failures" in "numerous" GateGuard devices. Ex. A at 1. Though GateGuard's complaints continued to escalate, GateGuard did not provide sufficient information for Amazon evaluate them, so Amazon asked third-party ClearHome, one of its principal installers, to procure two GateGuard devices for Amazon so that Amazon could "test [their] compatibility with [the] KfB device." Ex. B at -962. Contrary to GateGuard's contentions, there was nothing unusual or covert about this. Amazon's KfB group often acquired devices for compatibility testing, and did so through approved vendors like ClearHome. *See* Ex. C ¶16; Ex. D at 61:16–62:2; 348:3–17; 351:10–352:5. In April 2021, ClearHome sent one GateGuard device to Amazon; Mr. Donovan retrieved it from Amazon's office and took it to his consultancy workspace in July 2021. *See* Ex. E at 118:7–121:8, 140:15–24; Ex. C ¶11. Mr. Donovan took a photograph of the device on his

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · Riyadh · San Francisco · Singapore · Washington, D.C.

GIBSON DUNN

Hon. Valerie Figueredo, U.S.M.J.
February 27, 2024
Page 2

personal cell phone, but never unwrapped or examined it because he had more urgent tasks for Amazon, and no one from Amazon followed up with him. *See* Ex. E at 118:7–14.[1] In or around August 2023, Mr. Donovan lost the lease on his office space, and without informing Amazon, discarded the device along with many other items acquired in the course of his business when he cleaned out his office. *See* Ex. E at 121:18–25. Amazon produced sworn declaration testimony confirming these facts. *See* Ex. C ¶¶2–3, 10–14, 16. ClearHome never obtained or sent a second GateGuard device to Amazon. Ex. D at 364:20–365:8; Ex. K at 50:23–51:23; Ex. L at 133:6–20.

### A.   The Discarded Device Is Not Relevant to GateGuard's Surviving Claims.

GateGuard's surviving trade secrets claim is limited to the interaction between KfB and GateGuard devices at *installed* locations. *See* ECF 30 at 5 ("GateGuard alleges that . . . Amazon 'tampers with already installed devices' to connect the Key, thereby 'enabling Amazon to "piggy back" on the authorized access granted' to GateGuard"). The discarded device, which was never installed or connected to KfB, is irrelevant to this piggy-backing theory, and GateGuard's "copying" claim was dismissed by Judge Koeltl as insufficiently plead. *See* ECF 30 at 42–43. Moreover, while Amazon has sought a GateGuard device for its expert witness to assess GateGuard's claim that the device contains protectible trade secrets, the discarded GateGuard device is no more relevant to that request than any other unused GateGuard device in its inventory (and in fact Amazon would prefer its expert receive a device directly from GateGuard to avoid any claim of tampering by GateGuard). *See R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 25 (S.D.N.Y. 2010), ("Where the discovery violation involves spoliation[,] . . . the absence of prejudice can be shown by demonstrating . . . that the other parties were able to obtain the same evidence from another source . . ."), *opinion adopted*, 271 F.R.D. 55 (S.D.N.Y. 2010). Moreover, GateGuard has known about this device since at least as early as September 2023, ECF 62 at 2, yet did not seek the device in discovery until *after* it accused Amazon of spoliation *during* the December 2023 deposition of Mr. Donovan and after counsel for Amazon pointed out that GateGuard had never even sought the device. *See R.F.M.A.S.*, 271 F.R.D. at 25 (no prejudice when "during discovery the[] [party seeking sanctions] never asked for the evidence later shown to have been spoliated"); Ex. F at 3. In any event, GateGuard has refused to provide a device. Ex. G at 3.

### B.   GateGuard Is Not Prejudiced By The Discarded Device.

GateGuard also cannot show that it was prejudiced by the loss of the device. *Europe v. Equinox Holdings, Inc.*, 592 F. Supp. 3d 167, 178 (S.D.N.Y. March 21, 2022). To show prejudice, GateGuard must show that the discarded device "would have been favorable" to its claims, *Orbit One Comms., Inc. v. Numerex Corp.*, 271 F.R.D. 429, 438–9 (S.D.N.Y. 2010), which requires

---

[1] Again, contrary to GateGuard's contentions, the testimony of Amazon's witnesses on these points is consistent; all testified that once they had acquired the device and Mr. Donovan had retrieved it, they did not have further communications with Mr. Donovan about it. Ex. D at 396:1–397:7; Ex. E at 122:8-10; Ex. K at 81:1–7; Ex. M at 152:9–13.

