UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.

    *Plaintiff*,

v.                                                    Civil Action No. 21-cv-9321 (JGK) (VF)

AMAZON.COM, INC.,
AMAZON.COM SERVICES, INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC.

    *Defendants*.

I, Ari Teman, swear under penalty of perjury that the following is true and correct:

1. I am the former Chief Executive Officer for Plaintiff GateGuard, Inc. (the "Company" or "GateGuard").

2. I have personal knowledge of the manner in which GateGuard devices are packaged and shipped.

3. Prior to shipping, the screen of a GateGuard device is covered in a thin adhesive plastic sheet; an additional firm sheet is wrapped around the device, which is then enveloped with a plastic "bubble wrap" cushioning before being placed inside a brown cardboard box for shipping.

4. Once the device is taken out of the brown cardboard box and the bubble wrap and firm outer plastic sheet are removed, leaving only the thin cling-film protective sheet on the screen of the device, the intercom can be plugged in and operated as described in the manual that accompanies the device.

5. I have examined the photograph that was provided by Mr. Donovan of the GateGuard device he admits to having "thrown away" during the course of discovery in this matter and I have the following additional observations:

   a. The instruction manual provides a detailed explanation for the means to access GateGuard's software and proprietary back-end system. Once the device is taken out of its packaging by an authorized user (*i.e.*, one who has confirmed his or her acceptance of the GateGuard Terms and Conditions, including its non-tampering provisions and its prohibition on providing the device to any person other than the subscriber), the user can power the device and access the GateGuard system. If an authorized user (or one who holds himself out as such) provides the device and its instruction manual to an unauthorized user, the unauthorized user can access GateGuard's trade secrets.

   b. GateGuard never authorized Amazon to access the GateGuard intercom at any time, directly or indirectly, expressly or implicitly. GateGuard had no knowledge that Amazon had instructed ClearHome to procure a GateGuard device for Amazon and would never have agreed to provide Amazon with one its devices without strict protection for GateGuard's intellectual property and non-tampering covenants directly from Amazon.

   c. There is no evidence of the device's brown cardboard box, its bubble wrap, or its firm outer plastic sheet, and the protective cling film appears.to have been removed and replaced, causing air bubbles to form. Unlike the bubble wrap and the thick protective sheet, the thin screen protector shown in the

photograph can easily be taken off and put back on the device. In addition, when the devices are packaged, the thin plastic sheet lies flush against the screen without any "air pockets" of the type that are visible in the Donovan photograph. These "air pockets" would appear if the thin protective sheet is taken off the screen and then reapplied.

d. Overall, the device appears to have been taken out for use and then photographed to suggest it was in "ship-ready" condition, which I can confirm is not the case.

e. Not long before Amazon illegally acquired the GateGuard device, I had offered to enter into a transaction with Amazon for the sale of the Company or a partnership.

f. Rather than negotiating in good faith with GateGuard, Amazon appears to have decided simply to steal GateGuard's technology and then destroy the evidence of its theft.

Dated:  Miami, Fl.
        June 10, 2024

/s/ Ari Teman_____
ARI TEMAN