UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GATEGUARD, INC.,

                               Plaintiff,

                -against-

AMAZON.COM, INC. et al.,

                          Defendants.
---------------------------------------------------------------X

21-CV-9321 (JGK) (VF)

**<u>ORDER</u>**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

       Plaintiff GateGuard, Inc. commenced this action on November 10, 2021, against Amazon.com Inc., Amazon.com Services, Inc., Amazon.com Services, LLC, and Amazon Logistics, Inc. (collectively, "Defendants" or "Amazon"), seeking damages and injunctive relief for various federal and state-law claims. Presently before the Court is GateGuard's motion for leave to file a Second Amended Complaint.[1] See ECF Nos. 108-121.

**<u>BACKGROUND</u>**[2]

A. <u>The Operative Complaint</u>

       GateGuard filed its first amended individual and class-action complaint on January 24, 2022, asserting state-law claims for trespass to chattels, misappropriation of trade secrets, conversion, tarnishment, unjust enrichment, tortious interference with contract, and tortious interference with prospective economic advantage. See ECF No. 14 ("First Am. Compl.") at

---

[1] GateGuard filed its proposed Second Amended Complaint on the docket in four parts. See ECF Nos. 110-1, 111-1, 112-1, 113-1 (hereinafter referred to as "Second Am. Compl.").

[2] The Court presumes the parties' familiarity with the relevant factual background of this case, which is detailed in the February 16, 2023 Memorandum Opinion and Order of the Honorable John G. Koeltl. See ECF No. 30. The limited facts recounted herein are those that are relevant to the instant motion for leave to file a Second Amended Complaint.

¶¶ 147-68, 176-79, 186-90. GateGuard also asserted claims under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., the Lanham Act, 15 U.S.C. § 1125, and the Defend Trade Secrets Act, 18 U.S.C. § 1832 et seq. Id. at ¶¶ 139-46, 169-75, 180-85. Lastly, GateGuard asserted a putative class claim under the Sherman Antitrust Act, 15 U.S.C. § 1 et seq. for attempted monopolization. Id. at ¶¶ 191-202. At bottom, GateGuard's claims in the First Amended Complaint stemmed from allegations that Amazon had engaged in a pattern of tampering with GateGuard's intercom and access-control device installed in multi-family residential buildings in New York and nationwide, while installing its own device (the Key for Business) without consent or after fraudulently obtaining consent from the building. See e.g., id. at ¶¶ 1, 10-11, 42-43, 46, 50, 52, 67, 71, 74-75, 83, 96, 99, 101, 105, 109-110, 128.

Amazon moved to dismiss the First Amended Complaint and the Honorable John G. Koeltl issued an opinion and order on February 16, 2023, granting the motion in part. See ECF No. 30. Judge Koeltl dismissed GateGuard's unfair-competition claim under the Lanham Act, and its state-law claims for unjust enrichment and tarnishment. Id. at 34, 47, 49, 62-63. However, Judge Koeltl denied Amazon's motion to dismiss GateGuard's federal claim under the Computer Fraud and Abuse Act and its misappropriation of trade secrets claim under the Lanham Act, as well as GateGuard's state-law claims for conversion, trespass to chattels, tortious interference with contract, tortious interference with prospective economic relations, and misappropriation of trade secrets. Id. at 62-63. In its First Amended Complaint, GateGuard based its misappropriation of trade secrets claim on two theories, only one of which Judge Koeltl concluded was properly pled. Id. at 35-43. Judge Koeltl concluded that GateGuard had failed to set forth any facts supporting a misappropriation of trade secrets claim based on copying by Amazon of GateGuard's device, because the allegation that Amazon had used "GateGuard's proprietary

technology to develop certain Key functionalities and to develop a smart intercom of its own"
was conclusory and unsupported by factual allegations. Id. at 42 (quoting First Am. Compl. at
¶ 86). However, Judge Koeltl concluded that GateGuard's alternative basis for a claim of
misappropriation of trade secrets, based on a theory that Amazon installed its device to "piggy
back" off of GateGuard's building-access technology, could proceed beyond the pleading stage.
Id. at 42-43.

In the First Amended Complaint, the only putative class claim concerned GateGuard's
claim for attempted monopolization under the Sherman Act. See First Am. Compl. at ¶¶ 191-202.
Judge Koeltl dismissed that claim, concluding that GateGuard had failed to allege a cognizable
relevant market and lacked antitrust standing to bring the claim. See ECF No. 30 at 51-61.

