**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

GATEGUARD, INC.

        *Plaintiff*,                                        Civil Action No. 21-cv-9321 (JGK) (VF)

   v.

AMAZON.COM, INC.,
AMAZON.COM SERVICES, INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC.

        *Defendants*.

_____

### GATEGUARD'S OBJECTIONS TO THE DENIAL OF ITS MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE VALERIE FIGUEREDO'S RULING RE PRDOCUTION OF PRIVILEGED DOCUMENTS

QUAINTON LAW, PLLC
Eden P. Quainton
2 Park Ave., 20th Fl.
New York, NY 10016
212-419-0575
eden.quainton@quaintonlaw.net
*Attorneys for Plaintiff GateGuard, Inc.*

1

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................1

LEGAL STANDARD............................................................................................1

PROCEDURAL AND FACTUAL BACKGROUND .................................................2

LEGAL ARGUMENT..........................................................................................10

    I.      THE MAGISTRATE JUDGE'S RULING THAT GATEGUARD'S SLIGHT DELAY IN PRODUCING A PRIVILEGE LOG IN THE ABSENCE OF OF BAD FAITH, PREJUDICE OR EXIGENT CIRCUMSTANCES CONSTITUTED A WHOLESCALE PRIVILEGE WAIVER WAS CLEARLY ERRONEOUS............ 10

    II.     THE MAGISTRATE JUDGE IMPROPRLY RULED ON AN ISSUE THAT WAS NOT BEFORE HER, RESULTING IN A DEPRIVATION OF PLAINTIFF'S DUE PROCESS RIGHTS.......................................................................... 14

    III.    COMPLIANCE WITH THE MAGISTRATE JUDGE'S ORDER SHOULD BE STAYED PENDING A RESOLUTION OF THE PRESENT OBJECTIONS .......... 16

CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*660 Broadway BCR, LLC, et al., v. GateGuard, Inc.*,
  645105/2019 ...................................................................................................................4

*Boggs v. Town of Riverhead*,
  No. 217CV05411ADSSIL, 2020 WL 1929076, (E.D.N.Y. Apr. 20, 2020) .............................2

*Chevron Corp. v. Donziger*,
  No. 11 CIV. 0691 (LAK), 2020 WL 635556 (S.D.N.Y. Feb. 11, 2020)................................11

*Ema Fin., LLC v. Vystar Corp.*,
  336 F.R.D. 75 (S.D.N.Y. 2020)..........................................................................................17

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  131 F. Supp. 2d 540 (S.D.N.Y. 2001) ................................................................................17

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
  No. 08 CIV. 1533 BSJ JCF, 2011 WL 2020586 (S.D.N.Y. May 20, 2011) ..........................13

*GateGuard, Inc. v. Goldmont Realty Corp., et al.*,
  20-cv-1609.........................................................................................................................4

*GateGuard, Inc., et al., v. MVI Systems LLC and Samuel Taub*,
  19-cv-2472.........................................................................................................................4

*Golden Horn Shipping Co. v. Volans Shipping Co.*,
  No. 14 Civ. 2168, 2015 WL 6684518, (S.D.N.Y. June 30, 2015) ............................................2

*Gordon v. City of New York,\*
  No. 14-CV-6115, 2018 WL 4681615 (S.D.N.Y. Sept. 28, 2018) ...........................................1

*Holloway v. City of New York*,
  No. 21-CV-3858, 2023 WL 6614599 (E.D.N.Y. Sept. 28, 2023 .................................9, 12, 13

*In re Chevron Corp.*,
  749 F. Supp. 2d 170 (S.D.N.Y. 2010) ....................................................................9, 10, 11, 15

*Indergit v. Rite Aid Corp.*,
  No. 08 Civ. 9361, 2016 WL 236248 (S.D.N.Y. Jan. 20, 2016) .................................................1

*Jin v. Rodriguez*,
  No. 1:04-CV-5894-REC-LJO, 2006 WL 842425 (E.D. Cal. Mar. 28, 2006) .........................15

*Kitevski v. City of New York,*.
  No. 04-CV-7402, 2006 WL 680527 (S.D.N.Y. Mar. 16, 2006)....................................9, 12, 13

*Ram v. Lal*,
  906 F. Supp. 2d 59  (E.D.N.Y. 2012) ......................................................................15

*Roche Freedman LLP v. Cyrulnik*,
  No. 21-CV-1746(JGK), 2022 WL 17157670 (S.D.N.Y. Nov. 22, 2022) ...........................1, 2

*Surles v. Air France*,
  No. 00-cv-5004, 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001 .................................................2

*Teamsters Loc. 243 v. DHT Transp.*,
  No. 05-CV-71700, 2007 WL 3026096 (E.D. Mich. Oct. 12, 2007)........................................15

