GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Anne Champion
Direct: +1 212.351.5361
AChampion@gibsondunn.com

September 3, 2024

VIA ECF

The Honorable John G. Koeltl
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

Re:   *GateGuard, Inc. v. Amazon.com, Inc. et al.*, Case No. 21 Civ. 09321 (JGK) (VF)

Dear Judge Koeltl:

Pursuant to the Court's Individual Practice II.B, Defendants ("Amazon") respectfully request a pre-motion conference and leave to challenge two new claims in Plaintiff GateGuard's Second Amended Complaint, ECF No. 223 (the "SAC"). First, Amazon intends to move to deny class certification, and alternatively, to dismiss or strike GateGuard's putative class action claim (Count XI). Second, Amazon intends to move to dismiss the SAC's trade secrets misappropriation claims asserting that Amazon "copied" GateGuard's trade secrets into its Ring Intercom product (Counts VI and VII). The parties jointly propose the below briefing schedule.

GateGuard's First Amended Complaint ("FAC") alleged that installations of Amazon's Key for Business ("KfB") device—a cellular device Amazon delivery persons use to access apartment buildings by activating the electronic door "strike" using an app on their smartphone— damaged GateGuard intercom devices installed at the same locations. After this Court dismissed the FAC in part, ECF No. 30, the parties conducted 10 months of fact discovery on GateGuard's surviving claims. Fact discovery closed on February 29, 2024, and revealed that GateGuard's claims of widespread physical damage to GateGuard devices caused by installations of KfB were not supported. Discovery also showed that KfB installations in the field did not "piggy-back" on any proprietary technology of GateGuard because KfB connected directly to the door strike.

Pivoting from unsupported claims of injury at particular locations, GateGuard's SAC asserts two new and equally untenable theories of liability. First, it asserts a putative class action for "trespass and conversion [and] tortious interference with prospective economic advantage" on behalf of "property owners, property managers, and package delivery and management services who have suffered similar injury to GateGuard." SAC ¶¶ 189–200. GateGuard claims that "unauthorized" KfB installations, even if they did not damage intercoms, deprived "owners of access rights" of the economic value of the purported right to control and monetize the flow of people and packages into apartment buildings. *Id.* Second, GateGuard alleges, "[o]n information and belief," that Amazon copied GateGuard's trade secrets, including into its Ring Intercom device. SAC ¶¶ 12, 25, 88, 141. Both theories are legally baseless, wholly unsupported by extensive fact discovery taken to date, and should be dismissed.

**Class Action Claim (Count XI).** GateGuard's class claim does not plausibly allege the elements of the torts of trespass, conversion, or tortious interference. Fed. R. Civ. P. 12(b)(6). Even if it did, GateGuard's putative class of entities or persons whose "access rights" were

The Honorable John G. Koeltl
September 3, 2024
Page 2

supposedly impeded by unauthorized KfB installations should be preemptively denied, or struck, because it is fundamentally uncertifiable. A "preemptive motion to deny class certification" under Rule 23(d) is granted when the plaintiff cannot meet its "significant burden to show that class certification is appropriate." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010). A motion to strike class allegations under Rules 12(f) and 23(d)(1)(D) is granted when "the 'complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'" *Borgese v. Baby Brezza Enters. LLC*, 2021 WL 634722, at *2 (S.D.N.Y. Feb. 18, 2021) (citation omitted). Under either rubric, GateGuard cannot establish key class action elements.

*Numerosity*. GateGuard cannot show "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While GateGuard asserts that "Class Members number in the thousands," SAC ¶ 196, it does not identify any other person or entity that claims to have experienced injury to its "access rights" from KfB. *See Shayler v. Midtown Investigations, Ltd.*, 2013 WL 772818, at *6 (S.D.N.Y. Feb. 15, 2013) (holding "speculative math" and list of "nameless, address-less, start and end-date-less individuals" failed to establish numerosity).

*Commonality, Predominance, & Ascertainability*. GateGuard cannot show "questions of law or fact common to the class" or that common issues will "predominate." Fed. R. Civ. P. 23(a)(2) & (b)(3). Even assuming exclusive "access rights" could be transferred from a residential building to a third-party intercom maker, GateGuard's claims will require individualized determinations of "the true owner[] of access rights" at every at-issue building, and of whether such "true owner" authorized a KfB installation. SAC ¶ 197. These determinations lie at the center of who is in the putative class. They are fact-intensive and are not subject to class-wide proof. *See Spagnola*, 264 F.R.D. at 99 (finding a lack of predominance when "proof of class members' claims would require, *inter alia*, analysis of the unique characteristics of each class member's home"). For example, while GateGuard claims to own the "exclusive" "access rights" at every building with a GateGuard intercom, such that only it may authorize KfB installations, SAC ¶ 107, other witnesses dispute this and believed building owners and managers were free to authorize KfB installations. Determining who is in the putative class requires resolving these issues for each at-issue building, *see Bellin v. Zucker*, 2022 WL 4592581, at *6 (S.D.N.Y. Sept. 30, 2022) (denying certification for lack of ascertainability when "identifying class members would require a mini-hearing on the merits"), a task even more difficult here because GateGuard proposes no geographic or time-period limitations to define the proposed class.

