# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

GATEGUARD, INC.,

          Plaintiff,

 -against-

                              Case No. 21 Civ. 9321 (JGK)

AMAZON.COM, INC.,
AMAZON.COM SERVICES, INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC.,

          Defendants.

---------------------------------------------------------x

### PLAINTIFF'S SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' FIRST AND SECOND SET OF INTERROGATORIES

Plaintiff GateGuard, Inc. ("Plaintiff" or "GateGuard") through its attorneys, Quainton Law, PLLC, hereby responds to the First and Second Set of Interrogatories to Plaintiff (the "Interrogatories") of Defendants Amazon.com. Inc., Amazon.com Services, Inc., Amazon.com Services, LLC, and Amazon Logistics, Inc. (collectively "Defendants") as follows:

### PREFATORY STATEMENT

Plaintiff's objections and responses to the Interrogatories do not constitute an admission that (i) documents or information relevant to a specific interrogatory or document request exist; (ii) that any documents or information produced are material to this litigation; or (iii) that any documents or information produced are admissible at any proceeding including trial of this matter in whole or in part. Plaintiff reserves all rights towards maintaining the confidentiality of any and all responsive documents and information and to refrain from disclosing any information in the form of documents or interrogatory responses in accordance with the Protective Order entered in

1

this matter. Plaintiff expressly reserves the right to amend, modify or supplement these objections and responses as may be necessary through the time of trial.

## **GENERAL OBJECTIONS**

1.      Plaintiff objects to for the Interrogatories to the extent they seek information or impose any requirement or obligation beyond the permissible scope of the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, the Court's Individual Practices or any other applicable rule.

2.      Plaintiff objects to the Interrogatories to the extent they are overly broad, unduly burdensome, disproportionate to the needs of the case or irrelevant and beyond the scope of FRCP 33.

3.      Plaintiff objects to the Interrogatories to the extent they seek information protected by Federal Rule of Evidence 408, the attorney-client privilege, the work-product doctrine or other applicable privilege. Inadvertent production of any document or information shall not constitute a waiver of any privilege or objection nor shall it operate as a concession of relevance or materiality. Plaintiff reserves the right to produce a privilege log concerning any documents withheld on the basis of privilege following the service of these objections and responses.

4.      Plaintiff objects to the Interrogatories to the extent they seek confidential information or other documents or information that may be withheld from production on the basis of the fact that they contain information that is confidential.

5.      Plaintiff objects to the Interrogatories to the extent they seek information that is within the knowledge or possession of Defendants, that is more easily attainable from a third-party or that exists in the public record.

6.      Plaintiff objects to the Interrogatories to the extent they are premature.

7.      Plaintiff objects to the Interrogatories to the extent they seek expert disclosure.

8.      Plaintiff reserves the right to modify, amend and/or supplement her responses.

9.      The foregoing Prefatory Statements and General Objections are incorporated by reference to each of Plaintiff's responses to the Interrogatories.


## SPECIFIC RESPONSES AND OBJECTIONS TO DEFENDANTS' INTERROGATORIES

### INTERROGATORY NO. 1

Identify the address at which any GateGuard Device is or was installed which You allege Amazon interfered with or damaged through installation or use of KFB.

**Response**: Plaintiff objects to this Interrogatory to the extent discovery is ongoing and the addresses at which Amazon interfered with or damaged any GateGuard AI Intercom (the "GateGuard Intercom") cannot be determined at this time. Subject to the foregoing, a list of properties at which Plaintiff has installed the GateGuard Intercom (the "GateGuard Installed Properties") has been provided as G0000001. A revised list has been provided as G0000002. Amazon has reviewed G0000001 and provided a "de-duplicated" list of properties on which GateGuard has provided comments. GateGuard is unable to determine with precision at this stage which specific properties encountered difficulties because of the installation of the Amazon Key. Subject to and without waiving the foregoing objections and explanations, and without waiving any objection that the installation of the Key on the GateGuard intercom interferes with the device's proper functioning and creates risk of future damage even where no such damage has been presently manifested, the devices installed at the addresses identified on G000003 are

3

those at which, based on its current knowledge, GateGuard's believes device malfunctioning was caused by the illegal installation of the Key. GateGuard notes that Amazon's identification of overlapping properties does not appear to be accurate or complete, as GateGuard is aware of at least one property, 210 W. 133 St., at which a device malfunctioned with the Key installed that is not on the list of overlapping properties provided by Amazon.

