# EXHIBIT 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x

GATEGUARD, INC., :
Plaintiff, :
- against - : 21-cv-9321 (JGK)
AMAZON.COM INC., ET AL., :
Defendants. :

------------------------------x

VIDEO DEPOSITION OF ODALIS TIBURCIO
Via Zoom Video Communications
Tuesday, January 30, 2024
10:35 a.m.

Videotaped deposition of FINKELSTEIN TIMBERGER EAST REAL ESTATE, a Non-Party Witness herein, BY: ODALIS TIBURCIO, taken by the Plaintiff, in the above-entitled action, held remotely at the above date and time, before Carolyn Gioia, a machine stenographic reporter and Notary Public within and for the State of New York.

Magna Legal Services
866-624-6221
www.MagnaLS.com



A P P E A R A N C E S:

(All parties present in video conference via Zoom)

QUAINTON LAW
Attorneys for Plaintiff
2 Park Avenue, 20th Floor
New York, New York 10169
(212)419-0575

BY: EDEN P. QUAINTON, ESQ.
Eden.quainton@quaintonlaw.net

GIBSON DUNN & CRUTCHER, LLP
Attorneys for Defendants
AMAZON.COM INC., AMAZON.COM SERVICES, INC., AMAZON.COM SERVICES, LLC, and AMAZON LOGISTICS, INC.
200 Park Avenue
New York, New York 10166-0193
(212)351-4000

BY: NICOLE SANTORA, ESQ.
Nsantora@gibsondunn.com

(APPEARANCES CONTINUED ON NEXT PAGE)



FINKELSTEIN TIMBERGER EAST REAL ESTATE

Attorneys for Deponent

111 Brook Street, Suite 105

Scarsdale, New York 10583

(914)472-4900

BY: JAMES MCELWAIN, ESQ.

Jim@ftre.com

A L S O P R E S E N T

Chris Russo, Videographer, Magna Legal Services

Nicholas Watts, Esq., Gibson Dunn & Crutcher, LLP

David Salant, Esq., Gibson Dunn & Crutcher, LLP

Ms. Santora objected.

- - -

BY MR. QUAINTON:

Q. Do you recall whether those two individuals were wearing any clothing --

MS. SANTORA: Objection.

A. No.

MR. QUAINTON: I'm not finished yet.

Q. -- were wearing any clothing that had any sort of Amazon logo on -- on the clothing?

MS. SANTORA: Objection.

A. No, sir.

Q. You don't recall or you -- or they don't have any such logo?

A. They didn't have any uniforms or any sign, nothing.

Q. Okay.

Did they give you a -- did they have a business card?

A. I don't remember.

Q. How did you know -- did they have anything that identified them as Amazon representatives other than the fact that they said they were Amazon representatives?



MS. SANTORA: Objection. Misstates prior testimony.

A. No. Only the box, they were bringing the box.

Q. So -- okay, so I understand. So let's just go back really slowly in time. So, I guess, I imagine the first thing that happened is somebody rang the -- rang the doorbell.

MS. SANTORA: Objection.

A. Yes.

Q. And did they -- what -- so did somebody speak to you through an intercom saying, We are representatives of Amazon, we'd like to talk to you?

MS. SANTORA: Objection.

A. Oh, yes. And I went up. They were in front of the door.

Q. Okay. So just -- just so I understand exactly what happened.

So were you -- do you recall, were you in your office when a -- a call came through the intercom that Amazon representatives were at the door?

MS. SANTORA: Objection.



A. I -- I don't remember.

Q. But you do remember hearing somebody -- one or more people through -- calling through the intercom for you to come to the door; is that right?

MS. SANTORA: Objection.

A. I don't remember. I just saw them in front of the door. I remember this -- this --

Q. Okay.

A. I don't know how they contact me. I just remember this.

Q. Okay, fair enough.

So you -- so you remember seeing these two people in front of the door, and what's the first thing that you remember them telling you?

MS. SANTORA: Objection.

A. They asked me if I'm the super and I said yes. We're coming from Amazon to install this key to give deliverers -- to give them access so they don't have to bother you, they can open up.

And I was concerned a little about intercoms. And they just told me, I'm coming through to install this device.



Q. Did they ask you if you wanted the device?

MS. SANTORA: Objection.

A. I don't remember. If they may -- if they asked me that.

Q. Was it your impression that they already had been approved to come install this Key device?

MS. SANTORA: Objection.

A. I contact Paul, my boss, and I asked for permission, and he told me, yes, let them -- let them in.

Q. Oh, okay.

When -- when you asked Paul, what -- what do you remember telling Paul?

A. I have Amazon -- two Amazon guys here with -- with a -- with a device to -- and they say it's an Amazon Key to give deliverers access. They wanted to install this device in the basement next to -- 'cause, I remember, they told me next to the intercom device, the existing intercom device, and I -- and he said, yes, let them in.

