# EXHIBIT 8

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK


GATEGUARD, INC.,                    : Docket #21-cv-9321

                Plaintiff,          :

   -against-                        :

AMAZON.COM, INC., et al.,           : New York, New York
                                      February 28, 2024
                Defendants.

---------------------------------:

                      PROCEEDINGS BEFORE
                 THE HONORABLE VALERIE FIGUEREDO
                 UNITED STATES MAGISTRATE JUDGE



APPEARANCES:

For Plaintiff:       QUAINTON LAW, PLLC
                     BY:  EDEN P. QUAINTON, ESQ.
                     2 Park Avenue, Suite 20th Floor
                     New York, New York 10016


For Defendant:       GIBSON, DUNN & CRUTCHER, LLP
                     BY:  DAVID PHILIP SALANT, ESQ.
                          ANNE MARIE CHAMPION, ESQ.
                          CHRISTOPHER BELELIEU, ESQ.
                     200 Park Avenue
                     New York, New York 10166



Transcription Service: Marissa Lewandowski
                       Phone:  (631) 813-9335
                       E-mail:marissamignano@gmail.com



Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

1    for every single device that we've ever sold.  I can
2    tell you how long it was online, how long it was
3    offline.
4           And presumably if a device is offline for
5    an extended period of time, that's because the
6    customer is no longer using the device.  If it's
7    offline for a short period of time, that could just
8    be there's a problem or there could be an Internet
9    outage or some minor issue.  But if it's an extended
10   period of time, then it's a fair assumption that
11   that customer is no longer using the device, and
12   we've effectively lost the customer.
13          So he ran those numbers and he ran that
14   data, he came up with a big list of devices and
15   locations.  I actually mistakenly sent that big list
16   to Amazon.  I didn't intend to.  What I intended to
17   do was what I ultimately did, which is I compared
18   the list of device availability with the list of
19   devices that we'd already identified.  And there
20   were 32 additional devices that had not been
21   captured by the previous analysis of the data.
22   Because the way that Mr. Teaman, Sr. had looked at
23   the data was not something that was done in the
24   ordinary course.  The data existed, but it hadn't
25   been analyzed to satisfy what I was looking for.

```
 1              And so when I got that information, I then
 2     asked Amazon in a document request for installation
 3     agreements relating to those devices, because we
 4     need the installation agreements to figure out who
 5     it was at the locations who -- first of all, was the
 6     key for business installed at any of those
 7     locations?  So it's very likely that the key for
 8     business was not installed at all those locations.
 9     It may only be a handful.  So we're not talking
10     about a huge burden.  There may be a handful of
11     devices.  Of the 32 where the key was installed.
12              For those devices where the key was
13     installed or those locations of the key was
14     installed, I wanted the installation agreements so
15     that I could see who Amazon or who Amazon's agents
16     had identified as the relevant person.  Because one
17     of the issues that's really complicated our fact
18     finding in this case is that GateGuard's contact, as
19     a location, is typically not the person who
20     authorized the installation of the key.  And that
21     person, our contact, will many times say no, the key
22     was never installed here.  So any problems you're
23     having has nothing to do with the key.
24              But when we dig further with the
25     installation agreement, we can't dig further because
```

