UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GATEGUARD, INC., | |
| Plaintiff, | |
| v. | No. 21 Civ. 9321 (JGK) (VF) |
| AMAZON.COM, INC.,<br>AMAZON.COM SERVICES, INC.,<br>AMAZON.COM SERVICES, LLC,<br>AMAZON LOGISTICS, INC.,<br>RING LLC, | |
| Defendants. | |

**AMAZON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS,
TO DENY CLASS CERTIFICATION, AND TO STRIKE CLASS ALLEGATIONS**

GIBSON, DUNN & CRUTCHER LLP
Anne Champion
Christopher D. Belelieu
David P. Salant
Marc Aaron Takagaki

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

*Attorneys for Defendants Amazon.com,
Inc., Amazon.com Services LLC,
Amazon Logistics Inc., and Ring LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT.................................................................................1

BACKGROUND ...................................................................................................4

I.    GateGuard's FAC and Amazon's Motion to Dismiss....................................4

II.   Discovery Concerning KfB Installation and Authorization..........................5

III.  GateGuard's SAC.......................................................................................6

ARGUMENT .......................................................................................................8

I.    GateGuard Fails to State a Claim for Trade Secret Misappropriation. ..........8

      A.    GateGuard Fails to Plead the Existence of a Trade Secret.................8

      B.    GateGuard's Claimed Trade Secrets Were Not Kept Secret ...........11

      C.    GateGuard's Copying Allegations Are Conclusory..........................12

II.   GateGuard Fails to Allege a Plausible Class Action Claim .........................14

III.  The Court Should Deny Class Certification or Strike GateGuard's
      Class Allegations....................................................................................17

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## Cases

*24 Seven, LLC v. Martinez,*
  2021 WL 276654 (S.D.N.Y. Jan. 26, 2021) ........................................................10

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ...............................................................................17

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..............................................................................................8

*Barrett v. Toroyan,*
  28 A.D. 3d 331 (1st Dep't 2006) .........................................................................16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..........................................................................................8, 14

*Borgese v. Baby Brezza Enters. LLC,*
  2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) .............................................. 3, 17, 20

*Bowling v. Johnson & Johnson,*
  2019 WL 1760162 (S.D.N.Y. Apr. 22, 2019) .....................................................22

*Brecher v. Republic of Argentina,*
  806 F.3d 22 (2d Cir. 2015) ..................................................................................20

*Broker Genius, Inc. v. Zalta,*
  280 F. Supp. 3d 495 (S.D.N.Y. 2017) ............................................................ 12, 13

*Chevron Corp. v. Donziger,*
  871 F. Supp. 2d 229 (S.D.N.Y. 2012) .................................................................15

*Chow v. Shorefront Operating LLC,*
  694 F. Supp. 3d 247 (E.D.N.Y. 2023) ................................................................20

*Colavito v. N.Y. Organ Donor Network, Inc.,*
  860 N.E.2d 713 (N.Y. 2006) ...............................................................................16

*DiDonato v. GC Servs. Ltd. P'ship,*
  2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021) ...................................................19

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010) ...............................................................................16

*Diverse Ptnrs., LP v. AgriBank, FCB,*
  2019 WL 4305008 (S.D.N.Y. Sept. 11, 2019) ...................................................21

## TABLE OF AUTHORITIES
(continued)

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)........................................................9

*Evliyaoglu Tekstil A.S. v. Turko Textile LLC*,
    2020 WL 7774377 (S.D.N.Y. Dec. 30, 2020)....................................................16

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
    354 F. Supp. 2d 471 (S.D.N.Y. 2005).................................................................17

*Finocchiaro v. NQ Mobile, Inc.*,
    2016 WL 7031613 (S.D.N.Y. Dec. 1, 2016)......................................................24

*Fischkoff v. Iovance Biotherapeutics, Inc.*,
    339 F. Supp. 3d 408 (S.D.N.Y. 2018)................................................................15

*Fletcher v. ConvergEx Grp. LLC*,
    388 F. Supp. 3d 293 (S.D.N.Y. 2019)................................................................22

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*,
    270 F.R.D. 150 (S.D.N.Y. 2010)................................................................22, 23

*GateGuard, Inc. v. Goldmont Realty Corp.*,
    2023 WL 3255348 (S.D.N.Y. May 4, 2023).....................................................23

*GateGuard, Inc. v. MVI Sys. LLC*,
    No. 19 Civ. 2472 (S.D.N.Y.)..............................................................................11

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2d Cir. 2016)...............................................................................11

*Insulet Corp. v. EOFlow, Co.*,
    104 F.4th 873 (Fed. Cir. 2024)...........................................................................11

*Inv. Sci., LLC v. Oath Holdings Inc.*,
    2021 WL 3541152 (S.D.N.Y. Aug. 11, 2021)...................................................10

*Johnson v. Nextel Comms. Inc.*,
    780 F.3d 128 (2d Cir. 2015)...............................................................................18

*Julie Rsch. Lab'ys, Inc. v. Select Photographic Eng'g, Inc.*,
    998 F.2d 65 (2d Cir. 1993)...................................................................................9

*Kiobel v. Royal Dutch Petrol. Co.*,
    2004 WL 5719589 (S.D.N.Y. Mar. 31, 2004)...................................................21

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006)...............................................................................16

**TABLE OF AUTHORITIES**
(continued)

Page

*Kwan v. Schlein*,
 441 F. Supp. 2d 491 (S.D.N.Y. 2006)....................................................................14

*Lapin v. Goldman Sachs & Co.*,
 254 F.R.D. 168 (S.D.N.Y. 2008).............................................................................22

*Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*,
 575 F. Supp. 3d 445 (S.D.N.Y. 2021)....................................................................15

*Lerner v. Fleet Bank, N.A.*,
 459 F.3d 273 (2d Cir. 2006)...................................................................................15

*Mazzei v. Money Store*,
 829 F.3d 260 (2d Cir. 2016)...................................................................................19

*Medtech Prods. Inc. v. Ranir, LLC*,
 596 F. Supp. 2d 778 (S.D.N.Y. 2008)....................................................................11

*Moore v. PaineWebber, Inc.*,
 306 F.3d 1247 (2d Cir. 2002).................................................................................18

*Next Comms., Inc. v. Viber Media, Inc.*,
 2017 WL 4402540 (S.D.N.Y. Sept. 30, 2017), *aff'd*, 758 F. App'x 46
 (2d Cir. 2018)................................................................................................9, 10

*Norman v. Arcs Equities Corp.*,
 72 F.R.D. 502 (S.D.N.Y. 1976)..............................................................................25

