UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.,

                    Plaintiff,

      v.

AMAZON.COM, INC.,
AMAZON.COM SERVICES, INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC.,
RING LLC,

                    Defendants

No. 21 Civ. 9321 (JGK) (VF)

# AMAZON'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS, TO DENY CLASS CERTIFICATION, AND TO STRIKE CLASS ALLEGATIONS

GIBSON, DUNN & CRUTCHER LLP
Anne Champion
Christopher D. Belelieu
David P. Salant
Marc Aaron Takagaki

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Logistics Inc., and Ring LLC*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ...................................................................................................................................3

    I.    Ordinary Standards Apply to Amazon's Motion ..............................................3

    II.    GateGuard's Claim for Trade Secret Misappropriation Should Be Dismissed ...........................................................................................................3

    III.    GateGuard Fails to Allege a Plausible Class Claim .........................................8

    IV.    The Court Should Deny Class Certification or Strike GateGuard's Class Allegations ................................................................................................9

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Care Env't Corp. v. M2 Techs., Inc.*,
  2006 WL 148913 (E.D.N.Y. Jan. 18, 2006) .................................................................. 1, 3

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................................................................ 11

*Elsevier Inc. v. Dr. Evidence, LLC*,
  2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ....................................................................... 5

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
  354 F. Supp. 2d 471 (S.D.N.Y. 2005) ................................................................................ 9

*Finocchiaro v. NQ Mobile, Inc.*,
  2016 WL 7031613 (S.D.N.Y 2016) .................................................................................. 13

*Garcia De Leon v. N.Y. Univ.*,
  2022 WL 2237452 (S.D.N.Y. June 22, 2022) .................................................................. 13

*Kairam v. West Side GI, LLC*,
  793 F. App'x 23 (2d Cir. 2019) ...................................................................................... 5, 6

*Kawaauhau v. Geiger*,
  523 U.S. 57 (1998) ............................................................................................................ 10

*In re Margulies*,
  517 B.R 441 (S.D.N.Y. 2014) .......................................................................................... 11

*Medinol Ltd. v. Boston Sci. Corp.*,
  346 F. Supp. 2d 575 (S.D.N.Y. 2004) ................................................................................ 5

*In re Mylan N.V. Sec. Litig.*,
  379 F. Supp. 3d 198 (S.D.N.Y. 2004) ................................................................................ 4

*Norman v. Arcs Equities Corp.*,
  72 F.R.D. 502 (S.D.N.Y. 1976) ........................................................................................ 14

*In re Parmalat Sec. Litig.*,
  421 F. Supp. 2d 703 (S.D.N.Y. 2006) ................................................................................ 4

*Passman v. Peloton Interactive, Inc.*,
  671 F. Supp. 3d 417 (S.D.N.Y. 2023) .............................................................................. 11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016) ............................................................................................. 13

*Red Rock Sourcing LLC v. JGX, LLC*,
  2023 WL 3736442 (S.D.N.Y. May 31, 2023) .................................................................... 3

# TABLE OF AUTHORITIES
(continued)

Page

*Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon*,
  775 F.3d 154 (2d Cir. 2014) ................................................................................................. 12

*Royal Park Invests. SA/NV v. Wells Fargo Bank, N.A.*,
  2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) .......................................................................... 11

*Russell v. Forster & Garbus, LLP*,
  2020 WL 1244804 (E.D.N.Y. Mar. 16, 2020) ........................................................................ 9

*Sapir v. Rosen*,
  2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021) ........................................................................ 5

*Scott v. Chipotle Mexican Grill, Inc.*,
  954 F.3d 502 (2d Cir. 2020) ................................................................................................. 14

*Steering Comm. v. Exxon Mobil Corp.*,
  461 F.3d 598 (5th Cir. 2006) ................................................................................................ 11

*United States v. Teman*,
  465 F. Supp. 3d 277 (S.D.N.Y. 2020) .................................................................................. 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................................................................ 9

*In re WorldCom Sec. Litig.*,
  308 F. Supp. 2d 338 (S.D.N.Y. 2004) .................................................................................... 7

*Wright v. Ernst & Young LLP*,
  152 F.3d 169 (2d. Cir. 1998) .................................................................................................. 7

