# EXHIBIT 40

K1RVTEM1

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4              v.                           19 CR 696 (PAE)
5  ARI TEMAN,
6              Defendant.                   JURY TRIAL
7  ------------------------------x
8                                           New York, N.Y.
                                            January 27, 2020
9                                           9:00 a.m.
10
   Before:
11
                    HON. PAUL A. ENGELMAYER,
12
                                            District Judge
13
14                      APPEARANCES
15
   GEOFFREY S. BERMAN,
16      United States Attorney for the
        Southern District of New York
17 KEDAR S. BHATIA
   EDWARD A. IMPERATORE
18      Assistant United States Attorneys
19 JOSEPH A. DIRUZZO, III
   JUSTIN GELFAND
20      Attorneys for Defendant
21 ALSO PRESENT:  DANIEL ALESSANDRINO, NYPD
                  WILLIAM MAGLIOCCO, Paralegal, USAO
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:21-cv-09321-JGK-VF    Document 268-40    Filed 11/27/24    Page 3 of 5
Case 1:19-cr-00696-PAE    Document 105    Filed 02/14/20    Page 120 of 189
K1R7TEM4                      Summation - Mr. Bhatia                    980

1            What is in dispute here is whether the defendant acted
2   with criminal intent when he cut and deposited those checks.
3   Ladies and gentlemen, the evidence proves beyond a reasonable
4   doubt that the defendant represented to the banks that he was
5   issuing checks with the permission of his customers and that
6   was a lie.  The defendant had no permission to issue these
7   checks and he knew it.  Let me talk you through some of the
8   ways that we know he knew he didn't have permission.
9            First, you know from the customers themselves that
10  they never gave the defendant permission to write or deposit
11  these checks.  The defendant knew it.  All three of the
12  customers -- Mr. Gabay, Ms. Soon-Osberger and Mr. Soleimani --
13  told you squarely and told you without hesitation that they did
14  not give Mr. Teman any permission to write those checks.  They
15  all told you the exact same thing, and in fact their stories
16  were largely pretty similar:  Mr. Teman absolutely did not have
17  permission to create and deposit those checks.  And they told
18  you they had no idea he was going to do it.
19           Let's take a look first at some of Mr. Gabay's
20  testimony.  He told you -- and this is on his questioning:
21  "Q.  At any point did Mr. Teman ever ask permission to pay
22  himself by issuing checks from Coney's bank accounts?
23  "A.  No.
24  "Q.  And if he had asked your permission to do that, to write
25  checks from your accounts to himself, what would you have said?

Case 1:21-cv-09321-JGK-VF Document 268-40 Filed 11/27/24 Page 4 of 5
Case 1:19-cr-00696-PAE Document 105 Filed 02/14/20 Page 121 of 189   981
K1R7TEM4                          Summation - Mr. Bhatia

1    "A.  I would have said no."
2             And what did Mr. Soleimani say?  Mr. Soleimani told
3    you the same thing:
4    "Q.  What did he ever tell you during those conversations about
5    his authority to draw checks on behalf of those entities?
6    "A.  He never mentioned anything.
7    "Q.  And if he had mentioned them, would that have stuck out to
8    you?
9    "A.  Yes.
10   "Q.  And what would have been your reaction if you had heard
11   about them?
12   "A.  I would have denied it.
13   "Q.  What do you mean denied it?
14   "A.  Denied his authority to draw any checks out of my
15   account."
16            That's what Mr. Soleimani told you.  He told you the
17   same thing all the other witnessers did, which is that if Mr.
18   Teman had ever asked those customers can I draw a check from
19   your account when I think I deserve money, of course they would
20   have said no.  Of course they would have said no.
21            You heard Ms. Bonnie Soon-Osberger tell you the same
22   thing.  I asked her:
23   "Q.  You testified previously that you never saw any provision
24   about -- you did not see a provision about allowing him to draw
25   checks from your account.

Case 1:21-cv-09321-JGK-VF Document 268-40 Filed 11/27/24 Page 5 of 5
Case 1:19-cr-00696-PAE Document 105 Filed 02/14/20 Page 122 of 189      982
K1R7TEM4                         Summation - Mr. Bhatia

1    "A.  That's true.
2    "Q.  If you had seen that, would that have been something you
3    would have included in this message?"  That was the message
4    where she sent comments on the terms and conditions.  She said:
5    "A.  Absolutely.  I just don't have the authority to allow
6    people to write checks; I don't have authority for that, so
7    yes."
8             And then she was asked when shown the check that Mr.
9    Teman wrote:
10   "Q.  Did you authorize Mr. Teman to deposit this check?
11   "A.  Absolutely not.
12            Those are the three customers:  Mr. Gabay, Mr.
13   Soleimani and Ms. Soon-Osberger.  But you also heard from Gina
14   Hom.  She testified on Thursday.  She said she worked at
15   Crystal Management.  That was the management company for the 18
16   Mercer account, and she is actually one of the authorized
17   signers on that account.  Here is what she told you.  She was
18   asked:
19   "Q.  Did you ask the board first whether this was authorized?"
20   That was when she found out about Mr. Teman's check.
21   "A.  No.
22   "Q.  Why not?
23   "A.  Because the only people that were authorized to issue any
24   payments on this would have been myself or Jackeline.  And
25   neither one of us had done it."