UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GATEGUARD, INC.,

                              Plaintiff,

          -against-

AMAZON.COM, INC. et al.,

                              Defendants.
-----------------------------------------------------------------X

21-CV-9321 (JGK) (VF)

**OPINION AND ORDER**

**VALERIE FIGUEREDO, United States Magistrate Judge.**

In a letter motion filed on February 23, 2024, Plaintiff GateGuard, Inc. ("Plaintiff" or "GateGuard") sought a ruling that Defendants Amazon.com, Inc., Amazon.com Services, Inc., Amazon Logistics, Inc., and Amazon.com Services, LLC (collectively "Defendants" or "Amazon") spoliated evidence. See ECF No. 123. GateGuard seeks the "imposition of sanctions, including an adverse inference." Id. at 3. On February 27, 2024, Amazon opposed the motion, arguing that the spoliated evidence (1) was not relevant to GateGuard's claims, (2) would not prejudice GateGuard, and (3) was not destroyed in bad faith. See ECF No. 138. On June 10, 2024, GateGuard supplemented its letter motion with an additional submission. See ECF No. 177. Amazon responded to GateGuard's letter on June 17, 2024. See ECF No. 187. For the reasons that follow, the motion for sanctions is **DENIED**.

1

**BACKGROUND**

The allegations underlying GateGuard's claims have been documented in the Court's prior decisions, familiarity with which is presumed. See, e.g., ECF No. 30 at 2-10.[1] The facts recounted herein are those relevant to the instant dispute.

In October 2020, counsel for GateGuard contacted Amazon, claiming that Amazon's installations of its Key for Business device were interfering with, and causing malfunctions of, GateGuard devices. ECF No. 138-1. In April 2021, ClearHome, a third-party installer for Amazon, sent one GateGuard device to Amazon; Amazon had sought to procure the GateGuard device for compatibility testing at some point on or before March 3, 2021.[2] See ECF No. 138-5 at 8; ECF No. 179-10 at 6-7. Also in April 2021, Paul Donovan ("Donovan"), an electrical engineer who worked as a consultant for Amazon, was asked by Amazon to examine GateGuard's intercom device to determine its compatibility with Amazon's Key for Business device. See ECF No. 138-3 at ¶¶ 2-3, 10.

In July 2021, Donovan retrieved the GateGuard device from Amazon's office. See ECF No. 179-17 at 1; ECF No. 138-3 at ¶¶ 10-11. When he retrieved the device, Donovan opened the device's "outer cardboard box" and took a photo of the device on his smartphone. Id. at ¶ 10; see also ECF No. 138-5 at 6. Donovan put the GateGuard device back in its cardboard box and took it to his personal workspace in Santa Clara, California. ECF No. 138-3 at ¶ 11; ECF No. 138-5 at 6. At the time, Donovan was "working on a number of more urgent projects for Amazon," so he

---

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated pagination in those documents.

[2] Although Amazon had wanted two GateGuard devices, ClearHome never sent a second GateGuard device to Amazon. See ECF No. 138-4 at 19-20; ECF No. 138-11 at 5-6; ECF No. 138-12 at 5.

did not conduct the compatibility testing. See ECF No. 138-3 at ¶ 11; see also ECF No. 138-5 at 6. Although Donovan had intended to do the requested compatibility testing, no one from Amazon "followed up" about the testing and so he never tested the GateGuard device or "even opened the device." ECF No. 138-3 ¶ 11; see also ECF No. 138-5 at 6.

GateGuard commenced this suit on November 10, 2021, alleging a claim under the Computer Fraud and Abuse Act, a class claim of attempted monopolization under the Sherman Act, and state-law claims of tortious interference with contract, tortious interference with prospective economic advantage, trespass to chattels, wrongful misappropriation, conversion, and unjust enrichment. See ECF No. 1. GateGuard's complaint did not include a trade secrets claim. Amazon's Ring Intercom was launched in 2022. See ECF No. 179-16. GateGuard first alleged a trade secrets claim in its amended complaint filed on January 24, 2022. See ECF No. 14. On February 16, 2023, the Honorable John G. Koeltl denied Amazon's motion to dismiss the trade secrets claims, permitting the claims premised on a piggy-backing theory to move forward. See ECF No. 30 at 42-43. On January 30, 2026, Judge Koeltl denied Amazon's motion to dismiss the trade secrets claims. ECF No. 300 at 1; see also ECF No. 223 at ¶¶ 177-88.

In August 2023, the lease on Donovan's Santa Clara office expired and Donovan moved out of the office. See ECF No. 138-5 at 6. During his move, Donovan threw out the GateGuard device. Id. at 6-7. When he threw out the device in August 2023, Donovan had not received a litigation hold from Amazon and did not know that there was a lawsuit pending between GateGuard and Amazon. Id. at 7. Donovan learned of the instant lawsuit in or around November 2023. See id. (testifying that he was informed of the lawsuit by an Amazon lawyer "two to four weeks" before his deposition on December 15, 2023).

