UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.,

Plaintiff,

v. Case No. 21 Civ. 9321 (JGK) (VF)

AMAZON.COM, INC., et al.,

Defendants.

**MOTION OF NON-PARTY ARI TEMAN TO INTERVENE AS PLAINTIFF**

Movant Ari Teman, appearing pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 24(a) and 24(b) for an order permitting him to intervene in this action as a plaintiff.

In support of this motion, Mr. Teman respectfully submits the following memorandum of law.

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE**

**I. INTRODUCTION**

This action concerns alleged misconduct by Amazon in connection with building-access devices deployed in multi-family residential properties.

Movant Ari Teman seeks to intervene because the devices at issue bear the Teman brand, which is owned by Mr. Teman and licensed to Plaintiff GateGuard, Inc.

Amazon's alleged conduct therefore directly affects Mr. Teman's personal intellectual property and business interests. Because those interests may not be fully represented by the existing parties, intervention is appropriate under Federal Rule of Civil Procedure 24.

## II. BACKGROUND

Ari Teman is the founder of GateGuard, Inc. and the owner of the Teman brand, which has been used in connection with technology products and services relating to building access systems.

GateGuard has used the Teman brand pursuant to licensing arrangements with Mr. Teman.

Devices sold and deployed by GateGuard in multi-family residential buildings have prominently displayed the Teman name and branding.

According to the allegations in this action, Amazon personnel obtained and accessed certain of these devices and engaged in conduct involving them without authorization from property owners or the device provider.

Because the devices at issue bear the Teman brand, the alleged conduct directly affects Mr. Teman's intellectual property rights and the commercial reputation associated with that brand.

During much of the period relevant to this litigation, Mr. Teman was not serving as Chief Executive Officer of GateGuard. The company was operated by other individuals who served in management roles during that time.

As a result, Mr. Teman was not directly involved in the company's day-to-day operations or the management of this litigation during that period. Mr. Teman only recently became aware of certain facts and discovery materials relating to the conduct at issue after discussions with newly engaged counsel for GateGuard.

Mr. Teman therefore seeks to intervene in order to protect his interests.

## III. AMAZON HAS PLACED TEMAN AND THE TEMAN BRAND AT ISSUE IN THIS LITIGATION

Defendants have repeatedly placed Ari Teman and the Teman brand at the center of the dispute in this case.

Throughout the course of the litigation, Defendants have directed arguments and discovery toward Mr. Teman personally and toward issues relating to the Teman-branded devices involved in the dispute. These devices bear the Teman name and are associated with Mr. Teman's intellectual property and commercial reputation.

Defendants have also produced discovery materials showing that Amazon personnel accessed and opened devices bearing the Teman brand. These materials include photographs, security footage, and documents produced in discovery.

Because the devices involved in the dispute prominently display the Teman name, Defendants' conduct directly affects the reputation and goodwill associated with the Teman brand.

Moreover, Defendants have repeatedly referenced Mr. Teman personally in connection with the issues in this case, even though Mr. Teman was not serving as Chief Executive Officer of GateGuard at the relevant time and was not actively managing the company's operations.

As a result, the litigation has already placed Mr. Teman's personal reputation and intellectual property interests at issue. Intervention is therefore appropriate so that the owner of the Teman brand may protect those interests directly rather than relying solely on the corporate plaintiff.

Because Defendants have placed Mr. Teman and the Teman brand at issue in this litigation, the disposition of this case may impair Mr. Teman's ability to protect his intellectual property and reputational interests.

---

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 24(a)(2) provides that a court must permit intervention when the movant:

1. files a timely motion;
2. claims an interest relating to the property or transaction that is the subject of the action;
3. is so situated that disposing of the action may impair or impede the movant's ability to protect that interest; and
4. shows that the interest is not adequately represented by existing parties.

See Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001).

The Second Circuit has emphasized that Rule 24 should be applied in a flexible and practical manner in order to protect legitimate interests that may be affected by litigation. See United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994).

Courts also recognize that intervention may be appropriate where litigation threatens to affect a non-party's business interests or reputation. See Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc., 725 F.2d 871, 874 (2d Cir. 1984).

Alternatively, under Rule 24(b), a court may permit intervention where a movant "has a claim or defense that shares with the main action a common question of law or fact." Courts have broad discretion to grant permissive intervention where doing so will promote judicial efficiency and avoid duplicative litigation. See AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561–62 (2d Cir. 2005).

