UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GATEGUARD, INC.,<br><br>      Plaintiff,<br><br>   v.<br><br>AMAZON.COM, INC.,<br>AMAZON.COM SERVICES, INC.,<br>AMAZON.COM SERVICES, LLC,<br>AMAZON LOGISTICS, INC.,<br>RING LLC,<br><br>      Defendants. | No. 21 Civ. 9321 (JGK) (GWG) |

**AMAZON'S MEMORANDUM OF LAW IN OPPOSITION TO THE *PRO SE* MOTION
OF ARI TEMAN TO INTERVENE AS A PLAINTIFF**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

*Attorneys for Defendants Amazon.com,
Inc., Amazon.com Services LLC,
Amazon Logistics Inc., and Ring LLC*

**TABLE OF CONTENTS**

Page

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    FACTUAL BACKGROUND.....................................................................................3

       A.    GateGuard's Counsel Has Aggressively Litigated This Case. .................. 3

       B.    Teman Has Participated Extensively In This Action. ............................... 4

       C.    There Is No Evidence To Support The Claimed Licensing Of The
             "Teman Brand." ...................................................................................... 5

       D.    Teman Is A Fugitive From Justice........................................................... 6

III.   LEGAL STANDARD ...............................................................................................7

IV.    ARGUMENT.............................................................................................................7

       A.    Teman Is A Fugitive From Justice........................................................... 8

       B.    Teman's Motion Is Untimely ................................................................... 8

       C.    Teman's Motion to Intervene Is Meritless............................................. 11

       D.    Teman's Intervention Motion Is A Transparent Attempt To
             Circumvent The Corporate Representation Requirement........................ 15

V.     CONCLUSION........................................................................................................16

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency Hldg. Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987)................................................................................................10

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001)..............................................................2, 9, 10, 12

*Catanzano by Catanzano v. Wing*,
    103 F.3d 223 (2d Cir. 1996).........................................................2, 7, 8, 9, 11, 12

*GateGuard Inc. v. Goldmont Realty Corp. et al.*,
    No. 20 Civ. 01609 (VEC) (GWG), ECF No. 216 (S.D.N.Y. Nov. 17, 2025) ......................4, 6

*In re Holocaust Victim Assets Litig.*,
    225 F.3d 191 (2d Cir. 2000)...............................................................................9

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    2018 WL 840081 (S.D.N.Y. Feb. 12, 2018)..................................................9

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)...............................................................................11

*Jacobs v. Pat. Enf't Fund, Inc.*,
    230 F.3d 565 (2d Cir. 2000)..............................................................................14

*M2 Tech., Inc. v. M2 Software, Inc.*,
    589 F. App'x 671 (5th Cir. 2014) .....................................................................13

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
    471 F.3d 377 (2d Cir. 2006)................................................................................9

*Mergent Servs. v. Flaherty*,
    540 F.3d 89 (2d Cir. 2008)...................................................................................3

*Motionless Keyboard Co. v. Microsoft Corp.*,
    184 F. App'x 967 (Fed. Cir. 2006) ..................................................................15

*New York News Inc. v. Newspaper & Mail Deliverers' Union of N.Y.*,
    139 F.R.D. 291 (S.D.N.Y. 1991), *aff'd sub nom. New York News, Inc. v.*
    *Kheel*, 972 F.2d 482 (2d Cir. 1992) ..................................................................12

*Sierra Club v. United States Army Corps. of Engineers*,
    709 F.2d 175 (2d Cir. 1983)...............................................................................12

*Teman v. Biale*,
    No. 25 Civ. 5454 (MKV), ECF No. 20 (S.D.N.Y. Oct. 21, 2025) ............................6

*Teman v. U.S. Prob. Serv.*,
    No. 25 Civ. 4699 (PAE), ECF No. 9 (S.D.N.Y. July 8, 2025) ....................................................6

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978).........................................................................................7, 13, 14

*United States v. State of N.Y.*,
    820 F.2d 554 (2d Cir. 1987).....................................................................................................8, 9

