# EXHIBIT A

GateGuard Inc®
**MUTUAL NON-DISCLOSURE
& NON-COMPETE AGREEMENT**

THIS AGREEMENT (the "**Agreement**") is made as of <mark>JULY 10</mark>, 2020 (the "**Effective Date**") by and between GateGuard Inc, a corporation organized under the laws of the state of Delaware (and its owner Ari Teman, and its associated companies (Friend or Fraud Inc, PropertyPanel Inc, all with their principal place of business in Miami Beach, FL, "GateGuard"), and <mark>DAVID TAXMAN</mark> ("Recipient") with principal place of business located in <mark>MIAMI BEACH, FL,</mark> each, a "**Party**" and together, the "**Parties**").

**W I T N E S S E T H :**

WHEREAS, in connection with the evaluation of one or more possible business transactions between the Parties, each Party has requested, or will request, Confidential Information (as defined below) from the other Party; and

WHEREAS, each Party considers its Confidential Information to be proprietary and/or confidential and requires certain assurances from the other Party as a condition of furnishing the Confidential Information to it;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the Parties hereto hereby agree as follows.

SECTION 1. **Definition of Confidential Information**. *[(a)]* "**Confidential Information**" means nonpublic information revealed by or through a Party (whether in writing, orally or by another means) (the "**Disclosing Party**") to the other Party (the "**Recipient**") including, without limitation, (i) either the fact that discussions or negotiations are taking place concerning a possible transaction between the Parties or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof; (ii) information expressly or implicitly marked or disclosed as confidential, including, without limitation, all forms and types of financial, business, scientific, technical, economic, or engineering information including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing; (iii) information traditionally recognized as proprietary trade secrets; *[(iv) Customer Information (as defined in Subsection 1(b) below)]*; and (v) all copies of any of the foregoing or any analyses, studies or reports that contain, are based on, or reflect any of the foregoing.

(a) TOPIC: The agreement pertains to the GateGuard business ( https://gateguard.xyz ). GateGuard®  is an "AI Doorman Intercom", real Estate management technology, package management, access control, logistics, and news and media platform (running on sister-company platform PropertyPanel.xyz), and the parent company, Friend or Fraud Inc dba "Teman".

SECTION 2. **Non-compete.** Parties agree that all intellectual property related to the above topics remain the property of GateGuard and Recipient will not create, join, fund, invest, aid, assist, sell, market, or otherwise become involved in any business selling, manufacturing, marketing, referring, advising, or otherwise related to the TOPIC(S) of this agreement as outlined in Section 1a., neither personally or through any of her entities, partnerships,                              or                              associations.

SECTION 3. **Confidentiality**.  At all times the Recipient shall protect and preserve the Confidential Information as confidential, using no less care than that with which it protects and preserves its own highly confidential and proprietary information (but in no event less than a reasonable degree of care), and shall not use

**1**

GG081908

the Confidential Information for any purpose except to evaluate a possible business transaction with the Disclosing Party (the "**Limited Purpose**"). The Recipient may disclose, distribute or disseminate the Confidential Information to any of its officers, directors, members, managers, partners, employees, agents or other persons (its "**Representatives**") provided that the Recipient reasonably believes that those Representatives have a need to know and such Representatives are bound by confidentiality obligations at least as restrictive as those contained herein.  The Recipient shall not disclose, distribute or disseminate the Confidential Information to any third party without the prior written consent of the Disclosing Party.  The Recipient shall at all times remain responsible for any violations of this Agreement by any of its Representatives.

**SECTION 4.  Return of Confidential Information**.  Promptly following the request of the Disclosing Party, the Recipient and its Representatives shall return to the Disclosing Party, or, at the Disclosing Party's option, destroy all materials that are in written, electronic or other tangible form (including, without limitation, all written or printed documents, notes, memoranda, email, computer disks or tapes (whether machine or user readable), or computer memory, whether or not prepared by Recipient) that contain, summarize or abstract any portion of the Confidential Information, including, without limitation, all copies, extracts and derivations of such materials.  In addition, upon the request of the Disclosing Party, the Recipient shall certify to the Disclosing Party in writing the Recipient's and its Representatives' compliance with its obligations pursuant to this Section 3.

**SECTION 5.  Ownership of Confidential Information**.  The Recipient acknowledges and agrees that, as between the Recipient and the Disclosing Party, the Confidential Information, together with all intellectual property rights embodied therein (including, but not limited to, all patent rights, inventions (whether patentable or not), concepts, ideas, algorithms, formulae, processes, methods, techniques, copyrights, copyrightable works, trade secrets, know-how, and trademarks), are the sole and exclusive property of the Disclosing Party.  The Disclosing Party shall retain all right and title to all proprietary rights in the Confidential Information and to any other intellectual property owned or otherwise provided by the Disclosing Party.  The Recipient shall not have the right to use the intellectual property rights embodied in the Confidential Information for any purpose other than the Limited Purpose.

