# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

Civil Action No. 21-cv-9321 (JGK)

------------------------------------x

GATEGUARD, INC.,

          Plaintiff,

     - against -



AMAZON.COM, INC.,

AMAZON.COM SERVICES, INC.,

AMAZON.COM SERVICES, LLC,

AMAZON LOGISTICS, INC.,

          Defendants.

------------------------------------x

               January 19, 2024

               9:49 a.m.



     Videotaped Deposition of DAVID

TAXMAN, taken by Defendants, pursuant to

Notice, held at the offices of Gibson Dunn

& Crutcher LLP, 200 Park Avenue, New York,

New York, before Todd DeSimone, a

Registered Professional Reporter and Notary

Public of the State of New York.

Page 2

APPEARANCES:

QUAINTON LAW, PLLC
2 Park Avenue
2nd Floor
New York, New York 10016
    Attorneys for Plaintiff
BY:   EDEN P. QUAINTON, ESQ.
    equainton@gmail.com


GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166
    Attorneys for Defendants
BY:   ANNE M. CHAMPION, ESQ.
    achampion@gibsondunn.com
    MARC AARON TAKAGAKI, ESQ.
    mtakagaki@gibsondunn.com
    ELISE BLEGEN, ESQ.
    eblegen@gibsondunn.com



ALSO PRESENT:

    DEVERELL WRITE, Videographer

Page 3

D. TAXMAN

THE VIDEOGRAPHER:  We are going on the record at 9:49 a.m. on January 19th, 2024.

This is media unit one of the video-recorded deposition of David Taxman taken by counsel for the defendants in the matter of GateGuard, Inc. versus Amazon.com, Inc., et al. This case is filed in the United States District Court for the Southern District of New York.

My name is Deverell Write representing Veritext Legal Solutions. The court reporter is Todd DeSimone from Veritext Legal Solutions.

At this time will counsel please state their appearances.

MS. CHAMPION:  Anne Champion from Gibson Dunn & Crutcher for the defendants, and I have my colleagues with me, Marc Alan Takagaki and Elise Blegen.

MR. QUAINTON:  And Eden Quainton for the plaintiff GateGuard,

Page 4

D. TAXMAN

Inc.

* * *

DAVID TAXMAN, called as a witness, having been first duly sworn, was examined and testified as follows:

EXAMINATION BY MS. CHAMPION:

Q.   Good morning, Mr. Taxman.

A.   Good morning.

Q.   What is your address for the record?

A.   1900 North Bayshore -- my personal address?

Q.   Uh-huh.

A.   1900 North Bayshore Drive, apartment 2611, Miami, Florida 33132.

Q.   And how long have you lived there?

A.   It has been about two -- no, wait.  It has been about a little more than a year.

Q.   And I believe that you -- how long have you been in Florida?

MR. QUAINTON:  Objection.

Page 5

D. TAXMAN

A.   A little more than six years.

Q.   And you moved there from Illinois, is that right, looking at your bio?

A.   No.

Q.   Where were you before that?

A.   D.C. area.

Q.   And before that?

A.   Chicago.

Q.   Chicago, okay.  That's what I thought.

So you have been noticed for a deposition in this case.  You are aware of that?

A.   Yeah.

Q.   So I'm just going to show you the notice of deposition.  We will mark this as DX 2.  That means Defendants' Exhibit 2.  I'm marking it as 2 because we had one introduced in a deposition yesterday.

(Defendants' Exhibit 2 marked for identification.)

Q.   So this is what is called a

2 (Pages 2 - 5)

Page 106

D. TAXMAN

MR. QUAINTON: Objection.

A. There might have been something Ari asked me to review as part of that on-boarding process, something he gave a previous employee, but nothing like specific. I don't know what the question is getting to I guess. I don't want to put myself in a situation where I'm going to answer this incorrectly.

Q. No, I understand. I'm really just trying to get a sense of your knowledge of GateGuard's operations before you joined.

