**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

**GATEGUARD, INC.,**
Plaintiff,

v.

**AMAZON.COM, INC., et al.,**
Defendants.

No. 21 Civ. 9321 (JGK)

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
ARI TEMAN'S MOTION TO INTERVENE

---

**PRELIMINARY STATEMENT**

Defendants' opposition attempts to reduce this motion to a narrative: that a "fugitive" is attempting a late-stage maneuver to insert himself into litigation already under control. That framing fails because it ignores both the governing legal standard and Defendants' own evidentiary record.

The actual record shows:

- Defendants have made Mr. Teman the **central figure** in their defense;
- Defendants rely on **his name, conduct, and alleged credibility** as a cornerstone of their case;
- Defendants now seek to **exclude him entirely** from responding;
- Defendants rely on **privileged criminal-defense communications** disclosed only due to admitted error under extraordinary circumstances;
- Most critically, Defendants **fail to establish the required nexus** between alleged fugitivity and this litigation—a failure that is dispositive.

At minimum, even if the Court were to consider Defendants' disentitlement theory, the appropriate remedy would be a **temporary stay—not exclusion**. The doctrine does not permit the creation of a one-sided record.

---

**I. DEFENDANTS' DISENTITLEMENT ARGUMENT FAILS BECAUSE THEY CANNOT ESTABLISH THE REQUIRED NEXUS**

1

The fugitive disentitlement doctrine is not triggered by status alone. It applies only where the alleged fugitivity has a meaningful connection to the proceeding at issue.

The Supreme Court in *Degen v. United States*, 517 U.S. 820 (1996), rejected the use of disentitlement as a broad punitive measure, emphasizing that courts must assess whether a litigant's absence actually interferes with adjudication. The Court held that where the case can proceed without impairment, disentitlement is inappropriate.

Likewise, *Ortega-Rodriguez v. United States*, 507 U.S. 234 (1993), requires a connection between the fugitive conduct and the judicial process at issue.

This Court has already applied that exact rule to Mr. Teman:

> "the instant case lacks the expressly required nexus between fugitivity and the course of the proceedings."
> *Teman v. Zeldes Needle Cooper LLP*, No. 24-cv-9830 (LJL), ECF No. 32 at 6–7.

Defendants do not attempt to distinguish that holding.

They cannot establish nexus because none exists:

- Alleged fugitivity → supervised release
- This case → trade secrets, contracts, and device interference

There is no overlap.

---

## II. DEFENDANTS' OWN EVIDENCE CONFIRMS THAT TEMAN'S ABSENCE DOES NOT DISRUPT LITIGATION

Defendants attempt to rely on Mr. Teman's extensive participation in the case to argue that intervention is unnecessary. That argument proves the opposite.

Defendants admit that:

- Mr. Teman participated in a **full-day mediation on November 12, 2024** via videoconference;
- He has been involved in litigation decisions;
- He has been accessible to counsel throughout the case.

This is dispositive.

If Mr. Teman's physical presence were necessary to maintain "orderly litigation," as Defendants claim, then:

- mediation could not have occurred;
- litigation could not have proceeded for years;
- Defendants themselves would have objected earlier.

2

They did not.

Instead, Defendants' own record demonstrates that:

- Mr. Teman's absence has not impeded proceedings;
- remote participation has been sufficient;
- the litigation has functioned normally.

Under *Degen*, this is precisely the scenario where disentitlement is improper.

---

## III. THE "TEMAN" BRAND IS A DISTINCT PERSONAL ASSET—AND DEFENDANTS' OWN RECORD CONFIRMS IT

Defendants' strongest factual argument—that no written licensing agreement was produced—fails both legally and factually.

### A. A Written License Is Not Required Under New York Law

Defendants' argument rests on the incorrect premise that a valid intellectual property license must be written.

That is not the law.

Under New York law, non-exclusive licenses—particularly those involving trademarks or trade names—may be oral or implied through conduct. The existence of a license is a factual question, not a formalistic one.

Defendants' attempt to convert "no document produced" into "no rights exist" is therefore legally incorrect.

---

### B. The Branding Itself Is "Open and Notorious" Evidence of the License

More importantly, the record itself provides direct evidence of the licensing relationship.

Defendants' own materials show:

- the product is explicitly branded as **"teman GateGuard"**;
- the name "Teman" is prominently used in commerce;
- Defendants themselves adopt that terminology in internal and litigation communications.

That is not incidental—it is evidence.

3

The use of a personal name in a product brand, in commerce, with the knowledge and acknowledgment of all parties, is precisely the type of conduct from which common law trademark rights and licensing relationships are inferred.