**GIBSON DUNN**

Hon. Valerie Figueredo, U.S.M.J.
February 27, 2024
Page 3

"extrinsic evidence," *Singh v. Penske Truck Leasing Co., L.P.*, No. 13 Civ. 1860 (VSB) (GWG), 2015 WL 802994, at *7 (S.D.N.Y. Feb. 26, 2015). The direct evidence shows no prejudice at all, revealing only that Mr. Donovan discarded the device having never examined it. Ex. E at 120:3–121:25. There is no extrinsic evidence either: despite months of document discovery and nine depositions, GateGuard cannot point to any evidence that Amazon recorded or communicated about any of GateGuard's purported trade secrets. "[I]nferences need to be made from the documentation that exists," *Equinox Holdings*, 592 F. Supp. 3d at 178, and if Mr. Donovan had examined the device and informed Amazon or its installers about its "physical layout," "system of casing and hinging," and "amperage," ECF 123 at 3, there would be emails, documents, notes, or chats reflecting that, but none exist. GateGuard contends that its piggybacking theory "depends on Amazon's physical access to the interior of the GateGuard intercom," ECF 123 at 3, but the discarded device has no relevance to how KfB was *actually* installed in or alongside GateGuard devices in the field, and specifically, at the few dozen locations that GateGuard has put at issue in this case. Ex. H. The absence of evidence from which a trier of fact could infer that the discarded device would support GateGuard's claims confirms nothing was spoliated. *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 711 (S.D.N.Y. 2017), *aff'd sub nom. Tchatat v. City of New York*, 795 F. App'x 34 (2d Cir. 2019).

      C.      **GateGuard Cannot Establish Bad Faith**.

In order to obtain sanctions for spoliation, GateGuard must "show by clear and convincing evidence that the alleged spoliator acted with the intent to deprive the movant of the information *for use in the litigation*." *Equinox Holdings*, 592 F. Supp. 3d at 175 (emphasis added). Here, there is no evidence of bad faith. At the time he discarded the GateGuard device, Mr. Donovan was unaware of this litigation, only learning about it in November 2023. Ex. C ¶13. There is thus no evidence Mr. Donovan discarded the device in an attempt to deprive GateGuard of evidence— rather, the device was discarded along with many other items during an office move, which is, at worst, ordinary negligence. *Khatabi v. Bonura*, No. 10 Civ. 1168 (ER), 2017 WL 10621191 at *7 (S.D.N.Y. April 21, 2017) (failure to preserve evidence "was 'at worst negligent' because it was inadvertently lost during a renovation of the police station and not due to any deliberate actions"). Moreover, Amazon took reasonable steps to issue timely litigation holds and identify relevant custodians. *See Mastr Adjustable Rate Mortgages Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.*, 295 F.R.D. 77, 85 (S.D.N.Y. 2013), *aff'd*, No. 12 Civ. 7322 (HB), 2013 WL 6840282 (S.D.N.Y. Dec. 27, 2013) (litigation hold "was reasonable" and "positive evidence of good faith"). At the outset of discovery, the parties exchanged and agreed upon lists of custodians, and Mr. Donovan was not one of the agreed upon custodians (nor did GateGuard request that he be added). Amazon voluntarily added him as a custodian after GateGuard noticed his deposition in his personal capacity and designated him as its Rule 30(b)(6) witness as to the topic of "general functioning, design, and configuration" of KfB, a topic on which he was well-qualified to provide testimony. Ex. I at 1; Ex. J. To the best of Amazon's knowledge, no one at Amazon was aware that Mr. Donovan had taken the GateGuard device to his personal workspace, and Amazon had no reason to believe that GateGuard would later contend that this device was pertinent to this litigation. There is thus no evidence that Amazon acted in anything but good faith.

**GIBSON DUNN**

Hon. Valerie Figueredo, U.S.M.J.
February 27, 2024
Page 4

Respectfully submitted,

*/s/ David Salant*
David Salant


CC: All counsel of record (via ECF)