B. The Proposed Second Amended Complaint

In its proposed Second Amended Complaint, GateGuard bolstered allegations previously
made in the operative complaint, concerning Amazon's purportedly fraudulent tactics in
obtaining consent to install its Key for Business in buildings. Compare First Am. Compl. at ¶¶
66-67, 70-72, 75, 83-84, 96, 99-101, 103-104 with Second Am. Compl. at ¶¶ 1, 60, 76-77. These
allegations are pertinent to new putative class claims for trespass, conversion, and tortious
interference with prospective economic advantage that GateGuard seeks to add.[3] See Second
Am. Compl. at ¶¶ 189-95. GateGuard's theory is that Amazon installed its Key for Business in
residential buildings without proper authorization from the "true owners of access rights" and
thus obtained "preferential access to residential buildings." See Second Am. Compl. at ¶¶ 190-

---

[3] Although the proposed Second Amended Complaint appears to indicate that these three
claims are one, GateGuard in its reply brief clarifies that this was a typographical error. See ECF
No. 157 at 11.

94, 197. GateGuard asserts this claim on behalf of "thousands" of "property owners, property managers and package delivery and management services." Id. at ¶ 196; see also id. at ¶ 194.

GateGuard also added allegations in its proposed Second Amended Complaint concerning conduct by Amazon that it learned through discovery in this matter. Specifically, GateGuard now alleges that Amazon obtained a GateGuard device through one of its "channel partners" that it sent to a secret research lab where Amazon examined, analyzed, and copied the device in order to improve and refine Amazon's competing intercom system, the Ring Intercom. See Second Am. Compl. at ¶¶ 8-12, 15-17, 25, 135-46. GateGuard uses these allegations to support its claim of misappropriation of trade secrets grounded in a copying theory. See, e.g., id. at ¶¶ 16, 25.

## LEGAL STANDARDS

Federal Rule of Civil Procedure Rule 15 provides that leave to amend before trial should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "It is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994). This standard, although liberal, allows motions for leave to amend to be denied where the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." See Foman v. Davis, 371 U.S. 178, 182 (1962); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (stating that "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). "Mere delay," without a showing of bad faith or prejudice, is not itself sufficient to justify denial of a motion under Rule 15(a). Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000)

(Sotomayor, J.); Primetime 24 Joint Venture v. DirecTV, Inc., No. 99-CV-3307 (RMB) (MHD), 2000 WL 426396, at *5 (S.D.N.Y. Apr. 20, 2000).

"It is well established that '[l]eave to amend need not be granted . . . where the proposed amendment would be futil[e].'" Williams v. Citigroup Inc., 659 F.3d 208, 214 (2d Cir. 2011) (quoting Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 18 (2d Cir. 1997)) (alterations in original). Proposed amendments are futile if they would fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015). "Accordingly, the proposed amendment must be viewed in the light most favorable to the party moving to amend . . . and leave to amend should only be denied if the moving party can prove no set of facts which would entitle [it] to relief." Presser v. Key Food Stores Coop, Inc., 218 F.R.D. 53, 56 (E.D.N.Y. 2003); see also Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91-92 (2d Cir. 2002) (reversing district court's denial of amendment as futile because, although defendants "vigorously dispute[d]" plaintiff's version of events, "proposed amended complaint adequately set[ ] forth specific facts, which if proven, c[ould] support a finding of [defendant's liability]"). Where a proposed amendment seeks to add class claims, "it is necessary to evaluate the likelihood that [the] proposed class be certified pursuant to [Rule 23(c)]" to determine whether the proposed amendment would be futile. Presser, 218 F.R.D. at 56.

Under the scheduling order, GateGuard's deadline to file a Second Amended Complaint was January 31, 2024. See ECF No. 88. Plaintiff subsequently sought an extension of that deadline to February 9, 2024, see ECF No. 103, which the Court granted, see ECF No. 105. Plaintiff filed the instant motion for leave to amend the complaint on February 9, 2024. See ECF Nos. 107-08. Because Plaintiff's timely filed their motion for leave to amend, the motion does

not implicate the good-cause standard in Rule 16 and is analyzed solely under Rule 15. <u>See</u> Fed.