*U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*,
  No. 04-cv-6189, 2007 WL 2327068 (S.D.N.Y. Aug. 13, 2007) ...............................................2

*United States v. Zolin*,
  491 U.S. 554 (1989) ...............................................................................................13

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ...............................................................................................13

*USA v. Teman*,
  19-cr-696 ...........................................................................................................3, 4

## **Rules**

Fed. R. Evid. 502(b)..................................................................................................6

Fed. R. Civ. Pro. 72(a), ..............................................................................................1

Fed. R. Civ. Pro. 72(B) ..............................................................................................1

## PRELIMINARY STATEMENT

Pursuant to Rule 72(b), Plaintiff GateGuard, Inc. ("Plaintiff" or "GateGuard") files the present objections to the July 16, 2024 ruling of Magistrate Judge Valerie Figueredo (the "Magistrate Judge" or "Judge Figueredo") that GateGuard waived privilege with respect to attorney-client communications identified on Plaintiff's privilege log. The issue before the Court is simple: whether a slight delay in the production of a privilege log, in the absence of exigent circumstances, bad faith, or prejudice, should result in the waiver of privilege with respect to all documents identified on the slightly delayed privilege log. For the reasons set forth below, Plaintiff respectfully submits the answer is no and Judge Figueredo's ruling to the contrary was clearly erroneous.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 72(a), a district judge "must consider timely objections [to a non-dispositive matter decided by a magistrate judge] and modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). *See Roche Freedman LLP v. Cyrulnik*, No. 21-CV-1746(JGK), 2022 WL 17157670, at *1 (S.D.N.Y. Nov. 22, 2022); *Gordon v. City of New York*, No. 14-CV-6115 (JPO), 2018 WL 4681615, at *25 (S.D.N.Y. Sept. 28, 2018) (quoting *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361, 2016 WL 236248 (S.D.N.Y. Jan. 20, 2016) (in turn quoting *Golden Horn Shipping Co. v. Volans Shipping Co.*, No. 14 Civ. 2168, 2015 WL 6684518, at *1 (S.D.N.Y. June 30, 2015)) (internal quotation marks omitted).

Although the party seeking to overturn a magistrate judge's decision bears a "heavy burden," *Cyrulnik*, 2022 WL 17157670, at *1 (citing *U2 Home Ent., Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-cv-6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007)), the burden is not insurmountable. An order is "clearly erroneous" when "the reviewing court on the entire

1

evidence is left with the definite and firm conviction that a mistake has been committed."

*Cyrulnik*, 2022 WL 17157670, at *1 (citing *Surles v. Air France*, No. 00-cv-5004, 2001 WL

1142231, at *1 (S.D.N.Y. Sept. 27, 2001). An order is "contrary to law" when it "fails to apply

or misapplies relevant statutes, case law or rules of procedure." *Id.*; *see also Boggs v. Town of*

*Riverhead*, No. 217CV05411ADSSIL, 2020 WL 1929076, at *2 (E.D.N.Y. Apr. 20, 2020)

sustaining objection).

## PROCEDURAL AND FACTUAL BACKGROUND

As the Court knows, the motion of Amazon.com, Inc. and various related parties

(collectively, "Defendants") to dismiss Plaintiff's First Amended Complaint (the "FAC") was

granted in part and denied in part on March 16, 2023. Dkt. 30. Plaintiff alleged that, without

GateGuard's consent or knowledge, Amazon had installed a device known as the Key for

Business (the "Key" or KfB") at multi-family residential properties at which a GateGuard smart

intercom (the "GateGuard Intercom") had been installed or was ordered. GateGuard alleged that

Amazon installed the Key either inside of the GateGuard Intercom or in such a way that the Key

could access building door strike mechanism by means of the GateGuard Intercom. GateGuard

alleged that this installation caused GateGuard devices to malfunction, resulting in lost

business, both at the individual building and at the portfolio level, as GateGuard was blamed for

issues in fact caused by the surreptitious installation of the Key. FAC ¶¶ 105-126. GateGuard

also alleged that Amazon had misappropriated its trade secrets and was attempting to

monopolize the e-commerce package delivery market. FAC ¶¶ 164-174, 191-196. In ruling on

Defendants' motion to dismiss, the Court held that GateGuard's claims for violation of the

Computer Fraud and Abuse Act, tortious interference, trespass, conversion and

misappropriation of trade secrets could progress, and dismissed the remaining claims. Dkt. 30.

Shortly after the Court's decision on the motion to dismiss, the matter was referred to Judge Figueredo for general pretrial matters (including scheduling, discovery, non-dispositive pre-trial motions and settlement). Dkt. 35. An initial case management conference was held on April 10, 2023. Dkt. 37. At the initial case management conference, Judge Figueredo set August 31, 2023 as the deadline for fact discovery, October 31, as the deadline for expert discovery, and December 15, 2025 as the deadline for summary judgment motions. Dkt. 40. These dates were subsequently modified, and February 29, 2024 was set as the close of fact discovery. Dkt. 88. Amazon sought to limit discovery at the outset of the case, and on May 23, 2023, Judge Figueredo on issued an order that discovery initially be limited to 70 buildings identified as ones at which both the Amazon Key and the GateGuard intercom, as well as to other buildings at which the GateGuard intercom was ordered and the Amazon Key was installed. Dkt. 47.