*Typicality & Adequacy*. GateGuard cannot show its claims are "typical" of the class, nor that it will "adequately protect" the class. Fed. R. Civ. P. 23(a)(3) & (4). GateGuard, an intercom maker, claims to be similarly situated to building owners and managers because it allegedly obtained exclusive "access rights" over buildings through a provision in its terms of service that is in derogation of the rights of those owners and managers. SAC ¶ 107. Owners and managers unsurprisingly dispute the validity of GateGuard's terms of service, and GateGuard has not alleged or identified any other intercom maker who claims to hold exclusive "access rights." Because of this atypical and contested arrangement, GateGuard stands apart from "property owners" and "property managers" in the putative class and will likely be occupied by "unique defenses." *See Bowling v. Johnson & Johnson*, 2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019) (denying class certification given "unique defenses" affecting proposed lead plaintiff's claim).

For similar reasons, GateGuard cannot establish that it would adequately represent the class. GateGuard's draconian terms of service and claim to control, for decades, all "access rights" to any building with one of its intercoms is disputed and a source of conflict with other putative class members who would say they, not GateGuard, maintained the "access rights" and could install another access control device to benefit tenants. And among other disqualifying conflicts, GateGuard's founder and CEO was convicted of defrauding GateGuard's customers, including members of GateGuard's putative class. *See Xianglin Shi v. SINA Corp.*, 2005 WL 1561438, at *4–5 (S.D.N.Y. Jul. 1, 2005) (finding lead plaintiff inadequate due to criminal conviction).

***Trade Secret Claim (Counts VI and VII).*** The Court previously found the FAC's allegation that Amazon had copied "GateGuard's proprietary technology to . . . develop a smart intercom of its own" to be conclusory and unsupported. ECF No. 30 at 42. The Court permitted the FAC's trade secrets claims to proceed on the theory that KfB devices installed in GateGuard intercoms "piggy-back" off of GateGuard's allegedly "proprietary technology" to open the door. The SAC now reintroduces a trade secrets copying allegation, SAC ¶ 88, claiming Amazon copied GateGuard's trade secrets into its Ring Intercom device, SAC ¶¶ 12, 25, 141. GateGuard's copying claim is conclusory and implausible, and it should be rejected. Fed. R. Civ. P. 12(b)(6).

GateGuard's trade secrets copying theory is legally deficient because it fails to plead with necessary specificity what trade secrets Amazon allegedly copied. *See Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (dismissing trade secrets claims where plaintiff "list[ed] general categories of information" and "conflate[d] the concept of a 'trade secret' with 'confidential information'"). The SAC describes GateGaurd's trade secrets as its "system as a whole," "an intercom, mobile app, web-based online platform, servers, communications devices, and operational data," and as the "configuration of its motherboard," "the placement and type of electronic circuitry and other components used." SAC ¶¶ 9, 178. These formulations are "vague terms" that are "subjective, not defined, and thus not specific." *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 263, 265 (S.D.N.Y. 2014), *aff'd*, 610 F. App'x 69 (2d Cir. 2015) (holding plaintiff failed to identify trade secrets with particularity).

Moreover, the SAC never identifies what trade secrets Amazon allegedly copied, nor any plausible "basis for its assertion that [Amazon is] currently using its proprietary information," as it must to maintain a trade secrets copying claim. *RCC Ventures, LLC v. Am. DG Energy, Inc.*, 2018 WL 1415219, at *3 (S.D.N.Y. Mar. 19, 2018). In fact, the SAC acknowledges Ring Intercom is not a standalone intercom system at all, SAC ¶¶ 42, 88, but rather an intercom accessory that gets "integrate[d]" with "existing intercom systems," SAC ¶¶ 12, 141. And while GateGuard claims Ring's "web-based portal for property managers . . . closely parallels" a GateGuard product called "Property Panel," it does not identify any meaningful overlap beyond the use of "rich notifications," a ubiquitous type of pop-up notification. SAC ¶¶ 140–147.

In sum, the new claims in GateGuard's SAC should be dismissed, class certification should be denied, and its class action allegations should be stricken. Amazon proposes to assert each of its above arguments in a single motion. The parties have conferred and propose the following briefing schedule: Amazon's motion due **October 1, 2024**; GateGuard's opposition due **October 31, 2024**; and Amazon's reply due **November 14, 2024**. We thank the Court for its consideration.

GIBSON DUNN

The Honorable John G. Koeltl
September 3, 2024
Page 4

Respectfully submitted,

*/s/ Anne Champion*
Anne Champion

cc:     All counsel of record (via ECF)