## **INTERROGATORY NO. 2**

Identify every third party that You allege breached a contract with GateGuard as a result of any alleged conduct or interference by Amazon.

**Response**: Plaintiff objects to this Interrogatory to the extent discovery is ongoing and every third party who has breached a contract with Gateguard as a result of any alleged conduct or interference by Amazon cannot be determined at this time. Subject to the foregoing, a list of GateGuard Installed Properties has been provided as G0000001. A revised list has been provided as G0000002. Amazon has reviewed G0000001 and provided a "de-duplicated" list of properties on which GateGuard has provided comments. GateGuard is unable to determine with precision at this stage which specific customers have breached contracts as a result of conduct or interference by Amazon. Under the Terms and Conditions in effect at the time of the installation of the GateGuard Intercom, the relevant property owner/manager agreed not to install the Amazon Key on any GateGuard Ordered or Installed Property. These Terms and Conditions will be provided supplementally to Amazon. The relevant provisions are set forth at paragraph 20 and read as follows:

> You agree and accept that you will not put any lock or acted controlled controlled remotely, or any lock or access device opened by code or touch or biometrics or pattern, or any keyless access control device or system on any property where you have ordered GateGuard or LookLock.xyz. You will remove and/or give us permission to remove any such systems already in place or placed during the life of this contract.

4

You agree to place into all leases & sub-lease documents and "house rules", and enforce, a complete ban on Amazon Key, Latch, Jet.com access control products, Amazon access control products, Google Access control products, Target Access control products, UPS access control products, FedEx access control products, DHL access control products, and other similar services and devices from any other provider or service. This is because of a loss of safety and security when third party services can open doors (We can't always monitor what other services do).

You agree that tenants and staff and you may not give Visitor Codes to courier or task services services. Couriers & Task Services may only get Visitor Codes or other longstanding or ongoing access from us. Couriers & Task Services include, but are not limited to: UPS, USPS, FEDEX, AMAZON, RDS, DHL, LAZERSHIP, UBER (UBER RUSH, UBER EATS), LYFT, GETT, JUMO, HOMER, HANDY, HOME DEPOT, IKEA, LOWES, TASKRABBIT, TARGET, KMART, Seamless, Grubhub, Foodler, Eat24, Yelp, CLEANLY, FLYCLEANERS, DOLAUNDRYFORME, MYCLEAN, and any similar services.

You agree tenants, occupants, and shareholders may only purchase access control products for your properties from us on our website.

GateGuard will be the exclusive provider of Package Management Services to you and your PROPERTIES(S) for ten (10) years.

Subject to and without waiving the foregoing objections and explanations, GateGuard believes that Amazon has caused the breach of contracts relating to properties identified in its Supplemental Initial Disclosures as owned or managed by members of the Kushner, Friedman, OhebShalom, Lefkowitz and Rothenberg families. Subject to and without waiving the foregoing objections and explanations, based on its current knowledge, GateGuard believes that Amazon intentionally induced or caused a breach of contract at the addresses set forth on G000003 and G000004 hereto, including by installing the Key when Amazon had been specifically told it did not have authorization for the installation. GateGuard's Terms and Conditions expressly prohibit any third-party installation on or tampering with its devices.

**INTERROGATORY NO. 3**

Identify every third party with which You contend GateGuard had prospective economic or business relations and with which Amazon allegedly interfered.

**Response**: Plaintiff objects to this Interrogatory to the extent discovery is ongoing and every third party with whom GateGuard had prospective economic or business relations and with which Amazon allegedly interfered cannot be determined at this time. Subject to the foregoing, a list of GateGuard Installed Properties has been provided as G0000001. A revised list has been provided as G0000002. Amazon has reviewed G0000001 and provided a "de-duplicated" list of properties on which GateGuard has provided comments. G0000001 and G0000002 contain a list of the portfolio properties under contract with GateGuard. Under the Terms and Conditions in effect at the time of the installation of the GateGuard Intercom, the relevant property owner/manager agreed to provide GateGuard with exclusive package delivery rights on the property owner/manager's portfolio. These Terms and Conditions will be provided supplementally to Amazon. The relevant provisions are set forth at paragraph 20 and read as follows:

> You agree and accept that you will not put any lock or acted controlled controlled remotely, or any lock or access device opened by code or touch or biometrics or pattern, or any keyless access control device or system on any property where you have ordered GateGuard or LookLock.xyz. You will remove and/or give us permission to remove any such systems already in place or placed during the life of this contract. You agree to place into all leases & sub-lease documents and "house rules", and enforce, a complete ban on Amazon Key, Latch, Jet.com access control products, Amazon access control products, Google Access control products, Target Access control products, UPS access control products, FedEx access control products, DHL access control products, and other similar services and devices from any other provider or service. This is because of a loss of safety and security when third party services can open doors (We can't always monitor what other services do).
> You agree that tenants and staff and you may not give Visitor Codes to courier or task services services. Couriers & Task Services may only get Visitor Codes or other longstanding or ongoing access from us. Couriers & Task Services include, but are not limited to: UPS, USPS, FEDEX, AMAZON, RDS, DHL, LAZERSHIP, UBER (UBER RUSH, UBER EATS), LYFT, GETT, JUMO, HOMER, HANDY, HOME DEPOT, IKEA, LOWES, TASKRABBIT, TARGET, KMART, Seamless, Grubhub, Foodler, Eat24, Yelp, CLEANLY, FLYCLEANERS, DOLAUNDRYFORME, MYCLEAN, and any similar services.
> You agree tenants, occupants, and shareholders may only purchase access control products for your properties from us on our website.

6

GateGuard will be the exclusive provider of Package Management Services to you and your PROPERTIES(S) for ten (10) years.

GateGuard believes that GateGuard's prospective economic or business relations with portfolio properties identified on GateGuard's Supplemental Initial Disclosures have been interfered with by Amazon, given that the Amazon Key enables a "Package Management Service."

GateGuard further objects that Amazon has not yet identified those properties at which the GateGuard intercom was ordered and at which the Key was installed.

Subject to the foregoing objections and explanations, based on its current knowledge, GateGuard's prospective economic advantage with Charles Kushner, Motti Silber, Ari Hoch, Spira Motti, Westminster Management, Living Management, LLC, Goldmont Realty Corp., Steven Oved, Lemor Realty, AR Management, Phipps NY, Schreiber Properties, Ben Hoffman, Finkelstein, Timberger, East Real Estate, Soft Stone Management Group, K&R Realty Management, Ryan Colbert, Inception Property Group, Eric Khorshad, Creed Realty Group, Big Apple Properties, GPS Property Management, and Concord Property Management have been interfered with by Amazon's illegal conduct.

Subject to the foregoing explanations and objections, GateGuard is producing herewith records of orders for GateGuard devices. *See* G000005 – GG003601. These records do not reflect all the orders for GateGuard that were made during the relevant period. First, during the early months of the Company's operations, orders were placed through an email form on the Company's website. GateGuard is manually compiling these email orders, for which an automated retrieval system does not exist. Second, GateGuard maintains a database of all orders placed through the website, but only a portion of these orders have been backed up to PDF and are available for production now. The remaining orders exist as queries in the database followed up by an email confirmation to the prospective client. It will take additional time to produce this

7

data. However, upon receipt of the overlapping Key/GateGuard Ordered Properties, GateGuard will be able to identify all relevant orders that were potentially damaged and interfered with by Amazon's illegal conduct, which will reduce the burden on GateGuard of further manual tabulation and email collection.

**INTERROGATORY NO. 4**.

Describe the replacement or repair costs for each and any GateGuard Device You claim to have repaired or replaced due to installations of KFB on those GateGuard Devices.

**Response:** Plaintiff objects that this Interrogatory cannot be answered at this time because discovery is ongoing. Plaintiff is currently calculating the man hours that have been expended over a multi-year period to address device functioning issues. Plaintiff further objects that the unlawful installation of the KFB inside of the GateGuard Intercom destroys the proper functioning of the device and leads to the loss of existing and prospective customers, as well as the revenue expectancy from each damaged or destroyed intercom. GateGuard has calculated that the lost revenues from each destroyed or damaged intercom removed by its clients amounts to $91,000. In some instances, GateGuard provided clients with replacement devices, but because malfunctioning devices damaged customer relationships and caused clients to remove the GateGuard device or cease business with GateGuard, the true cost to GateGuard of Amazon's illegal installation of the Key is equal to at least the lost portfolio business with the property owners and managers identified at in GateGuard's response to Interrogatory No. 3. Because GateGuard custom manufactures its devices on a bulk basis itself, if a device is damaged, it cannot easily be "repaired" the way a less complex device would be fixed. In some cases, the device simply cannot be repaired, as if a foreign object had been jammed inside of a laptop case. Even if it can technically be repaired, the man hours involved would be prohibitive

in many cases for a start-up like GateGuard. Thus, GateGuard has been forced in many cases to replace damaged devices with intercoms in inventory, which prevents these devices from being used for new income-generating business and requires the manufacturing of new intercoms in bulk sets, a heavily time-consuming and in some cases prohibitively expensive process.