Q. Okay. So -- so they said, if I -- if I heard you correctly, they wanted to install

the key, you said, in the basement.

Did I hear that right?

A. Yes.

Q. But then after -- then you also said next to the existing intercom device.

Did I hear that right?

A. Yes.

MS. SANTORA: Objection.

Q. But the intercom device is not in the basement; right?

A. The --

MS. SANTORA: Objection.

A. -- power supply.

Q. The power supply's in the basement?

A. Yes.

Q. But the -- the intercom is not in the basement; right?

(Multiple speakers.)

A. The screen is not in the basement.

Q. So what -- what exactly is in the basement? Related --

A. The power supply.

Q. -- related to -- just the power.

Is there a -- is there some sort of a call box in the basement?



A. No. The power supply.

Q. Just the power supply. Okay.

And do you recall whether the -- the device had -- did you accompany the two gentlemen when they installed the -- the Key for Business device?

MS. SANTORA: Objection.

A. I'm sorry, can you repeat that?

Q. Yes. So after you called Paul and said, there are two guys from Amazon, they'd like to install the device, those two men, they went and they -- they installed the device after that; right?

A. Yes.

MS. SANTORA: Objection.

Q. Did you accompany them when you installed the device? Were you with them?

A. No.

Q. Okay.

A. Only to show them where the power supply was.

Q. Okay.

Do you recall whether the device had any sort of antenna that came with the device?

MS. SANTORA: Objection.



I'm going to read these paragraphs and then ask you some questions about them. This is underneath where it says: Installation Agreement.

Do you see that?

THE WITNESS: Yes.

MR. QUAINTON: And --

MS. SANTORA: Objection. He didn't -- did you -- I don't think you even established that he's seen this document before.

MR. QUAINTON: I will get there, don't worry.

MS. SANTORA: But you're going to ask him questions about a document -- I mean, go ahead. But objection. Relevance. Foundation.

MR. QUAINTON: Okay. I'm just going to read this to you, okay, and then I'm going to ask you questions.

This says [as read] This is an agreement between you, on behalf of your company and location as defined below, that you elect to sign up for Key for Business services, comma, Company, and



Amazon.com Services LLC, with its affiliates, Amazon. These terms along with the Amazon.com privacy notice, https://www.amazon.com/privacy, are collectively referred to as the Agreement.

BY MR. QUAINTON:

Q. Do you see that?

A. Yes.

Q. Do you understand that?

A. Yes.

Q. Okay.

What -- what -- what did you understand when I read that?

A. That they're trying to establish an agreement between Amazon and FTERE.

Q. Between Amazon and FTRE, okay, that's -- that's what you understand.

MS. SANTORA: Objection.

Q. So let me go down and -- at the bottom here.

Do you see where it says: Draw your signature into the box below; do you see that?

A. Yes.

Q. It says Odalis Tiburcio; right?

A. Yes.



Q. And that is your name; right?
A. Yes.
Q. Is that your signature?
A. Nope.
Q. So this -- the -- the -- the document that I'm showing you, Amazon four-two- -- 00427 to 428, you've never seen this document before; right?
A. No.
Q. And nobody ever asked you to sign this document; right?
A. No.
MS. SANTORA: Objection.
Q. Nobody ever gave you a tablet with the -- and asked you to scroll through the tablet and then sign somewhere on a tablet; right?
A. No.
MS. SANTORA: Objection.
MR. QUAINTON: Okay. I'm going to read this No. 4 here, where it says: Disclaimer of Warranties.
Do you see that?
THE WITNESS: Yes.
MR. QUAINTON: Okay. And I'm just



going to read that.

It says [as read] Amazon provides the equipment, quote, as is, and makes no warranties of any kind. To the fullest extent permitted by applicable law, Amazon expressly disclaims all warranties, whether express or implied, including warranties of merchantability, noninfringement, title, or fitness for a particular purpose. Amazon does not warrant that the equipment will operate uninterrupted or error free.

BY MR. QUAINTON:

Q. Do you see that?

A. Yes.

Q. Do you understand what I just read?

A. Yes.

MS. SANTORA: Objection.

Q. What -- what do you understand?

MS. SANTORA: Objection. You just established that he's not seen this document before, Eden. You're asking him to interpret it and he's not seen it before. So all of this -- this line of questioning is -- lacks foundation, is



C E R T I F I C A T E

I, CAROLYN GIOIA, a machine stenographic court reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose testimony is hereinbefore set forth was duly sworn by me, and the foregoing 132-page transcript is a true record of the testimony given virtually by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 5th day of February, 2024.

Carolyn Gioia

CAROLYN GIOIA