1    we're not sure who it was who authorized the device.
2    Then we find out in some cases that the device was
3    installed but never authorized.  In some cases that
4    it was installed, but -- it was installed, but there
5    was an internal procedure and, in fact, a person had
6    just forgotten they'd authorized it.
7             In any event, all we're asking for is for
8    these 32 locations that were uncovered by a data
9    analysis that we hadn't previously run, that Amazon
10   just tell us, is the key installed at those
11   locations and, if so, provide the same discovery
12   that they provided for the other locations so we can
13   assess whether that device unavailability resulted
14   from the incompatibility with the key or damage
15   caused by the key.
16            THE COURT:  Can I just ask, Mr. Quainton,
17   this data analysis that you engaged in, when did
18   that process begin?
19            MR. QUAINTON:  Well, it would have been
20   after Mr. Teaman reported to the BOP.  So it would
21   have been in -- it would have been in October.
22   Probably would have been in, I think, mid to late
23   October.
24            THE COURT:  I guess this is what I'm trying
25   to figure out.  What was done between May of 2023,

```
 1     when you knew we were limiting it to 70 or so
 2     addresses, and October?
 3             MR. QUAINTON:  Well, what I was trying to
 4     do in this case -- I think Your Honor I've seen that
 5     the volume of materials.  We were trying to comply
 6     with our own obligations.  There was a difficulty
 7     getting a vendor.  We did a production of 3,000
 8     pages that Amazon thought was inadequate.  We
 9     retained a vendor and they found a quarter of a
10     million pages of documents to work through.  We met
11     and conferred on various issues.  You know, there's
12     just a lot --
13             THE COURT:  So, but you said -- I don't
14     mean to interrupt, but just because of the nature of
15     all the issues we're trying to get through today,
16     that all goes to document requests on other issues.
17             I'm trying to figure out what was done in
18     those summer months, early fall, to sort of realize
19     that maybe 70 addresses wasn't what captured the
20     full universe of potential injury or relevant
21     locations.  And it sounds like there was nothing
22     until October.  And that's when the new CEO came in.
23     And you just, you inquired as to potential locations
24     where there was a key for a GateGuard device
25     installed that was inactive.
```

```
 1    at its disposal the way to figure out what addresses
 2    are at issue.
 3              I think the main thing that we've learned
 4    from counsel's points today is that GateGuard does
 5    not have an understanding of the relevance of these
 6    addresses.  It wants to explore what they could or
 7    might mean and whether damage might or might not
 8    have happened there.  And it's quite late for
 9    GateGuard to do so, especially when in deposition,
10    David Teaman, the father of Ari Teaman, told us he
11    obtained this data from someone at GateGuard and
12    whipped it up, and it was pretty easy to determine
13    what this list was.
14              So we're just not understanding how
15    GateGuard can change the game this late.  And we
16    would respectfully submit that the scope of
17    discovery should not be expanded beyond what the
18    Court ordered and what the parties said previously.
19              THE COURT:  Mr. Quainton, I just want to
20    make sure, because something Mr. Salant said, the 32
21    new addresses that you've identified, you have
22    confirmation that these are addresses where a
23    GateGuard device is installed.  We're not talking
24    about a portfolio building.
25              MR. QUAINTON:  Correct.  They may have been
```

```
 1    on a previous portfolio list, but these are
 2    locations at which there actually was a GateGuard
 3    device installed that was inactive for a certain
 4    period of time.
 5              And if I could just say one thing that I --
 6    might really help the Court understand the bind that
 7    we're in.  One of the parties that we subpoenaed,
 8    one of our own clients that we subpoenaed for
 9    information about GateGuard -- information about the
10    70 GateGuard locations, there were five GateGuard
11    properties with that property manager.  Those
12    devices were removed because the property manager
13    was dissatisfied with GateGuard.  There was some
14    service issue.  And that property manager, when we
15    spoke to them, know this was all GateGuard.  The key
16    for business was never installed here.  And, in
17    fact, they told me point blank, We actually tried
18    out the key for business and we didn't like it and
19    we told Amazon we weren't interested.  So I'm sorry,
20    there's really no connection between the key for
21    business and your devices.
22              And I pushed back and I said, Look, I'm
23    looking at an installation agreement that I hadn't
24    seen, that the GateGuard would never have seen but
25    for this litigation, and it says that there's a
```

```
 1    superintendent who signed up a lot of buildings and
 2    I don't understand how that could have happened.
 3             So we go back and forth.  And then, I think
 4    it was just yesterday or the day before, the person
 5    comes back to me and said, Oh, you know what, what I
 6    told you before was incorrect.  The key for business
 7    was installed at those locations.  And yes, the
 8    superintendent actually did authorize it and he told
 9    one of his managers and that information just never
10    got to the people that I was talking to, which are
11    the same people that we were talking to.
12             I can't just go to those locations and
13    knock on the door and get into the basement.  The
14    GateGuard device has been removed.  I don't have any
15    authority to do that.  So we're dependent on this
16    discovery process and piecing together what happened
17    by a very laborious and time consuming process.
18             So to determine the scope of our damages,
19    we just need to know, okay, let's say there are
20    eight of these locations where the key was
21    installed.  Was it installed before those devices
22    became inactive?  Did the property owners know that
23    the key for business was installed?  Simple
24    questions.  And again, I just don't think we're
25    talking about a massive new process, even if the
```