*Passman v. Peloton Interactive, Inc.*,
 671 F. Supp. 3d 417 (S.D.N.Y. 2023)....................................................................24

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 827 F.3d 223 (2d Cir. 2016)...................................................................................23

*In re Petrobas Sec.*,
 862 F.3d 250 (2d Cir. 2017)...................................................................................20

*PFT of Am., Inc. v. Tradewell, Inc.*,
 1999 WL 179358 (S.D.N.Y. Mar. 31, 1999)...........................................................18

*RCC Ventures, LLC v. Am. DG Energy, Inc.*,
 2018 WL 1415219 (S.D.N.Y. Mar. 19, 2018).........................................................14

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v.
 Bank of N.Y. Mellon*,
 775 F.3d 154 (2d Cir. 2014)...................................................................................22

**TABLE OF AUTHORITIES**
(continued)

Page

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).................................................................21

*Ruiz v. Citibank, N.A.*,
   2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x 39
   (2d Cir. 2017)........................................................................................21

*Saleem v. Corp. Transp. Grp., Ltd.*,
   2013 WL 6061340 (S.D.N.Y. Nov. 15, 2013)......................................19

*Savino v. Comput. Credit, Inc.*,
   164 F.3d 81 (2d Cir. 1998).....................................................................23

*Shaw v. Hornblower Cruises & Events, LLC*,
   2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022)......................................17

*Shayler v. Midtown Investigations, Ltd.*,
   2013 WL 772818 (S.D.N.Y. Feb. 15, 2013) .........................................17

*Sit-Up Ltd. v. IACInterActiveCorp.*,
   2008 WL 463884 (S.D.N.Y. Feb. 20, 2008)...........................................8

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997)....................................................................9

*Spagnola v. Chubb Corp.*,
   264 F.R.D. 76 (S.D.N.Y. 2010)........................................................3, 17

*Steering Comm. v. Exxon Mobil Corp.*,
   461 F.3d 598 (5th Cir. 2006)..................................................................20

*Telebrands Corp. v. Del Lab'ys, Inc.*,
   719 F. Supp. 2d 283 (S.D.N.Y. 2010)...................................................11

*Thomas v. Twitter Corp. Off.*,
   2023 WL 8452200 (S.D.N.Y. Dec. 6, 2023).........................................14

*United States v. Teman*,
   No. 19 Cr. 696 (PAE) (S.D.N.Y.)..........................................................23

*Vaughn v. Consumer Home Mortg. Co.*,
   470 F. Supp. 2d 248 (E.D.N.Y. 2007), *aff'd*, 297 F. App'x 23 (2d Cir. 2008).....................11

*Villare v. ABIOMED, Inc.*,
   2020 WL 3497285 (S.D.N.Y. June 29, 2020)......................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ..............................................................................17

**TABLE OF AUTHORITIES**
(continued)

<u>Page</u>

*Wynn v. N.Y.C. Housing Auth.*,
   314 F.R.D. 122 (S.D.N.Y. 2016) ..........................................................................24

*Xianglin Shi v. Sina Corp.*,
   2005 WL 1561438 (S.D.N.Y. July 1, 2005) .......................................................24

*Zirvi v. Flatley*,
   433 F. Supp. 3d 448 (S.D.N.Y.) (Koeltl, J.), *aff'd*, 838 F. App'x 582
   (2d Cir. 2020) .......................................................................................... 8, 9, 10

**Statutes**

18 U.S.C. § 1839 ................................................................................................11

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................15

Fed. R. Civ. P. 12(b) ................................................................................ 1, 8, 14

Fed. R. Civ. P. 12(f) ...........................................................................................17

Fed. R. Civ. P. 23 .......................................................................... 17, 18, 21, 22, 24

Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Logistics, Inc., and Ring LLC (collectively, "Amazon") respectfully submit this memorandum of law in support of Amazon's motion to dismiss two claims in Plaintiff GateGuard's Second Amended Complaint, Dkt. 223 ("SAC") pursuant to Rule 12(b)(6), and to deny class certification and strike class allegations pursuant to Rules 12(f), 23(c), and 23(d).

## PRELIMINARY STATEMENT

GateGuard's SAC seeks to transform a straightforward dispute about alleged damage to a few dozen intercoms into a complex trade-secrets dispute and sprawling class action—all in hopes of extracting a large settlement from Amazon. But even after 10 months of fact discovery, GateGuard alleges no facts sufficient to support either of its new claims, let alone facts that could support class treatment. The Court should dismiss both claims with prejudice.

This case concerns Key for Business ("KfB")—a free electronic device Amazon offers apartment building owners to allow Amazon delivery drivers to use smartphones to unlock building doors and deliver packages safely inside. GateGuard's First Amended Complaint ("FAC") alleged that KfB installations damaged GateGuard's intercoms and "piggy-backed" on GateGuard's alleged proprietary technology. Discovery showed that GateGuard's alleged injury was limited to a few dozen intercoms at most, and that GateGuard lacked evidence to substantiate even those claims. Changing tack, GateGuard's SAC now alleges that Amazon (i) copied GateGuard's purported trade secrets when developing the Ring Intercom, and (ii) interfered with "thousands" of buildings' so-called "access control rights" by installing KfB without authorization, a claim for which GateGuard seeks to represent an ill-defined class. Both claims are fundamentally flawed.

*First*, GateGuard's trade-secrets-copying claims must be dismissed because GateGuard does not adequately plead the existence of a trade secret or any copying. The SAC's one-sentence,

10-item list of purported trade secrets comprises everyday components of apartment intercoms such as circuity, casing, and antennae, and does not state with the required particularity how any of these components are unique to GateGuard or how GateGuard obtains economic value from their secrecy. Nor could GateGuard allege that these components are secret, as it is currently suing a competitor for disclosing its intercom design in a patent published in 2018. Moreover, even if GateGuard could adequately plead a trade secret, it alleges no facts that plausibly show copying by Amazon. GateGuard alleges that, "on information and belief," Amazon copied its trade secrets when developing the Ring Intercom, but GateGuard does not identify *which* purported trade secrets Amazon allegedly copied nor identify any substantial similarities between the GateGuard and Ring products, which bear no resemblance to each other and target different customers.