*Xianglin Shi v. Sina Corp.*,
  2005 WL 1561438 (S.D.N.Y. July 1, 2005) ......................................................................... 13

*Zabit v. Brandometry, LLC*,
  540 F. Supp. 3d 412 (S.D.N.Y. 2021) .................................................................................... 6

## Rules

Fed. R. Civ. P. 9(b) ........................................................................................................................ 8

Fed. R. Civ. P. 12(d) ................................................................................................................. 4, 6

Fed. R. Civ. P. 23 .............................................................................................................. 2, 9, 11

**PRELIMINARY STATEMENT**

GateGuard's opposition to Amazon's motion to dismiss two claims in GateGuard's SAC, to deny class certification, and to strike class allegations, Dkt. 255 ("Opp'n"), is built on exaggerations and innuendo that cannot fill gaps in its pleading. Amazon's motion should be granted.

Rather than address the merits, GateGuard tries to avoid this Court's scrutiny by falsely claiming the issues in this motion were already decided. Amazon was not confined to objecting to Judge Figueredo's order granting GateGuard's motion for leave to amend. Motions to dismiss routinely follow motions for leave to amend and "one cannot constitute the law of the case for the other." *Care Env't Corp. v. M2 Techs., Inc.*, 2006 WL 148913, at *8 n.9 (E.D.N.Y. Jan. 18, 2006). And GateGuard simply ignores Amazon's motion to deny class certification, and to strike class allegations, which were never before Judge Figueredo. GateGuard also wrongly claims that this Court "already held that GateGuard has sufficiently alleged the existence of trade secrets," Opp'n 8, when, in reality, the Court did not reach this issue on Amazon's prior motion to dismiss, Dkt. 30 at 37 n.15, 40 n.16.

GateGuard rests its trade-secrets-copying theory on the allegation that Amazon had access to GateGuard's technology by means of a GateGuard device it obtained for compatibility testing after GateGuard complained to Amazon—prior to filing this case and prior to accusing Amazon of copying its purported trade secrets—that KfB was causing GateGuard intercoms to malfunction. GateGuard alleges that it is "a reasonable inference" that Amazon obtained the device to copy GateGuard's trade secrets into its Ring Intercom accessory. Opp'n 8. Not only have GateGuard's theories proved unfounded in discovery, but access alone cannot support a copying claim where GateGuard fails to adequately plead that it possesses a trade secret, from whose secrecy it derives economic value, and which Amazon in fact misappropriated.

1

As to its putative class action, GateGuard attempts to salvage its unintelligible "trespass and conversion tortious interference with prospective economic advantage" claim by recasting it to include "physical harm to the devices intruded upon." Opp'n 18. GateGuard cannot amend its pleading in a brief, and Count XI alleges that unauthorized KfB installations injured buildings' "access control rights" and thus does not state a claim for trespass or conversion. GateGuard's tortious interference claim fails because GateGuard does not allege the requisite intent.

Finally, GateGuard does not substantively respond to Amazon's motion to strike or deny certification of its putative class of "property owners, property managers and package delivery and management services" whose "access control rights" Amazon purportedly infringed through unauthorized KfB installations. SAC ¶ 196. Mischaracterizing discovery, GateGuard fails to meet its burden to produce evidence supporting the required elements of Rule 23(a) and (b). GateGuard's attempt to identify whether KfB "was installed without authorization" as a common class question flounders as this quintessential individualized question requires "laborious" building-by-building investigation. Dkt. 242 ("Br.") 5. GateGuard also has not explained how it is a typical or adequate class representative. GateGuard's founder and CEO is a convicted felon and GateGuard is at odds with potential class members in view of its claim to own exclusive "access control rights" to buildings at which GateGuard intercoms are installed, making it an unsuitable class representative.

Because GateGuard's class claim is fundamentally uncertifiable in ways that discovery cannot change, Amazon's motion should be granted.

## ARGUMENT

**I.      Ordinary Standards Apply to Amazon's Motion.**

GateGuard contends that Amazon is seeking a "second bite at the apple" by relitigating issues already decided by Judge Figueredo.  Opp'n 2, 6–7.  GateGuard ignores the recent procedural history.  In its pre-motion letter (Dkt. 233), Amazon specifically explained which motions it planned to file and offered to combine them in a single brief to streamline proceedings.  GateGuard made no objection, and the Court granted Amazon's request.  Dkt. 234.