**LEGAL STANDARD**

Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 148 (2d Cir. 2008) (quoting Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 457 (2d Cir. 2007)). A court may impose sanctions on a spoliating party based on its "inherent power to control the judicial process and litigation, but [that] power is limited to that necessary to redress conduct which abuses the judicial process." In re Pfizer Inc. Sec. Litig., 288 F.R.D. 297, 312-13 (S.D.N.Y. 2013) (quoting Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 409 (S.D.N.Y. 2010))."A federal district court may also impose sanctions under Federal Rule of Civil Procedure 37(b) when a party spoliates evidence in violation of a court order, but "[e]ven without a discovery order, a federal district court may impose sanctions for spoliation under its inherent power to control litigation." Andrews v. City of New York, No. 23-CV-2411 (LTS), 2023 WL 3724978, at *4 (S.D.N.Y. May 30, 2023) (internal quotation marks and citations omitted); see also Oakley v. MSG Networks, Inc., 792 F. Supp. 3d 394, 401 (S.D.N.Y. 2025) (citation omitted) ("[S]anctions for the spoliation of physical evidence are governed by the inherent authority of the Court to control litigation.").

"The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case-basis." Fujitsu Ltd. v. Federal Exp. Corp., 247 F.3d 423, 436 (2d Cir. 2001) (internal citation omitted). Courts may impose various sanctions for spoliation, such as dismissal, an adverse inference, or monetary sanctions. Sovulj v. United States, No. 98-CV-5550 (FB) (RML), 2005 WL 2290495, at *6 (E.D.N.Y. Sept. 20, 2005), on reconsideration by, 2008 WL 11449125 (E.D.N.Y. May 14, 2008).

The party seeking sanctions based on spoliation of evidence must show the following three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Zubulake v. UBS Warburg, LLC, 229 F.R.D. 422, 430 (S.D.N.Y. 2004); see also Dilworth v. Goldberg, 3 F. Supp. 3d 198, 200 (S.D.N.Y. 2014) ("A party seeking spoliation sanctions has the burden of establishing the elements . . . by a preponderance of the evidence."). A culpable state of mind for a spoliation sanction "includes ordinary negligence." Zubulake, 229 F.R.D. at 431; see also Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 108 (2d Cir. 2002) ("[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently.") (internal quotation marks, alterations, citation, and emphasis omitted).

In cases of willful spoliation (*i.e.*, when evidence is destroyed intentionally) "that fact alone is sufficient" to demonstrate that the destroyed evidence was relevant to the party's claim or defense. Zubulake, 229 F.R.D. at 431. "By contrast, when the destruction is negligent, relevance must be proven by the party seeking the sanctions." Id.; Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona, 138 F. Supp. 3d 352, 389 (S.D.N.Y. 2015) (explaining that to show relevance, moving party "may provide sufficient evidence that would tend to show that the lost documents would have been favorable to [its] case") (alteration in original, quotation marks and citation omitted). If the moving party is seeking an adverse inference instruction, "the concept of 'relevance' encompasses not only the ordinary meaning of

5

the term, but also that the destroyed evidence would have been favorable to the movant."
Zubulake, 229 F.R.D. at 431.

## DISCUSSION

As a preliminary matter, GateGuard does not state whether it is seeking sanctions under Rule 37 or the Court's inherent authority, and cites to both Rule 37(b) and a case referencing the Court's inherent authority to impose sanctions for spoliation. See ECF No. 123 at 1. Amazon describes GateGuard's motion as one "seeking Rule 37(b) discovery sanctions." ECF No. 138 at 1. Because neither party has pointed the Court to a specific order that was purportedly violated, the Court analyzes GateGuard's motion for sanctions under its inherent authority.[3]

Here, Amazon makes no argument contesting its obligation to have preserved the GateGuard device in Donovan's possession. Amazon instead argues that it did not act with a culpable state of mind, that the destroyed device is not relevant to GateGuard's claims, and that GateGuard is not prejudiced by the loss of the device. See ECF No. 138 at 2-3; ECF No. 187 at 1, 3. Even assuming that Amazon had an obligation to preserve the device, sanctions are not

---

[3] Regardless, the same three-factor spoliation analysis applies, whether GateGuard sought sanctions pursuant to Rule 37(b) or the Court's inherent authority. Compare Oakley, 792 F. Supp. 3d at 401 (explaining that under "the inherent authority of the Court to control litigation . . . a party seeking an adverse inference instruction based on the destruction of [physical] evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense") (internal quotation marks and citation omitted) with In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 341 F.R.D. 474, 493 (S.D.N.Y. 2022) ("A party seeking an adverse inference sanction under Rule 37(b) must establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.") (internal quotation marks and citation omitted).

warranted because GateGuard has failed to demonstrate that the evidence destroyed was relevant to any of its claims.