---

## V. INTERVENTION AS OF RIGHT IS WARRANTED

This motion is timely because Mr. Teman seeks intervention promptly upon learning, through recent discussions with newly engaged counsel for GateGuard, that his personal intellectual property and reputational interests had been placed at issue in this litigation.

Each element required for intervention as of right is satisfied.

First, Mr. Teman has a direct interest in the subject matter of the action. The devices involved in the dispute bear the Teman brand, which is owned by Mr. Teman and licensed to GateGuard.

Second, the disposition of this action may impair Mr. Teman's ability to protect his interests. Courts recognize that intervention is appropriate where a ruling in the case may practically impair the movant's ability to protect related property or legal rights. See Pitney Bowes, 25 F.3d at 70.

Third, the existing parties may not adequately represent Mr. Teman's interests. The Supreme Court has held that the burden of demonstrating inadequate representation is minimal and satisfied where the applicant's

interests may diverge from those of existing parties. See Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972).

Here, Mr. Teman's interests as the owner of the Teman brand are distinct from the corporate interests of GateGuard, Inc., and therefore may not be fully represented in this litigation.

Courts have also recognized that intellectual property owners have a substantial interest in litigation affecting the use and reputation of their marks. See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 382–83 (2d Cir. 2006).

Because the devices at issue bear the Teman brand, the outcome of this litigation may directly affect Mr. Teman's intellectual property interests and the commercial reputation of that brand.

## VI. ALTERNATIVELY, PERMISSIVE INTERVENTION IS APPROPRIATE

Even if intervention as of right were not granted, permissive intervention is appropriate under Rule 24(b).

Mr. Teman's claims arise from the same underlying events at issue in this litigation, including Amazon's alleged conduct involving devices bearing the Teman brand.

Permitting intervention would therefore promote judicial efficiency by allowing related claims to be addressed in a single proceeding rather than through separate litigation.

## VII. CONCLUSION

For the foregoing reasons, Movant Ari Teman respectfully requests that the Court grant this motion and permit him to intervene as a plaintiff in this action pursuant to Federal Rule of Civil Procedure 24, and for such other and further relief as the Court deems just and proper.

Dated: March 18, 2026

Tel Aviv, Israel

Respectfully submitted,


Ari Teman

Pro Se

**CERTIFICATE OF SERVICE**

I, Ari Teman, certify that on March 18, 2026, I served a true and correct copy of the foregoing Motion of Non-Party Ari Teman to Intervene as Plaintiff upon all counsel of record in this matter.

Service was effected by filing the document through the Court's Electronic Case Filing ("ECF") system using the Court's Temporary Pro Se email filing procedure, which automatically provides notice to registered counsel of record.

In addition, a copy of the motion was served via electronic mail to counsel for Plaintiff and Defendants at the email addresses listed on the Court's docket for this case.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 18, 2026

Tel Aviv, Israel

---

Ari Teman

Pro Se

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.,

Plaintiff,

-against-

AMAZON.COM, INC., AMAZON.COM SERVICES, INC.,

AMAZON.COM SERVICES, LLC, AMAZON LOGISTICS, INC.,

RING LLC,

Defendants.

ARI TEMAN,

Intervenor-Plaintiff.

Case No. 21 Civ. 9321 (JGK) (VF)

**PROPOSED COMPLAINT-IN-INTERVENTION**

Intervenor-Plaintiff Ari Teman ("Teman" or "Intervenor-Plaintiff"), respectfully submits this Proposed Complaint-in-Intervention against Defendants Amazon.com, Inc., Amazon.com Services, Inc., Amazon.com Services, LLC, Amazon Logistics, Inc., and Ring LLC (collectively, "Amazon" or "Defendants"), pursuant to Federal Rule of Civil Procedure 24.

**I. NATURE OF THE ACTION**

1. This is a complaint-in-intervention to protect the intellectual property, brand identity, and personal and professional reputation of Ari Teman, the owner of the "Teman" brand.

2. Plaintiff GateGuard, Inc. ("GateGuard") deployed proprietary artificial intelligence (AI) intercom devices bearing the "Teman" brand to multi-family residential properties.

3. Defendants engaged in a systematic campaign to unlawfully access, manipulate, reverse-engineer, and destroy these Teman-branded devices.