*United States v. Teman*,
    No. 19 Cr. 696 (PAE), ECF No. 253 (July 29, 2021)................................................................6

*United States v. Zedner*,
    555 F.3d 68 (2d Cir. 2008).....................................................................................................1, 8

*In re Zarzur*,
    2024 WL 4664721 (S.D.N.Y. Aug. 22, 2024), *report and recommendation
    adopted*, 2025 WL 1101475 (S.D.N.Y. Apr. 14, 2025)............................................................9

**Statutes**

18 U.S.C. § 1836(d) ................................................................................................................10

28 U.S.C. § 1654........................................................................................................................15

**Rules**

Fed. R. Civ. P. 24..................................................................................................7, 8, 13, 14

N.Y. C.P.L.R. § 214(4) ............................................................................................................10

2

Pursuant to the Court's Order of March 20, 2026 (ECF No. 314), Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Logistics Inc., and Ring LLC (collectively, "Amazon") respectfully submit this memorandum of law in opposition to the *pro se* motion of non-party Ari Teman to intervene as a plaintiff in this action (ECF No. 312, "Mot.").

## I.    PRELIMINARY STATEMENT

In his latest gambit at gamesmanship, Ari Teman, a fugitive from justice who absconded from post-incarceration supervised release in this District, has filed a *pro se* motion to intervene in this lawsuit brought by Plaintiff GateGuard, Inc. ("GateGuard"), which he owns and controls. With GateGuard's latest counsel having informed Amazon's counsel that they intend to withdraw from this action, Teman is attempting to pursue GateGuard's remaining claims with the very real possibility looming that GateGuard will no longer have counsel to prosecute this action. For its part, GateGuard has aggressively litigated this action for more than four years, represented by three different sets of counsel. Throughout, GateGuard has pressed the same trade-secret-misappropriation theory Teman asserts in his motion, a claim Amazon vigorously denies. This Court should not countenance Teman's latest attempt to manipulate the judicial system, and his motion should be denied.

*First*, Teman's motion to intervene should be denied because he is a fugitive from justice. Following his conviction by a jury in this District on counts of wire fraud and bank fraud and a term of incarceration, Teman fled the United States in violation of the terms of his supervised released. In response, both Judge Engelmayer and the Court of Appeals have held that Teman is a fugitive. "[A] fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim." *United States v. Zedner*, 555 F.3d 68, 76 (2d Cir. 2008). Teman has demonstrated disrespect for the law and does not deserve the Court's solicitude on this or any of his *pro se* motions.

1

*Second*, the motion is untimely.  Rules 24(a) and (b) each require a "timely motion" for intervention to maintain orderly litigation dockets.  Teman's claimed basis for intervention—that he purportedly personally owns GateGuard's intellectual property—even if true, must have been known to him years ago, when GateGuard sued Amazon and while the parties conducted nine months of fact discovery and litigated numerous motions.  Where "proposed intervenors were well aware" of their interests "long before they filed their motions for intervention," those motions should be denied.  *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996).  Amazon has waited through numerous delays and recently agreed with GateGuard on a going-forward case schedule.  It would be prejudicial to discard that schedule, permit the filing of another complaint, and open the door to further rounds of pleading, discovery, and motion practice.

*Third*, Teman's motion fails on the merits.  To intervene, Teman has a burden to show that his "interest is not already adequately represented."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 176 (2d Cir. 2001).  He cannot do so here.  Teman owns and controls GateGuard.  He is GateGuard's founder, owner, and former CEO, and he has been closely involved in this lawsuit from the beginning.  He personally met with Amazon businesspeople to explain GateGuard's claims during the pre-suit phase, submitted declarations supporting GateGuard's litigation positions during discovery, attended a November 12, 2024 mediation session as GateGuard's principal, and sent harassing emails to senior Amazon executives on behalf of GateGuard.  Simply put, his interests have been wholly aligned with GateGuard through years of litigation, and he gives no reason—because he cannot—why GateGuard does not adequately represent his interests in this case.