**SECTION 6.  Exclusions from the Definition of "Confidential Information"**.  The term "**Confidential Information**" does not include information which: (a) is or becomes generally available to the public other than as a result of disclosure by the Recipient or its Representatives (or any person to whom the Recipient or its Representatives disclosed such information); (b) was known by the Recipient prior to its disclosure by the Disclosing Party; (c) was independently developed by Recipient without use of the Confidential Information; or (d) becomes available to the Recipient on a non-confidential basis from a source other than the Disclosing Party, provided that such source is not bound by a confidentiality agreement, confidentiality obligation or fiduciary duty which prohibits disclosure and the Recipient has no reason to believe that such source may be restricted from making such disclosure.

**SECTION 7. Compelled Disclosure**.  In the event the Recipient becomes or may become legally compelled to disclose any Confidential Information (whether by deposition, interrogatory, request for documents, subpoena, civil investigative demand or other process or otherwise), the Recipient shall provide to the Disclosing Party prompt prior written notice of such requirement so that the Disclosing Party may seek a protective order or other appropriate remedy and/or waive compliance with the terms of this Agreement.  In the event that such protective order or other remedy is not obtained, or that the Disclosing Party waives compliance with the provisions hereof, the Recipient shall furnish only that portion of the Confidential Information which it is advised by counsel is legally required to be disclosed, and shall use its best efforts to insure that confidential treatment shall be afforded such disclosed portion of the Confidential Information.

**SECTION 8. Specific Performance and Injunctive Relief**.  The Recipient acknowledges that in the event of a breach of this Agreement by the Recipient or its Representatives, substantial injury could result to the Disclosing Party and money damages will not be a sufficient remedy for such breach.  Therefore, in the event that the Recipient or its Representatives engage in, or threaten to engage in any act which violates any provision of

this Agreement, the Disclosing Party shall be entitled, in addition to all other remedies which may be available to it under law, to injunctive relief (including, without limitation, temporary restraining orders, or preliminary or permanent injunctions) and specific enforcement of the terms of this Agreement.  The Disclosing Party shall not be required to post a bond or other security in connection with the granting of any such relief.

**SECTION 9.  No Warranties; No License; No Reverse Engineering**.  The Confidential Information is provided "as is" and the Disclosing Party makes no representations or warranties, express or implied, with respect to the Confidential Information and shall have no liability to the Recipient or any other person or entity for any reliance upon the Confidential Information by the Recipient or such other person or entity.  THE DISCLOSING PARTY SPECIFICALLY DISCLAIMS ALL WARRANTIES OF ANY KIND TO THE RECIPIENT, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT AND THOSE WARRANTIES ARISING FROM A COURSE OF PERFORMANCE, A COURSE OF DEALING OR TRADE USAGE.  Nothing contained herein shall be construed, either expressly or implicitly, to grant to the Recipient any rights to technology or license under any patent, copyright, trademark or other intellectual property right, now or hereinafter in existence, except for the Limited Purpose.  The Recipient shall not (i) alter, maintain, enhance or otherwise modify any software included within the Confidential Information; (ii) disassemble, decompile or reverse-engineer any such software; nor (iii) otherwise take action to discover the equivalent of any such software.

**SECTION 10.        Term and Termination**.  This Agreement will continue in effect until terminated by either Party upon thirty (30) days' written notice.  In the event of termination of this Agreement, the Recipient shall continue to hold the Confidential Information in strict confidence as set forth herein for ten (10) years from the date of termination, except with regard to trade secrets of the Disclosing Party, which shall be held in confidence for as long as such information remains a trade secret.

**SECTION 11.        Governing Law; Jurisdiction and Venue**.  This Agreement, and all matters arising directly or indirectly from this Agreement, shall be governed by and construed in accordance with the laws of the state of New York, without regard to its conflict of laws rules applicable to contracts to be performed entirely within the state of New York.

**SECTION 12.        Entire Agreement; No Assignment; Modification and Waiver**.  This Agreement constitutes the entire agreement of the Parties with respect to the subject matter hereof and supersedes any and all existing or prior agreements and communications, whether

**3**

GG081910

**SECTION 13.**     **IN WITNESS WHEREOF**, the Parties have caused this Mutual Non-Disclosure written or oral, relating to the subject matter hereof.  No modification of this Agreement shall be effective unless it is in writing and signed by an authorized representative of each Party.

**SECTION 14.**     **Severability**.  The illegality, invalidity, or unenforceability of such provision shall not in any manner affect or render illegal, invalid or unenforceable any other provision of this Agreement, and that provision, and this Agreement generally, shall be reformed, construed and enforced so as to most nearly give lawful effect to the intent of the parties as expressed in this Agreement.

**SECTION 15.**     **Counterparts**.  This Agreement may be executed in counterparts (which may be exchanged by facsimile), each of which shall be deemed an original, but which together shall constitute one and the same instrument.

[*Signature Page Follows*]

Agreement to be executed by their duly authorized representatives as of the Effective Date.

**ARI TEMAN, ET AL**

By:_____

Name: ARI TEMAN

Title: CEO

RECIPIENT:

By:_____

Name:  David Taxman

Title:_____

**4**

GG081911