A. Yeah, I don't know the extent, I know he had other -- I know he had employees at some point. He had salespeople. I have seen, you know, sales, you know, your sales call sheets that he has used. I have seen what he would use for like an employment agreement in the past. So those are the type of documents. But I don't have any specific knowledge of the number of employees and, you know, the correspondence. Yeah, nothing of that

Page 107

D. TAXMAN

nature.

Q. Understood. So you referenced an on-boarding process. What do you mean by that?

A. For me?

Q. Yeah.

A. It was just, again, we talked about it before, sort of just reviewing documents, whether that is related to maintenance, it is related to the operations of the equipment, the use of the software, sales pitch, employment agreement type things, terms and agreements, just reviewing, that was kind of the on-board, just review the materials.

Q. And those were materials that Mr. Teman identified to you?

A. Yeah.

Q. And by Mr. Teman here, I mean Ari Teman.

A. Correct.

Q. Did you speak with anyone besides Mr. Teman during this on-boarding process about GateGuard and its history or

Page 108

D. TAXMAN

anything like that?

MR. QUAINTON: I'm just going to caution you not to get into anything you may have discussed with counsel, either me or any other counsel for GateGuard.

A. No.

Q. Did you speak with any of GateGuard's past employees?

A. No.

Q. Third-party consultants?

A. No.

Q. Does GateGuard have financial statements?

MR. QUAINTON: Objection.

A. Financial statements that we're submitting out to people?

Q. No. Just how -- well, I will ask a more general question. How does GateGuard track its financial information?

MR. QUAINTON: Objection.

A. I mean, to my understanding, there was a bookkeeper that would work with

Page 109

D. TAXMAN

the company, but there is nothing -- we're not regularly entering into any accounting software.

Q. Who is the bookkeeper?

A. I have her name written down, but I have not actually been dealing with her.

Q. Has anyone?

MR. QUAINTON: Objection.

A. Well, I'm sure somebody has at some point.

Q. Do you know if David Teman, for example, has communicated with the bookkeeper recently?

A. No, he has not.

Q. Do you know where she is?

A. I assume she is based out of New York, but I don't know, to be honest.

Q. And to be clear, is it your understanding that she is not a GateGuard employee?

A. Yes.

Q. So she is a third party, do you know whether it is a consulting arrangement

28 (Pages 106 - 109)

Page 346

D. TAXMAN

Q. So just, again, as an initial matter, have you ever seen this before?

A. No.

Q. And do you know who Elie Gabay is, the person in the to line of that top e-mail?

A. I don't.

Q. Have you heard of Coney Realty?

A. I have not.

Q. Do you have any reason to believe they are current customers of GateGuard?

A. I have not seen that client name.

Q. So just directing your attention to Mr. Teman's, that top e-mail from Mr. Teman where he says "Please pay the full invoice for the GateGuard device you got in 100 percent bad faith immediately before we discuss anything further. This is past due since January 19th. I will send it to collections and place a lien on your building on Pessach. You promised to not judge us based on the

Page 347

D. TAXMAN

old device, which I didn't want to install for you because it relies on internet and you have Spectrum that always goes offline."

Do you know what the old device was?

MR. QUAINTON: Objection.

A. I imagine it was an earlier version of the device.

Q. But you're not specifically aware of different versions of the device?

A. I am not 100 percent aware of what -- I've seen some correspondence regarding this and maybe some past invoices that I have looked through in trying to -- and there might have not been a router in one of the old devices.

Q. Are you aware of problems between GateGuard devices and Spectrum?

A. No.

MR. QUAINTON: Objection.

A. I'm not.

Q. And in the last paragraph of that e-mail, Mr. Teman says "Your manager

Page 348

D. TAXMAN

is an idiot and your internet has been off for days, as I said, and as you super told him. I cannot fix your manager being an idiot, but that's not my problem."

Do you see that?

A. Yes.

Q. Would you ever call a client an idiot?

MR. QUAINTON: Objection.