Under *ITC Ltd. v. Punchgini*, 482 F.3d 135 (2d Cir. 2007), trademark rights arise from use. Here, the use is undisputed—and Defendants' own evidence confirms it.

---

### C. The Brand Exists Independently of GateGuard

Mr. Teman's use of the "Teman" name extends beyond GateGuard, including:

- software products (e.g., PropertyPanel);
- design and architecture-related work; "Teman Design Partners"
- Engineering and product design (Teman holds multiple patents)
- Comedy including TV and National Theater appearances for Comedy (BBC, VH1, Israel National Theater, NYPL, The Improv, StandUp NY, West Side Comedy Club, etc.)
- other commercial activities bearing the same branding.

Teman's interest in his name is not limited to GateGuard. The "Teman" name has independent commercial and reputational value arising from Teman's work across multiple fields, including public-facing creative and professional endeavors.

*Defendants*' repeated invocation of Teman personally—including allegations directed at his credibility and character—therefore extends beyond any corporate interest and directly implicates his individual reputation and livelihood.

Courts recognize that such personal interests, particularly where a name is used in commerce and public-facing activities, are distinct from and not fully represented by a corporate party. This provides an additional and independent basis for intervention.

It is very clear that the "Teman" brand is a **personal asset**, not merely a corporate label. Teman should be afforded the opportunity to protect his personal asset.

---

### D. Teman's Licensing of His Name Mirrors Established Founder-Controlled Brand Models, Including the Bloomberg Paradigm

Defendants' "licensing gap" argument ignores how founder-controlled brands operate in both law and modern commerce. A well-known example is the structure associated with Michael Bloomberg, whose name is used across products and platforms under centralized control. The value and enforceability of that name do not depend on a single formal written license, but on continuous, controlled use directed by its owner.

Teman has followed that same model. His PropertyPanel platform—described by third parties as the "Bloomberg Terminal for Real Estate"—was intentionally designed along similar lines, offering integrated features such as chat, search, news, asset reports, and financial data, but tailored to commercial real estate. As with the Bloomberg model, the "Teman" name functions as a unifying, source-identifying mark applied across affiliated offerings under Teman's control.

The legal principle underlying that structure is straightforward: trademark rights arise from use in commerce and are maintained through control over the nature and quality of goods and services offered under the mark. See *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 146 (2d Cir. 2007). A formal written license is not required where the record reflects continuous, controlled use—particularly in a founder-led enterprise.

The record here does exactly that. The product at issue is branded "teman GateGuard," and Defendants themselves repeatedly adopt and use that designation in their own documents and communications. That is not incidental—it is affirmative evidence that the "Teman" name is being used as a licensed, source-identifying mark within a coordinated brand structure.

The practical implications are equally clear. If a third party were to begin destroying Bloomberg-branded equipment while simultaneously attacking Bloomberg personally in court filings, there would be no serious argument that Bloomberg himself lacked standing to intervene to defend his name. The same principle applies here. It is Defendants who have made this litigation about "Teman"—by naming the devices after him, by referring to them as such, and by directing personal attacks at him in their filings.

Under those circumstances, fairness and basic procedural equity require that Teman be permitted to participate directly. Defendants cannot simultaneously center their defense on Teman's identity and then exclude him from responding.

## IV. DEFENDANTS' "DECISION-MAKER" THEORY MISSTATES THE LAW

Defendants argue that Mr. Teman's interests are adequately represented because he is a "decision-maker" within GateGuard.

That argument fails as a matter of law.

The relevant inquiry is not whether Mr. Teman influences corporate decisions, but whether the corporation can adequately represent his **personal legal interests**.

Those interests are distinct:

- GateGuard's counsel owes duties to the corporation—not to Mr. Teman personally;
- Mr. Teman's personal brand, reputation, and potential exposure are separate from corporate interests;
- conflicts are not hypothetical—they are inherent.

5

For example:

- if a settlement were in GateGuard's interest but required abandoning or rebranding the "Teman" name, corporate counsel could accept it;
- Mr. Teman's personal rights would be extinguished without his participation.

That is the opposite of adequate representation.

---

## V. THE "CORPORATE DEATH" SCENARIO MAKES INTERVENTION NECESSARY

Defendants acknowledge that GateGuard's counsel intends to withdraw.

A corporation cannot proceed pro se.

The consequence is clear:

- GateGuard risks dismissal for failure to prosecute;
- the case may terminate on procedural grounds;
- Mr. Teman's personal brand rights—embedded in the litigation—would be extinguished without adjudication.

This is precisely the scenario Rule 24(a)(2) is designed to prevent:

impairment of an interest where no existing party remains to protect it.