R. Civ. P. 16(b)(4); <u>Presbyterian Church of Sudan v. Talisman Energy. Inc.</u>, 582 F.3d 244, 267

(2d Cir. 2009) ("Once the deadline for amendment in a scheduling order has passed, leave to

amend may be denied 'where the moving party failed to establish good cause.'") (quoting <u>Parker</u>,

204 F.3d at 340).

## **DISCUSSION**

Under Rule 15(a)'s liberal standard for granting leave to amend, "a motion to amend

should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing

party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile."[4]

<u>Agerbrink v. Model Serv. LLC</u>, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).

A.   <u>Undue Prejudice</u>

Amazon briefly argues that it would be unfairly prejudiced by the proposed amendments,

made virtually at the close of fact discovery and which seek to add class claims despite no class

discovery having been taken thus far in this case. <u>See</u> ECF No. 129 at 12-13. As explained,

Amazon has not met its burden of establishing undue prejudice from GateGuard's proposed

amendments.

Prejudice to the opposing party has been described as the "most important reason for

denying a motion to amend." <u>Frenkel v. N.Y.C. Off-Track Betting Corp.</u>, 611 F. Supp. 2d 391,

394 (S.D.N.Y. 2009). However, "prejudice alone is insufficient to justify a denial of leave to

amend; rather, the necessary showing is *undue* prejudice to the opposing party." <u>A.V. by Versace,</u>

<u>Inc. v. Gianni Versace S.p.A.</u>, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (citations omitted,

emphasis in original). To determine whether the proposed amendment will cause undue

---

[4] Amazon makes no argument that GateGuard's motion to amend was made in bad faith.

prejudice, courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993)). Central to this determination is whether the new claims arise from the existing ones and whether a party had prior notice of a new claim. See Blagman v. Apple, Inc., No. 12-CV-5453 (ALC) (JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014). As the Second Circuit has explained, a court "will be most hesitant to allow amendment where doing so unfairly surprises the non-movant and impedes the fair prosecution of the claim." Monahan, 214 F.3d at 284. "The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" Agerbrink, 155 F. Supp. 3d at 454 (internal citations omitted); see also Oneida Indian Nation of N.Y. v. Cty. of Oneida, 199 F.R.D. 61, 77 (N.D.N.Y. 2000) (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice).

Even if the addition of GateGuard's claims would require the reopening of discovery, Amazon's "burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." A.V. by Versace, Inc., 87 F. Supp. 2d at 299 (quoting United States v. Cont'l Ill. Nat'l Bank & Tr. Co., 889 F.2d 1248, 1255 (2d Cir. 1989)); see also Konig v. TransUnion, LLC, No. 18-CV-7299 (JCM), 2020 WL 550285, at *4 (S.D.N.Y. Feb. 4, 2020) (explaining that a need for new discovery does not constitute undue prejudice on its own). Although Amazon generally contends that allowing the proposed amendments will cause prejudice and delay, Amazon does not articulate any specific prejudice other than the need to

conduct additional discovery and does not make more than a cursory argument about the potential delay. See Primetime 24 Joint Venture, 2000 WL 426396, at *5 ("The case law indicates that the additional expenditure of time or resources or the delay produced must indeed be significant to justify denying a party's request to amend its pleadings.").

Moreover, allowing the proposed amendments will not "unfairly surprise[ ]" Amazon or "impede[ ] the fair prosecution of the claim." Monahan, 214 F.3d at 284. The proposed new class claims all arise from the same factual nexus raised in the First Amended Complaint. Amazon has thus been on notice of the facts underlying the new class claims since at least the filing of the First Amended Complaint in January 2022. And, Amazon's argument in its brief only reinforces this point. Amazon contends that GateGuard has reintroduced "substantially the same claim" with factual allegations in the proposed Second Amended Complaint that are "substantially the same" as those in the operative complaint. See ECF No. 129 at 12. Under Amazon's telling, GateGuard is again alleging a scheme by Amazon to install its Key for Business device in buildings without proper authorization—an allegation that GateGuard previously claimed raised an antitrust violation and now contends supports its state-law claims. Id. The fact that Amazon itself characterizes the factual allegations as being the same or similar to those previously raised in the First Amended Complaint supports a finding that allowing GateGuard's amendment to raise these allegations will result in no surprise or unfairness to Amazon.[5]

Nor is there any merit to Amazon's contention that GateGuard has used the same factual allegations to "reintroduce substantially the same claim" that the Court previously dismissed. See

---

[5] As to the proposed amendments pertaining to the allegations surrounding GateGuard's new copying theory, Amazon appears to raise no argument concerning undue burden beyond the fact that discovery would be reopened. Amazon does not argue that it has been unfairly surprised by these allegations.