In response to GateGuard's discovery demands, Amazon began producing documents on June 30, 2023 and continued until several weeks after the close of discovery. Declaration of Eden P. Quainton, dated July 30, 2024 (the "Quainton Decl.") at ¶ 2. Meanwhile, Plaintiff encountered numerous difficulties in producing documents in response to Amazon's requests. First, GateGuard's counsel's father died on July 31, 2023, delaying the coordination of production for some time. *Id.* at ¶ 3. Second, GateGuard's founder, Ari Teman ("Mr. Teman") began serving a one-year term for the alleged unauthorized use of a device known as a remotely created check, or "RCC," to collect unpaid fees on October 10, 2023. *Id.* at ¶ 4. Motion practice related to the timing of Mr. Teman's surrender, *see USA v. Teman*, 19-cr-696 (PAE) ("*USA v. Teman*"), Dkt. 393-396, 400-402, further interrupted the production of document. Third, Amazon objected to GateGuard's initial production of some 3,000 documents, and GateGuard was compelled to locate and retain a discovery vendor. Quainton Decl. at ¶ 5. Fourth, Amazon requested that one of its search terms for electronic discovery be "Amazon"—a term almost as

3

ubiquitous as the definite article, "the," leading to a massive data set of largely irrelevant material that combined with a huge volume of completely non-responsive documents to produce 93,464 files and 61.7 gigabytes of data. *Id.* at ¶ 6. Fifth, among this vast body of data were privileged materials with nothing to do with the present case. *Id.* at ¶ 7. These documents included materials relating to *USA v. Teman*, as well as three separate litigations, *GateGuard, Inc. v. Goldmont Realty Corp., et al.*, 20-cv-1609, *GateGuard, Inc., et al., v. MVI Systems LLC and Samuel Taub*, 19-cv-2472, *660 Broadway BCR, LLC, et al., v. GateGuard, Inc.*, 645105/2019. *Id.* Sixth, GateGuard's counsel was plagued with medical issues, falling sick with Covid in early 2024, shortly after his wife tested positive in December 2023. *Id.* at ¶ 8. Throughout this time, counsel also suffered with the ongoing consequences of transverse myelitis, a central nervous system disorder diagnosed in 2022 that placed counsel in a wheelchair for five months and still severely limits his mobility and constitutes a genuine handicap. *Id.* at ¶ 9. Seventh, counsel and his family were not the only ones to suffer medical challenges. The incarcerated Mr. Teman faced medical emergencies of his own that also required counsel's attention. While Mr. Teman was working on a motion for reconsideration of a denial of a motion for compassionate release, counsel received alarming reports that Mr. Teman was experiencing testicular pain at a 9/10 level, sparking serious concerns from Mr. Teman's outside doctors and requiring – at almost the exact same time that discovery was closing in the present litigation – an emergency application for Mr. Teman's release to an outside medical facility for treatment and evaluation. *USA v. Teman*, Dkts. 424, 425. Eighth, throughout the period from December 7, 2023 to March 1, 2024, the parties cooperated diligently in scheduling and conduction depositions, including the depositions of Amazon's Paul Donovan on December 15, 2023, Alex Aguilar on December 19, 2023, Christopher Berrett on January 17, 2024, Dustin Keller on January 24, 2024, Gerry Nievera on January 26, 2024,

GateGuard's interim CEO, David Taxman, on January 19, 2024, the deposition of an IT

consultant for GateGuard, David Teman, on February 6, 2024, superintendent Odalis Tiburcio

on January 30, 2024 and superintendent Ramon Rodriguez on February 20, 2024. Quainton

Decl. at ¶ 10. Preparing for and taking these depositions consumed a substantial amount of time

from December 8 to the close of discovery. The parties were able to resolve deposition-related

issues collegially, without the need for court intervention. *Id.* at 11. Nonetheless, GateGuard

continued to face the asymmetry of litigation against Amazon, with Amazon fielding a legal

team of eight attorneys and an unknown number of paralegals to defend against GateGuard's

lean three-attorney team. *Id.* at 12.

Against this background, GateGuard made three separate rolling productions in

November and December, 2023, totaling 84, 992 pages of documents, and representing 16.8

gigabytes of data. Quainton Decl. at ¶ 13.