**INTERROGATORY NO. 5**

Identify all GateGuard directors, officers and employees between November 14, 2016 and the present.

**Response**: Plaintiff objects that this Interrogatory is overly broad, unduly burdensome and disproportionate to the needs of the case. According to press reports, the KFB was first made available for commercial use in November, 2017.

https://www.businesswire.com/news/home/20171025005287/en/Introducing-Amazon-Key-a-New-Level-of-Delivery-Convenience-for-Prime-Members#:~:text=Amazon%20Key%20will%20be%20available,extra%20cost%20for%20Prime%20members.

Defendants have not made any showing that the list of officers, directors or employees of GateGuard prior to the commercial deployment of the KFB is relevant to any issue in the case or that there is any other rationale for seeking the information requested. Subject to the foregoing, from January 1, 2017 to the present, GateGuard's CEO has been Ari Teman. GateGuard's full-time employees for portions of this period have been Levi Herman and Yoseff Schahor. GateGuard has performed installations through subcontractors, David Dewby (deceased), Tom Orosz and Atlantic Intercom. GateGuard has also employed engineers and developers through Upwork.com.

9

**INTERROGATORY NO. 6**: Identify every witness with knowledge concerning the installation, maintenance, malfunction, repair and/or removal of any GateGuard Device which You allege Amazon interfered with or damaged through installation or use of KFB.

**Response**: Plaintiff objects that this Interrogatory is overly broad, unduly burdensome and disproportionate to the needs of the case, in that Amazon has unlawfully obtained or purported to obtain the consent of landlords or property managers through deceptive practices and GateGuard cannot currently identify every witness with knowledge concerning the installation, maintenance, malfunction, repair and/or removal of any GateGuard device Amazon interfered with or damaged through the installation or use of the KFB. Plaintiff further objects to this Interrogatory in that discovery is ongoing and the identity of witnesses with knowledge concerning, *inter alia*, the malfunction, of any GateGuard Intercom is within the knowledge of Defendants, rendering the identification by Plaintiff of every witness with knowledge impossible in the absence of further discovery. Subject to the foregoing, a list GateGuard Installed Properties has been provided as G0000001. A revised list has been provided as G0000002. In addition, Plaintiff has identified witness with potential knowledge of Amazon's illegal actions and the consequences thereof on its Supplemental Initial Disclosures. The following individuals are also believed to have knowledge about Amazon's illegal conduct:

- Steven Oved
- Jamie Schreiber
- Ben Hoffman
- Eric Khorshad
- Ryan Colbert
- Ari Hoch
- Spira Motti
- Motti Silber

Plaintiff reserves the right to update this list.

Dated:      New York, New York
                June 2, 2023

                        QUAINTON LAW, PLLC
                        *Attorneys for Plaintiff*

By: *Den Quainton*
                        Eden P. Quainton
                        2 Park Ave., 20th Fl.
                        New York, NY 10016
                        Tel: (212) 419-0575
                        eden.quainton@quaintonlaw.net

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

| | |
|---|---|
| GATEGUARD, INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| -against- | : |
| | : Case No. 21 Civ. 9321 (JGK) |
| AMAZON.COM, INC., | : |
| AMAZON.COM SERVICES, INC., | : |
| AMAZON.COM SERVICES, LLC, | : |
| AMAZON LOGISTICS, INC., | : |
| | : |
| | : |
| Defendants. | : |

## <u>VERIFICATION OF INTERROGATORY RESPONSES</u>

I, Ari Teman, Chief Executive Officer of Plaintiff GateGuard, Inc. ("Plaintiff" or "GateGuard"), verify that I have read the foregoing Objections and Responses to Defendants' First and Second Set of Interrogatories, and the responses contained therein and true and accurate to the best of my knowledge, information and belief.

Executed on June 2, 2023


_____*/s/ Ari Teman*_____
ARI TEMAN