1  Second Amended Complaint is not permitted by the
2  Court.
3       THE COURT: Okay. So I guess I'd just like
4  to, before I give you a final decision on this,
5  given that we do have the pending motion to amend
6  the complaint, or the potential motion to amend the
7  complaint. Since it might, just Mr. Quainton had
8  made the argument that it could be just one in four
9  of these 32, Mr. Salant, is it possible for Amazon
10 to quickly look at the 32 list and identify which
11 had a key for business installed, so we know the
12 number of buildings that are actually at issue?
13      MR. SALANT: We can do that, Your Honor.
14 Our position would be that if we provide this
15 information, that it would be information and maybe
16 some documents only, and that we do not reopen
17 depositions or open fact discovery for a longer
18 period to cover these. We can provide some narrow
19 amount of information, if Your Honor orders it, of
20 course, but we just don't want to restart discovery
21 on these addresses or anything else, given the ten
22 months we've spent on this 2021 case.
23      THE COURT: Yeah. And I hear you on that,
24 and I guess I'd like to see what happens with the
25 motion to amend the complaint. But because this

1   gap.  And Amazon tells us, Well, we did what we
2   could.  But in depositions, it was clear that
3   there's additional information relating to the 70
4   properties that would help us understand what
5   happened at those properties.
6           We don't believe that there's been a full
7   and complete search.  For example, Mr. Nievera, who
8   was the most senior person that we deposed, said
9   that there's something called a call script.
10  There's a script that Amazon representatives and
11  Amazon itself are meant to follow when they're
12  trying to determine whether a property has been
13  appropriately authorized.  So we need to see those.
14  We've asked for those call scripts.
15          There's also something called an ingestion
16  form, which is a form -- I've never seen the
17  ingestion form because they weren't produced, which
18  shows how this property was essentially ingested,
19  absorbed, or cataloged within the Amazon system.
20  That is a category of documents that hasn't been
21  produced.
22          So that's an outstanding issue.  We have
23  not yet had a chance to meet and confer.  Our
24  deficiency letter was sent on the 22nd, and the 23rd
25  was pending.  And as Your Honor could see, there's a

```
 1    lot of issues to address, but that's something the
 2    parties are going to have to meet and confer on.
 3    And hopefully we can resolve that without court
 4    intervention, but we may not be able to.  And there
 5    may be additional discovery that Amazon agrees to in
 6    light of our meeting and conferring.
 7              And there are other issues.  In addition,
 8    Your Honor recalls that with respect to the so
 9    called ordered properties, these are properties
10    where GateGuard was ordered but then never actually
11    installed.  Amazon has said that they believe that
12    Your Honor categorically refused -- or not
13    refused -- denied GateGuard the ability to get any
14    discovery with respect to those properties.  And my
15    reading of your order and rereading the transcript
16    of the conference we had on the topic was that Your
17    Honor said, I'm not convinced today that's
18    appropriate, but it might be appropriate if you can
19    come back with more evidence.
20              So I want to go over that with Amazon.  And
21    I think the depositions that we've had and the
22    information we've obtained about the way it's, sort
23    of, impossible to really know what went on at these
24    properties until you drill down and find out who
25    said what to whom.
```

```
 1              We think that -- we haven't had a chance to
 2    meet and confer with Amazon -- so there's nothing
 3    right for the Court.  But that's just an indication
 4    of another area where there's a dispute that may
 5    need additional discovery.
 6              Another major area where we need additional
 7    time, it's not new discovery, this is existing
 8    discovery with respect to subpoenas that were
 9    issued.  And securing compliance with the subpoenas
10    is extremely difficult.  Many parties simply don't
11    comply and we have to go back again and again and
12    eventually they do comply.
13              One of the best examples is Clear Home,
14    which is a major Amazon, what they call a channel
15    partner.  They were responsible for both getting new
16    clients and through one of their subsidiaries,
17    installing the key at those new clients.  And the
18    president of Clear Home testified that all of his
19    communications with Amazon were by telephone.  And
20    he said that he would provide us with the telephone
21    numbers of the Amazon people that he talked to so we
22    could determine whether they were communicating by
23    cell phone, because one of the issues in discovery
24    has been whether Amazon should be required to search
25    the cell phones of its custodians.  And Amazon has
```

```
 1                  C E R T I F I C A T E
 2
 3        I, Marissa Lewandowski, certify that the
 4   foregoing transcript of proceedings in the case of
 5   GateGuard, INC. v. AMAZON.COM, INC., et al., Docket
 6   #21-cv-9321, was prepared using digital transcription
 7   software and is a true and accurate record of
 8   the proceedings.
 9
10
11   Signature  _Marissa Lewandowski_____
12                   Marissa Lewandowski
13
14   Date:      February 29, 2024
```