*Second*, GateGuard's claim for "trespass and conversion tortious interference with prospective economic advantage," SAC ¶ 189—for which GateGuard seeks to represent a class—is a nonexistent cause of action under New York law. Even if the SAC were interpreted as pleading separate claims for trespass, conversion, and tortious interference, it would still fail to state a claim. GateGuard has an existing claim for unauthorized access to its physical devices, so it bases this new claim on the notion that "unauthorized" installations of KfB infringe on buildings' saleable "access rights"—an intangible right of GateGuard's apparent invention. Presuming this so-called "right" even exists, any alleged injury to "access rights" is not the kind of physical interference with tangible property needed to state a claim for trespass or conversion. And GateGuard cannot explain how an unauthorized KfB installation at a building tortiously interferes with that building's prospective business relationships, let alone identify any such relationship, as required to state the claim.

*Third*, class certification must be denied, or GateGuard's class allegations struck, because the putative class is fundamentally uncertifiable in ways that discovery cannot change. GateGuard's class of "parties who have suffered similar injury to[ ]GateGuard," SAC ¶ 196, is circular and indeterminate, requiring resolution on the merits to ascertain class membership. Every aspect of its claimed common question—whether Amazon "obtained access to buildings without the authorization of the true owners of access rights," SAC ¶ 197—turns on the facts and circumstances of each individual KfB installation and is not susceptible to common proof. And GateGuard is—at best—an atypical member of its own class because of the eccentric and disputed way it claims to obtain other buildings' "access rights": through draconian, unenforceable terms of service for which it is currently being sued by its customers.

Nor could GateGuard adequately represent a class. Its CEO and founder, Ari Teman, was recently indicted, convicted by a jury, and sentenced to imprisonment by Judge Engelmayer for defrauding GateGuard's customers, and GateGuard has repeatedly threatened and sued other putative class members.

On these undisputed facts, class certification should be denied because GateGuard cannot meet its "significant burden to show that class certification is appropriate," *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010), and the SAC's class allegations should be struck because "the 'complaint itself demonstrates that the requirements for maintaining a class action cannot be met,'" *Borgese v. Baby Brezza Enters. LLC*, 2021 WL 634722, at *2 (S.D.N.Y. Feb. 18, 2021) (citation omitted).

## BACKGROUND

### I.    GateGuard's FAC and Amazon's Motion to Dismiss.

The SAC's introduction of trade-secret-copying and class-action allegations follows this Court's dismissal of similar claims in GateGuard's FAC (Dkt. 14).  There, GateGuard alleged, *first*, that Amazon's KfB installations trespassed on and converted GateGuard's intercoms at the same locations, damaging GateGuard devices and tortiously interfering with GateGuard's business relationships with the buildings.  FAC ¶¶ 10, 111, 147–163.[1]  *Second*, GateGuard asserted a putative antitrust class action claim alleging that Amazon used KfB to attempt to "monopolize the e-commerce delivery market."  *Id.* ¶¶ 197–202.  *Third*, GateGuard alleged that Amazon misappropriated GateGuard's trade secrets by either (a) using them to develop its own intercom; or (b) installing KfB devices in GateGuard devices, thereby allegedly "piggy-backing" off of GateGuard's proprietary technology to open doors.  *Id.* ¶¶ 164–175.

This Court granted Amazon's motion to dismiss in part.  Dkt. 30 ("MTD Order").  The Court allowed GateGuard to proceed on its claims of trespass and conversion based on alleged physical intrusions into GateGuard devices, and on the claim of tortious interference based on the

---

[1]  *See* FAC ¶ 111 ("[B]y wedging its 'extender' into GateGuard's case, Amazon damaged GateGuard electronic components. . . ."); *id.* ¶ 158 ("Defendants intentionally impaired the condition, quality and value of Plaintiff's intercom devices."); *id.* ¶ 162 ("By accessing GateGuard's intercoms without authorization and using and misusing the devices so as to install the Key for Business, Defendants wrongfully exercised dominion over Plaintiff's intercom devices.").

resulting alleged interference with GateGuard's contracts with building owners. *Id.* at 23, 25, 27. The Court dismissed GateGuard's attempted monopolization class-action claim for failure to plead a cognizable market and lack of antitrust standing, *id.* at 61, and dismissed as "conclusory" GateGuard's trade-secrets-copying claim for failure to adequately identify any trade secret Amazon had copied, *id.* at 42–43. The Court allowed GateGuard to proceed on its "second theory of misappropriation . . . that Amazon installs its Keys into GateGuard devices to 'piggy back' off of GateGuard's building-access technology." *Id.* at 42. The surviving causes of action thus all relied on *physical interference* with *physical intercoms*.

## II.    Discovery Concerning KfB Installation and Authorization.

The parties conducted 10 months of fact discovery. GateGuard identified only 33 buildings at which it claimed to have suffered injury from KfB installations. Exs. 1 at 2–3, 2.[2] Discovery showed that the third-party companies Amazon engaged to install KfB were required to follow Amazon's procedures to "obtain authorization" from building owners and provide Amazon with documentation they had done so. *See, e.g.*, Ex. 3; Ex. 4 at 33:20–34:11. GateGuard deposed building personnel to explore whether they consented to KfB installation. Ex. 5 at 43:3–16, 44:7–47:25; Ex. 6 at 11:9–19; Ex. 7 at 26:5–29:3. During discovery conferences, GateGuard explained it was "laborious" to investigate each building at which an allegedly unauthorized KfB installation occurred—indeed, "impossible to really know what went on at these properties until you drill down and find out who said what to whom." Ex. 8 at 10–11, 20–21, 31. Citing these complexities,

---

[2] Citations to "Ex. __" refer to exhibits to the accompanying declaration of David Salant ("Salant Decl.").

GateGuard conducted nine depositions, issued 33 third-party subpoenas, and obtained six fact discovery extensions.  *See* Dkts. 60, 62, 69, 72, 75, 84.

Across the record, only *one* building superintendent (not owner) expressed doubt about whether installation of KfB was authorized, and even for that building, Amazon produced documentation of authorization.  Ex. 7 at 65:19–66:4; Exs. 9, 10.

Fact discovery closed February 29, 2024.  Dkt. 88.

## III.    GateGuard's SAC.

On February 9, 2024, GateGuard moved for leave to amend its complaint.  Dkt. 107.  Leave was granted July 11, and GateGuard filed its SAC on August 19, reasserting trade-secrets-copying and putative class-action claims.  Dkts. 207, 223.

In Counts VI and VII of the SAC, GateGuard claims to possess 10 trade secrets in its intercom device, such as: the "placement and type of electronic circuitry and other components used," "voltages at which the device operates," "antennae used," "inner casing of the intercom," and "system of wall-mounting and hinges."  SAC ¶ 178.  Elsewhere, the SAC touts GateGuard's "system as a whole" comprising its "mobile app, web-based online platform, servers, communications devices, and operational data," *id.* ¶ 9, but does not allege it to be a trade secret.