GateGuard cites no rule requiring Amazon to first object to Judge Figueredo's order, and courts have held in granting amendment that defendants may "further challenge the legal sufficiency of those claims . . . on a motion to dismiss." *Red Rock Sourcing LLC v. JGX, LLC*, 2023 WL 3736442, at *11 (S.D.N.Y. May 31, 2023).  Caselaw is also clear that a motion to dismiss can follow an order granting leave to amend because the motions raise "two different issues, and one cannot constitute the law of the case for the other." *Care Env't*, 2006 WL 148913, at *8 n.9.  Indeed, this court has held that the pleading need only raise "colorable claims" on a motion to amend and that "a comprehensive legal analysis [should be] deferred to subsequent motions to dismiss." *Red Rock*, 2023 WL 3736442, at *9.  GateGuard admits a motion to dismiss "can be brought at any time," Opp'n 6, and cannot deny that it is reviewed under the ordinary *Iqbal* standard.  Br. 8.  Moreover, Amazon makes arguments for dismissal that were not before Judge Figueredo, and GateGuard totally ignores Amazon's motion to strike and deny class certification, Opp'n 20–21, which also were never before Judge Figueredo.  Br. 17.

**II.     GateGuard's Claim for Trade Secret Misappropriation Should Be Dismissed.**

GateGuard fails to state a trade-secret-copying claim for three independent reasons: failure to (1) identify any trade secrets with specificity; (2) plead economic value resulting from the

3

secrecy of the purported trade secrets; and (3) plead any act of misappropriation. Instead, GateGuard improperly claims that all aspects of its *ubiquitous intercom system* are trade secrets, and that known aspects of that system were misappropriated simply because Amazon's systems allegedly have similar functionalities that are entirely unrelated to GateGuard.[1]

*First*, GateGuard fails to explain how the 10-item list of purported trade secrets in the SAC (¶ 178), describes its trade secrets with "sufficient particularity to separate [them] from matters of general knowledge." Br. 8–9. ███████████████████████████████████████ ███████████████████████████.[2] Attempting to remedy this failure, GateGuard

---

[1] GateGuard contends "the Court has already rejected [Amazon's] argument" that GateGuard failed to plead the existence of trade secrets. Opp'n 10. But whether GateGuard alleges its trade secrets with sufficient "specificity" or "independent economic value" was not "actually decided" on first motion to dismiss, Dkt. 30 at 37 n.15, 40 n.16, and Amazon can argue them now. *See In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 210 n.7. Further, GateGuard's SAC "supersedes the original and entitles [Amazon] to raise substantive arguments . . . in a new responsive pleading, even if those arguments were not raised in response to the original complaint." *See In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006).

[2] GateGuard improperly cites evidence when opposing Amazon's motion to dismiss. *See, e.g.*, Opp'n 8–9. If GateGuard's evidence is "not excluded," Amazon "must be given a reasonable opportunity to present all the material that is pertinent[.]" Fed. R. Civ. P. 12(d). ████████ ██████████████████████████████████████████████████████████████████████,

4

broadens its trade secrets to encompass its "entire system." Opp'n 11–12. That is not pled in the SAC, and even if it were, it would fail. *See* SAC ¶ 178. GateGuard's failure to explain what exactly about its system is a trade secret is especially glaring given it is a ubiquitous, publicly-mounted intercom system available for all to see and use. GateGuard's blanket claim over the "entire system" fails to put Amazon "on notice of what items [it] allegedly misappropriated" or to allow the Court to "ascertain the protectability of the information at issue," requiring dismissal. *Sapir v. Rosen*, 2021 WL 4482277, at *5, 7 (S.D.N.Y. Sept. 30, 2021); *see also Elsevier Inc. v. Dr. Evidence, LLC*, 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (finding "list[ing] general categories of information" insufficient to plead trade secret).