Turning to Amazon's culpability, Amazon argues that the GateGuard device was not destroyed in bad faith. See ECF No. 138 at 3. But as the Second Circuit has indicated, ordinary negligence suffices to establish a culpable state of mind for sanctions based on the spoliation of non-electronic evidence, such as the GateGuard device.[4] See Residential Funding Corp., 306 F.3d at 108 (concluding that "discovery sanctions, including an adverse inference instruction, may be imposed upon a party that has breached a discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence"); In re WRT Energy Sec. Litig., 246 F.R.D. 185, 195-96 (S.D.N.Y. 2007) ("[T]he responsible party need not have acted intentionally or in bad faith; negligence alone is sufficient to justify the imposition of some sanction [for spoliation].").

Amazon's conduct here was negligent. Amazon concedes that it did not issue a litigation hold to Donovan, and that Donovan was unaware of this litigation in August 2023, when he threw out the GateGuard device. See ECF No. 138 at 3; ECF No. 138-5 at 6-7. Yet GateGuard commenced this suit in November 2021, and even after Judge Koeltl's decision on the motion to dismiss, a trade secrets claim based on a piggybacking theory remained in the case. See ECF No. 30 at 62-63. Moreover, Amazon produced invoices from ClearHome, showing Amazon's order and purchase of the device, as early as July 5, 2023. See ECF No. 187 at 2 (discussing invoices).

---

[4] The Second Circuit recently held that "the lesser 'culpable state of mind' standard, which includes negligence, see Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 108 (2d Cir. 2002), does not apply to the imposition of sanctions under Rule 37(e)(2) [of the Federal Rules of Civil Procedure]." Hoffer v. Tellone, 128 F.4th 433, 435 (2d Cir. 2025). However, the Circuit noted that that holding does not apply "to cases that fall outside the province of Rule 37(e)(2)—namely, cases evaluating the loss of non-electronic evidence." Id. at 439; see also Fed. R. Civ. P. 37(e) (discussing "electronically stored information").

7

Amazon also produced e-mail communications between Amazon employees and a ClearHome employee discussing the acquisition of GateGuard devices for compatibility testing. See, e.g., ECF No. 138-2. Even if those individuals from Amazon and ClearHome had forgotten about that testing, the fact that Amazon produced in July 2023 invoices for the purchase of the device should have alerted individuals to the existence of the device in Amazon's possession, at a time prior to destruction of the device in August 2023. It appears, though, that no one attempted to ask Donovan about the GateGuard device until sometime around November 2023. Although there is no evidence that Donovan discarded the device in an attempt to deprive GateGuard of the evidence, Amazon should have been aware that it had requested the device for compatibility testing, after GateGuard had alerted it to its claims of compatibility issues. Amazon's failure to even attempt to locate the device after GateGuard filed its suit was negligent. See In re WRT Energy Sec. Litig., 246 F.R.D. at 196 (finding that "it was at least grossly negligent for plaintiffs' counsel to permit the Gulfport documents to be destroyed without specifically warning the Underwriter Defendants that their expert had analyzed all [97] of the wells and would likely present expert opinion regarding all of them" when plaintiffs' counsel "knew at the time of the destruction of the Gulfport documents that they were going to rely on an analysis of all 97 wells . . . [and] also knew that they had informed defense counsel of only 21 wells that had been evaluated").

Moving to relevance, GateGuard has failed to demonstrate that the destroyed GateGuard device was relevant. See In re WRT Energy Sec. Litig., 246 F.R.D. at 197 ("[A] party seeking sanctions for spoliation must demonstrate that the evidence destroyed was relevant."). Where, as here, "the culpable party was *negligent*, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party."

8

UrthTech LLC, v. GOJO Industries, Inc., No. 22-CV-6727 (PKC) (KHP), 2026 WL 263333, at *3 (S.D.N.Y. Feb. 2, 2026) (internal quotation marks and citation omitted) (emphasis in original); see also Tchatat v. O'Hara, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017), objections overruled by, No. 14-CV-2385 (LGS), 2017 WL 3172715 (S.D.N.Y. July 25, 2017), aff'd sub nom. by, Tchatat v. City of New York, 795 F. App'x 34 (2d Cir. 2019) (explaining that "where merely negligent conduct is shown, the party requesting spoliation sanctions must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by that party") (internal quotation marks and citation omitted). GateGuard contends that the "physical condition of the GateGuard device acquired by Amazon is central to GateGuard's claim that Amazon misappropriated GateGuard's trade secrets[.]" ECF No. 123 at 3. GaterGuard makes this argument based on the premise that "proof of Amazon's piggybacking depends on Amazon's physical access to the interior of the GateGuard intercom[.]" Id.