4.  The intentional interference and resulting device failures have caused direct and severe harm to the goodwill and reputation of the Teman brand.

5.  Defendants executed this scheme not only through direct employees, but by hiding behind a multi-level network of third-party proxy installers (such as ClearHome and DLBR) who operate in a RICO-like structure. These third parties indiscriminately break into intercoms without checking authorization, meaning thousands of intercoms are tampered with regardless of brand.

6.  Furthermore, Defendants' conduct is part of a broader, documented corporate scheme involving intentional device hacking, intellectual property theft, and the systematic destruction of evidence, as confirmed by disclosures from a former Amazon and Ring insider acting as a federal whistleblower.

7.  Because of Defendants' reliance on indiscriminate third-party proxies, an injunction limited to Amazon alone or Teman-branded devices alone is insufficient. Intervenor-Plaintiff seeks to intervene to assert claims for injury to business reputation and brand goodwill, to adopt GateGuard's relevant claims, and to seek a broad injunction halting Amazon Key for Business (KfB) operations in all cities and zip codes where GateGuard has active installations or contracts.

## II. JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over this Complaint-in-Intervention pursuant to 28 U.S.C. § 1367, as the claims asserted herein are so related to the claims in the original action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

9.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as the original action is currently pending in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## III. PARTIES

10. **Intervenor-Plaintiff Ari Teman** is a natural person residing in the State of New York, currently located in Tel Aviv, Israel. (See Motion of Non-Party Ari Teman for Protective Order, March 18, 2026, at 4). He is the founder of GateGuard, Inc., and the creator and owner of the "Teman" brand prominently displayed on the devices at issue.

11. **Plaintiff GateGuard, Inc.** is a Delaware corporation with a principal place of business in New York, New York. (See Verified Complaint, Dkt. 241-21 at 3).

12. **Defendants** are Amazon.com, Inc., Amazon.com Services, Inc., Amazon.com Services, LLC, Amazon Logistics, Inc., and Ring LLC, corporate entities doing business in the State of New York.

## IV. FACTUAL ALLEGATIONS

### The Teman Brand and Device Branding

13. Intervenor-Plaintiff Ari Teman is the owner of the "Teman" brand and the intellectual property associated with the AI intercoms manufactured and distributed by GateGuard.

14. GateGuard licenses the Teman brand and deploys devices that prominently bear the "Teman" name. The brand name "teman" is visibly and unmistakably displayed on both the digital interface and the physical casing of the intercom units. (See Declaration of David P. Salant, Dkt. 241, at 26). Intervenor-Plaintiff personally designed the GateGuard hardware, branding, and platform from the ground up and holds related patents and applications. (See Teman Correspondence, Dkt. 268-42 at 3).

15. Intervenor-Plaintiff licenses the "Teman" brand to GateGuard on a non-exclusive basis subject to quality control provisions that require Intervenor-Plaintiff to supervise and protect the integrity and reputation of goods bearing the Teman name. Under these provisions, Intervenor-Plaintiff retains the right and obligation to ensure that devices bearing the Teman brand operate properly and are not altered or degraded in a manner that would damage the reputation or goodwill associated with the brand.

16. Failure to enforce quality control over the Teman brand risks degradation of the mark and loss of trademark rights, thereby requiring Intervenor-Plaintiff to take action to prevent unauthorized alteration of Teman-branded devices.

### Amazon's Unauthorized Access and Interference

17. Defendants and their agents engaged in a concerted effort to access, dismantle, and reverse-engineer GateGuard devices bearing the Teman brand.

15. Without authorization from property managers, Defendants' agents arrived at buildings and installed Amazon Key for Business (KfB) "black boxes" directly into or adjacent to the existing Teman-branded intercoms. (See Deposition of Ramon Rodriguez, Dkt. 268-38 at Tr. 26:19-22; Deposition of Odalis Tiburcio, Dkt. 268-37 at Tr. 28:16-23).

16. Prior to Amazon's physical interference, the Teman-branded intercoms worked "perfectly." (See Deposition of Odalis Tiburcio, Dkt. 253-6 at Tr. 32:21-25). However, as a direct result of Defendants' agents installing the Amazon hardware, the Teman-branded intercoms completely malfunctioned and "never worked again." (Id. at Tr. 32:15-20).