*Fourth*, Teman's motion should be denied as an end-run around the rule that corporate plaintiffs must be represented by counsel.  "[A] layman may not represent a corporation even if

2

the sole shareholder." *Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008).  Teman's apparent plan is to terminate GateGuard's current counsel, intervene into this action, and continue it as a *pro se* plaintiff to avoid legal costs and the constraints placed on attorney conduct.  Courts have rejected intervention efforts by a corporate plaintiff's principal as contrary to the letter and spirit of the Federal Rules.  This Court should do the same here.

## II.    FACTUAL BACKGROUND

### A.    GateGuard's Counsel Has Aggressively Litigated This Case.

Since 2021, GateGuard has aggressively litigated this action, represented by three different law firms.  In the pre-suit phase, GateGuard was represented by the FisherBroyles firm.  *See* ECF No. 138-1 (pre-suit demand correspondence).  Upon filing its complaint, and through the motion to dismiss and fact discovery phases, GateGuard was represented by Eden Quainton and Jonathan Gross of Quainton Law.  *See* ECF Nos. 1 at 48 (Complaint signed by E. Quainton), 144 (notice of appearance by J. Gross).  In 2025, GateGuard's counsel withdrew, and on December 7, 2025, the firm of Fryman PC appeared as counsel for GateGuard and later attended oral argument on Amazon's motion to dismiss and negotiated a revised case management plan.  ECF Nos. 280, 287 (granting Gross and Quinton withdrawal motions); ECF No. 293 (appearance of Fryman PC); ECF No. 307 (so-ordered case management plan stipulated by Fryman PC on behalf of GateGuard).

GateGuard's counsel litigated this case vigorously, including by pressing the same claims of trade secret misappropriation Teman raises in his intervention motion.  GateGuard conducted nine depositions, issued 33 third-party subpoenas, and obtained six fact discovery extensions.  *See* ECF Nos. 60, 62, 69, 72, 75, 84.  At the close of fact discovery, over Amazon's objection, GateGuard sought and obtained permission file a Second Amended Complaint lodging additional trade-secret-copying claims.  ECF No. 115 (GateGuard's motion for leave to file Second Amended

Complaint).  And on February 27, 2026, GateGuard's counsel negotiated and stipulated to a case management schedule calling for supplemental discovery of its trade-secret claims, which Magistrate Judge Figueredo so-ordered.  ECF No. 307 (case management schedule).

**B.     Teman Has Participated Extensively In This Action.**

Teman is GateGuard's "founder" and owner.  Mot. 2 (calling himself GateGuard's "founder"); Salant Decl. Ex. A (discovery produced by GateGuard stating Teman is GateGuard's "owner").[1]  *See also GateGuard Inc. v. Goldmont Realty Corp. et al.*, No. 20 Civ. 01609 (VEC) (GWG), ECF No. 216 (S.D.N.Y. Nov. 17, 2025) (Caproni, J.) ("Teman is GateGuard's founder, president and owns over 95% of the shares[.]").

Teman is and has been intimately involved with GateGuard's operations.  Furthermore, he is intimately familiar with GateGuard's claims in this case and is the ultimate decision-maker as it relates to GateGuard's litigation strategy.  Teman was GateGuard's CEO when it filed this action, during the time period at issue in GateGuard's Complaint, and for most of the pendency of this lawsuit.  *See, e.g.*, ECF Nos. 198 ¶ 1 (Teman declaration), 241-1 at 9 (interrogatory response). GateGuard has affirmed that, "Teman designed the GateGuard intercom, developed its strategy and built the Company, [and] he is the person with the greatest knowledge about GateGuard and the claims brought in this litigation."  ECF No. 169 at 1.  Teman named GateGuard's at-issue product after himself, calling it the "teman GateGuard."  *See* ECF No. 181-19 (showing GateGuard device with Teman branding).  Teman claims to have stepped down as CEO during certain periods, including when he was incarcerated and now while he is a fugitive from justice.