A. I would not.

Q. Or the manager of a client an idiot?

MR. QUAINTON: Objection.

A. I would not.

Q. Are you surprised that Mr. Teman would do that?

MR. QUAINTON: Objection.

A. I am.

Q. Are you aware of any complaints filed against GateGuard with organizations like the Better Business Bureau?

MR. QUAINTON: Objection.

A. I am not.

Q. And what about have you ever

Page 349

D. TAXMAN

heard of DCWP, do you know what I mean when I say that?

MR. QUAINTON: Objection.

A. No.

Q. It is a New York City agency, the Department of Consumer and Worker Protection.

A. Okay.

Q. Are you familiar with any complaints being filed against GateGuard with that entity?

MR. QUAINTON: Objection.

A. I am not.

Q. And what about similar entities, like consumer protection entities or better business bureaus, you know, in other jurisdictions where GateGuard has devices, like Pennsylvania and Florida, are you familiar with any complaints of that nature?

MR. QUAINTON: Objection.

A. I am not, no.

Q. Are you aware of any pending litigations or arbitrations that GateGuard

88 (Pages 346 - 349)

Page 350

D. TAXMAN

has against anyone, aside from this one against Amazon?

MR. QUAINTON: Objection.

A.   I am not.

Q.   Were you aware that GateGuard was in a dispute with NVI?

MR. QUAINTON: Objection.

A.   I mean, is that related to Ari's case?

Q.   I think it is a civil -- it is a civil case. You're not aware of any dispute between GateGuard and NVI?

MR. QUAINTON: Objection.

A.   I might have seen some record of it, but I am not aware with any of the internals with it, no.

Q.   And how about any disputes between GateGuard and other clients, are you aware of any other litigations or arbitrations that they're involved in of that nature?

MR. QUAINTON: Objection.

A.   I am not, no.

Q.   So who would be involved with

Page 351

D. TAXMAN

handling those disputes, would that be Mr. Teman to your knowledge?

A.   Yeah.

Q.   Let's look at this. We can mark it as I guess 31.

(Defendants' Exhibit 31 marked for identification.)

Q.   So this is a copy of the First Amended Individual and Class Action Complaint filed by GateGuard in this action. Do you see that?

A.   Yes.

Q.   And this is dated January 24th, 2022. You will see the stamp at the top of the page. That happens when you file something with the court system, it stamps it in that way.

A.   Uh-huh.

Q.   So have you ever reviewed this?

MR. QUAINTON: I'm just going to caution you not to get into any discussions that you may have had with me.

THE WITNESS: Okay.

Page 352

D. TAXMAN

(Witness perusing document.)

A.   What was the question?

Q.   I don't remember. Have you ever reviewed this before?

A.   Yeah, I don't remember reviewing this.

Q.   Okay. And, again, you saw the filing date at the top there was January 2024?

A.   Right.

Q.   Oh, I'm sorry, 2022.

A.   Right.

Q.   January 24th, 2022.

A.   Right.

Q.   So at that time you would not have had any input into this document; is that fair?

A.   Yeah, I didn't start with the company, no.

Q.   So safe to say you're not familiar with the allegations made in this document?

MR. QUAINTON: Objection.

A.   No, I mean, I'm familiar with

Page 353

D. TAXMAN

the case obviously at some level, but I wasn't involved with drafting this document.

Q.   I just want to briefly go over some of the terms and conditions that I believe you said the current ones are on the website, so we have printed those out. So I guess that will be DX 32.

(Defendants' Exhibit 32 marked for identification.)

Q.   Are you familiar with this service agreement?

A.   Yes.

MR. QUAINTON: I'm just going to object for the record that the service agreement by its terms needs to be read in conjunction with the GateGuard legal terms and the GateGuard privacy policy, which weren't shown to the witness.

MS. CHAMPION: Well, we do have a copy of the terms and conditions as well. We can put those in. But let's just do the service agreement first.