Without intervention:

- no party will be left to defend the "Teman" brand;
- Defendants' alleged conduct will never be adjudicated;
- Mr. Teman's rights will be lost through procedural collapse.

That is not a theoretical concern—it is an imminent one.

---

## VI. TIMELINESS IS SATISFIED BASED ON SPECIFIC TRIGGERS

Defendants' "four-year delay" argument ignores when the need to intervene actually arose.

The relevant triggers include:

- discovery revealing Defendants' treatment of "Teman" devices;
- Defendants' escalation of personal attacks;
- the disclosure and use of privileged materials;
- the realization that prior counsel failed to protect personal rights.

6

Additionally:

- Mr. Teman was incarcerated during key periods;
- discovery was handled by third parties;
- prior counsel has admitted serious errors.

Under *Butler* and *Zerilli-Edelglass*, these are precisely the types of circumstances that justify timing based on when interests become inadequately protected.

---

## VII. EVEN IF DISENTITLEMENT WERE CONSIDERED, A STAY IS THE ONLY PROPORTIONATE REMEDY

Even if the Court were to accept Defendants' premise, the requested remedy—complete exclusion—is improper.

The Supreme Court in *Degen* expressly rejected such overbroad sanctions, emphasizing that courts must consider less drastic alternatives.

Courts routinely use **stays** as a narrower, equitable solution where external issues affect a party's participation. See:

- *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97–99 (2d Cir. 2012) (recognizing the appropriateness of stays to manage fairness concerns);
- *SEC v. Downe*, 1993 WL 22126, at *12 (S.D.N.Y. Jan. 26, 1993) (granting stay rather than allowing prejudice from parallel issues).

A stay here would:

- preserve the Court's authority;
- avoid prejudice to either party;
- allow related issues (including medical evidence and appellate proceedings) to be resolved.

By contrast, exclusion would:

- allow Defendants to continue attacking Mr. Teman;
- prevent him from responding;
- create a one-sided record.

That is not a proportionate or equitable outcome.

## VIII. Defendants' Characterization of GateGuard's Counsel Situation Is Misleading and Reflects a Broader Pattern of Litigation Tactics

Defendants' assertion that GateGuard's counsel "intends to withdraw" is presented in a manner designed to create the false impression that GateGuard is unable or unwilling to proceed. That is not the case.

7

GateGuard is actively working to transition to replacement counsel with specific experience in the issues that have emerged through discovery—issues that include the improper handling and disclosure of privileged materials and, critically, conduct by Defendants and their agents that GateGuard believes, based on the evidence produced in this case, constitutes a coordinated scheme involving unauthorized access to properties, interference with installed systems, and destruction or disabling of GateGuard devices.

Based on discovery to date, GateGuard's good-faith position is that this conduct may constitute violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), among other claims. That is not a rhetorical flourish—it is a conclusion drawn from the pattern, scale, and coordination reflected in the evidence produced by Defendants themselves.

In fact, Teman respectfully moves the Court to refer Amazon, ClearHome, and their executives named in discovery for criminal prosecution for their intentional theft of Teman's and GateGuard's property.

In that context, the transition to new counsel is not a weakness. It is a necessary and responsible step to ensure that the case is litigated by counsel equipped to address the full scope of the issues now revealed.

Defendants' attempt to weaponize this transition is improper. Courts in this District routinely permit parties to change counsel, particularly where new facts materially alter the posture of a case. What Defendants seek to do here is something very different: to leverage a transition in representation into a procedural advantage that would extinguish claims without adjudication.

That effort underscores the need for intervention.

If GateGuard's representation were to lapse even temporarily, the corporation would face procedural constraints that could result in dismissal. At the same time, Defendants continue to direct their arguments at Teman personally—attacking his credibility, invoking his name, and relying on his alleged conduct. Without intervention, the result would be a one-sided proceeding in which Defendants are free to attack Teman while he is barred from responding.

That is not an accident. It is a litigation strategy.

The Court should not permit Defendants to:

- frame the case around Teman personally,
- rely on discovery that implicates his rights,
- and then exclude him at the moment his participation becomes necessary.

Intervention is required to prevent precisely that outcome and to ensure that the case proceeds on a complete and balanced record.

## IX. Fair Is Fair: Defendants' Conduct Reflected in the Record Warrants Equal Treatment and Referral

Defendants, through counsel, have repeatedly chosen to frame this case in terms of criminality—invoking allegations against Mr. Teman to seek procedural advantage and to exclude him from participating in this litigation.

8

Fair is fair. The Court should treat all individuals and entities equally.

The rules of this Court do not change based on the size, wealth, or influence of the parties before it.