ECF No. 129 at 12. The First Amended Complaint relied on these factual allegations to plead an attempted monopolization claim under the Sherman Act. That antitrust claim is wildly different from the state-law claims for conversion, trespass, and tortious interference with prospective economic advantage that GateGuard now seeks to assert against Amazon. At a minimum, these state-law claims, each of which has different elements than the federal antitrust claim, will require no showing of antitrust injury (and thus, antitrust standing), no allegations concerning market definition, and no showing of monopoly power in the relevant market. See ECF No. 30 at 50-60 (concluding that those elements of GateGuard's antitrust claim had not been adequately pled in the First Amended Complaint).

To be sure, allowing the proposed amendments will require reopening discovery, but the need for new discovery, by itself, is not a sufficient basis to find undue prejudice to Amazon. Moreover, the case is in a posture where reopening discovery is feasible. Expert discovery has not commenced, there is no schedule for briefing any summary judgment motion, and no trial date has been set. Although the proposed amendments would add class claims as well as an additional theory to support the federal and state trade secrets claims, the new claims do not raise factual issues unrelated to the events in the operative complaint. Simply put, these new factual allegations do not come as a surprise to Amazon. In short, Amazon has not met its burden of establishing that permitting GateGuard's proposed amendments would cause it undue prejudice.

B. Undue Delay

As an initial matter, "[d]elay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend." Konig, 2020 WL 550285, at *2 (quoting Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 97 (S.D.N.Y. 2010)). Additionally, "delay is rarely fatal to a Rule 15 motion if it can be explained," and "even vague or 'thin' reasons are

sufficient, in the absence of prejudice or bad faith." Duling, 265 F.R.D. at 97 (quoting Town of

New Windsor v. Tesa Tuck, Inc., 919 F. Supp. 662, 677 (S.D.N.Y. 1996)).

Amazon is not claiming that GateGuard acted in bad faith, and Amazon has not shown

that it will suffer undue prejudice if leave to amend were granted. Further, GateGuard has

provided a sufficient explanation for its delay in seeking to amend the complaint. As GateGuard

explains, the factual information supporting its new proposed class claims and its copying theory

was obtained through discovery, which at the time GateGuard sought leave to file the Second

Amended Complaint was still ongoing. Moreover, the delay here has not been substantial given

the relatively short time period during which the parties conducted discovery. In sum, GateGuard

has offered an adequate explanation for its delay and in the absence of bad faith or undue

prejudice, delay alone is not a basis for denying a Rule 15 motion to amend.

C.  Futility

The crux of Amazon's objection to GateGuard's motion is futility. Amazon argues that

leave to amend to add new class claims should be denied because GateGuard has not plausibly

pled any of the Rule 23 requirements for a class action. See ECF No. 129 at 14-20. As to the new

copying allegations underlying GateGuard's trade secrets claims, Amazon argues that GateGuard

is attempting to reintroduce a theory of misappropriation that Judge Koeltl already dismissed.

See ECF No. 129 at 21. Amazon also argues that the claim of misappropriation of trade secrets

based on a copying theory is legally futile, because GateGuard has not identified a specific trade

secret that Amazon allegedly misappropriated and it has not plausibly alleged that Amazon had

sufficient access to a GateGuard device or that Amazon's and GateGuard's devices are

substantially similar to support an inference of copying. See id. at 21-24. All of Amazon's

arguments fail.

    *1.   GateGuard's class claim*

    To determine whether GateGuard's proposed class claims are futile, the Court must

"evaluate the *likelihood* that [the] proposed class will be certified pursuant to [Rule 23(c)]."

Presser, 218 F.R.D. at 56 (emphasis added); see also Pierre v. JC Penney Co., Inc., No. 03-CV-

4782 (JFB) (VVP), 2006 WL 407553, at *6 (E.D.N.Y. Feb. 21, 2006) (holding that when ruling

on a motion to amend to include class claims, "the court is not deciding whether the instant

action may proceed as a class action since that issue will ultimately be resolved . . . on a motion

for class certification").