Not long after this production was complete, however, GateGuard became aware that it

had inadvertently produced a small number of privileged documents and requested that Amazon

sequester any documents appearing to be of an attorney-client nature pending the production of

a log or clawback list identifying the documents that had been inadvertently produced. *Id*. at ¶

14. Because of the various challenges described above, Plaintiff was delayed in producing this

clawback list. *Id.* at ¶ 15.

In anticipation of a discovery conference ultimately held on February 28, 2024 (the

"February Status Conference"), Amazon filed a letter motion seeking a ruling that GateGuard

had "waived the attorney-client privilege over documents it produced to Amazon on November

29, December 7, and December 8, 2023 [i.e., the inadvertently produced documents]." Letter

Motion, dated January 16, 2024 to Judge Valerie Figueredo, Dkt. 91 (the "January Privilege

Motion") at 1. While Amazon's legal reasoning was confusing, it was clear as to the relief it

was seeking: "Accordingly, Amazon seeks a ruling from this Court that it may use all documents ***in GateGuard's production*** in the ordinary course of this litigation and consistent with the Protective Order." Dkt. 91 at 3. This was an unambiguous reference to the inadvertently produced documents included in GateGuard's production.

GateGuard responded to Amazon's letter motion as follows:

> To find a waiver under Fed. R. Evid. 502(b), the party claiming waiver must demonstrate that the (i) the disclosure was not "inadvertent"; (ii) the disclosing party failed to "t[ake] reasonable steps to prevent disclosure"; and (iii) the disclosing party failed to "promptly t[ake] reasonable steps to rectify the error." Amazon can show none of these elements. First, in its tendentious letter motion, Amazon states, without evidence, indeed contrary to the representations of undersigned counsel, that the disclosure was not "inadvertent." Amazon's conclusory assertion on this point is entitled to no weight. Obviously, GateGuard took every effort to conduct a thorough privilege review on the basis of a professional document collection, and any suggestion to the contrary is patently false. Second, as noted, GateGuard devoted an enormous number of hours to conducting a thorough privilege review and is preparing a privilege log for Amazon. The tiny number of inadvertently produced documents out of the universe of privileged material demonstrates that GateGuad took reasonable steps to prevent disclosure. Third, GateGuard promptly notified Amazon that there was an issue of inadvertent production and that it was taking steps to identify the documents mistakenly produced.

Dkt. 128 at 2.

When Amazon later renewed its motion after the February 28, 2024 Status Conference, it again stressed that was seeking a ruling that GateGuard had waived attorney-client privilege over documents produced in its November and December 2023. Dkt. 152.

Separately the parties had discussed the delivery of a privilege log relating to documents withheld from GateGuard's November and December productions but had not agreed on a timetable for production Quainton Decl. at ¶ 16. Amazon did not move for any relief or order relating to GateGuard's privilege log in the January Privilege Motion. At the February Status Conference, Amazon clarified that it had received a clawback list relating to the inadvertently

produced privileged material but that it had not yet received GateGuard's full privilege log. Tr., 5:8-25, 6:1-3. No motion had been made or was made with respect to this privilege log.

Based on a representation from a member of the GateGuard legal team, Quainton Decl. at ¶ 17, counsel for Plaintiff stated that GateGuard could produce the privilege log by Friday, March 1, 2024. Tr., 6:4-17. Judge Figueredo expressly contemplated that if Amazon had an issue with the privilege log, it could raise this issue at a later date. In her ruling following oral argument at the February Status Conference, Judge Figueredo expressly ruled that GateGuard had ***not*** waived privilege with respect to the inadvertently produced documents. Dkt. 140 at 1 ("The attorney-client privilege is ***not*** waived for the 12 emails and three attachments on Gateguard's clawback list").

Given the burdens that had fallen on GateGuard's legal team as a result of all the factors identified above, the associate working on the privilege log was unable to finish the log by March 1, 2024, which was a Friday, and late in the day informed GateGuard's lead attorney that she would not be able to complete the log on time. Quainton Decl. at ¶ 18. GateGuard's associate continued to work on the log over the weekend and on Monday morning was close to being finished. *Id.* at ¶ 19. GateGuard also continued to work around the clock on a range of other matters over the weekend, including the review of Amazon's final document production, which was produced a few minutes before midnight on February 29, 2024, GateGuard's calculation of its damages, and the production of invoice and bank statement data called for in Judge Figueredo's order. *Id.* at ¶ 20; *see also* Dkt. 140 at 2-3. Early in the morning of March 1, 2024, GateGuard informed Amazon that it was not able to complete the damages calculation and intended to ask Judge Figueredo for a modest extension of time to complete this task, which involved supplementing two interrogatory responses. Quainton Decl. at ¶ 21. Amazon indicated it would oppose leave to supplement. *Id.* ¶ 22.  GateGuard filed its motion, which was ultimately

granted. Dkts. 146 and 182. Amazon's late-night production of documents also posed a significant problem. This production consisted of apparently highly relevant documents that, among other things, provided new information relating to intercom malfunctions at locations at which both the GateGuard intercom and the Amazon Key were installed, thus bearing directly on the issue of damages that Plaintiff was attempting to supplement. Quainton Decl. at ¶ 23. However, the documents were truncated and blurred in such a way that their contents could not be readily assessed and GateGuard was compelled to devote a significant amount of time to attempting to decode the Amazon production. *Id.* at ¶ 24. Ultimately, GateGuard provided a deficiency letter relating to this production and Amazon re-produced the illegible documents on March 26, 2024. *Id.* at ¶ 25 and Ex. A.