The SAC also alleges that Amazon obtained an "activated" GateGuard intercom on the "pretext" it was "trouble-shooting" its "compatibility" with KfB, but that, in reality, Amazon sought to "steal[ ] the intellectual property behind the entire GateGuard system."  *Id.* ¶¶ 8, 12, 135–141.  The SAC alleges Amazon's engineers "could" have used this device to "hack into the GateGuard 'back end,'" and that a separate Amazon entity, Ring, "was thus able to study and copy features of the GateGuard intercom" into the Ring Intercom, *id.* ¶¶ 12, 138, but it does not allege Amazon actually did so.  Nor does the SAC specify which GateGuard trade secrets the Ring

Intercom—an accessory installed in users' apartments to provide smart phone connectivity and increased functionality to legacy intercom systems—allegedly misappropriated. Public photographs of the Ring Intercom and GateGuard's intercom are set forth below:




Salant Decl. ¶¶ 26–27.

GateGuard also alleges that Amazon used the GateGuard intercom to build a web-based portal that "closely parallels" GateGuard's "Property Panel" software. SAC ¶ 16. GateGuard inserts pictures of both services that bear little resemblance to each other and does not identify any point of overlap between the services. *Id.* ¶¶ 15–16, 118, 139–140. GateGuard also claims Amazon copied GateGuard's concept of sending "rich notifications." *Id.* ¶¶ 17, 143–147.

GateGuard's class-action claim (Count XI) alleges that Amazon installed KfB at "thousands" of locations across the country without authorization and thus infringed on the "access control rights" of "property owners, property managers and package delivery and management services." *Id.* ¶ 196. GateGuard does not define what "access control rights" are, but claims they are "owned by the individual buildings to which access is sought or to [sic] other entities, such as

GateGuard, with which the property has contracted for package delivery management services." *Id.* ¶ 190. GateGuard alleges that any residential building can "charge for access to property," *id.* ¶ 191, and that class members were purportedly deprived of this "revenue stream by Amazon's diversion to itself of the economic value of building access . . . without the legal owners' or right holders' consents." *Id.* ¶ 193. GateGuard does not allege that any putative class member, including GateGuard itself, ever charged anyone to access a building, but claims putative class members had "a clear economic expectancy" of doing so. *Id.* ¶ 191.

## ARGUMENT

### I.    GateGuard Fails to State a Claim for Trade Secret Misappropriation.

Counts VI and VII, which allege that Amazon misappropriated GateGuard's trade secrets, SAC ¶¶ 177–188, should be dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6). GateGuard fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A.    GateGuard Fails to Plead the Existence of a Trade Secret.

**Particularity.** To state a claim for trade secret misappropriation, GateGuard must "describe the subject matter of [any] trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465 (S.D.N.Y.) (Koeltl, J.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) (citation omitted). GateGuard has "a heavy burden to shoulder," *Sit-Up Ltd. v. IACInterActiveCorp.*, 2008 WL 463884, at *11 (S.D.N.Y. Feb. 20, 2008), and "must do more than simply list general categories of information," because, otherwise, "any claimant could survive a

motion to dismiss a trade-secrets claim with conclusory statements that simply restate the elements of a trade secret," *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 WL 557906, at *6, (S.D.N.Y. Jan. 23, 2018).

GateGuard fails to meet its burden.  The SAC contains a single sentence alleging 10 trade secrets, including GateGuard's intercom's "electronic circuitry," "voltages," "antennae," and "waterproofing"—elements common to nearly any intercom or other electronic device.  SAC ¶ 178.  The SAC does not allege any technical aspects making these items unique, *e.g.*, *how* the motherboard is configured, *what* antennae are used.  Nor does GateGuard claim it designed any of these basic components, rather than aggregate premade components.  Because the SAC fails to provide notice of "what specific aspects of [the] design are supposedly unique, valuable, and secret," *Next Comms., Inc. v. Viber Media, Inc.*, 2017 WL 4402540, at *5 (S.D.N.Y. Sept. 30, 2017), *aff'd*, 758 F. App'x 46 (2d Cir. 2018), its trade-secrets claims must be dismissed, *see Elsevier*, 2018 WL 557906, at *5–6 (dismissing trade-secrets claims in general product components such as its "GROWTH initiative," "data configuration protocols and methods," and "unique and proprietary process for" distributing information).

**Economic value.**  GateGuard also fails to adequately plead "how the secrets derive independent economic value from not being generally known."  *Zirvi*, 433 F. Supp. 3d at 465.  The owner of a trade secret must "obtain an advantage over competitors who do not know or use it."  *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997).  But GateGuard does not allege any economic value arising out of the secrecy of "the configuration of its motherboard," "the voltages at which the device operates," or "its custom-designed cables," SAC ¶ 178, which is fatal to its trade-secrets claims.  *See Julie Rsch. Lab'ys, Inc. v. Select Photographic Eng'g, Inc.*, 998 F.2d 65, 67 (2d Cir. 1993) (system designs were not trade secrets

where obvious, widely known, easy to discover or disclosed by manufacturer in sales literature); *Inv. Sci., LLC v. Oath Holdings Inc.*, 2021 WL 3541152, at *4 (S.D.N.Y. Aug. 11, 2021) (dismissing trade-secrets claim when plaintiff did not "allege why the [trade secret] gives it 'an economic leg up "over competitors who do not know or use it."'" (citation omitted)).

The SAC's conclusory assertion that "GateGuard developed its devices after thousands of hours of trial and error and years of painstaking research and development," SAC ¶ 179, does not resolve this problem because it does not allege how the end result was unique or how the hours allegedly spent translated into economically valuable trade secrets as opposed to other aspects of GateGuard's business. *See 24 Seven, LLC v. Martinez*, 2021 WL 276654, at *9 (S.D.N.Y. Jan. 26, 2021) (dismissing trade-secrets claim when, "[a]side from pointing to its expenditures, [p]laintiff makes no other allegations as to the economic value of [its] information vis-à-vis its competitors").

**"System as a whole."** The SAC does not claim GateGuard's "system as a whole" as a compilation trade secret, but even if it did, GateGuard fails its burden to "explain how various components fit together to form compilation trade secrets." *Next Comms., Inc.*, 2017 WL 4402540, at *5. GateGuard does not allege its "system as a whole" has any unique features unavailable elsewhere. The internet-enabled video intercom concept the SAC describes is common and readily ascertainable from public sources such as news articles, public patent applications, and GateGuard's website. *See* Salant Decl. ¶ 25 & Exs. 11–14. Indeed, virtually any internet-enabled device will have a "system" involving a "mobile app," "web-based online platform," "servers," and "operational data," SAC ¶ 9, and GateGuard does not say what makes its system "separate . . . from matters of general knowledge," *Zirvi*, 433 F. Supp. 3d at 465 (dismissing trade-secrets claim when product was not distinguished from other publicly available comparators) (citation omitted).