GateGuard's assertions of a "portal" and "rich notifications" (*i.e.*, videos or photographs of visitors sent to a user's phone) as not being "widely available," Opp'n 11, even if true, is not sufficient. Rather, GateGuard must plead that it took steps to maintain the secrecy of those features, that they are not reasonably ascertainable, and that they have independent economic value because they are not generally known. Br. 9; *see Kairam v. West Side GI, LLC*, 793 F. App'x 23, 27–28 (2d Cir. 2019). Because "rich notifications" and "portal" features are available to GateGuard customers, SAC ¶¶ 145–46, GateGuard concedes they are "product design[s]" "embodied in a product and held out to the public for sale," and thus lost "whatever secrecy [they]

---

[REDACTED]. Exs. 1; 2; 3 at 222:20–223:4; Dkts. 204-1 & 240-22. "Ex." refers to exhibits to the accompanying declaration of Anne Champion ("Champion Decl.").

had and . . . whatever trade secret protection [they] once may have been entitled to claim." *Medinol Ltd. v. Boston Sci. Corp.*, 346 F. Supp. 2d 575, 607 (S.D.N.Y. 2004).

GateGuard doesn't respond to, and therefore concedes, Amazon's arguments regarding its failure to plead a compilation trade secret adequately, and doesn't explain how the various components of its system "fit together to form compilation trade secrets." Br. 10.

*Second*, while GateGuard claims "economic value in the GateGuard system" in general, Opp'n 12–13, it fails to plead or argue that its secrecy is what makes it valuable. Br. 9; *see Kairam*, 793 F. App'x at 27–28.[3] Indeed, the features GateGuard identifies in its intercom system are designed to be used by buildings, residents, and their guests; and thus derive economic value from being widely available—the opposite of secrecy. Moreover, GateGuard has taken insufficient measures to guard its trade secrets. Champion Decl. ¶ 2 (citing Dkt. 204-1); Br. 11–12.

*Third*, GateGuard's copying allegations remain conclusory and implausible. GateGuard fails to identify any evidence of copying, even after full discovery. Instead, it relies on suppositions about a GateGuard device that Amazon obtained, and on alleged similarities between

---

[3] GateGuard's admission that at least one customer consented to installation of KfB, Opp'n 25, is an admission that any trade secrets it may have had were destroyed. *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021) (trade secrets "extinguished" when disclosed to the public or others under no confidentiality obligation).

6

Amazon and GateGuard devices.  Opp'n 8–9, 13.[4]  Indeed, GateGuard's claims of misappropriation of the "portal" and "rich notifications" features are not even related to the device that Amazon obtained, as both are ***web-based features*** not embodied in the device itself.  SAC ¶¶ 15–16 ("web-based portal"); 140; 145–46 (GateGuard's rich notifications are "sent as a still image to a user's mobile phone").  GateGuard disregards that all intercom devices have common features which are entirely unrelated to GateGuard and which GateGuard cannot possibly claim as its own and fails to distinguish between them.  Thus, the more reasonable inference is that any similarities between Amazon and GateGuard devices is merely a result of both companies relying on publicly available information concerning intercoms.

Finally, GateGuard's claim that Amazon misappropriated information it obtained from a GateGuard pitch fails because GateGuard fails to plead that its "pitch" in October 2020 was

---

[4] Again, if GateGuard's evidence is "not excluded," Fed. R. Civ. P. 12(d), countervailing evidence demonstrates that Amazon ordered the device in response to GateGuard's complaints about device incompatibility; Amazon never examined or even fully unwrapped the device; Amazon's consultant discarded the device, among many other items, when he lost the lease on his workspace; and ███████████████████████████████████████████████████████. *See* Dkts. 124-5 ¶¶ 10–17; 124-6; 124-8 at 365:2–8, 391:13–392:12; 124-13 at 118:7–14, 121:18–25, 166:4–12; Champion Decl. ¶ 48 & Exs. 43–45.  Moreover, Ring used "video doorbell" and "rich notification" capabilities as early as 2015, and patented related technology as early as December 2017. Dkt. No. 240-11; Exs. 4–7.  Amazon acquired Ring in 2018. Dkt. 93-3.

7

provided under any confidentiality obligation. Opp'n 9; SAC ¶ 16; *see Zabit*, 540 F. Supp. 3d at 422.