However, as Donovan explained during his deposition and in a subsequent sworn affidavit, Donovan only opened the device's "outer cardboard box," took a photo of the GateGuard device on his smartphone (ECF No. 138-3 at ¶ 10; see also ECF No. 138-5 at 6), and then put the device back in its cardboard box (see ECF No. 138-3 at ¶ 11; ECF No. 138-5 at 6). Although Donovan had intended to do the requested compatibility testing, no one from Amazon "followed up" about the testing, so he never tested the GateGuard device or "even opened the device." ECF No. 138-3 at ¶ 11; see also ECF No. 138-5 at 6. The box "sat" in Donovan's Santa Clara office until August 1, 2023, when the lease on Donovan's office expired and Donovan moved out of the space. See ECF No. 138-5 at 6. There is thus no evidence in the record that Amazon did anything with the device. GateGuard's remaining trade secrets claim, which is based

9

on a piggy-backing theory, is limited to the interaction between Amazon's Key for Business device and GateGuard's devices as installed at physical locations. ECF No. 223 at ¶¶ 49, 177-88. The discarded device was never installed or connected to Key for Business. And although GateGuard contends that its piggybacking theory "depends on Amazon's physical access to the interior of the GateGuard intercom," ECF No. 123 at 3, there is no evidence that the destroyed device was ever even opened by anyone. Further, at trial, GateGuard can still elicit testimony for the trier of fact that Amazon obtained and possessed the GateGuard device. GateGuard has thus not shown how the destroyed device would be relevant to a contested issue in the case.

GateGuard attempts to challenge Donovan's sworn testimony concerning what he did with the device through a sworn declaration from Ari Teman, GateGuard's former Chief Executive Officer. See ECF No. 177; ECF No. 178. GateGuard argues that Donovan's testimony is not credible, in part, because Donovan testified that he did not remove the protective plastic that surrounded the device. ECF No. 177 at 3. According to Teman, however, the plastic covering appeared to have been removed and reapplied to the device because Teman observed "air pockets" in the photograph that Donovan took of the device. ECF No. 178 at ¶¶ 3-4, 5(c). But, of course, there are thousands of reasons why "air pockets" may appear on a plastic covering and Teman cannot say that those air pockets where not there when the device was placed in its box at GateGuard's facility, as Teman was not physically present when the device was packaged.

GateGuard also points to testimony by Gerry Nievera ("Nievera"), Amazon's head of Key Sales and Operations, that suggests that Nievera may have moved the device from Donovan's "cubicle" to the 7th Floor of Amazon's offices. ECF No. 177 at 3-4; see also ECF No. 179-17 at 1. At Nievera's deposition, he testified that he "d[id]n't recall actually seeing a GateGuard [device], nor d[id] [he] recall seeing a black box that had 'teneman' on the top" but

10

confirmed that he and others "did take down some devices from the seventh floor to the first floor." ECF No. 179-20 at 1. Nievera also described the box as "b[l]ack" (ECF No. 179-17 at 1), which Teman states would have referred to the device itself and not the cardboard box that housed the device, which was brown (see ECF No. 178 at ¶¶ 3-4). GateGuard insists that this evidence, too, pokes holes in Donovan's "story that he took the device out of its packaging box took a photograph, reinserted the device in the box and then took the device home before throwing it away[.]" ECF No 177 at 3. But Nievera's testimony is not inconsistent with Donovan's testimony. Nievara's testimony merely shows that Nievera may have opened the outer cardboard box containing the GateGuard device to look at its contents when the package arrived at Amazon's office, or that he moved the device between floors or offices at Amazon. It does not contradict Donovan's testimony that he did not open the device and inspect it. And there is no evidence that Nievera himself opened the device to inspect it.

At bottom, GateGuard has not demonstrated the relevance of the destroyed device by a preponderance of evidence. Accordingly, an adverse inference instruction, as requested by GateGuard, or any other sanction, is inappropriate. See Sovulj, 2005 WL 2290495, at *5 ("To allow an adverse inference here would not have the effect of restoring the plaintiff to her position absent the destruction of the x-ray, but rather would prejudice the defendant by allowing plaintiff to profit from the destruction of the x-ray when no evidence has been presented to support such an inference of its contents."). The motion for sanctions is therefore **DENIED**.

SO ORDERED.

DATED:   New York, New York
         February 18, 2026

_____
VALERIE FIGUEREDO
United States Magistrate Judge