17. Defendants specifically targeted the "Teman" hardware for acquisition and reverse engineering. Discovery in the underlying action reveals that Defendants' personnel internally identified and discussed the hardware as the "Teman device" and sought to acquire the devices through third parties to test in Amazon compatibility labs, such as the SJ13 lab in Sunnyvale, California. (See Deposition of Alex Aguilar, Dkt. 253-4 at Tr. 78-79; Deposition of Paul Donovan, Dkt. 253-2 at Tr. 148:12-13).

**Defendants' Use of a Proxy Network to Indiscriminately Tamper with Devices**

19. Discovery has further revealed that Defendants' widespread interference is carried out through a multi-level, RICO-like network of third-party proxy companies—such as ClearHome, Clear Pro, and DLBR—to execute installations and shield Amazon from direct liability. (See Deposition of Clear Home, Dkt. 253-7 at Tr. 18-19; 24-25).

20. These third-party proxy installers operate a high-volume enterprise, generating $30 to $50 million in Amazon-related revenues at their peak, by blanketing the country and earning approximately $9 to $12 per door to install KfB devices. (Id. at Tr. 18:1-12; 27:8-11).

21. Because of the volume-driven financial incentives, these third-party agents routinely fail to check for formal permission before breaking into intercoms. As confirmed by building superintendents, the proxy installers simply show up at buildings, announce they work for Amazon, and proceed to tamper with the intercoms without verifying authorization from the actual property owners or management. (See Deposition of Ramon Rodriguez, Dkt. 268-38 at Tr. 23:6-10; Deposition of Odalis Tiburcio, Dkt. 253-5 at Tr. 27:19-22).

22. Because Defendants hide behind these third parties—who indiscriminately tamper with thousands of intercoms without distinguishing between brands—an injunction directed solely at Amazon's internal employees, or limited exclusively to "Teman" devices, is insufficient. The proxy installers do not check brands or legal permissions before breaching the hardware.

23. To prevent ongoing harm to the Teman brand and the buildings that license it, all operation, sales, and installation of KfB must be enjoined in the specific cities and zip codes where GateGuard maintains installations or contracts (such as zip codes 10001, 10003, 10009, 10026, 10033, 11104, 11210, among others). (See GateGuard Installed Properties List, Dkt. 241-2).

**The Amazon Key for Business Enterprise**

24. Defendants created and operated a nationwide installation system designed to deploy Amazon Key for Business ("KfB") hardware in residential buildings across the United States.

25. This system operated through a coordinated network consisting of Amazon corporate entities, third-party contractors such as ClearHome and DLBR, and numerous subcontracted installers who carried out installations at individual buildings.

26. Amazon directed and controlled the enterprise by:

- recruiting installation companies and subcontractors;

- compensating them on a per-door basis for installations;

- providing Amazon-branded uniforms, logos, and documentation;

- providing Amazon-controlled email addresses and communications platforms; and

- coordinating installations through Amazon's internal systems and program managers responsible for KfB.

27. Through this system, installers represented themselves as authorized Amazon representatives and sought access to residential buildings for the purpose of installing KfB hardware.

28. In many cases, these installers were granted access by building superintendents or maintenance personnel who reasonably believed the installers were authorized by the building owners or management.

29. However, Defendants knew that authorization from the property owners, property managers, or intercom system owners had not been obtained.

30. Once access was obtained, installers frequently opened existing intercom systems, including Teman-branded GateGuard devices, cut or altered wiring, and connected Amazon equipment to the existing infrastructure.

31. These activities included connecting to GateGuard's cellular routers and network connections without authorization, thereby accessing protected computer systems used by GateGuard's intercom devices.

32. The enterprise operated on a large scale across numerous residential buildings and continued over multiple years as part of Amazon's nationwide rollout of the KfB program.

**Insider Whistleblower Corroboration and Corporate Culture of Evidence Destruction**

33. Defendants' unlawful targeting of the Teman brand and devices is part of a broader monopolization scheme. Disclosures provided to federal regulators by Gloria Johnson, a former Ring and Latch insider, explicitly identified GateGuard as an "unfortunate victim" of Defendants' anticompetitive conduct, which included "Hacking Gateguard devices," engaging in "intellectual property theft," and "an intentional disregard for security." (See Whistleblower Letter of Gloria Johnson, at 1).