---

[1] "Salant Decl." refers to the accompanying declaration of David Salant in support of Amazon's opposition.

*See* ECF No. 198 ¶ 1.  But the testimony of GateGuard's interim CEO disclosed that, even during such periods, Teman controlled GateGuard's litigation of this case.  *See* Salant Decl. Ex. B (Taxman Dep. Tr.) at 350:18-351:4 (Teman was the one "involved with handling those disputes").

Teman also personally participated in every phase of this litigation. Before GateGuard filed suit, Teman met with Amazon businesspeople to discuss GateGuard's claims and demand that Amazon resolve the dispute by purchasing GateGuard.  ECF Nos. 124-3, 179-3.  Teman was listed as a material witness in GateGuard's April 3, 2023, Rule 26 initial disclosures.  Salant Decl. Ex. C. He verified GateGuard's interrogatory responses.  Salant Decl. Ex. D (verification pages of GateGuard's interrogatory responses).  He apparently performed GateGuard's document collection and review himself.  ECF No. 135-1 at 12.  During discovery, GateGuard's counsel regularly sought Teman's review and approval of important decisions.  Salant Decl. ¶ 4.  He repeatedly agreed to dates to be deposed but later reneged.  Salant Decl. ¶ 5.  He submitted multiple declarations in support of GateGuard's motion papers.  ECF Nos. 23-1, 178, 198, 227.  He appeared at a November 12, 2024, day-long mediation on behalf of GateGuard.  Salant Decl. ¶ 6. Finally, throughout this case and even after filing this motion to intervene, Teman has sent harassing emails to senior Amazon executives and Amazon's counsel, making demands on behalf of GateGuard.  Salant Decl. Ex. F (emails sent by A. Teman to Amazon and counsel).

**C.     There Is No Evidence To Support The Claimed Licensing Of The "Teman Brand."**

Teman claims in his motion that the "Teman brand" "is owned by Mr. Teman and licensed to Plaintiff GateGuard," Mot. 1, but this new claim has no evidentiary support in the record. Teman acknowledges that GateGuard uses the "teman GateGuard" mark in commerce by offering this device to the public for sale.  Discovery did not disclose any licensing agreement between

Teman and GateGuard, and a search for "Teman" on the U.S. PTO's wordmark registry shows no registration for the "Teman brand."  Salant Decl. Ex. G (screen capture of trademark search).

**D.      Teman Is A Fugitive From Justice.**

In 2021, Teman was indicted, convicted by a jury, and sentenced to imprisonment on counts of wire fraud and bank fraud.  *See United States v. Teman*, No. 19 Cr. 696 (PAE), ECF No. 253 (July 29, 2021) (criminal judgment).  On July 7, 2025, following Teman's term of incarceration and his refusal to return to the United States to serve the balance of his supervised release, Judge Engelmayer declared Teman a fugitive from justice.  *United States v. Teman*, No. 19 Cr. 696 (PAE), ECF No. 567 (S.D.N.Y. July 7, 2025).  On October 30, 2025, the Second Circuit affirmed this designation.  *Id.*, ECF No. 579 (Second Circuit's mandate).

Before, during, and after his criminal case, Teman brought civil actions in this courthouse, many of which have now been dismissed or stayed in light of his fugitive status.[2]  In so doing, Judges have admonished Teman for making false statements to the Court.  For example, Judge Caproni recently held that "Mr. Teman has lied to the Undersigned, Judge Furman, or both," and

---

[2]  *See, e.g.*, *Teman v. Biale*, No. 25 Civ. 5454 (MKV), ECF No. 20 (S.D.N.Y. Oct. 21, 2025) (Vyskocil, J.) (staying action under fugitive disentitlement doctrine because "refusing to entertain Teman's claims and motion while he remains a fugitive would serve the purposes of penalizing the flouting of the judicial process and discouraging flights from justice"); *GateGuard v. Goldmont Realty*, No. 20 Civ. 1609 (VEC), ECF No. 216 at 2 (S.D.N.Y. Nov. 17, 2025) (Caproni, J.) (dismissing action for failure to prosecute after Teman failed to appear for arbitration); *Teman v. U.S. Prob. Serv.*, No. 25 Civ. 4699 (PAE), ECF No. 9 (S.D.N.Y. July 8, 2025) (Engelmayer, J.) (staying Teman's § 1983 and Bivens action).