89 (Pages 350 - 353)

Page 390

D. TAXMAN

MR. QUAINTON:  And I don't have any questions either.  So we can -- I mean, I do have questions, but I'm going to spare you.

THE WITNESS:  Thank you.

THE VIDEOGRAPHER:  We are going off the record at 6:14 p.m.  This concludes today's testimony given by David Taxman.  The total number of media units used was five and will be retained by Veritext Legal Solutions.  Thank you.  We are off the record.

[TIME NOTED:  6:14 p.m.]

_____
    DAVID TAXMAN

_____
Subscribed and sworn to before me this _____ day of _____, 2024.
_____
    Notary Public

---

Page 392

E X H I B I T S

| DEFENDANTS' | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 22 | Plaintiff's Fifth Set of Request for the Production of Documents from Defendants | 282 |
| Exhibit 23 | Document entitled Exhibit 1 | 286 |
| Exhibit 24 | Plaintiff's Objections and Responses to Defendants' Fourth Set of Interrogatories | 296 |
| Exhibit 25 | Plaintiff's Objections and Responses to Defendants' Fifth Set of Interrogatories | 298 |
| Exhibit 26 | GG003731-003734 | 311 |
| Exhibit 27 | GG003694 | 318 |
| Exhibit 28 | GG003739-003742 | 322 |
| Exhibit 29 | GG063731-0063739 | 342 |
| Exhibit 30 | GG064888-0064895 | 345 |
| Exhibit 31 | First Amended Individual and Class Action Complaint | 351 |
| Exhibit 32 | Service Agreement Last Updated 7/28/20 | 353 |
| Exhibit 33 | Terms and Conditions Last Revised 7/7/20 | 355 |

DIRECTIONS NOT TO ANSWER

| Page | Line |
|---|---|
| 173 | 15 |
| 174 | 14 |
| 174 | 21 |
| 176 | 13 |
| 177 | 9 |
| 181 | 15 |
| 340 | 24 |

REQUESTS
Page    Line
(NONE)

---

Page 391

I N D E X

| WITNESS | EXAMINATION BY | PAGE |
|---|---|---|
| TAXMAN | CHAMPION | 4 |

E X H I B I T S

| DEFENDANTS' | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 2 | Amended Notice of Deposition | 5 |
| Exhibit 3 | David Taxman LinkedIn profile | 16 |
| Exhibit 4 | Printout of YouTube page | 23 |
| Exhibit 5 | Document entitled Eyes of the Planner | 24 |
| Exhibit 6 | David Taxman - Instagram Interactions with Ari Teman | 35 |
| Exhibit 7 | Printout of Facebook post | 41 |
| Exhibit 8 | Text message thread | 47 |
| Exhibit 9 | Document from Florida Department of State, Division of Corporations | 72 |
| Exhibit 10 | Document from Florida Department of State, Division of Corporations | 74 |
| Exhibit 11 | GG003690 | 133 |
| Exhibit 12 | GG004746-004763 | 136 |
| Exhibit 13 | GG003773-003773 | 185 |
| Exhibit 14 | GG003691 | 205 |
| Exhibit 15 | GG003790-003791 | 208 |
| Exhibit 16 | GG003792-003793 | 215 |
| Exhibit 17 | GG003783-003784 | 217 |
| Exhibit 18 | GG059772-059780 | 231 |
| Exhibit 19 | Printout of picture | 262 |
| Exhibit 20 | Plaintiff's Objections and Responses to Defendants' Third Set of Interrogatories | 271 |
| Exhibit 21 | Defendants' Third Set of Interrogatories to Plaintiff | 272 |

---

Page 393

CERTIFICATION

I, TODD DeSIMONE, a Notary Public for and within the State of New York, do hereby certify:

That the witness whose testimony as herein set forth, was duly sworn by me; and that the within transcript is a true record of the testimony given by said witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 22nd day of January, 2024.

_____
TODD DESIMONE

*    *    *

Veritext Legal Solutions
212-267-6868          www.veritext.com          516-608-2400

6