If Defendants wish to place criminal conduct at the center of this case, *the Court should not apply that framework selectively -- regardless of how wealthy Amazon and ClearHome and their executives are.*

The discovery record reflects coordinated, interstate conduct by Defendants and their agents involving the acquisition, shipment, and use of GateGuard devices under circumstances that Plaintiff alleges were improper and unauthorized". The record shows that:

- Under the direction of Amazon executives, and after multiple conversations, ClearHome executives ordered Teman-branded devices through GateGuard's website with the intention of sending them immediately to Amazon, having been provided a shipping label to do so.

- those devices were not paid for despite repeated follow-up communications;

- the transactions were coordinated across multiple jurisdictions, including Utah and California and Florida;

- the equipment was then shipped across state lines, including to Utah and then California, at the direction of Amazon personnel;

- the acquisition and shipment were carried out through coordinated internal communications.

- no payment was made, nor attempted, even after many reminders, and even after Mr. Salant and his team were made aware of the issue.

- Worse, ClearHome's counsel and executives violated discovery deadlines in what appears to be a clear and obvious attempt to further cover-up their fraudulent activity.

The individuals reflected in that record include:

- **Christopher Berrett**, who is reflected as directing procurement by ClearHome's Derek Stephenson

- **Alex Aguilar**, who is reflected as coordinating shipment of devices to Amazon facilities and to himself;

- **Gerry Nievera**, who is reflected as discussing the acquisition of the devices in connection with these efforts;

- **Derek Stephenson**, who is reflected as ordering the devices and arranging for their shipment to Amazon.

Plaintiff further contends that discovery delays and missed deadlines by Defendants and their counsel have had the effect of delaying disclosure of this conduct reflected in the record. *That is not accidental—it is a litigation strategy.*

Plaintiff alleges that this conduct constitutes the coordinated acquisition of GateGuard property without payment, followed by interstate shipment and use for Defendants' internal purposes.

Plaintiff further alleges that the communications reflected in the record show awareness of concerns regarding the propriety of this conduct, followed by continued execution of the plan and continued non-payment.

Defendants cannot:

- invoke criminal accusations against Mr. Teman,
- rely on those accusations to seek procedural advantage, and
- ***simultaneously ask the Court to ignore conduct in the record*** that constitutes coordinated, interstate theft of GateGuard's property.

That is not a level playing field.

Courts possess inherent authority to refer matters where the record before them reflects conduct that may warrant review by appropriate authorities.

Mr. Teman respectfully **moves** that the Court refer the above-described conduct—and the individuals and entities involved—to the appropriate United States Attorney's Offices for criminal investigation and prosecution.

At a minimum, these issues underscore why Mr. Teman's participation is essential. Defendants have made this case about him—his name, his conduct, and his credibility. **Fundamental fairness requires that Teman be permitted to respond on equal footing.**

---

## CONCLUSION

Defendants' opposition fails at every level.

They cannot:

- establish the required nexus;
- justify use of privileged materials;
- deny the existence of a personal interest;
- demonstrate adequate representation;
- avoid the consequences of their own litigation strategy.

The motion to intervene should be granted.

At minimum, the Court should:

- permit intervention; and

- impose a temporary stay if necessary—rather than excluding Mr. Teman from participating in a proceeding in which his rights are directly at issue.

- In the alternative, Mr. Teman respectfully requests that the Court enter a limited stay of approximately sixty (60) days to allow for the retention of counsel and the proper adjudication of issues relating to privileged materials and the conduct reflected in the record, so that the case may proceed in an orderly and equitable manner.

  This stay would benefit all parties by ensuring that the issues raised in this motion — including those arising from the conduct reflected in discovery — are addressed in an orderly and equitable manner, and that all parties have a fair opportunity to consult with appropriate counsel regarding the legal implications of the issues reflected in the record..

- Refer the aforementioned conduct and the individuals and entities reflected in the record to the appropriate United States Attorney's Offices for investigation and prosecution.


Respectfully submitted,
s/Ari Teman

Ari Teman
Plaintiff, Pro Se
1521 Alton Road, #888
Miami Beach, FL 33139

Tel Aviv, Israel

# CERTIFICATE OF SERVICE

I hereby certify that on this 13 day of April, 2026, I caused a true and correct copy of the foregoing **Reply Memorandum of Law in Support of Ari Teman's Motion to Intervene** to be filed electronically with the Clerk of the Court using the Court's CM/ECF system via Temp Pro Se email.

I further certify that all other parties of record in this action are registered CM/ECF users and that service will be accomplished by the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: 13 April, 2026

/s/ Ari Teman
 Ari Teman
 Plaintiff, Pro Se
 1521 Alton Road, #888
 Miami Beach, FL 33139

Tel Aviv, Israel