    To certify a proposed class action, a party must satisfy the four procedural requirements

of Rule 23(a): (1) the class is so numerous that "joinder of all members is impracticable;" (2)

there are "questions of law or fact common to the class;" (3) the claims or defenses of the

representative party is "typical" of those of the class; and (4) the representative party will "fairly

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Once the prerequisites of

Rule 23(a) have been satisfied, the party must demonstrate that class certification is appropriate

under Rule 23(b) by showing that: (1) common questions of law or fact predominate over

individual issues; and (2) that a class action is "superior to other available methods for their fair

and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3)

    Viewing the proposed Second Amended Complaint in the light most favorable to

GateGuard, it is likely that Plaintiff will be able to satisfy all of the requirements for class

certification under Rule 23. See Presser, 218 F.R.D. at 56 (explaining that the court's role in

deciding a motion to amend is to assess only the "likelihood" that a proposed class will be

certified). As explained more fully below, the theory underlying GateGuard's individual claims is

the same theory underlying its proposed class claim, all of which arise out of the same course of

conduct by Amazon—namely, the use of fraud, trickery, or deceit to gain access to buildings in order to install the Key for Business device. Given the "limited inquiry to be undertaken at this stage, and the possibility that theories of liability may be limited at the certification stage to only those capable of classwide proof," GateGuard has shown a reasonable likelihood of class certification. Blagman, 2014 WL 2106489, *7.

Beginning with numerosity, Amazon contends that GateGuard has made no showing of its proposed class size. See ECF No. 129 at 14-15. The proposed Second Amended Complaint alleges that the "precise number of Class Members and their identities are unknown at this time," but the "Class Members number in the thousands." See Second Am. Compl. at ¶ 196; see also id. at ¶ 194. "[N]umerosity is presumed at a level of 40 members," Consol. Rail Corp. v. Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995), and even to obtain class certification, the exact number and identity of class members is not required. See Robidoux v. Celani, 987 F.3d 931, 935 (2d Cir. 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement.").

The proposed Second Amended Complaint alleges sufficient facts to plausibly support an inference that there are at least 40 class members in GateGuard's proposed class. In that respect, GateGuard alleges the following: Amazon is attempting to control residential building access in order to control the e-commerce delivery market; New York requires all apartment buildings to have an intercom or access control device; and Amazon or its "partners" have engaged in various practices in an attempt to fraudulently obtain authorization to access these buildings. See Second Am. Compl. at ¶¶ 41, 50-51, 60-86, 148. Moreover, during discovery, GateGuard uncovered instances were a property manager was either unaware of a Key for Business installation in the building or where the installation agreement authorizing the installation of Key for Business was

not properly executed, further supporting the allegations in the proposed amended complaint concerning the number of potential class members. See ECF No. 108 at 6-9; ECF No. 109 at ¶¶ 11-19; ECF No. 114 at ¶¶ 11-19.

Turning to commonality and typicality, Amazon argues that GateGuard has not shown common questions of law or fact because whether Amazon obtained access rights to a building to install its Key for Business "will differ building-to-building" and each building will have a different contract requiring a separate analysis. See ECF No. 129 at 15-16. Amazon further argues that the typicality requirement is not satisfied because GateGuard's claim arises out of the particulars of its own service agreement with each building. See id. at 16-17. Rule 23 does not require that all questions of law or fact be common. See Blagman, 2014 WL 2106489, *7 (noting that the commonality standard "does not mandate that the claims of the lead plaintiff be identical to those of all other plaintiffs" but does require "some unifying thread among the members' claims"). And the typicality requirement is "usually met irrespective of minor variations in the fact patterns underlying individual claims," so long as "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux, 987 F.2d at 936-37.

Despite any variance in the terms of the individual agreements with each building, Plaintiff, at bottom, is alleging that Amazon and its partners engaged in a scheme to deceive lower-level building employees into believing that the Key for Business was merely an "update" or "upgrade" to Amazon's delivery system, for which no separate authorization was required from building management. See, e.g., Second Am. Compl. at ¶¶ 59-60, 67-77. GateGuard's theory is that Amazon has obtained unauthorized access to these buildings, interfering with the economic interest of the property owner. There will thus be several common questions of law

13

and fact likely to arise concerning whether Amazon obtained building access to install its Key for Business through fraudulent or deceptive means. Evidence indicating that Amazon obtained access to install its device through similar deceptive means suffices to satisfy the typicality requirement. See Robidoux, 987 F.2d at 937.