Just as GateGuard was attempting to address the foregoing discovery matters and fiinalize its privilege log, on March 4, 2024, Amazon filed a letter with the Magistrate Judge informing the court that GateGuard had been unable to meet the March 1, 2024 deadline and reiterating its request for a ruling that GateGuard had waived privilege with respect to the inadvertently produced documents in its November and December productions. Dkt. 152. GateGuard attempted to inform Judge Figueredo of the difficulties it had faced starting on Thursday and over the weekend, and requested a few additional days to complete the privilege loge. Dkt. 153. Amazon responded by raising, for the first time, an argument that had not present in its original motion and that was never even hinted at during oral argument at the February Status Conference, namely, that by failing to produce the privilege log on March 1, 2024, GateGuard had waived privilege with respect to all the documents being identified on the log. Dkt. 154.

Against this background of somewhat frenetic activity, Judge Figueredo ruled that "GateGuard's failure to provide a timely privilege log, despite ample time to do so, constitutes a

waiver of the privilege with respect to any documents in its November and December 2023 productions [i.e., the inadvertently produced documents identified on the clawback list]." Dkt. 155 at 1. Judge Figueredo did not address and did not appear to credit Amazon's new argument that a slight delay in producing the privilege log should constitute a waiver as to all the documents on the log. The day after Judge Figueredo's ruling and only three business days after the deadline set by the court, GateGuard produced the privilege log on which an associate in GateGuard's legal team had been working. Quainton Decl. at ¶ 28. On its privilege log (displayed as a PDF as an exhibit to the Quainton Decl. because of the impossibility of filing Excel documents on ECF), GateGuard identified 1,600 entries covering 30,000 pages of privileged material from within the initial mass of documents identified *supra* at 4 that had been used to cull the responsive documents produced in November and December. *Id.* at 29 and Ex. B.

Following this production, GateGuard timely filed a motion for reconsideration of the Court's March 5 ruling, continuing to believe that the only issue properly before the Magistrate Judge was Amazon's request for an order that GateGuard had waived privilege with respect to the inadvertently produced documents in its November and December productions. Dkt. 163. In opposition to GateGuard's motion, Amazon elaborated on its theory that the failure to meet the March 1 deadline operated not only as a waiver of privilege as to the inadvertently produced documents identified on the clawback list, but the 1,600 entries listed on GateGuard's privilege log. On July 16, 2024, Judge Figueredo sharply diverged from her previous ruling, denying GateGuard's motion for reconsideration and now issuing a sweeping holding that the slight delay in producing the privilege log constituted a complete waiver of all documents identified on the log, relying on *In re Chevron Corp.*, 749 F. Supp. 2d 170, 181 (S.D.N.Y. 2010); *Kitevski v. City of New York*,. No. 04-CV-7402, 2006 WL 680527, at *4 (S.D.N.Y. Mar. 16, 2006) and

*Holloway v. City of New York*, No. 21-CV-3858 (AMD) (CLP), 2023 WL 6614599, at *11 (E.D.N.Y. Sept. 28, 2023). *See* Dkt. 210 (the "Privilege Order") at 2. The Privilege Order represents an extreme and disproportionate response to a slight delay in the production of the log and is clearly erroneous under the applicable law relied on by Judge Figueredo.

**LEGAL ARGUMENT**

I.    **THE MAGISTRATE JUDGE'S RULING THAT GATEGUARD'S SLIGHT DELAY IN PRODUCING A PRIVILEGE LOG IN THE ABSENCE OF OF BAD FAITH, PREJUDICE OR EXIGENT CIRCUMSTANCES CONSTITUTED A WHOLESCALE PRIVILEGE WAIVER WAS CLEARLY ERRONEOUS.**