**B.    GateGuard's Claimed Trade Secrets Were Not Kept Secret.**

GateGuard's trade-secret-misappropriation claims must also fail because its alleged trade secrets have not been kept secret—"[t]he most important consideration" in establishing a trade secret. *Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 804 (S.D.N.Y. 2008). A trade secret cannot be "generally known to" the public. 18 U.S.C. § 1839(3)(B). When alleged trade secrets "become matters of public knowledge" such as "through a patent disclosure," they cannot be misappropriated. *See Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 882 (Fed. Cir. 2024).

In another lawsuit filed March 20, 2019, GateGuard alleged that its competitor MVI Systems, LLC, copied its trade secrets and obtained a now-public patent on them. *See GateGuard, Inc. v. MVI Sys. LLC*, No. 19 Civ. 2472, Dkt. 1 ¶ 1 (S.D.N.Y Mar. 20, 2019) ("MVI Compl.").[3] GateGuard claimed it shared its "proprietary software and hardware designs, components configurations, and other related features" including "GateGuard's 'backend'" with MVI (a disclosure itself sufficient to defeat its trade-secrets claim), and that MVI sought to patent these trade secrets. *Id*. ¶¶ 90–101, 110–112. MVI obtained U.S. Patent No. 10,158,831 for "a digital doorman-like communication system." Salant Decl. ¶ 15 & Ex. 14. The patent, published on December 18, 2018, discloses the same features GateGuard claims as trade secrets in this action.

---

[3] On a motion to dismiss, the court may consider "matters of which judicial notice may be taken," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016), including "court records," *Vaughn v. Consumer Home Mortg. Co.*, 470 F. Supp. 2d 248, 256 (E.D.N.Y. 2007), *aff'd*, 297 F. App'x 23 (2d Cir. 2008), and "official records of the United States Patent and Trademark Office," *Telebrands Corp. v. Del Lab'ys, Inc.*, 719 F. Supp. 2d 283, 287 (S.D.N.Y. 2010).

*Id*.  Whatever the merits of GateGuard's claims against MVI, by GateGuard's own admission, its purported trade secrets have been publicly available since 2018, years before Amazon's alleged 2021 misappropriation.

GateGuard also does not and cannot plead it kept secret key aspects of its "system as a whole" because, unlike the physical components inside GateGuard's "box," SAC ¶ 88, GateGuard's mobile app and platform are end-user-facing and publicly available for download and use by tenants.[4]  Moreover, GateGuard placed the design of its "Property Panel" and "rich notifications" in the public domain via its SAC, waiving any trade secret protection.  SAC ¶¶ 118 (screenshots of GateGuard "Property Panel"), 146 (screenshot of GateGuard "rich notifications"). These facts alone warrant dismissal.

### C.    GateGuard's Copying Allegations Are Conclusory.

The SAC also does not plausibly allege that Amazon *used* any of its purported trade secrets in the development of Ring Intercom.  To plead trade-secrets-copying claims, GateGuard must plausibly allege both Amazon's "access" to its trade secrets, and a "substantial similarity" between the GateGuard and Ring Intercom devices.  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 512 (S.D.N.Y. 2017).  It has done neither.

**Access.**  GateGuard's allegation that Amazon stole "the intellectual property behind the entire GateGuard system" by obtaining a GateGuard device "its engineers *could* use to hack into

---

[4]  *See* https://apps.apple.com/us/app/gateguard-ai-doorman/id1248879121 (last visited Sept. 26, 2024);    https://play.google.com/store/apps/details?id=xyz.gateguard.tenant&hl=en_US    (last visited Sept. 26, 2024).

the GateGuard 'back end,'" is conditional, conclusory, and implausible.  SAC ¶¶ 135–142 (emphasis added).[5]  The SAC fails to allege any fact indicating Amazon *actually intruded* into GateGuard's back-end software or examined or extracted anything, and does not even specify what information Amazon *could* have gleaned from GateGuard's back-end to facilitate any alleged misappropriation.  Finally, the SAC fails to allege any measures GateGuard took to maintain secrecy over its alleged back-end trade secrets from, for example, everyone else to whom it sold devices.  This information is wholly in GateGuard's control, and if it had facts to support these elements, it could have pleaded them.

**Substantial similarity**.  GateGuard also fails to adequately plead "a 'substantial similarity' between the original product" and "the alleged copy created by the defendant."  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 512 (S.D.N.Y. 2017) (citation omitted).  GateGuard has had 10 months of fact discovery to compare its device to Amazon's publicly sold Ring Intercom, yet cannot point to any particular feature (let alone trade secret) Ring allegedly copied from GateGuard.  The two products look nothing alike and are fundamentally different.  *See supra* 7.

GateGuard alleges KfB's "web-based portal for property managers  . . . closely parallels" a GateGuard intercom feature called "Property Panel," and that "Property Panel" and "Ring" both deliver "rich notifications" to "users" of those systems, SAC ¶¶ 16–17, 140, 143–145.  But GateGuard's "Property Panel" is concededly publicly known and accessible to property managers,

---

[5] Amazon disputes this and maintains that discovery disproved it, but accepting GateGuard's allegations as true for purposes of this motion, they fall short of establishing access, much less copying.

proving its features are not trade secrets, and GateGuard does not connect any overlap between KfB's "web-based portal" and Property Panel to any alleged trade secret. *Id.* ¶¶ 16, 140. The sole claimed similarity is their use of "rich notifications" (*i.e.*, pop-up messages with a media attachment, such as a snapshot image), which are ubiquitous and pre-date the alleged 2021 misappropriation. The SAC itself quotes *November 2020* information discussing Ring products' "rich notifications." *Id.* ¶ 147.

GateGuard thus gives no plausible "basis for its assertion that [Amazon is] currently using its proprietary information." *RCC Ventures, LLC v. Am. DG Energy, Inc.*, 2018 WL 1415219, at *3 (S.D.N.Y. Mar. 19, 2018) (rejecting "conclusory statements" of product similarity at pleadings stage). Because GateGuard has not alleged facts adequate to "nudge[ ] [its copying] claims across the line from conceivable to plausible," dismissal is appropriate. *Twombly*, 550 U.S. at 570.