### III. GateGuard Fails to Allege a Plausible Class Claim.

GateGuard cannot salvage its class claim for "trespass and conversion tortious interference with prospective economic advantage," however construed. SAC ¶¶ 189–195.

With respect to trespass and conversion, GateGuard now contends it has alleged "physical harm to the devices," in addition to interference with buildings' "access rights," Opp'n 18, 20, but "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d. Cir. 1998); *see In re WorldCom Sec. Litig.*, 308 F. Supp. 2d 338, 345 (S.D.N.Y. 2004). The "physical harm" theory isn't pleaded in Count XI, which focuses exclusively on "access rights." SAC ¶¶ 190–191, 194, 197. Even if the Court were to consider the unpleaded "physical harm" theory, it's too conclusory to survive dismissal. There isn't a single detail in the SAC regarding "physical harm" to class member's devices, nor are there allegations that KfB was incompatible with intercoms other than GateGuard's.

GateGuard has no response to Amazon's argument that tortious interference requires awareness of and intentional interference with existing business relationships. Br. 15–16. GateGuard identifies no such relationship, and fails to plead its "outright fraud" claim with particularity as required by Rule 9(b). Br. 15.

Rather than address these threshold defects, GateGuard contends it has evidence of a "widespread pattern of wrongful conduct." Opp'n 14. It cites installation agreements that supposedly "looked suspicious" and claims, citing testimony from two building superintendents,

8

that KfB installations occurred in a "fraudulent manner." Opp'n 14–15. This characterization of the evidence, like much of GateGuard's opposition, is misleading.

During discovery, GateGuard identified only 33 addresses at which it alleged harm, Br. 5, and Amazon produced against that list, including evidence of authorization for each of them. Exs. 8–36; Dkt. 124-11. GateGuard's insinuation that discovery showed dozens of buildings with unauthorized installations is simply false. GateGuard also misrepresents the testimony of the building superintendents. GateGuard claims Mr. Tiburcio testified "he was never given" documents to sign and "the signature that appeared on the Installation Agreement he had purportedly executed was forged." Opp. 15. Mr. Tiburcio testified that while he did not personally recall agreeing to installation, his boss, Paul Bagrowicz, expressly approved installation of KfB. Ex. 37 at 116:14–117:21; 17:6–10; 17:24–18:8. As for Mr. Rodriguez, GateGuard claims that he did not consent to KfB installation, Opp'n 15, but documents show otherwise, and Mr. Rodriguez admitted he had multiple superiors and would not necessarily know whether someone else had authorized the installation. Ex. 38 at 23:11–20, 46:10–47:4.[5]

None of GateGuard's unpleaded allegations, even if considered by the Court, moves GateGuard's class claim from "possible" to "plausible."

## IV. The Court Should Deny Class Certification or Strike GateGuard's Class Allegations.

GateGuard conflates the standards for Amazon's motion to strike class allegations and Amazon's motion to deny class certification. While both motions highlight incurable problems

---

[5] Moreover, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. 32 at 1; Ex. 39.

9

with GateGuard's proposed class, a preemptive motion to deny class certification requires a plaintiff to come forward with classwide evidence. Br. 17; *see Fedotov v. Peter T. Roach & Assocs., P.C.*, 354 F. Supp. 2d 471, 478 (S.D.N.Y. 2005). Despite having had more than 10 months of fact discovery and proffering evidence on other issues in its Opposition, GateGuard offers no meaningful evidence showing it can satisfy the requirements of Rule 23. Br. 17; *see Fedotov*, 354 F. Supp. 2d at 478; *Russell v. Forster & Garbus, LLP*, 2020 WL 1244804, at *3 (E.D.N.Y. Mar. 16, 2020). Allegations, at this stage, do not suffice, as "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule [23]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). What little evidence GateGuard proffers at most might support GateGuard's individual claims, but does nothing to suggest a classwide claim is viable or plausible.

**Numerosity.** GateGuard admits it is speculating about numerosity, Opp'n 20. It relies on Judge Figueredo's order suggesting numerosity was adequately pleaded, Opp'n 20 n.7, but allegations aren't evidence. And despite months of discovery, GateGuard doesn't dispute it hasn't identified *any* other member of its putative class.