34. Defendants maintain a systemic corporate culture of spoliation and evidence destruction, which resulted in the loss of critical physical evidence regarding the Teman-branded devices. Amazon consultant Paul Donovan admitted in sworn deposition testimony to possessing a "black box that had 'teneman' [sic] on the top" in his office, and further admitted that on August 1, 2023—while litigation over these devices was actively pending—he "threw the box away with the Teman device." (See Deposition of Paul Donovan, Dkt. 253-2 at Tr. 121:17-25; 148:12-13).

35. The loss of this physical evidence severely prejudices Intervenor-Plaintiff's ability to examine the device that Defendants obtained and reverse engineered. Intervention is therefore necessary to protect

Intervenor-Plaintiff's interests in seeking appropriate relief related to the destruction of evidence concerning Teman-branded devices.

**Personal Targeting by Defendants in Litigation**

36. In addition to the physical and reputational harm caused to the brand, Defendants have repeatedly referenced Ari Teman personally throughout the course of this litigation, making his personal background and credibility a central focus of their defense. (See Amazon's Reply Memorandum of Law, Dkt. 268 at 10-11).

37. Intervenor-Plaintiff was incarcerated during much of the relevant discovery period and only recently learned of discovery materials and whistleblower testimony affecting his brand and his personal reputation, having been entirely unable to participate in or supervise the document review process. (See Motion of Non-Party Ari Teman for Protective Order, March 18, 2026, at 1-2).

**Irreparable Harm to the Teman Brand and GateGuard Systems**

38. Defendants' conduct threatens immediate and continuing harm to the Teman brand and to the functioning of Teman-branded intercom systems deployed in residential buildings.

39. Each unauthorized installation of Amazon Key for Business hardware involves opening existing intercom systems, altering wiring, and connecting equipment to GateGuard networking infrastructure. These actions frequently render the Teman-branded devices inoperable and create the false impression among property managers and residents that the Teman system is defective.

40. Because the Teman brand appears prominently on the physical devices and user interface, any malfunction caused by Defendants' interference is attributed to the Teman system itself, causing ongoing reputational damage and loss of goodwill that cannot be adequately compensated through monetary damages.

41. In addition, once Defendants' hardware is installed, the damage to existing systems is difficult or impossible to fully reverse, and the resulting reputational harm spreads rapidly among property

managers and building owners who rely on word-of-mouth recommendations regarding building security systems.

42. The harm caused by Defendants' conduct is not limited to GateGuard as a corporate entity. Because the Teman name appears prominently on each device and serves as the source identifier for the system, any malfunction, degradation, or failure of the devices is directly attributed to Intervenor-Plaintiff as the owner of the Teman brand. This results in immediate and ongoing reputational harm to Intervenor-Plaintiff personally, including damage to his intellectual property, brand goodwill, and professional reputation, which cannot be adequately remedied by monetary damages.

43. Absent immediate injunctive relief, Defendants' nationwide KfB installation program will continue to interfere with Teman-branded devices in additional buildings, causing continuing and irreparable harm.

**Balance of Equities and Public Interest Strongly Favor Injunctive Relief**

44. The balance of equities strongly favors injunctive relief. Defendants face minimal hardship from being required to refrain from interfering with existing intercom systems or from installing KfB hardware without proper authorization. By contrast, Intervenor-Plaintiff faces continuing harm to the Teman brand and to the functioning of deployed intercom systems, including damage to devices and loss of customer trust that cannot be readily repaired.

45. The public interest favors an injunction preventing unauthorized access to residential building infrastructure. Intercom systems control access to apartment buildings and form a critical component of building security. Allowing installers to gain access to buildings through misrepresentation of authority and to alter existing intercom systems without the consent of property owners or system operators threatens the integrity and reliability of building security infrastructure.

46. Defendants' KfB installation program continues to operate nationwide and involves ongoing installations in residential buildings. Each installation creates a risk that additional Teman-branded devices will be opened, altered, or connected to unauthorized equipment.

47. Additionally, as has been shown in discovery, KfB installations continue to harm thousands of other non-Teman branded devices. An injunction stops the wanton property destruction Amazon is causing via it's RICO scheme across the United States and beyond.