that his "self-serving representation" about an illness was "yet another fabrication" that "he invented to avoid returning to the United States and risking arrest as a fugitive." *GateGuard v. Goldmont Realty*, No. 20 Civ. 1609 (VEC), ECF No. 216 at 2 (S.D.N.Y. Nov. 17, 2025).

### III.    LEGAL STANDARD

The Federal Rules of Civil Procedure provide two avenues for intervention—intervention as of right and permissive intervention. Fed. R. Civ. P. 24. To intervene as of right under Rule 24(a), an applicant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *Catanzano*, 103 F.3d at 232 (internal quotations omitted). The interest claimed must "relat[e] to the property or transaction that is the subject of the action." Fed R. Civ. P. 24. "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *Catanzano*, 103 F.32, at 232.

Permissive intervention under Rule 24(b) similarly requires a "timely motion," *Catanzano*, 103 F.3d at 234, and "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b). Otherwise, it is "discretionary with the trial court," *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191–92 (2d Cir. 1978). "The principal consideration set forth in the Rule is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Id.* (quoting Fed. R. Civ. P. 24(b)). Courts also consider "the nature and extent of the intervenors' interests," and "whether their interests are adequately represented by the other parties." *Id.* (internal quotation marks omitted).

### IV.    ARGUMENT

Teman's motion fails to meet any of the requirements for mandatory or permissive intervention. The motion is untimely and fails to offer any colorable explanation as to why

7

GateGuard, Teman's company, is unable to adequately protect his (dubious) claimed personal interest in this action. And it would be unfair to further delay this litigation in light of Teman's status as a fugitive and his apparent desire to swap in himself as a *pro se* plaintiff in place of a duly represented party.

**A.    Teman Is A Fugitive From Justice.**

Teman cannot fairly ask for this Court's consideration and discretion when he has absconded from the justice of this District. "[T]he fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim." *Zedner*, 555 F.3d at 76 (citation omitted). As discussed above, both Judge Engelmayer and the Court of Appeals have declared Teman a fugitive, and other judges of this Court have stayed or dismissed his other civil actions on this basis.

**B.    Teman's Motion Is Untimely.**

Teman's motion to intervene should be denied because it is not a "timely motion," as is required for either mandatory or permissive intervention.

Teman's motion for intervention rests on the claim that he has an independent ownership interest in the so-called "Teman brand" that would be affected by the disposition of this action. Mot. 4–5. Teman has known or should have known of any alleged injury to the "Teman brand" for over four years, and he has no justification for the delay here. When assessing timeliness under Rule 24, courts evaluate, "(a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." *United States v. State of N.Y.*, 820 F.2d 554, 557 (2d Cir. 1987).

An important factor is 'the length of time the applicant knew or should have known of his interest before making the motion.'" *Catanzano*, 103 F.3d at 232. This action was filed on November 10, 2021. ECF No. 1 (initial Complaint). Teman's extensive involvement in this case makes plain that he was aware of—indeed driving—the litigation since its beginning. He is "the person with the greatest knowledge about GateGuard and the claims brought in this litigation." ECF No. 169 at 1. He therefore knew or should have known of any alleged injuries to the "Teman brand" at that time. Indeed, his new allegations rest on the exact same factual predicates as the claimed injuries to GateGuard.