In addition, Plaintiff must show both that its interests are not "antagonistic to the interest of other members of the class" and that class counsel is "qualified, experienced and able to conduct the litigation." In re Flag Telecom Holdings, Ltd. Secs. Litig., 574 F.3d 29, 35 (2d Cir. 2009). Amazon challenges the adequacy of class counsel, arguing that he has no experience litigating class actions, and Amazon also contends that GateGuard is an inadequate lead plaintiff because of its founder's criminal activity. See ECF No. 129 at 18-19. Beginning with the adequacy of class counsel, GateGuard's attorney has served as class counsel in various class actions in New York and New Jersey, and is also a former partner with Skadden, Arps, Slate, Meagher & Flom, a large New York City law firm. See ECF No. 158 at ¶¶ 9-10. Counsel has both litigation experience and specific experience with class-action lawsuits. There thus is no reason to conclude that GateGuard's counsel could not adequately serve as class counsel.

Amazon also challenges the adequacy of GateGuard to serve as the class representative, because its founder and former CEO, Ari Teman, was convicted of wire and bank fraud. ECF No. 129 at 18. The inquiry into the honesty and trustworthiness of the named plaintiff focuses, however, on whether the plaintiff has engaged in "improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit." Garcia De Leon v. N.Y. Univ., No. 21-CV-05005 (CM), 2022 WL 2237452, at *14 (S.D.N.Y. June 22, 2022) (quoting Friedman-Katz v. Lindt & Sprungli (USA) Inc., 270 F.R.D. 150, 160 (S.D.N.Y. 2010)). In Garcia, for instance, the court examined the fact that the named plaintiff had "offered multiple different versions" of

certain facts in the case, had refused to provide the court with information the court had ordered produced, and did not have "a firm grasp on her own case." 2022 WL 2237452, at *14-15; see also Savino v. Comput. Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (affirming decision to deny class certification where plaintiff had offered inconsistent testimony about "letters that form the very basis for his lawsuit" and thus raised concerns about his credibility at trial). Here, even putting aside that Teman is no longer the CEO of GateGuard, Amazon has not pointed to any improper or questionable conduct by Teman or GateGuard during the prosecution of this case. Nor has Amazon argued that GateGuard has interests that are antagonistic to the interests of other class members or which might interfere with its pursuit of this class-action lawsuit. In short, GateGuard's counsel is qualified to serve as class counsel and GateGuard is an adequate class representative.

Lastly, Amazon challenges the ascertainability of the proposed class, arguing that the proposed class definition includes no geographic or temporal limitation. See ECF No. 129 at 19. GateGuard counters that it will flesh out an end date for the proposed class through discovery and when it seeks class certification. See ECF No. 157 at 11. The ascertainability requirement "asks district courts to consider whether a proposed class is defined using objective criteria that establish a membership with definite boundaries." In re Petrobras Securities, 862 F.3d 250, 269 (2d Cir. 2017). It is a "modest threshold requirement," id., that "is designed only to prevent the certification of a class whose membership is truly indeterminable," Gortat v. Capala Brothers, Inc., No. 07-CV-3629 (ILG), 2010 WL 1423018, at *2 (E.D.N.Y. Apr. 9, 2010). Further, class members "need not be ascertained prior to certification, but must be ascertainable at some point in the case." Noble v. 93 Univ. Place Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004). Ultimately, whether class members may be ascertained is a determination "best suited for a

motion for class certification," <u>Blagman</u>, 2014 WL 2106489, *9, and given that the class definition may be amended, this requirement, by itself, should not prevent GateGuard from obtaining leave to amend its complaint.

Having shown a likelihood of satisfying the criteria of Rule 23(a), the next question is whether GateGuard has shown a likelihood of satisfying at least one of the categories of Rule 23(b). <u>See</u> <u>Pino v. Harris Water Main & Sewer Contrs. Inc.</u>, No. 17-CV-5910 (KAM) (RER), 2021 WL 3675148, at *4 (E.D.N.Y. Aug. 19, 2021). The parties agree that the requirements of Rule 23(b)(1) and (2) do not apply here. Rule 23(b)(3) permits class certification if common questions "predominate over any questions affecting only individual members" and if class resolution is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23(b)(3)'s predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" <u>In re Am. Int'l Grp., Inc. v. Sec. Litig.</u>, 689 F.3d 229, 240 (2d Cir. 2012). In addressing the superiority requirement, courts consider the following four nonexclusive factors: "(1) class members' interest in maintaining individual actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." <u>In re Nassau Cnty. Strip Search Cases</u>, 461 F.3d 219, 230 (2d Cir. 2006) (quoting Fed. R. Civ. P. 23(b)(3)) (internal quotation marks omitted).