Judge Figuredo's Privilege Order passed over both the particular context of Plaintiff's delay in producing a privilege log and the shortness of the delay. Rather, Judge Figueredo relied on an abstract principle that delay in producing a privilege log may, under certain circumstances, result in a waiver of the privilege log. *See* Privilege Order at 8. However, the cases cited by the court are clearly inapposite. First, *Chevron* concerns a situation of extreme urgency, with Chevron facing a $113 billion dollar business-destroying judgment allegedly tainted with fraud and various individual defendants facing imminent criminal charges as a result of plaintiff's alleged fraud in Ecuador. *Chevron*, 749 F. Supp. at 172-73 ("[t]his Court previously has recognized the urgency of the interests of Chevron and the Individual Petitioners. The Second Circuit has done so as well. The reason is that the parties are engaged in a race."). No such urgency is remotely present here. Amazon has assembled a large eight-lawyer legal team to oppose the efforts of GateGuard to secure reparation for the harm done by the surreptitious installation of the Key and did not even hint to the Court that there was any urgency to the production of GateGuard's privilege log. *See* Tr. at 5-6. The parties have collaborated on the scheduling and taking of depositions and have not needed to seek court intervention on this score. *See supra* at 5. Amazon has been able to take all the depositions it

10

has requested, with the exception of Ari Teman, and that deposition has been deferred because of the parties' recent decision to seek to mediate their dispute. Dkt. 213. There are no pending criminal charges, no critical deadlines in other matters, no "race" to protect rights with even the remotest semblance of similarity to the *Chevron* matter. At the February Status Conference, there was no suggestion by anyone that GateGuard had acted otherwise than in good faith. To the extent any privilege issue were ultimately found to have limited Amazon's ability to ask questions at the depositions of David Taxman or David Teman, the witnesses could be called back for subsequent questioning, which would prejudice Plaintiff far more than Defendant, and would not, in any event, threaten any fundamental liberty or property interests such as those involved in *Chevron*. Moreover, while the *Chevron* court ultimately found that a 17-day delay by plaintiff in producing a privilege log operated as a waiver, the length of this delay was almost six times that of the delay at issue here, where a log due on a Friday was ultimately served the following Wednesday. *See supra* at 8-9. Moreover, plaintiff's overall tactics in *Chevron* were the subject of intense criticism, and plaintiff's counsel was ultimately disbarred. *See e.g.*, *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 (LAK), 2020 WL 635556, at *2 (S.D.N.Y. Feb. 11, 2020). Donziger's specific tactics with respect to the privilege log appeared also to cross an ethical line, as he appeared to be attempting to use the privilege log impermissibly to shield information vital to the defense over which plaintiff arguably had no applicable privilege claim at all. *In re Chevron Corp.*, 749 F. Supp. 2d at 173 (the "8,652–item privilege log lists not even one document that was written by or addressed to any of the Lago Agrio plaintiffs—the clients whose privilege supposedly is being asserted"). Donziger's apparent bad faith, the urgency of the matter, the vital liberty and property interests asserted by defendants, the length of the delay—all serve to distinguish *Chevron* sharply from the present case. Reliance on *Chevron* to justify the imposition of a draconian penalty unnecessary to

protect any fundamental interest of the defendants in response to a slight three-day delay in producing a privilege log is clearly erroneous.

*Kitevski v. City of New York* is also inapposite. In *Kitevski*, defendants engaged in a multi-year pattern of discovery abuse, characterized by a refusal to produce documents and a flagrant, unjustified violation of a Court order directing the specific production of documents within 30 days. *Kitevski*, 2006 WL 680527. Nothing remotely similar has occurred here, where Plaintiff has exercised the utmost diligence under extremely difficult circumstances and Judge Figueredo herself has underscored the absence of any evidence of misconduct by Plaintiff. *See* Dkt. 207 at 15 ("Amazon has not pointed to any improper or questionable conduct by Teman or GateGuard during the prosecution of this case"). Moreover, with respect to the privilege log at issue in *Kitevski*, the City did not delay production of a log by a few days, the City *completely failed* to produce the log *and provided no explanation* for this failure. *Kitevski,* 2006 WL 680527 at *4 ("[t]he City has failed to provide a privilege log, and has failed to present any justification for that failure"). The utter failure to produce a privilege log in the context of flagrant discovery abuses by a powerful defendant has no common measure with a slight delay of three business days in the context of severe medical issues affecting both client and counsel and the crush of multiple telescoped deadlines, *see supra* at 7-8, where Plaintiff has acted in good faith throughout the litigation in seeking redress from the harm caused by much more powerful Defendants. Judge Figueredo's reliance on this case, as with her reliance on *Chevron*, should leave the Court on review with the firm conviction that a mistake was made. Finally, *Holloway v. City of New York* also presents clearly distinguishable facts. Like *Kitevski*, *Holloway* involved the complete failure to produce a privilege log by a defendant engaging in an apparent pattern of bad faith discovery abuses. As the court wrote:

> The City cannot claim that the documents are publicly available while simultaneously claiming that they are protected from production by a privilege or the existence of an ongoing investigation. Moreover, any privilege that may have been asserted has been waived by defendants' failure to provide a privilege log. More importantly, the City's refusal to supply any documents after having provided such a contradictory response suggests bad faith on the part of the City, which appears to have included any and all possible objections it can conjure up in an effort to avoid providing discovery in this case.