## II.    GateGuard Fails to Allege a Plausible Class Action Claim.

The SAC's putative class claim of "Trespass and Conversion Tortious Interference with Prospective Economic Advantage," SAC ¶¶ 189–195, fails to state any viable claim. Fed. R. Civ. P. 12(b)(6).

*First*, Count XI must be dismissed because it "is not a recognized cause of action" and "do[es] not exist as a matter of law." *Kwan v. Schlein*, 441 F. Supp. 2d 491, 505–06 (S.D.N.Y. 2006) (dismissing claim of "false representation on associated applications"); *see Thomas v. Twitter Corp. Off.*, 2023 WL 8452200, at *6–7 (S.D.N.Y. Dec. 6, 2023) (dismissing claim of "profiting off of infringed intellectual properties"). GateGuard acknowledged it brought a nonexistent "Frankenstein" cause of action and said it wished to make "a clarification of its pleading," Dkt. 157 at 7, but never did so.

*Second*, because Count XI rests on GateGuard's allegation that Amazon installed KfB devices through "outright fraud," SAC ¶¶ 60, 197, GateGuard was required to meet Rule 9(b)'s heightened pleading requirements by alleging specific fraudulent statements or "facts that give rise to a strong inference of fraudulent intent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). GateGuard's threadbare claim does not come close to meeting that standard, as the SAC alleges *no statements* by Amazon to any building owner, let alone fraudulent statements, and should thus be dismissed.

*Third*, even if GateGuard pled separate claims for trespass, conversion, and tortious interference, it fails to plausibly allege their required elements. Count XI pleads a wholly different theory of trespass, conversion, and tortious interference than those upheld in GateGuard's FAC. The FAC claimed injury based on Amazon's alleged physical interference with and intrusion into GateGuard intercoms through installations of KfB. MTD Order 5 (quoting FAC ¶ 50). In contrast, Count XI claims injury not to physical devices or buildings, but to buildings' "access control rights," an intangible right of GateGuard's apparent invention. The claimed interference with this intangible right is inadequate to state a claim for trespass, conversion, or tortious interference, requiring dismissal.

**Trespass.** "Trespass to chattel occurs when a party intentionally damages or interferes with the use of property belonging to another." MTD Order 23 (quoting *Lavazza Premium Coffees Corp. v. Prime Line Distribs. Inc.*, 575 F. Supp. 3d 445, 474 (S.D.N.Y. 2021)). GateGuard's claimed damage to "access rights" is not a "physical interfere[nce]" with "property" as required for trespass. *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 258 (S.D.N.Y. 2012). Moreover, GateGuard's "access rights" theory does not plausibly allege "actual damages flowing from the trespass," MTD Order 23–24 (citing *Fischkoff v. Iovance Biotherapeutics, Inc.*, 339 F. Supp. 3d

408, 416 (S.D.N.Y. 2018)), because it relies on the presumption that, had KfB not been installed, class members would have obtained a "revenue stream" by selling access to the building, SAC ¶ 193. That is flatly implausible. Amazon delivery people could simply call tenants to obtain permission to enter and drop packages, as they always have done when KfB was not available.

**Conversion.** The "'key elements of conversion are (1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.'" MTD Order 21 (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006)). Unlike the FAC's claim that "Amazon inserted Keys into the fragile components of GateGuard's device without consent," MTD Order 24, the SAC's theory of injury to buildings' intangible "access rights" involves no "tangible personal property," which is the basis of "a conversion action." *Barrett v. Toroyan*, 28 A.D. 3d 331, 333 (1st Dep't 2006).

**Tortious interference.** To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege, among other things, that "the plaintiff 'had a business relationship with a third party,'" and "'the defendant knew of that relationship and intentionally interfered with it.'" MTD Order 27–28 (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006)). Unlike the FAC, which the Court found "plausibly alleges that Amazon was aware of GateGuard's relationships with customers who contracted for the installation of a GateGuard device," *id.* at 28, the SAC does not identify any business relationship any building lost through a free (albeit allegedly unauthorized) KfB installation. Its notion that class members could have sold their "access rights" to unidentified third parties, SAC ¶ 193, is pure speculation. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 115 (2d Cir. 2010) ("fail[ure] . . . to describe any third party . . . is fatal"); *Evliyaoglu Tekstil A.S. v. Turko Textile LLC*, 2020 WL 7774377, at *2 (S.D.N.Y. Dec. 30, 2020) (plaintiff must allege specific lost business relationship).

16

**III.     The Court Should Deny Class Certification or Strike GateGuard's Class Allegations.**

GateGuard's putative class is fundamentally uncertifiable.  Whether or not record evidence is considered, GateGuard cannot demonstrate any of the requirements for class certification under Rules 23(a) and (b).  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

Amazon preemptively moves to deny class certification because GateGuard cannot meet its "significant burden to show that class certification is appropriate," *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010), by demonstrating by a preponderance of the evidence that each of "the requirements of Rule 23 are met."  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (citations omitted); *see also Shaw v. Hornblower Cruises & Events, LLC*, 2022 WL 16748584, at *5 (S.D.N.Y. Nov. 7, 2022) (defendant may "'move for an order denying class certification' before the plaintiff has filed such motion") (quoting *Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005)); *Spagnola*, 264 F.R.D. at  92 (same). No amount of further discovery can change this result.

Alternatively, GateGuard's class allegations should be stricken under Rule 12(f) or 23(d)(1)(D) because "the 'complaint itself demonstrates that the requirements for maintaining a class action cannot be met.'"  *Borgese*, 2021 WL 634722, at *2 (citation omitted).

**Numerosity**.  GateGuard cannot demonstrate its putative class is "so numerous that joinder of all members is impracticable," Fed. R. Civ. P. 23(a)(1), because it admits its class size is "unknown" and makes no effort to define it numerically.  GateGuard's assertion that "[o]n information and belief, the Class Members number in the thousands," SAC ¶ 196, is conclusory. *See Shayler v. Midtown Investigations, Ltd.*, 2013 WL 772818, at *6 (S.D.N.Y. Feb. 15, 2013) (holding "speculative math" based on list of "nameless, address-less, start and end-date-less individuals" failed to establish numerosity).  After 10 months of fact discovery, GateGuard

obtained evidence that *only one entity* other than itself arguably did not authorize *one* KfB installation. GateGuard does not identify any person or entity other than itself claiming KfB installations injured its "access rights" and no other party has sued Amazon on any similar theory or joined GateGuard's lawsuit. GateGuard therefore fails to demonstrate numerosity. *See PFT of Am., Inc. v. Tradewell, Inc.*, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class allegations where plaintiff alleged class of "unknown" size "not fewer than 2,000 members" without specifically identifying members).