**Commonality and Predominance.** GateGuard now characterizes the purported common question as "whether the Key was installed without authorization." Opp'n 21. That contention undermines, rather than supports, class certification. As GateGuard has stated, determining authorization requires a fact-intensive, building-specific inquiry that is "laborious" and

10

"impossible to really know" "until you drill down and find out who said what to whom." Br. 5.[6] Elsewhere, GateGuard says each case will require analysis of each building's KfB installation agreement, Opp'n 22, which also cuts against commonality. Br. 19.

GateGuard attempts to skirt whether Amazon *intentionally* installed KfB without authorization by asserting that Amazon's intent may be presumed if GateGuard can prove Amazon had a *de facto* or company-wide policy of failing to monitor third-party installers, Opp'n 22. But blackletter law requires that "intent" behind an intentional tort be proved through evidence of specific intent. "Presumptions" are insufficient. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998) ("Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself."); *In re Margulies*, 517 B.R 441, 452 (S.D.N.Y. 2014) (similar). This issue, too, will require building-by-building evidence.

Finally, GateGuard ignores the Supreme Court's dictate that every Rule 23(b)(3) class action establish that damages are capable of being measured on a classwide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *Royal Park Invests. SA/NV v. Wells Fargo Bank, N.A.*, 2018 WL 739580, at *15 (S.D.N.Y. Jan. 10, 2018), *adopted* 2018 WL 1831850. GateGuard says a damages model "could easily be constructed," Opp'n 23, but doesn't propose any model for the damages flowing from its "access" theory, much less from its newly stated "physical harm" theory. *See* Br. 20; *see also Royal Park*, 2018 WL 739580, at *15 (no predominance where damages

---

[6] Additionally, if GateGuard is permitted to expand its class claim to include "physical harm" to devices, electrical engineers will need to examine *every* device of every class member to determine if there is harm and if such harm was caused by KfB.

11

methodology's "inputs" "require individualized determinations"); *Passman v. Peloton Interactive, Inc.*, 671 F. Supp. 3d 417, 464 (S.D.N.Y. 2023) (rejecting model that did not show classwide damages could be calculated using common proof). GateGuard claims "Plaintiffs have lost a clear and concrete revenue stream," SAC ¶ 193, but doesn't allege that any putative class member, *including GateGuard*, ever charged—*i.e.*, received revenue—for "access." Further, any classwide damages model cannot overcome that the "value of the access to Amazon," SAC ¶ 190, if any, is a function of individualized factors such as the number of units in the building and the neighborhood's characteristics, SAC ¶ 53. *See Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006).

Thus, even if GateGuard were permitted additional discovery, it would not obviate the need for individualized inquiries on multiple elements of its claims. That precludes commonality and predominance.

**Ascertainability.** GateGuard now asserts the class is nationwide and begins in 2017, Opp'n 23–24. That isn't pled, but even if it were, these boundaries are still too indefinite to satisfy ascertainability. Br. 20–21. GateGuard's admission that one of its customers is not in the class because it consented to a KfB installation (notwithstanding GateGuard's contract terms, SAC ¶¶ 92–97), Opp'n 25, further confirms that class membership cannot be ascertained without individualized inquiries.

**Typicality.** GateGuard does not dispute Amazon's strongest argument against typicality: unlike most class members, GateGuard does not inherently own "access control rights" and instead must rely on its contracts with its customers to *take* their access control rights. Br. 21–22. Those contracts have led to several disputes between GateGuard and its customers. Ex. 40 at 980:6–982:11; *see United States v. Teman*, 465 F. Supp. 3d 277, 287 (S.D.N.Y. 2020) (customers

12

testified they "owned the devices" notwithstanding contracts saying otherwise); Dkt. 240-21 (customers attacking GateGuard's contracts). If those customers succeed, GateGuard won't even have an argument to possess "access rights," to the extent those are cognizable at all, which necessarily means it won't have the same interest in the claims as the rest of the class members. Further, GateGuard will be preoccupied with these unique issues related to its contracts, rendering its claims atypical and making it an ill-suited class representative. Br. 21–22. No other class member will need to defend against attacks from other class members (or Amazon) on the very contracts that give them a right to be in the class.