**V. CLAIMS FOR RELIEF**

<u>**COUNT I**</u>

**Injury to Business Reputation and Goodwill**

48. Intervenor-Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

49. Intervenor-Plaintiff has established valuable goodwill and a strong business reputation in the "Teman" brand.

50. Defendants knowingly and intentionally interfered with the Teman-branded devices by utilizing a proxy network of third-party installers to dismantle them, reverse-engineer them, and install foreign hardware next to them without authorization. (See Dkt. 253-7 at Tr. 18-19; Dkt. 253-5 at Tr. 27:19-22).

51. The predictable and actual failure of these devices severely damaged the reputation of the Teman brand among real estate professionals, property managers, and the general public, turning perfectly functioning intercoms into dead devices. (See Deposition of Odalis Tiburcio, Dkt. 253-6 at Tr. 32:20-25).

52. As a direct and proximate result of Defendants' actions, Intervenor-Plaintiff has suffered, and continues to suffer, significant injury to his business reputation and brand goodwill.

<u>**COUNT II**</u>

**Common Law Brand Harm and Interference**

53. Intervenor-Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

54. The "Teman" name constitutes a recognizable brand and trademark under common law.

55. Defendants physically altered, reverse-engineered, and destroyed goods bearing the Teman brand in commerce, and subsequently destroyed the physical evidence of this tampering to avoid discovery. (See Deposition of Paul Donovan, Dkt. 253-2 at Tr. 121:17-25).

56. Defendants' unauthorized physical manipulation, carried out through a careless proxy network, degrades the brand's integrity and deprives the brand owner of the ability to control the quality of the goods bearing his name.

57. As a result, Intervenor-Plaintiff has suffered damages in an amount to be determined at trial.

**COUNT III**

**Incorporation of GateGuard's Claims**

58. Intervenor-Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

59. Intervenor-Plaintiff expressly adopts and incorporates by reference the factual allegations and relevant claims for relief set forth in GateGuard's operative Complaint, specifically those relating to trespass, conversion, property damage, and intellectual property theft resulting from Amazon's unauthorized physical access to the Teman-branded devices.

60. Intervenor-Plaintiff asserts these claims to the extent the destruction, hacking, trespass, and conversion of the devices directly harmed his intellectual property, licensing interests, and brand equity.

**COUNT IV**

**Civil RICO – 18 U.S.C. § 1962(c)**

61. Intervenor-Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

62. At all relevant times, Defendants and their agents conducted and participated in the affairs of an enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961–1968.

63. The racketeering activity described herein was integral to the nationwide deployment of the Amazon Key for Business program and was carried out repeatedly across numerous buildings as part of a

standardized installation system directed and controlled by Amazon.

64. The enterprise consisted of an association-in-fact between Defendants Amazon.com, Inc., Amazon.com Services, Inc., Amazon.com Services, LLC, Amazon Logistics, Inc., Ring LLC, and third-party proxy contractors including but not limited to ClearHome, Clear Pro, DLBR, and their subcontractors (collectively, the "KfB Enterprise").

65. The members of the KfB Enterprise functioned as a continuing unit with defined roles, including Amazon entities directing the program and providing branding, communications infrastructure, and compensation structures, and third-party installers executing unauthorized access to building intercom systems. The enterprise operated through coordinated communications, standardized installation procedures, and centralized direction from Amazon personnel responsible for the Key for Business program.

66. Defendants directed and controlled the activities of this enterprise by recruiting and compensating third-party proxy installers on a per-door basis, supplying them with Amazon-branded uniforms, Amazon logos, and Amazon-controlled email accounts to create the false appearance that the installers were legitimate Amazon representatives authorized to access the properties.

67. Members of the KfB Enterprise regularly represented to building superintendents, maintenance staff, and other personnel that Amazon had authorization to install KfB hardware, when in many cases Defendants knew that no such authorization had been granted by the property owners, managers, or intercom system owners.

68. On numerous occasions during the course of the KfB installation program, representatives of the KfB Enterprise falsely represented to building personnel that Amazon had authorization from the building owner or management to access the intercom systems and install Amazon Key for Business hardware. These misrepresentations were made by installers wearing Amazon-branded uniforms, using Amazon-provided documentation, and communicating through Amazon-controlled email accounts and

platforms, thereby creating the false impression that the installers were acting with lawful authority from Amazon and the property owners.

69. Amazon personnel coordinated the KfB installation program through internal Amazon systems and communications platforms and provided installers with Amazon-controlled email accounts and documentation to facilitate building access and installation activities.