"Numerous courts have found that . . . the initiation of a lawsuit where the complaint addresses the would-be intervenors' interests may trigger constructive notice." *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2018 WL 840081, at *3 (S.D.N.Y. Feb. 12, 2018) (internal quotation omitted). For example, in *Homeward Residential*, the court found that the would-be intervenors were on constructive notice of their interests once the complaint was filed and dismissed their motion to intervene three years later as untimely. *Id.*

So too here: Teman was directly involved in filing the complaint—over four years ago. That is far beyond what courts consider untimely. *See, e.g.*, *id.* (three years untimely); *Catanzano*, 103 F.3d at 232–34 (18 months untimely); *State of N.Y.*, 820 F.2d at 557 (15 months untimely); *In re Zarzur*, 2024 WL 4664721, at *5 (S.D.N.Y. Aug. 22, 2024), *report and recommendation adopted*, 2025 WL 1101475 (S.D.N.Y. Apr. 14, 2025) (13 months untimely); *Butler, Fitzgerald & Potter*, 250 F.3d at 182–83 (one year untimely); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198–99 (2d Cir. 2000) (eight months untimely); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390–91 (2d Cir. 2006) (three to five months untimely).

9

The balance of prejudice arising from Teman's delay also weighs in favor of denying the motion.  Amazon has invested substantial time and resources defending this action over the last four years.  Allowing an intervenor-complaint with duplicative facts and claims at this late stage would result in additional cost and no benefit.  Meanwhile, Teman would suffer no injury from denial because his interests are adequately represented by GateGuard, which he owns and controls.

Finally, Teman has no compelling unusual circumstances justifying delay here.  He was the CEO of GateGuard before, during, and after GateGuard filed its Complaint, which rests on substantially similar facts as his assertion of injury to the "Teman brand."  His term of incarceration is no excuse because GateGuard's lawsuit long pre-dated his incarceration, and in all events he was continually in touch with GateGuard's then-lawyer while in prison.  *See* ECF No. 169 (declaration of Eden Quainton discussing contact with Teman).  And while Teman claims he only recently learned of his personal interests through conversation with counsel, Mot. 2, "[d]elay is not measured solely subjectively because, if that were the test, a putative intervenor could always claim it did not know it needed to intervene until the eve of its motion," *Butler, Fitzgerald & Potter*, 250 F.3d at 182.

Teman's motion is additionally untimely because, were he permitted to intervene, the statute of limitations will have lapsed on his claims.  The complained-of conduct occurred in 2020 and 2021, well outside of any statute of limitations period now available to Teman.  ECF No. 223 at 23–60 (Second Amended Complaint).  His putative complaint-in-intervention asserts a civil RICO claim, Mot. 17–20, which has a four-year statute of limitations, *see Agency Hldg. Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987).  And trade secret misappropriation claims

10

have a three-year limitations period.  18 U.S.C. § 1836(d); N.Y. C.P.L.R. § 214(4).  Both claims are now time-barred.[3]

**C.      Teman's Motion To Intervene Is Meritless.**

**1.      Teman Has No Right To Intervene.**

Intervention as of right requires the movant to show an independent interest that would not be adequately represented by an existing party.  Teman claims he, not GateGuard, owns the "Teman brand," and that Amazon's alleged intellectual property misappropriation injured him separate and apart from GateGuard.  These assertions are unevidenced and, even if true, do not justify intervention as of right.

(i)      Teman Has Failed to Demonstrate any Interest in the Action.

Teman cannot "show an interest in the action," which is fatal to his request for intervention as of right.  *Catanzano*, 103 F.3d at 232.  Teman asserts two interests in this case that he claims justify his intervention.

The first—his claimed ownership of the "Teman brand"—is unsupported.  Teman says that "[t]he devices involved in the dispute bear the Teman brand, which is owned by Mr. Teman and licensed to GateGuard."  Mot. 4.  He presents no evidence of a licensing agreement, and none has come to light through extensive fact discovery in this case.  Nor does any record of a "Teman"

---

[3] Teman fails to allege his "brand injury" claims with sufficient specificity for Amazon to discern what cause of action, if any, he is invoking, but regardless, the equitable doctrine of laches would apply to bar any such claims, given the needless and prejudicial delay here.