Amazon contends that GateGuard does not satisfy the predominance requirement because even assuming liability, the question of damages would require individualized investigation into the nature and extent of the unauthorized access and the quantum of injury caused by such access. See ECF No. 129 at 20. At this stage, viewing the allegations in the light most favorable to GateGuard, it appears reasonably likely that common questions concerning how Amazon gained access to buildings in order to install its Key for Business device will predominate. Further, because it does not appear, at this stage, that individualized inquiries would make managing the class action unwieldy, the superiority requirement also appears reasonably likely to be satisfied.

   *2.   Trade secrets claim*

As it concerns GateGuard's trade secrets claim, Amazon argues that permitting GateGuard leave to amend the claim would be futile because GateGuard seeks to reintroduce the same copying claim that Judge Koeltl already dismissed. See ECF No. 129 at 21. But contrary to Amazon's argument, GateGuard has supplemented its allegations to plausibly allege a trade secrets claim under federal and New York law.[6]

GateGuard alleges that it is the combination of features and how those features function together in its "AI Doorman" intercom device—the intercom, mobile app, web-based online platforms, servers, communications devices, and operational data—that is the protected trade secrets. See Second Am. Compl. at ¶¶ 5, 9-11, 88, 178-79, 184. The alleged trade secret in the Second Amended Complaint is the same alleged trade secret that sufficed to survive Amazon's previous motion to dismiss. Compare Second Am. Compl. at ¶¶ 88, 178 with First Am. Compl. at

---

[6] In his decision on Amazon's motion to dismiss, Judge Koeltl laid out the elements of a trade secrets misappropriation claim under federal and state law, and I therefore do not restate that legal discussion here. See ECF No. 30 at 35-36.

¶¶ 86, 165; see also ECF No. 30 at 37 n.15. Moreover, as Judge Koeltl explained, the allegations in the First Amended Complaint supported an inference that "the internal mechanisms of GateGuard's intercom devices are kept sufficiently secret," ECF No. 30 at 39, and the allegations in the Second Amended Complaint mirror those of the prior complaint. Compare First Am. Compl. ¶ 166 with Second Am. Compl. ¶ 179.[7]

Additionally, although GateGuard's prior allegations concerning copying by Amazon were conclusory (see ECF No. 30 at 42), GateGuard has supplemented those allegations in its proposed Second Amended Complaint. GateGuard now alleges that Amazon wrongfully and without authorization gained access to a GateGuard device, allowing Amazon to examine the functioning of the device when Amazon was developing its own Ring Intercom system for sale in the European market. See Second Am. Compl. at ¶¶ 12, 135-42. Amazon contends that evidence obtained during discovery has proven that it did not have sufficient access to GateGuard's device to copy it. See ECF No. 129 at 22-23. But the sufficiency of GateGuard's claim for purposes of this motion is judged by the allegations in the proposed Second Amended Complaint and, in any case, whether Amazon did or did not examine the GateGuard device is an issue of fact that GateGuard dispute. Finally, GateGuard has adequately alleged a substantial similarity between Amazon's Ring Intercom and GateGuard's device. See, e.g., Second Am. Compl. at ¶¶ 15-17, 140, 143-47.

---

[7] Amazon challenges the adequacy of GateGuard's allegations concerning its trade secrets by arguing that GateGuard has not identified a trade secret with sufficient specificity. See ECF No. 204 at 1. But the case Amazon relies on concerned "compilation trade secrets" involving the protection of an "overarching business method" or process, which is distinct from the type of trade secret alleged by GateGuard here. See Sit-Up Ltd. v. IAC/InterActiveCorp., No. 05-CV-9292 (DLC), 2008 WL 463884, at *10 n.8 (S.D.N.Y. Feb. 20, 2008).

In short, GateGuard's proposed amendments are not futile and Amazon has not shown either undue prejudice or undue delay. GateGuard has thus established that it is entitled to amend its complaint under Rule 15(a).

## **CONCLUSION**

For the reasons stated herein, GateGuard's motion for leave to file a Second Amended Complaint is **GRANTED**. The Clerk of Court is respectfully directed to terminate the motion at ECF Nos. 108 and 115.

**SO ORDERED.**

DATED:      New York, New York
             July 10, 2024

_____
VALERIE FIGUEREDO
United States Magistrate Judge