*Holloway,* 2023 WL 6614599 at *11 (internal citation omitted).

Where a party utterly fails to produce a privilege log after providing a "contradictory response" that "suggests bad faith" and using "any and all possible objections" in an effort "to avoid providing discovery," the extreme sanction of a privilege waiver may be appropriate. But extending the logic of *Holloway*, like that of *Kitevski,* to the present situation – in which Plaintiff has produced the log with only a slight delay and under circumstances that do not suggest any bad faith or abusive conduct – is not justified.

The attorney client privilege is the "foundation" of effective representation in the adversarial system and should only be invaded in extreme circumstances. *See Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*, No. 08 CIV. 1533 BSJ JCF, 2011 WL 2020586, at *2 (S.D.N.Y. May 20, 2011) (*quoting United States v. Zolin*, 491 U.S. 554, 562 (1989) (*in turn quoting Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). *See also Allen v. W. Point-Pepperell Inc.*, 848 F. Supp. 423, 426, 430 (S.D.N.Y. 1994) (underscoring that "[t]he attorney-client privilege is fundamental to the judicial process" and holding Defendants had failed to sustain their burden in demonstrating the need to breach the privilege). No circumstances warranting the wholesale waiver of the privilege are remotely present here and the Magistrate Judge's contrary decision must be reversed.

## II.    THE MAGISTRATE JUDGE IMPROPRLY RULED ON AN ISSUE THAT WAS NOT BEFORE HER, RESULTING IN A DEPRIVATION OF PLAINTIFF'S DUE PROCESS RIGHTS.

The procedural background to the Privilege Order further demonstrates that Judge Figueredo's ruling was clearly erroneous. The court's initial ruling on March 5, 2024 came in response to Defendants' motion for an order that Plaintiff had waived privilege with respect to documents that had been inadvertently produced. *See supra* at 5: "Amazon seeks a ruling from this Court that it may use all documents ***in GateGuard's production*** in the ordinary course of this litigation and consistent with the Protective Order." Amazon repeated this same request after GateGuard was delayed in the production of its privilege log. *Id.* Plaintiff responded by explaining the circumstances surrounding the delay in the production of the log and requesting until March 7, 2024 to produce the log. Dkt. 153. Then, for the first time, in reply to a response, Amazon suddenly asserted that GateGuard had waived privilege with respect to ***all*** documents that had been withheld from production on the basis of the attorney-client privilege. Dkt 154 at 2 ("GateGuard should be required to produce any responsive documents withheld on the basis of privilege or work product protection immediately."). This argument was not part of Amazon's original motion at Dkt. 91 and had not been contemplated in any way during the February Status Conference. Moreover, Amazon had failed to meet and confer on this new discovery request or alert the court of an impasse with GateGuard on this issue as required. Quainton Decl. at ¶ 30.

Appropriately, the first two times Judge Figueredo addressed Amazon's request, she limited her ruling to the relief actually sought, first finding that privilege with respect to the inadvertently produced documents had not been waived, Dkt. 140, and then finding that, as a result of the delay in producing the log, privilege as to these documents had been waived. Dkt. 155. The Court's ruling did not even hint at the possibility of a complete waiver of privilege.

14

In seeking reconsideration of the Judge Figueredo's ruling, Plaintiff noted the extravagant and unjustified argument that had been presented for the first time in Amazon's reply letter of March 4, 2024, Dkt. 154 at 2, but believed that the confusion surrounding the clawback list and the privilege log had caused the judge to misapprehend the facts and improperly find that privilege as to the inadvertently produced documents had been waived. Dkt. 163 at 7-8. In reply, Amazon argued that a complete waiver of privilege with respect to all items identified on a slightly delayed privilege log was the "natural and foreseeable" consequence of a three business day delay in production of the log. Dkt. 167 at 5. In support of this extravagant assertion, Amazon introduced the inapposite *Chevron* litigation discussed above in which plaintiff had "repeatedly" failed to produce a privilege log and was thus deemed to have waived privilege with respect to documents ultimately identified after a substantial delay on a privilege log). *Id.* As discussed, the facts in *Chevron* are so extreme that any reliance on them to articulate a rule for the consequences of a slight, good-faith delay is misguided.