**Commonality and Predominance**. GateGuard fails to show "questions of law or fact common to the class," or that such questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(a)(2) & (b)(3). GateGuard must show "some of the legal or factual questions . . . can be achieved through generalized proof" and that "these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc*., 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted). But GateGuard's only identified common question—"the extent to which Amazon and its representatives obtained access to buildings without the authorization of the true owners of access rights," SAC ¶ 197—turns on the facts and circumstances of each individual KfB installation. Because individualized inquiries will "overwhelm" any common proof, the SAC's putative class cannot be certified. *See Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

*First*, the alleged commonality of class claims rests on a concept of "access control rights" that GateGuard invented from whole cloth. GateGuard theorizes that "property owners [and] property managers" own "access rights" to buildings that may be transferred to "package delivery and management services" such as GateGuard. SAC ¶¶ 190, 196. This is unfounded speculation. There is nothing common to how these disparate groups do business or the privileges they hold

over apartment buildings, and no one can or would want to bar tenants, guests, or delivery people from entering buildings.

*Second*, even presuming GateGuard validly obtained its customers' "access rights" through "its contract," SAC ¶ 107, and thus can join a putative class of "access rights" owners, determining liability, if any, to each class member would require individualized inquiries into: (a) the at-issue building's particular contracts to determine whether the building, or some third party such as GateGuard, is the "true owner" of each building's "access rights," and (b) whether KfB was installed without the authorization of such "true owner." These inquiries defeat commonality and predominance. *See Mazzei v. Money Store*, 829 F.3d 260, 273 (2d Cir. 2016) (finding common questions "did not predominate over the individual questions of whether each class member was in a contractual relationship with defendants"); *Saleem v. Corp. Transp. Grp., Ltd.*, 2013 WL 6061340, at *5 (S.D.N.Y. Nov. 15, 2013) (finding no commonality where class members signed different contracts and asserted different ownership rights over their vehicles). GateGuard acknowledged the particularity of investigating each building at which an allegedly unauthorized KfB installation occurred and sought numerous fact discovery extensions to do so for just its 33 at-issue buildings. *See supra* 5–6.

*Third*, GateGuard must prove Amazon *intentionally* installed KfB at buildings without authorization. Assessing this too will vary by building and require "mini-hearing[s]" into Amazon's knowledge of claimed authorization deficiencies to determine if any given installation of KfB actually belongs in the class, another bar to certification. *DiDonato v. GC Servs. Ltd. P'ship*, 2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021). The SAC claims Amazon's KfB partners engaged in "outright fraud" to achieve consent for KfB installations, SAC ¶¶ 60, 193, proof of which will require individualized investigations into the state of mind of each person seeking

authorization and each authorizing person. The necessity to engage in such a "highly individualized inquiry to determine liability" is why claims of fraud such as GateGuard's "are not typically appropriate for class treatment." *Borgese*, 2021 WL 634722, at *6.

*Fourth*, GateGuard offers no common mechanism for modeling damages. GateGuard posits a "concrete revenue stream" associated with each building's "access rights," SAC ¶ 193, but this conclusory allegation is nonsensical and unsupported by well-pleaded facts. Owners do not, and cannot, charge tenants, guests, or delivery people to open the door to a building, and GateGuard has not identified any building, including those with GateGuard intercoms, that has ever successfully sold "access rights" to anyone. Even assuming "access rights" are monetizable, GateGuard suggests no method to determine their value (which presumably would vary by building location, size, and circumstances) on a classwide basis. Because the damages GateGuard is seeking "cannot be determined by reference to a mathematical or formulaic calculation," there is no commonality. *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (collecting cases); *see Chow v. Shorefront Operating LLC*, 694 F. Supp. 3d 247, 254 (E.D.N.Y. 2023) (declining to find "a particular statutory or regulatory violation led every" class member to suffer the same amount of "damages" or "financial harm").

**Ascertainability**. A class is ascertainable if it is "defined using objective criteria that establish[es] a membership with definite boundaries," *In re Petrobas Sec.*, 862 F.3d 250, 257, 269 (2d Cir. 2017), making it "administratively feasible for the court to determine whether a particular individual is a member" of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). If "too much individual inquiry is required," such that the court cannot "reliably determin[e] class membership on an administratively feasible . . . basis," a class cannot be

certified. *Diverse Ptnrs., LP v. AgriBank, FCB*, 2019 WL 4305008, at \*3–4 (S.D.N.Y. Sept. 11, 2019) (citation and quotation marks omitted) (denying class certification).

GateGuard's putative class is not ascertainable. *First*, GateGuard fails to propose any time-period or geographic limitations. *See Kiobel v. Royal Dutch Petrol. Co.*, 2004 WL 5719589, at \*6 (S.D.N.Y. Mar. 31, 2004) (finding no ascertainability due to lack of limits on geographic region and mechanism of injury). *Second*, GateGuard defines its class to include persons and entities "who have suffered similar injury to GateGuard," to wit, unauthorized interference with their purported "access rights," SAC ¶ 196. That makes class membership conditional on the merits of each class member's claim, which depends on unauthorized installation. Ascertaining class membership would therefore require "adjudication of the merits of each individual's claim to determine whether they are within the class, squandering whatever efficiency gains might be had from mass litigation" and creating an impermissible "fail-safe class." *Ruiz v. Citibank, N.A.*, 2015 WL 4629444, at \*7 (S.D.N.Y. Aug. 4, 2015) (denying certification), *aff'd*, 687 F. App'x 39 (2d Cir. 2017).

**Typicality**. GateGuard cannot show its claims are "typical" of the class, Fed. R. Civ. P. 23(a)(3), because, by its own admission, the way in which it allegedly came to possess buildings' "access rights" and suffer harm does not "arise[ ] from the same course of events" as other putative class members. *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). GateGuard's claim to possess "access rights" capable of being harmed derives from a provision in its terms of service that purports to give GateGuard irrevocable and "exclusive control over package management and access control devices on each building where it is installed." SAC ¶ 107. This puts GateGuard in a position adverse to the building owners it also claims are members of the class, and building owners with GateGuard devices in a different position than those without them, and also renders

this issue subject to different investigation and proof for each building. GateGuard's terms of service appear highly atypical and unenforceable, *see* Salant Decl. ¶ 24 & Ex. 23, and GateGuard points to no other putative class member who obtained "access rights" in this way.