GateGuard also brushes past Amazon's standing argument, claiming GateGuard and the class's claims "implicate the same set of concerns." Opp'n 24. But that misses the point. The issue is that GateGuard hasn't shown it has a "sufficiently personal and concrete stake" or "any real interest in litigating the absent class members' claims." *Ret. Bd. of the Policemen's Annuity & Ben. Fund v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014). On the contrary, it's in GateGuard's interest to prove it owns the access rights of some would-be class members. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233 (2d Cir. 2016) (objective of "maximiz[ing] [plaintiff's own] cash compensation" is antagonistic to the class). Indeed, GateGuard is already attempting to keep one of its customer-adversaries, Goldmont, out of the class, Opp'n 25, and has accused other class members of acting in "bad faith" for challenging the very contracts that allegedly transferred their "access control rights" (and hence, their stake in the class) to GateGuard, SAC ¶ 92 n.21.

GateGuard also hasn't alleged that *anyone* charged for "access control" and therefore was harmed.

13

**Adequacy.** The potential conflicts of interest described above also give rise to serious concerns about GateGuard's adequacy as a class representative. Br. 22–23. Additionally, GateGuard's only response to Amazon's arguments concerning the credibility of its CEO—who was convicted of multiple felonies for stealing from putative class members—is that those issues don't "touch upon" the prosecution of the lawsuit. Opp'n 25. But putting the focus of the litigation on "credibility—not on the claims" would be detrimental to the class. *Garcia De Leon v. N.Y. Univ.*, 2022 WL 2237452, at *13 (S.D.N.Y. June 22, 2022); Br. 23–24. And a "conviction[ ] of fraud or other forms of dishonesty" is disqualifying. *Xianglin Shi v. Sina Corp.*, 2005 WL 1561438, at *4–5 (S.D.N.Y. July 1, 2005). GateGuard fails to offer any reassurance on that score, and emails its CEO recently sent to Amazon and its counsel raise serious concerns about his temperament. Exs. 41–42; *see Finocchiaro v. NQ Mobile, Inc.*, 2016 WL 7031613, at *3 (S.D.N.Y. 2016) ("[H]ighly profane, aggressive emails" sent to defendant raise a "serious risk that [ ] animus . . . would prevent [lead plaintiff] from acting in the class's best interests."); *Norman v. Arcs Equities Corp.*, 72 F.R.D. 502, 506 (S.D.N.Y. 1976) (finding inadequate class representative "motivated by spite").

GateGuard's bid to represent a class that includes its current and former customers is also undercut by its efforts to exclude from the class customers with whom it is actively feuding, Br. 23–24, effectively an admission that these conflicts would preclude it from adequately representing "the due process rights of absent class members." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 519 (2d Cir. 2020).

GateGuard fails to meaningfully address Amazon's arguments about the adequacy of proposed lead counsel. GateGuard claims its counsels has worked on "various class actions," Opp'n 26, but doesn't identify any cases in which a class was certified or counsel was appointed

14

lead counsel, and Amazon hasn't found any. GateGuard also cannot deny that its counsel negligently waived attorney-client privilege over its entire document production, which creates yet more doubt about the future interests of the class. Opp'n 26 n.9; Br. 24–25.

## CONCLUSION

The SAC's class and trade-secrets-copying claims should be dismissed. In the alternative, class certification should be denied, or the class allegations struck.

Dated: New York, New York
   November 27, 2024     GIBSON, DUNN & CRUTCHER LLP

                By: */s/ Anne Champion*

                  Anne Champion
                  Christopher Belelieu
                  David Salant
                  Marc Aaron Takagaki

                  200 Park Avenue
                  New York, NY 10166-0193
                  Telephone: (212) 351-4000
                  AChampion@gibsondunn.com
                  CBelelieu@gibsondunn.com
                  DSalant@gibsondunn.com
                  MTakagaki@gibsondunn.com

                  *Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to the Court's Individual Rule II(D), I, Anne Champion, an attorney duly admitted to practice law before this Court, hereby certify that the foregoing memorandum of law contains 3,787 words (Dkt. 263) and that this memorandum complies with the Court's applicable formatting rules. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum.

Dated: New York, New York
      November 27, 2024                                       By: */s/ Anne Champion*
                                                                     Anne Champion