70. In furtherance of the enterprise's objectives, Defendants and their agents repeatedly accessed GateGuard systems without authorization, including by physically opening Teman-branded intercom units, cutting or altering wiring, and connecting Amazon equipment directly to GateGuard's cellular routers and networking equipment.

71. By connecting to and utilizing GateGuard's cellular routers and 4G LTE internet connections without authorization, members of the enterprise intentionally accessed protected computer systems and communications infrastructure owned and operated by GateGuard.

72. These actions caused damage to GateGuard's systems and interfered with the functionality of Teman-branded intercom devices, many of which ceased functioning after Defendants' agents installed Amazon hardware.

73. Defendants and their agents further engaged in interstate transportation of stolen property by directing third parties to obtain GateGuard devices for reverse engineering purposes.

74. Discovery in the underlying action shows that Defendants coordinated the acquisition of GateGuard devices through intermediaries in order to conceal Amazon's involvement, including providing shipping labels and instructions to third-party installers.

75. Defendants received at least one GateGuard device through this process and failed to make any arrangements for payment, demonstrating that the acquisition was intended to obtain the device without authorization and to conceal the identity of the true purchaser.

76. Defendants used interstate wires and electronic communications in furtherance of this scheme, including communications between Amazon personnel and third-party installers, the transmission of shipping labels, and the operation of Amazon-controlled platforms used to coordinate installations nationwide.

77. The racketeering acts described above constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), including but not limited to wire fraud, computer fraud, and interstate transportation of stolen property.

78. The racketeering activity described herein was not an isolated incident but part of a continuing and nationwide scheme conducted over multiple years in numerous residential buildings across the United States, affecting thousands of intercom systems and involving repeated acts of unauthorized access, misrepresentation of authority, and interference with existing intercom infrastructure.

79. The racketeering activity was related and continuous, forming part of Defendants' nationwide effort to deploy KfB hardware in residential buildings through unauthorized access to existing intercom systems.

80. As a direct and proximate result of Defendants' racketeering activity, Intervenor-Plaintiff has suffered injury to his business and property, including damage to Teman-branded devices, loss of business goodwill associated with the Teman brand, interference with GateGuard installations, and harm to Intervenor-Plaintiff's intellectual property interests.

81. Pursuant to 18 U.S.C. § 1964(c), Intervenor-Plaintiff is entitled to recover treble damages, costs, and reasonable attorneys' fees resulting from Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Intervenor-Plaintiff Ari Teman respectfully requests that this Court enter judgment against Defendants as follows:

A. Recognizing Intervenor-Plaintiff's right to intervene in this action;

B. Awarding Intervenor-Plaintiff compensatory damages for the injury to his business reputation, brand integrity, and goodwill in an amount to be proven at trial;

C. Awarding Intervenor-Plaintiff punitive damages to deter Defendants' willful and wanton destruction of Teman-branded devices, theft of intellectual property, use of unauthorized proxy installers, and bad-faith destruction of evidence;

D. Granting a preliminary and permanent injunction pausing all operation, sales, and installation of the Amazon Key for Business (KfB) program in all cities and zip codes where GateGuard has active installations or contracts to prevent ongoing harm to Intervenor-Plaintiff's Teman brand and intellectual property, because discovery makes clear that Defendants hide behind a multi-level RICO enterprise of third-party proxies (e.g., ClearHome, DLBR) who blindly tamper with thousands of intercoms without verifying permission, rendering any narrower injunction against just Amazon or just Teman devices insufficient to stop the ongoing harm; ( (NY, Miami, Miami Beach, Los Angeles, Chicago, Philadelphia, etc.)

E. Awarding Intervenor-Plaintiff his costs, disbursements, and reasonable attorneys' fees incurred in this action; and

F. Award treble damages pursuant to 18 U.S.C. § 1964(c);

G. Award Intervenor-Plaintiff costs and reasonable attorneys' fees incurred in pursuing the RICO claims; and

H. Grant such further relief as the Court deems just and proper.

## VII. JURY DEMAND

Intervenor-Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: March 18, 2026

Respectfully submitted,

s/Ari Teman/

**Ari Teman**

*Intervenor-Plaintiff, Pro Se*

Tel Aviv, Israel

ari@teman.com