trademark appear in the federal trademark registry, which would be necessary for Teman to own and license the brand as he claims.  *See* Salant Decl. Ex. G.[4]

Second, Teman claims that the Court should permit him to intervene because "Defendants have repeatedly referenced Ari Teman personally throughout the course of this litigation, making his personal background and credibility a central focus of their defense."  Mot. 14.  That is insufficient.  Rule 24(a) requires "an interest relating to the property or transaction that is the subject of the action."  Fed. R. Civ. P. 24(a)(2).  Issues of witness credibility and criminality do not relate to the "transaction which is the subject of the action"—*i.e.*, the allegations brought by GateGuard in its complaints.  *New York News Inc. v. Newspaper & Mail Deliverers' Union of N.Y.*, 139 F.R.D. 291, 293 (S.D.N.Y. 1991) (rejecting movant's request to intervene to "protect his reputation" because the "interest . . . is not related to the conspiracy alleged in the pleadings"), *aff'd sub nom. New York News, Inc. v. Kheel*, 972 F.2d 482 (2d Cir. 1992); *Sierra Club v. United States Army Corps. of Engineers*, 709 F.2d 175, 176 (2d Cir. 1983) (intervenor's interest in professional reputation not related to merits of underlying action).  Teman's assertions of personal reputational injury do not authorize intervention of right.

---

[4] Teman asserts that "[t]he 'Teman' name constitutes a recognizable brand and trademark under common law," Mot. 16, which only further defeats his claim to hold an independent interest in a "Teman brand."  Common-law "trademark rights are acquired and maintained through use of a particular mark," *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007).  It was GateGuard that released this product into commerce, not Teman personally, and therefore GateGuard that would have acquired any mark through use.

(ii)     Teman's Alleged Interests Are More Than Adequately Represented by His Company, GateGuard.

Even if Teman demonstrated the existence of a protectible interest for purposes of Rule 24 intervention, which he has not done, his motion would still fail because he cannot show that his interests are inadequately represented by GateGuard. *Catanzano*, 103 F.3d at 232. The Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter*, 250 F.3d at 179 (internal quotation marks and citation omitted). "Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179–80.

Here, Teman and GateGuard have "the same ultimate objective," *Butler, Fitzgerald & Potter*, 250 F.3d at 179, creating a presumption of adequate representation. Teman owns and controls GateGuard and therefore has the same ultimate objectives as it. *See M2 Tech., Inc. v. M2 Software, Inc.*, 589 F. App'x 671, 675 (5th Cir. 2014) (finding proposed intervenor necessarily has the same "ultimate objective" as plaintiff corporation where he "has exclusive control over it"). Teman has controlled GateGuard's efforts in this litigation and continues to do so. Teman does not even attempt to explain how GateGuard would not adequately protect the "Teman brand," the name appearing on its flagship device. Mot. 3. If that brand suffers, so too would GateGuard.

The same logic applies to Teman's claims concerning his personal reputation. Because Teman and GateGuard are intertwined, and Teman is GateGuard's founder, owner, and key witness in this case, GateGuard has an interest in protecting Teman's reputation. The brand, after all, is Teman's last name. In sum, GateGuard and Teman have the same ultimate objective, and there is no plausible reason why GateGuard would not adequately protect his interests.

13

**2.      It Would Be Fundamentally Unjust To Permit Teman To Intervene.**

Teman's case for permissive intervention under Rule 24(b) is equally baseless.  For the same reasons discussed above, Teman has no credible interests in conflict with GateGuard's.  His asserted intellectual property right that forms the basis of his grievance appears to belong to GateGuard, not him.  Asserted personal reputational injury resulting from Amazon's defense of this action does not "shar[e] with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  And to the extent either of his asserted interests exist, they "are adequately represented" by GateGuard.  *Brennan*, 579 F.2d at 191.  Permitting intervention in this context "will unduly delay" and "unduly . . . prejudice the adjudication of" Amazon's rights, *id.*, and should be disallowed because he is a fugitive from justice.