But leaving aside the substantive error in the court's ruling, discussed in point I above, the Court's ruling was clearly erroneous from a procedural perspective. First, it is black letter law that a party cannot seek new or different relief in opposition or reply papers from the relief initially sought. *Ram v. Lal*, 906 F. Supp. 2d 59, 67 and Note 17 (E.D.N.Y. 2012) (a "party may not seek different relief in their reply papers than that which they initially requested in their motion"); *see also Teamsters Loc. 243 v. DHT Transp.*, No. 05-CV-71700, 2007 WL 3026096, at *2 (E.D. Mich. Oct. 12, 2007) (improper to invoke relief pursuant to different legal theory in reply brief); *Jin v. Rodriguez*, No. 1:04-CV-5894-REC-LJO, 2006 WL 842425, at *1 (E.D. Cal. Mar. 28, 2006) (improper to move for new and/or different relief in a reply). Yet this is _exactly_ what Amazon has done. Amazon never sought the relief of complete waiver in any of its moving papers, either at Dkt. 91 or at Dkt. 152, only raising this issue in its response to

GateGuard's reply on March 4, Dkt. 154, and in opposition to GateGuard's motion for reconsideration. Dkt. 167. The Court clearly erred in following Amazon's improper approach.

Second, even if the court was inclined to consider a different sanction than the one it initially imposed on March 4, Dkt. 155, it should have considered other sanctions short of the extreme remedy of a privilege waiver, and should have invited argument from both parties on the appropriate sanction for a slight, non-prejudicial delay in the production of a privilege log in the absence of exigent circumstances. Immediately proceeding to the harshest possible sanction, without proper notice, argument or briefing, based solely on a party's self-serving assertion about the quality of a privilege log or a conclusory claim as to the "natural and foreseeable" consequence of a delay in meeting a deadline, without any showing of bad faith, prejudice or exigent circumstances, does not comport with due process and is clearly erroneous.

## III.  COMPLIANCE WITH THE MAGISTRATE JUDGE'S ORDER SHOULD BE STAYED PENDING A RESOLUTION OF THE PRESENT OBJECTIONS

As noted above, the parties have entered into a general stay of discovery pending the resolution of Amazon's forthcoming motion to dismiss GateGuard's authorized Second Amended Complaint. Dkt. 213. In keeping with this stay, GateGuard has foregone production of document requests relating to the Ring intercom and GateGuard's class claims. Quainton Decl. at ¶ 31. In addition, the stay provides for a deferral of the deposition of Mr. Teman until after the resolution of the present motions. Dkt. 213. In this context, a stay of compliance with Judge Figueredo's Privilege Order would be consistent with the agreement of the parties to stay discovery while they pursue mediation.

Plaintiff believes that the Court should stay compliance with the Court's order relating to the production of privileged materials in any event. *First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001) (granting stay of discovery pending appeal where it would otherwise be required "to provide the very discovery [defendant] argues

it has no obligation to produce"). Moreover, because it is undisputed that Mr. Teman's deposition has been stayed while the parties pursue mediation, there would be no prejudice to Defendants in staying Judge Figueredo's order until the resolution of the present motion. *Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 84 (S.D.N.Y. 2020) (granting stay in the absence of prejudice). While it is true that the parties' stipulation provides that either party may withdraw from the agreement on 14 days notice, any exercise of this withdrawal right would give the other party sufficient time to seek a modification of any stay imposed, and for the court to entertain any arguments that would be made at that time.

Under the present posture of the case and the Court's consideration of Plaintiff's objections to Judge Figueredo's privilege ruling, a stay of any production of allegedly privileged materials would be consistent with applicable law and the parties' intent in executing a mediation-related stay, while avoiding the substantial prejudice Plaintiff would suffer from the production of documents it may ultimately have no obligation to produce, and causing no prejudice to Defendants.

## **CONCLUSION**

For the foregoing reasons, this Court should sustain Plaintiffs objections to the Privilege Order and reverse Judge Figueredo's ruling that GateGuard waived privilege with resect to all documents identified on GateGuard's March 6, 2024 privilege log, and should further stay compliance with the Privilege Order until resolution of the present motion.

Dated: New York, New York
        July 30, 2024

                                        Respectfully submitted,

                                        QUAINTON LAW, PLLC

                                        By: _Den Quainton_____

17

Eden P. Quainton
2 Park Ave., 20th Floor
New York, New York 10016
Telephone: 212-419-00575
Email: equainton@gmail.com

*Attorneys for Plaintiff GateGuard, Inc.*

**ATTORNEY CERTIFICATION PURSUANT TO INDIVIDUAL RULE II(D)**

Pursuant to the Court's Individual Rule II(D), I, Eden P. Quainton, an attorney duly admitted to practice law before this Court, hereby certify that the foregoing memorandum of law contains fewer than 7,000 words and that this memorandum complies with the Court's applicable formatting rules. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.


Dated: July 30, 2024                     _/s/ Eden P. Quainton_____
     New York, New York                Eden P. Quainton

## CERTIFICATION OF SERVICE

I, Eden P. Quainton, an attorney duly admitted to practice law before this Court, hereby

certify that the foregoing motion was filed through the ECF filing system for the Southern

District of New York and was thus served on counsel for Amazon in this matter.

Dated: July 30, 2024                           */s/ Eden P. Quainton*\_\_\_\_\_
      New York, New York                      Eden P. Quainton