Moreover, GateGuard's customers, including the victims of Mr. Teman's criminal fraud, denied knowledge of or consent to GateGuard's draconian terms of service.  Salant Decl. ¶ 22; SAC ¶ 92 n.21 (admitting "a handful of customers claimed . . . they were unaware of the Company's Terms and Conditions").  In fact, some have sued GateGuard alleging the terms of service are "untenable," "preposterous," abusive, and unenforceable.  Salant Decl. ¶ 22 & Ex. 21. GateGuard's claims are thus doubly atypical: not only factually unique, but also encumbered by "unique defenses at trial, to the detriment of the class," making it ill-suited to lead a putative class. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 177 (S.D.N.Y. 2008) (citation omitted); *see Bowling v. Johnson & Johnson*, 2019 WL 1760162, at *4–7 (S.D.N.Y. Apr. 22, 2019) (denying class certification when lead plaintiff subject to unique defenses, including distinct contractual relationships and credibility issues).

For the same reasons, GateGuard lacks class standing to bring Count XI because it does not have a "sufficiently personal and concrete stake in proving" what happened to any putative class members other than itself.  *Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014); *Fletcher v. ConvergEx Grp. LLC*, 388 F. Supp. 3d 293, 297 (S.D.N.Y. 2019) (holdings plaintiff lacked class standing to assert claims for putative class members which "do not implicate the same set of concerns").

**Adequacy**.  GateGuard cannot "adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  *First*, GateGuard cannot show it is free from "potential conflicts or antagonistic interests with the rest of the class," *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D.

150, 159–60 (S.D.N.Y. 2010).  GateGuard's claim to hold exclusive building "access rights" is at odds with the interests of building owners, who may argue that *they* own those hypothetical rights notwithstanding GateGuard's terms of service.  Moreover, GateGuard has sued potential class members and threatened others with legal action.  *See, e.g.*, MVI Compl.  ¶ 1 (alleging intercom manufacturer stole GateGuard's trade secrets); *GateGuard, Inc. v. Goldmont Realty Corp.*, 2023 WL 3255348, at *1 (S.D.N.Y. May 4, 2023) (granting summary judgment against GateGuard on all its claims against multiple customers, including fraud and breach of contract); Ex. 15 at -352 (Mr. Teman telling customer "███████████████████████████████████ ██████████████████████");  Ex. 16 at -067 (threatening customer with legal action).  Those antagonistic interests disqualify GateGuard as lead plaintiff.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016) (vacating class certification where "[c]lass representatives had interests antagonistic to those of some of the class members they were representing").

*Second*, GateGuard and its CEO have engaged in "improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit."  *Friedman-Katz*, 270 F.R.D. at 160 (citation omitted).  Specifically, GateGuard's founder and CEO, Ari Teman, was recently convicted by a jury and sentenced to incarceration for criminal fraud against GateGuard's customers—building owners who are members of the putative class—because he drew funds from their bank accounts using electronic checks, claiming that he was authorized to do so under the same terms of service that purportedly give GateGuard exclusive "access rights" to every building with a GateGuard intercom.  *See United States v. Teman*, No. 19 Cr. 696 (PAE), Dkt. 253 (July 29, 2021 criminal judgment).  A lead plaintiff should be "honest[ ] and trustworthy" to adequately represent a class, *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998), and a

"conviction[ ] of fraud or other forms of dishonesty" can be disqualifying and should be here given that it relates to the terms of service whose validity is at the center of GateGuard's newly fashioned claims. *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4–5 (S.D.N.Y. July 1, 2005); *see Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (collecting cases). Mr. Teman was only released from prison shortly before the SAC was filed. Ex. 17 at 20:9–12. His criminality is thus "current and . . . sp[eaks] directly to whether [GateGuard] could be entrusted with protecting the interests of the absent class members." *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 448 (S.D.N.Y. 2023). It cannot.

Moreover, Mr. Teman has sent a variety of "highly profane, aggressive emails to [Amazon's] executive[s]," "ma[d]e retaliatory statements and promises," "published false information about" Amazon, and "sent the [disparaging] information to a Bloomberg reporter," *Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *3 (S.D.N.Y. Dec. 1, 2016), all of which further disqualify him and his company as lead plaintiffs. *See* Ex. 18 (threatening and disparaging Amazon CEO and other personnel as "███████" and "███████"); Ex. 19 at -74 (telling customer "███████████████████"); *see* Ex. 20 (disparaging Amazon to Bloomberg reporter).

*Third*, GateGuard cannot demonstrate the adequacy of its counsel to lead the class. *See* Fed. R. Civ. P. 23(g). GateGuard's counsel identified three class action lawsuits he has worked on, *see* Dkt. 158 ¶ 9, but none reflects any class certification motion practice or the certification of a class. *See Wynn v. N.Y.C. Housing Auth.*, 314 F.R.D. 122, 129 (S.D.N.Y. 2016) (denying class certification and finding proposed lead counsel inadequate when "this is the first motion for class certification counsel has ever filed"). GateGuard also repeatedly flouted this Court's discovery deadlines and failed to produce a timely or adequate privilege log, leading to a ruling that GateGuard waived attorney-client privilege over its document productions. *See* Dkts. 155,

210, 229. "One who will not comply wholeheartedly and fully with the discovery requirements of modern federal practice, is not to be regarded by this Court as one to whom the important fiduciary obligation of acting as a class representative should be entrusted." *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976).

## CONCLUSION

For the foregoing reasons, the SAC's class-action and trade-secrets-copying claims should be dismissed, class certification should be denied, and the SAC's class allegations struck.

Dated: New York, New York
      October 1, 2024               GIBSON, DUNN & CRUTCHER LLP

                               By:  */s/ Anne Champion*

                               Anne Champion
                               Christopher D. Belelieu
                               David P. Salant
                               Marc Aaron Takagaki

                               200 Park Avenue
                               New York, NY  10166-0193
                               Telephone:  (212) 351-4000
                               AChampion@gibsondunn.com
                               CBelelieu@gibsondunn.com
                               DSalant@gibsondunn.com
                               MTakagaki@gibsondunn.com

                               *Attorneys for Defendants Amazon.com,*
                               *Inc., Amazon.com Services LLC,*
                               *Amazon Logistics Inc., and Ring LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Individual Rule II(D), I, Anne Champion, an attorney duly admitted to practice law before this Court, hereby certify that the foregoing memorandum of law contains 6,995 words and that this memorandum complies with the Court's applicable formatting rules.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.


Dated: New York, New York
       October 1, 2024                        By:  */s/ Anne Champion*
                                                   Anne Champion