Teman's intervention would further delay these proceedings and prejudice Amazon's rights.  Though the court has discretion over permissive intervention upon a timely motion (which this is not), "[t]he principal consideration set forth in the Rule is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *Brennan*, 579 F.2d at 191–92 (quoting Fed. R. Civ. P. 24(b)).  This civil case was filed in 2021 and has gone through years of motion practice and discovery.  Teman offers no unique facts or arguments not otherwise covered by GateGuard and allowing him to intervene will at best delay the litigation of the same claims presently asserted by GateGuard, at additional litigation cost to Amazon and this Court.[5]

---

[5] For example, if Teman is permitted to intervene in this action, Amazon would be prejudiced by the significant costs and time delay required to move to dismiss Teman's complaint-in-

**D.     Teman's Intervention Motion Is A Transparent Attempt To Circumvent The Corporate Representation Requirement.**

Teman's latest communications make clear that his motion to intervene is part of a broader strategy to dismiss GateGuard's counsel, permit GateGuard to be dismissed from this lawsuit for failure to have counsel, and swap himself in as a *pro se* plaintiff.  For example, following a recent unwelcome email that Teman sent to senior Amazon executives, he was told that Amazon is a represented party in this action and that communications should be conducted through GateGuard's counsel.  He rejected this request, stating, "I'm pro se."  Salant Decl. Ex. E. (March 23, 2026 email).

Teman's gamesmanship should be rejected by this Court.  It is an abuse of discretion to permit intervention by the predominant shareholder of a plaintiff-corporation where it would work an end-run around 28 U.S.C. § 1654, the rule requiring corporate representation in litigation. *Jacobs v. Pat. Enf't Fund, Inc.*, 230 F.3d 565, 569 (2d Cir. 2000).  "[T]o allow a sole shareholder with interests identical to the corporation's to intervene under such circumstances . . . would eviscerate section 1654." *Id.* (internal citation omitted).  Teman, who owns at least 95% of the company, is in a materially identical position to GateGuard.  To the extent Teman claims an independent interest through a licensed intellectual property right, it bears repeating that Teman failed to produce any such intellectual property license or assignment of the "Teman brand" in discovery.  Courts frown on such gamesmanship. *See, e.g.*, *Motionless Keyboard Co. v. Microsoft Corp.*, 184 F. App'x 967, 968–69 (Fed. Cir. 2006) (holding patent assignment is insufficient for

_____

intervention, respond to Teman's fact discovery requests, issue fact discovery requests to Teman, prepare Amazon's witnesses for new or repeated depositions, depose Teman's witnesses, and engage in additional expert discovery, among other things.

15

intervention where it circumvents corporate representation requirement).  Teman's belated request to intervene can only be seen as a strategy to insert himself as the *pro se* plaintiff in interest, eliminating the need to expend legal fees and the constraints on attorney conduct.  The Court should view this plan skeptically, particularly in light of Teman's status as a convicted felon and fugitive.

### V.    CONCLUSION

For the foregoing reasons, the Court should deny Teman's motion to intervene.

Dated: New York, New York
      April 10, 2026

By: */s/ Christopher D. Belelieu*
    Christopher D. Belelieu

    GIBSON, DUNN & CRUTCHER LLP
    Christopher D. Belelieu
    David P. Salant
    Rachel Katzin

    200 Park Avenue
    New York, NY  10166-0193
    Telephone:  (212) 351-4000
    CBelelieu@gibsondunn.com
    DSalant@gibsondunn.com
    RKatzin@gibsondunn.com

    *Attorneys for Defendants Amazon.com, Inc.,*
    *Amazon.com Services LLC, Amazon Logistics Inc.,*
    *and Ring LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1(c) and the Court's Individual Rule II(D), counsel hereby certifies that the foregoing memorandum of law complies with the Court's applicable formatting rules.  As measured by the word processing system used to prepare it, this memorandum contains 4,640 words.

Dated: New York, New York
        April 10, 2026                              By: */s/ Christopher D. Belelieu*
                                                         Christopher D. Belelieu