# JEWISH JUSTICE REFORM PROJECT

JJRP @ Urban Place, Rothschild Blvd 3, Tel Aviv-Yafo, Israel

+972 55-500-8677

david.biren@jewishjusticereformproject.org · jewishjusticereformproject.org

---

2 August 2026

**BY ECF AND FIRST-CLASS POST**

The Honourable John G. Koeltl
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re:**    *GateGuard, Inc. v. Amazon.com, Inc., et al.,* No. 21 Civ. 9321 (JGK)

Dear Judge Koeltl,

I write on behalf of the Jewish Justice Reform Project to express our concern regarding the use of the criminal justice system by Amazon and its counsel, Gibson Dunn & Crutcher LLP, to advantage Amazon in this and other matters, and to ask the Court to bring that conduct to an end. Published sources supporting the observations below are listed at the end of this letter.

## I.  Threats of Criminal Referral Against a Party and Opposing Counsel

We are informed that David Salant of Gibson Dunn threatened to direct the Department of Justice against Mr Teman and against Eden Quainton, Mr Teman's counsel before the Second Circuit and GateGuard's representative in this Court. We report that as it was reported to us.

The invoice at the centre of that threat was issued to ClearHome — a company Gibson Dunn does not represent, which is not a party to this action and is not domiciled in this District. ClearHome accepted GateGuard's terms online, was emailed a copy of those terms, took delivery of the device, and did not pay. It ignored a series of reminders before penalty fees were applied. The order itself was placed after weeks of deliberation and discussion with Amazon executives.

That the order was placed for Amazon is not an inference. Amazon's own emails, produced in this action and filed at Dkt. 123-2, record it. On 15 March 2021 Alex Aguilar of Amazon asked ClearHome's Derek Stephenson to send one GateGuard system to each of two Amazon addresses — the A2Z Development Center at SJC13 in Sunnyvale, and Ring in Las Vegas. Christopher Berrett, a Senior Program Manager for Key for Business, asked for the quote and invoice so a purchase order could issue.[12]

On 7 April 2021 Mr Stephenson asked what exactly was being asked of his company, and whether he was exposing it to "any sort of unnecessary risk".

Mr Berrett answered that Amazon was "just asking you to purchase the device and provide it to us", and was not asking ClearHome "to provide or do anything other than that". On 3 May, chasing "the second unit you were ordering for us", Mr Berrett was told Mr Stephenson had returned to GateGuard's site and ordered another; Mr Berrett undertook that ClearHome would be reimbursed (Exhibit B).

Amazon's counsel questioned whether the invoice was genuine. GateGuard answered on 30 July 2026, without waiting for the Court: the invoice was authentic, but not accurate in every particular, and GateGuard identified the errors itself. Certain fees had been drawn from a superseded edition of its terms — among them a $50,000 device-tampering charge under a provision replaced in July 2020, eight months before ClearHome ordered. The governing edition, captured in the Internet Archive on 7 March 2021, the day before the order, and sent to ClearHome with its order confirmation, contains no such provision. GateGuard applied its own rule against itself, withdrew that charge and two others, corrected a fourth, and reduced the claim by $97,059.36, from $1,483,876.00 to $1,386,816.64. No court compelled it. That is the conduct Amazon's counsel met with the prospect of a criminal referral.[14]

Threatening opposing counsel with federal prosecution over a debt incurred by a third company — at the very moment that counsel might be expected to move for injunctive relief and for remote depositions — is not litigation conduct. Rule 3.4(e) of the New York Rules of Professional Conduct provides that a lawyer shall not "threaten to present criminal charges solely to obtain an advantage in a civil matter".[2] We can see no reading of what was said that falls outside that prohibition. Nor does that rule mark the outer limit of the problem. A demand backed by the prospect of criminal prosecution, made to secure an advantage in a civil dispute to which the party is not otherwise entitled, is conduct that has a name outside the disciplinary rules. Extortion.

Nor would this be the first time. On 15 February 2023 Patrick F. Stokes of Gibson Dunn wrote to counsel for Amy and Carl Nelson, adverse parties in Amazon's Virginia litigation, under the heading "Witness Harassment by Amy and Carl Nelson". It invoked 18 U.S.C. § 1512, the federal witness-tampering statute; called Mrs Nelson's conduct unlawful; reminded her counsel of his own duty to take remedial measures where a client engages in criminal conduct related to a proceeding; and was copied to the general counsel of his firm (Exhibit G).[11]

The method is the same each time: a criminal statute placed before the opposing party, the opposing lawyer reminded of his own exposure, and his firm brought into the correspondence so the reminder is not missed. In 2019 that letter went to Mr Teman's criminal defence counsel; in 2023 to the general counsel of the Nelsons' firm; in 2026, on what we are told, to Mr Quainton.

If the threat of criminal prosecution can be used to discourage opposing counsel from representing his client's best interests, the adversarial process in this Court cannot function.

## II.  The Demand for an In-Person Deposition

Amazon seeks to compel Mr Teman — who requires surgery under general anaesthesia — to return to the United States for a deposition of a kind Amazon and Gibson Dunn conduct remotely as a matter of routine. The purpose is not obscure: to place him in custody and so end a suit brought in 2021 over Amazon's installation of devices in buildings without owners' permission, and after owners had expressly refused, damaging GateGuard's equipment and its business.

The medical position is documented. Dr Maurice Budow, who has treated Mr Teman from the onset of this condition, wrote on 28 July 2026 that objective Eustachian Tube Function testing at Sheba Medical Center confirmed complete dysfunction and inability to equalise pressure; that three months of steroid treatment failed; that a tuboplasty under general anaesthesia is prescribed; and that flying risks permanent hearing loss. He recommends remote participation until his physicians determine air travel is safe.[5]

Mr Salant did not put that letter before the Court, characterising Dr Budow in a footnote instead. It is annexed at Exhibit A so Your Honour may judge for yourself. A party that presses for in-person attendance while withholding the treating doctor's opinion is not asking for discovery.

To require in-person attendance in the face of that opinion — where remote depositions are routine, where Amazon has offices and staff in Israel, and where Amazon has identified no reason it cannot depose Mr Teman there — is to impose a risk of permanent hearing loss for no litigation purpose we can identify.

## III.  Amazon's Commercial Motive Is Published, Not Speculative

On 10 June 2025, nearly four years into this litigation, Amazon announced the Amazon Key Access Control System — professionally installed building-access and intercom products for multi-family properties, in four configurations. Amazon's announcement describes the line as addressing the "pain points of traditional building intercoms".[1] That is GateGuard's market and GateGuard's product category.

Read that against Exhibit B. In April 2021 Amazon told ClearHome it was asking for nothing beyond the purchase and delivery of the devices; they went to its A2Z Development Center and to Ring. Four years later it marketed intercoms in GateGuard's category. We invite the Court to weigh those facts together.

We think this bears on more than damages. A dominant platform that acquires a smaller competitor's hardware through an intermediary, does not disclose its own hand in the purchase, routes the devices to its research facilities, and afterwards markets a rival product in the same category is not competing on the merits. That is the character of monopoly maintenance, and it is the conduct the antitrust laws exist to examine.

If any part of this case has been narrowed on the footing that Amazon does not compete with GateGuard, the Court now has before it Amazon's own emails

(Exhibit B) and Amazon's own product announcement. We respectfully suggest that the footing be examined again against that record.

The stakes are not ordinary. GateGuard's case, if proved, establishes that Amazon obtained a competitor's hardware through an intermediary to develop its own product, and that it entered residential buildings nationwide without owners' consent — a finding replicated wherever a device was installed, and one New York has already legislated against.

Mr Teman is one man with a small company; the record he is assembling is, for Amazon, of a different order. That is the measure against which Parts I and IV should be read.

It may also explain the intensity of what is described in Parts I and IV. The effort to frighten GateGuard's counsel, and to compel Mr Teman's attendance in a jurisdiction where he faces detention, is not proportionate to an unpaid invoice for two intercoms. It is proportionate to what a fully litigated record in this action might establish.

 Against that backdrop, the two GateGuard devices that Amazon directed ClearHome to order and ship immediately to Amazon R&D were not incidental, and this case is not a nuisance suit to be waited out.

### IV.  The Playbook: Civil Dispute Plus Federal Criminal Pressure

The threat in Part I is neither new nor confined to one firm. In 2019 SubletSpy, another Teman company, supplied a property owner with reports used to clear unlawful short-term-let operators from its buildings. The owner realised substantial gains, refinanced and sold, then declined to pay more than $120,000 in success fees earned.

On 10 September 2019, when SubletSpy's counsel, Ariel Reinitz, pressed for payment, Christopher D. Belelieu — then practising at another firm — replied in writing that he would involve one of the former United States Attorneys from his office and proceed accordingly. He copied Joseph A. DiRuzzo III, Mr Teman's criminal defence counsel in the then-pending federal prosecution.

On 20 August 2024 Kyle Ramstetter — a cooperating witness in Amazon's Virginia matter, who pleaded guilty and whose plea was later vacated — telephoned Mrs Nelson (Exhibit F).[6]

He said that in his depositions he was "being told what to say" and threatened with "every component of my life", and that people told him exactly what to do. Told the public docket shows Amazon prepared him for his deposition, he replied that this did not scratch the surface. Asked whether Amazon had threatened him, he did not answer; asked who had, he said only "another day".

Amazon's own production shows how such a matter begins. On 18 February 2020 Patrick F. Stokes of Gibson Dunn wrote to two prosecutors at the United States Attorney's Office for the Eastern District of Virginia, reporting "developments on our end" and asking for a call. Mr Stokes had spent some eighteen years at the Department — Chief of its FCPA Unit, Co-Chief of its

Securities and Financial Fraud Unit, and earlier an Assistant United States Attorney in that same Eastern District of Virginia office.[7]

Two days later he offered to meet them "to share additional information and walk through the documents". That night a senior prosecutor thanked him, calling the meeting's length a testament to Amazon's and his own work in assembling the material, and adding that the two Assistant United States Attorneys assigned had been "selected specifically for this important matter" (Exhibit C).[8]

On 10 January 2024 the same Office moved under Rule 48(a) to dismiss the informations against Ramstetter and Kirschner and vacate their guilty pleas: prosecution was not in the best interests of justice, other alleged coconspirators had been declined, and these two had "comparatively minimal involvement". Its opening footnote records that the Virginia court had dismissed Amazon's related civil claims in April 2023 (Exhibit D).[9]

Contemporaneous reporting placed the events in sequence: charges in four criminal matters fell away after the defendants prevailed in Amazon's civil case, the summary judgment ruling weighing heavily in the government's decision. The same reporting records that both men had settled with Amazon, released from liability in exchange for cooperation in related proceedings and an agreement not to disparage the company (Exhibit E).[10]

In 2019 a lawyer now at that firm wrote that he would involve a former United States Attorney from his office. In 2026, as Part I describes, counsel for the same client is said to have threatened to direct the Department against a party and his lawyer. Exhibit C shows what that undertaking looks like carried out.

We do not ask the Court to regulate Amazon's business. We ask it to protect the proceeding before it. The installations are not collateral to this case; they are the conduct complained of, and they continue while the case is pending. Each one damages GateGuard's equipment, displaces its service, and reduces the revenue from which this litigation is funded. A defendant able to degrade the plaintiff's income while the suit proceeds can decide the outcome without ever reaching the merits.

The Court has ample authority to prevent that. It may order that, pending resolution, Amazon install or operate no device in any building served by GateGuard equipment; and that elsewhere no installation proceed without the owner's written authorisation and government-issued identification, verified by an independent third party rather than by Amazon or its contractors. Those conditions are narrow and administrable. They ask nothing of Amazon that the law of New York does not already require of it. The Court may also direct Amazon and its agents to abide by the terms they accepted, including the agreement to arbitrate.

## V.  The Conviction Amazon Relies Upon

Amazon's counsel has been seen at this before: presenting a criminal case to prosecutors who thanked them for it (Exhibit C), and, in 2026, threatening to direct the Department against Mr Teman and his lawyer. Amazon now builds

its defence on the conviction that prosecution produced. Whether Amazon or those acting for it had any hand in it cannot be established from outside the record. That raises serious questions, and we ask the Court to order production of the grand jury transcripts in *United States v. Teman* so that they may be answered. No witness was anonymous, no informant was involved, and no uncharged party stands to be exposed; the ordinary reasons for secrecy have no purchase here.

During the prosecution the trial team changed, senior prosecutors were added, and the theory changed with them — from forgery to the structure of a contract drafted not by Mr Teman but by his own lawyers, patterned on Airbnb's. Professor Lawrence Lessig reviewed the matter pro bono and wrote to the President and the Attorney General that Mr Teman was convicted for acts establishing no crime and no criminal intent; that the contract was his lawyers' work and could not found fraudulent intent; and that what explained the prosecution was the inexperience of front-line prosecutors new to the Office, who pressed on rather than acknowledge error.[3]

Professor Lessig is not alone. Edward R. Martin Jr., now the United States Pardon Attorney, stated publicly on 19 January 2021 — four years before he took that office — that Mr Teman is innocent and should be pardoned.[13]

## VI.  The Asymmetry Before This Court

Nor is this Court the only institution to have examined Amazon's installation practice. In 2023 the New York Legislature enacted General Business Law § 390-e, which makes it unlawful to install a keyless device controlling access to a residential building's common areas without the owner's express written consent, and requires that any authorised installation be carried out under the supervision of the operator of the existing intercom system. The sponsor's justification names Amazon's "Key for Business" initiative in terms. It followed a News 12 investigation into contractors installing the devices without authorisation, leaving buildings with broken intercoms and repair bills; Amazon acknowledged mistakes and terminated at least one vendor's contract. The Legislature of the State in which this Court sits decided a statute was needed to stop it. Amazon continued regardless.[4]

## VII.  Relief Requested

In addition to the orders described in Part IV above, we respectfully ask that the Court:

1. Direct that depositions in this matter proceed remotely, both in light of Mr Teman's medical condition and because remote proceedings are the terms Amazon accepted through its agent ClearHome when it directed ClearHome to order two GateGuard devices and ship them immediately to Amazon R&D; and

2. Decide Mr Teman's long-pending motion to intervene, in his favour. Amazon has chosen to make its case about Mr Teman. Civilised justice would allow him to answer his accusers and to assert his rights on an equal footing.

A word about the copy list. This letter is copied directly to Mr Bezos and Mr Jassy. We do so not to address a represented party about the merits of this action, but because the conduct described in Parts I and IV is the conduct of a firm they have retained, carried out in their names and on their behalf. Principals are entitled to know what is done for them. Amazon is free to instruct different counsel and to correct the practices described in this letter, and from today it does so with knowledge of them. We would regard that as the better outcome for everyone concerned, Amazon included.

Yours sincerely,


David Biren
President
Jewish Justice Reform Project
Israel

**cc:**

Andrew R. Jassy, President and Chief Executive Officer, Amazon.com, Inc. — jassy@amazon.com

Jeffrey P. Bezos, Executive Chairman, Amazon.com, Inc. — jeff@amazon.com

Mark Wasco, Amazon.com, Inc. — wasco@amazon.com

Alex Little, Esq., counsel for Carl and Amy Nelson — alex@litson.com

Counsel of record, via ECF

---

**SOURCES**

1. Amazon Introduces New Key Access Control System for Multi-Family Properties, Amazon.com, Inc. press release (10 June 2025), https://press.aboutamazon.com/2025/6/amazon-introduces-new-key-access-control-system-for-multi-family-properties.

2. N.Y. Rules of Prof'l Conduct r. 3.4(e) (22 N.Y.C.R.R. § 1200.0). See also N.Y. City Bar Ass'n Formal Op. 2017-3; N.Y. State Bar Ass'n Ethics Op. 1228.

3. Letter of Prof. Lawrence Lessig, Roy L. Furman Professor of Law and Leadership, Harvard Law School, to President Donald J. Trump, Attorney General William Barr and Deputy Attorney General Jeffrey Rosen, 12 November 2020, filed as Dkt. 350-3 in *United States v. Teman*, No. 1:19-cr-00696-PAE (S.D.N.Y.) on 16 April 2023 (Exhibit H).

4. N.Y. Gen. Bus. Law § 390-e (added by L. 2023, ch. 637; S. 358-B / A. 2258-B, Sen. Thomas / Assemb. Simon); Governor's press release, 17 November 2023, https://www.governor.ny.gov/news/governor-hochul-signs-legislative-package-protect-new-york-tenants; News 12 investigation, reported at https://www.nysenate.gov/newsroom/in-the-news/2022/kevin-thomas/completely-unacceptable-state-senator-fights-create-law.

5. Letter of Maurice Budow, MD, 28 July 2026 (Exhibit A).

6. Email, A. Sterner Nelson to A. Teman, 2 August 2026, forwarding transcript of telephone call between Kyle Ramstetter and Amy Nelson, 20 August 2024 (Scribie certified) (Exhibit F).

7. Gibson Dunn, "Stokes, Patrick F.", https://www.gibsondunn.com/lawyer/stokes-patrick-f/; Corporate Crime Reporter, "Former FCPA Chief Patrick Stokes to Gibson Dunn in Washington", 2016.

8. Email chain, P. Stokes (Gibson Dunn) with U. Asonye and J. Aber (U.S. Attorney's Office, E.D. Va.), 18–21 February 2020, produced by Amazon at AMZ-CVL-056601–056603 (Exhibit C). The exhibit bears the producing party's own confidentiality legend. It was provided to the Project by Mr Teman, who received it from Amy Sterner Nelson, and is not to the Project's knowledge subject to any restriction on its use.

13. E. Martin (@EagleEdMartin), post of 19 January 2021, https://x.com/EagleEdMartin/status/1351554394383396865. Mr Martin was appointed United States Pardon Attorney on 14 May 2025.

14. Letter, GateGuard, Inc. to D. Salant (Gibson Dunn) and counsel for ClearHome, Inc., 30 July 2026, enclosing invoicing records and the governing edition of GateGuard's Terms and Conditions; Internet Archive captures of 7 March 2021 and of the edition last revised 7 February 2019. Filed in this action with Mr Teman's Request for Leave.

9. Unopposed Motion to Dismiss, *United States v. Ramstetter*, No. 1:23-cr-27-RDA, and *United States v. Kirschner*, No. 1:23-cr-36-RDA (E.D. Va.), Dkt. 20, filed 10 January 2024 (Exhibit D).

10. H. Barker, "Prosecutors Move to Toss Criminal Fraud Charges in Amazon Case", Bloomberg Law, 11 January 2024 (Exhibit E).

11. Letter, P. F. Stokes (Gibson Dunn) to A. Smart (Burr & Forman LLP), 15 February 2023, copied to A. Little and to Burr & Forman's General Counsel (Exhibit G). The attachment to that letter is not reproduced.

12. Email chain, C. Berrett and A. Aguilar (Amazon) with D. Stephenson (ClearHome, Inc.), 12 March – 25 May 2021, produced at CLEARHOME 000065–000071 and filed as Dkt. 123-2 in this action on 23 February 2024 (Exhibit B). See also Dkt. 123 (motion for discovery conference and sanctions).

---

**EXHIBITS**

**Exhibit A**    Letter of Maurice Budow, MD, treating physician, 28 July 2026 — 2 pp.

**Exhibit B**    Email chain, C. Berrett and A. Aguilar (Amazon) with D. Stephenson (ClearHome, Inc.), 12 March – 25 May 2021, Dkt. 123-2 in this action — 7 pp.

**Exhibit C**    Email chain, P. F. Stokes (Gibson Dunn) with prosecutors of the U.S. Attorney's Office, E.D. Va., 18–21 February 2020, AMZ-CVL-056601–056603 — 3 pp.

**Exhibit D**    Unopposed Motion to Dismiss, United States v. Ramstetter and United States v. Kirschner (E.D. Va.), 10 January 2024 — 5 pp.

**Exhibit E**    H. Barker, "Prosecutors Move to Toss Criminal Fraud Charges in Amazon Case", Bloomberg Law, 11 January 2024 — 4 pp.

**Exhibit F**    Email of A. Sterner Nelson, 2 August 2026, forwarding certified transcript of call between Kyle Ramstetter and Amy Nelson, 20 August 2024 — 17 pp. (two passages redacted).

**Exhibit G**    Letter, P. F. Stokes (Gibson Dunn) to A. Smart (Burr & Forman LLP), 15 February 2023 — 3 pp.

**Exhibit H**    Letter of Prof. Lawrence Lessig, Harvard Law School, 12 November 2020, Dkt. 350-3 — 2 pp.

**Exhibit I**    Email, A. Teman to Pro Se Intake Unit, 27 October 2021, 7.46 pm — 1 p.

**Exhibit J**    Acknowledgment of Receipt, Pro Se Intake Unit, 27 October 2021, 7.47 pm, with notification to chambers, 3 November 2021 — 1 p.

**Exhibit K**    Email chain, 21 October 2021 – 1 September 2022, GateGuard, Inc. v. Goldmont Realty Corp., No. 1:20-cv-01609-VEC-GWG (S.D.N.Y.), Dkt. 230-1 — 8 pp.

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT A

## LETTER OF TREATING PHYSICIAN

Maurice Budow, MD, 28 July 2026

Eustachian Tube Function testing, Sheba Medical Center

Tuboplasty prescribed under general anaesthesia

Cited at Part II

2 pages follow

28 July, 2026

To whom it may concern,

I am a physician treating Ari Teman. Dr. Wolfovitz, Ari's ENT, is overseas and I understand there is a time pressure to give updated information to the Courts, and so I am writing this letter.

Mr. Teman was prescribed a Eustachian tuboplasty due to complete closure of his Eustachian tubes. This procedure is to be done under general anesthesia at Sheba Medical Center.

The closure and the tubes' inability to adjust to pressure was confirmed by an objective Eustachian Tube Function test at Sheba Medical Center.

Both Dr. Wolfowitz and I have reviewed the objective Eustachian Tube Function testing performed at Sheba Medical Center, which confirmed complete Eustachian tube dysfunction and inability to equalize pressure.

Three months of steroid sprays did not remedy the situation.

Dr. Wolfovitz then prescribed a Eustachian tuboplasty in November. From his notes, translated from Hebrew:



• 3.11.26
עדיין סובל מתת-תפקוד חצוצרה בעיקר מימין. הוסברו אפשרויות הטיפול: כפתור או צנתור החצוצרה. הוסברו המשמעויות, סיכונים וסיכויים של כל אפשרות. ממליץ על צנתור החצוצרה תחילה וטובופלסטיקה. בנוסף ממליץ על ריכוך הדיאטה • קומפרסים חמים למפרקי הלסת לשני הצדדים למשך שבועיים.

"The patient continues to suffer from Eustachian tube dysfunction, primarily on the right. Treatment options were explained, including placement of a ventilation tube (tympanostomy tube/"grommet") or Eustachian tube surgery. The implications, risks, and chances of success of each option were explained. I recommend Eustachian tuboplasty (tuboplasty) as the first option. Soft diet plus warm compresses to the jaw joints bilaterally for two weeks."

Since then, Sheba Medical and nearly all hospitals and clinics in Israel have experienced multiple prolonged shut downs and staff shortages due to the ongoing war with Iran and its satellites.

Furthermore, as a result of the same war delays, Mr. Teman did not get his National ID number ("Teudat Zehut") from Misrad Hapnim (Ministry of Interior) until **June 26, 2026,** instead of the expected date of March 16, and he did not get his Teudat Oleh from Misrad HaKlita (Ministry of Absorption) until **July 27, 2026.**

Mr. Teman has a pre-surgery appointment with Dr. Shapira, Dr. Wolfovitz's colleague, on **August 13th.**

CamScanner

Following that, it may take up to eight weeks for insurance approvals and a surgery bed to open to allow for the procedure under general anesthesia. Mr. Teman will then need to be monitored for 90 days to ensure the Eustachian tubes remain open. I

As noted in Dr. Wolfovitz's notes, if the procedure is not successful, Mr. Teman will need either a tympanostomy or a Eustachian tube surgery. Because tuboplasty is the least invasive treatment option, it is medically appropriate to attempt and assess that treatment before considering more invasive alternatives.

**Flying presents a significant risk of permanent hearing injury, worsening Eustachian tube damage, severe pain, and potentially permanent hearing loss.** It is therefore imperative that Mr. Teman follow his doctors' instructions to not fly, use hyperbaric chambers, or be involved in water sports or travel where he risks prolonged submersion of his ears, until this condition has been remedied and his ears are able to adjust pressure.

Accordingly, to avoid exacerbating his condition and to permit him to receive medically necessary treatment, I recommend that Mr. Teman be permitted to participate remotely by video or telephone whenever technically feasible until his treating physicians determine that air travel is medically safe.

**In my medical opinion, requiring unnecessary travel for proceedings that can be conducted remotely, regardless of Mr. Teman's current medical condition, places additional psychological and physical stress on Mr. Teman, interferes with his treatment and recovery, and unnecessarily increases the risk of further injury.** These adverse effects can be avoided by permitting remote participation, which has become an established means of conducting judicial proceedings where medically appropriate and technically feasible.

I am also concerned by the repeated requests that Mr. Teman obtain updated physician letters on extremely short notice. Israel's healthcare system continues to face significant demands related to the ongoing regional conflict, and physicians are balancing the needs of many patients while working under those constraints. Mr. Teman is already scheduled to be evaluated by his treating ENT specialist's colleague at Sheba Medical Center on August 13, only two weeks from the date of this letter. I respectfully ask the Court to not impose medical documentation requirements with notice requirements of less than three weeks so as not to cause interruptions in care and unnecessary stress on Mr. Teman while he recovers.

Thank you,

*M. Budw          MD*

MAURICE BUDOW MD

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT B

## EMAIL CHAIN — AMAZON AND CLEARHOME

C. Berrett and A. Aguilar (Amazon, Key for Business)

with D. Stephenson (ClearHome, Inc.)

12 March – 25 May 2021

Filed as Dkt. 123-2 in this action, 23 February 2024

Cited at Part I

7 pages follow

# EXHIBIT B

| From: | Berrett, Christopher <berrettc@amazon.com> |
| --- | --- |
| Sent: | Tuesday, May 25, 2021 10:13 AM |
| To: | Derek Stephenson |
| Cc: | Aguilar, Alex |
| Subject: | RE: Compensation for Services |

Hi Derek,

I hope you are doing well. I wanted to check-in on this request. Are team would like to start work on this.

Thanks,

**Christopher Berrett** | **Sr. Program Manager**
*Key for Business* www.amazon.com/keyforbusiness
**e:** berrettc@amazon.com | **p:** (801) 726-7203



---

**From:** Berrett, Christopher
**Sent:** Monday, May 3, 2021 7:01 PM
**To:** 'Derek Stephenson' <derek@clearhome.us>
**Cc:** Aguilar, Alex <aleagui@amazon.com>
**Subject:** RE: [EXTERNAL] Compensation for Services

Thanks Derek. Please send tracking once available.

Also, please send me the invoice and we will get you reimbursed ASAP.

Thanks,

**Christopher Berrett** | **Sr. Program Manager**
*Key for Business* www.amazon.com/keyforbusiness
**e:** berrettc@amazon.com | **p:** (801) 726-7203



---

**From:** Derek Stephenson <derek@clearhome.us>
**Sent:** Monday, May 3, 2021 3:39 PM
**To:** Berrett, Christopher <berrettc@amazon.com>
**Cc:** Aguilar, Alex <aleagui@amazon.com>
**Subject:** RE: [EXTERNAL] Compensation for Services

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you can confirm the sender and know the content is safe.

1

I actually just jumped on their site again and ordered another.  Last time it showed up in about 3 business days



**Derek Stephenson**

*SVP Field Services*

**Cell** 801.400.5000 **Email** derek@clearhome.us
**HQ** 135 Mountain Way Drive, Orem UT 84058



*The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.*

On May 3, 2021, at 2:51 PM, Berrett, Christopher <berrettc@amazon.com> wrote:

Hi Derek,

I hope you are doing well. Just wanting to follow up on the second unit you were ordering for us. Do you by chance have the tracking info?

Thanks,

**Christopher Berrett │ Sr. Program Manager**
*Key for Business* www.amazon.com/keyforbusiness
**e:** berrettc@amazon.com | **p:** (801) 726-7203

<image002.jpg>

---

**From:** Berrett, Christopher
**Sent:** Wednesday, April 7, 2021 4:58 PM
**To:** 'Derek Stephenson' <derek@clearhome.us>
**Cc:** Aguilar, Alex <aleagui@amazon.com>
**Subject:** RE: [EXTERNAL] Compensation for Services

Hi Derek,

Thank you for providing the tracking for the 1st system. Do you have an update on the second one that was to be shipped to Las Vegas?

In regards to your question, we are just asking you to purchase the device and provide it to us so that we can test its compatibility with our KfB device.  We are not asking CPro to provide or do anything other than that.

Please let me know if you have additional questions or concerns.

Thanks,

**Christopher Berrett │ Sr. Program Manager**
*Key for Business* www.amazon.com/keyforbusiness
**e:** berrettc@amazon.com | **p:** (801) 726-7203

2

<image003.jpg>

**From:** Derek Stephenson <derek@clearhome.us>
**Sent:** Wednesday, April 7, 2021 11:30 AM
**To:** Berrett, Christopher <berrettc@amazon.com>
**Cc:** Aguilar, Alex <aleagui@amazon.com>
**Subject:** RE: [EXTERNAL] Compensation for Services

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you can confirm the sender and know the content is safe.

I wanted to ask for a little more context on what exactly is being asked of Clear Pro when it comes to these gate guard devices. I was in Las Vegas with Gerry a few weeks ago and the way he explained what is happening with Gate guard Temen devices had me a little concerned. I want to know if Im opening up Clear Pro to any sort of unnecessary risk? Also here is the tracking from the first device I sent a few weeks ago.

<image010.jpg>

<image011.png> **Derek Stephenson**

*SVP Field Services*

**Cell** 801.400.5000 **Email** derek@clearhome.us
**HQ** 135 Mountain Way Drive, Orem UT 84058
<image012.png> <image013.png> <image014.png> <image015.png>

*The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.*

On Apr 7, 2021, at 12:08 PM, Berrett, Christopher <berrettc@amazon.com> wrote:

Hi Derek,

I hope you are well. Would you mind providing an update on this? We need to provide an update to various teams.

Also, I have not seen an invoice come through so that we can pay you promptly.

Thanks,

**Christopher Berrett** | **Sr. Program Manager**
*Key for Business* www.amazon.com/keyforbusiness
**e:** berrettc@amazon.com | **p:** (801) 726-7203

<image001.jpg>

**From:** Aguilar, Alex <aleagui@amazon.com>
**Sent:** Monday, April 5, 2021 10:54 AM
**To:** Derek Stephenson <derek@clearhome.us>

3

**Cc:** Berrett, Christopher <berrettc@amazon.com>
**Subject:** Re: [EXTERNAL] Compensation for Services

Hi Derek,

I hope you had a good weekend!

I know on 3/26, you shared that you shipped one of the devices to San Jose – may you please provide the tracking info?

Thank you!

Best,
Alex

---

**From:** Alex Aguilar <aleagui@amazon.com>
**Date:** Thursday, March 18, 2021 at 1:43 PM
**To:** Derek Stephenson <derek@clearhome.us>
**Cc:** "Berrett, Christopher" <berrettc@amazon.com>
**Subject:** Re: [EXTERNAL] Compensation for Services

Got it and thank you, Derek!

Please send me the tracking for address number 1 when you can so I may share with the recipient, thanks again.

Best,
Alex

---

**From:** Derek Stephenson <derek@clearhome.us>
**Date:** Thursday, March 18, 2021 at 1:15 PM
**To:** Alex Aguilar <aleagui@amazon.com>
**Cc:** "Berrett, Christopher" <berrettc@amazon.com>
**Subject:** RE: [EXTERNAL] Compensation for Services

**CAUTION**: This email originated from outside of the organization. Do not click links or open attachments unless you can confirm the sender and know the content is safe.

I just determined that there was only one device in the box from Gate Guard.  I am sending the one that they did send me to the address #1 until the second gate guard device arrives.

<image007.png> **Derek Stephenson**

*SVP Field Services*

**Cell** 801.400.5000 **Email** derek@clearhome.us
**HQ** 135 Mountain Way Drive, Orem UT 84058
<image008.png> <image009.png> <image010.png> <image011.png>

4

CLEARHOME_000070

*The content of this email is confidential and intended for the recipient specified in message only. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion, so that we can ensure such a mistake does not occur in the future.*

On Mar 15, 2021, at 3:23 PM, Aguilar, Alex <aleagui@amazon.com> wrote:

Hi Derek,

May you please send one system to each of the below addresses?:

Address number 1:
SJC13
A2Z Development Center Inc.
Attn: Paul Donovan
1160 Enterprise Way
Sunnyvale, CA 94089

Address number 2:
Ring
Alex Aguilar
400 Stewart Ave
Las Vegas, NV 89101

Also, please let us know if you have any questions about Chris' below request (I want to make sure you are compensated quickly 😊).

Best,
Alex

**From:** "Berrett, Christopher" <berrettc@amazon.com>
**Date:** Friday, March 12, 2021 at 11:15 AM
**To:** Alex Aguilar <aleagui@amazon.com>
**Cc:** Derek Stephenson <derek@clearhome.us>
**Subject:** RE: Compensation for Services

Thanks Alex!

Hi Derek,

I hope you are doing well, and we appreciate your support with this order. Can you please send me the quote/invoice for this order and I can have Andres issue a PO which will be "pay upon receipt?"

If possible can you include the invoice from the company you ordered from?

Thanks,

**Christopher Berrett │ Sr. Program Manager**

5

*Key for Business* www.amazon.com/keyforbusiness
**e:** berrettc@amazon.com | **p:** (801) 726-7203

<image001.jpg>

---

**From:** Aguilar, Alex <aleagui@amazon.com>
**Sent:** Friday, March 12, 2021 10:21 AM
**To:** Berrett, Christopher <berrettc@amazon.com>
**Cc:** Derek Stephenson <derek@clearhome.us>
**Subject:** Compensation for Services

Hi Chris,

I know we are still waiting to confirm the shipping address Derek may use.

In the interim, I'm starting this thread to connect you and Derek for the purposes of us quickly providing payment.

Let us know what you need to close this out, thank you!!

Best,

Alex Aguilar
*Amazon Key for Business*
e aleagui@amazon.com | p 725-222-0082

Reminder: This message has originated from an EXTERNAL Source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Reminder: This message has originated from an EXTERNAL Source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Reminder: This message has originated from an EXTERNAL Source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

Reminder: This message has originated from an EXTERNAL Source. Please use proper judgment and caution when opening attachments, clicking links, or responding to this email.

CLEARHOME_000072

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT C

## EMAIL CHAIN — COUNSEL AND PROSECUTORS

Patrick F. Stokes, Gibson Dunn, with prosecutors of the

U.S. Attorney's Office for the Eastern District of Virginia

18–21 February 2020

Produced by Amazon at AMZ-CVL-056601–056603

Cited at Part IV

3 pages follow

Exhibit C

Message
_____

**From:**     Stokes, Patrick F. [/O=GIBSONDUNN/OU=EXCHANGE ADMINISTRATIVE GROUP
              (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=STOKES, PATRICK653]
**Sent:**     2/21/2020 4:27:05 AM
**To:**       Aber, Jessica D. (USAVAE) [Jessica.D.Aber@usdoj.gov]
**Subject:**  Re: Amazon


No worries at all, and thanks for taking the time to attend. I hope the presentation was helpful. No need to talk tonight. We'll be in Alexandria tomorrow at 11, and happy to chat later, but the convo with Uzo was helpful. Thanks.


**Patrick Stokes**

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.955.8504 ◦ Fax +1 202.530.4214
PStokes@gibsondunn.com ◦ www.gibsondunn.com


On Feb 20, 2020, at 10:47 PM, Aber, Jessica D. (USAVAE) <Jessica.D.Aber@usdoj.gov> wrote:

[External Email]
Patrick,

A belated note to apologize for ducking out early this afternoon – I did not anticipate that the meeting would last that long and I had overscheduled myself. The length of the meeting, however, was a testament to Amazon's (and your) excellent work in assembling the information to present. Thank you.

I understand you talked with Uzo tonight about a follow-up issue and I'd be glad to discuss that, as well, if you think that further conversation would be useful. I can assure you that Jamar and Sam are two of our best AUSAs and they were selected specifically for this important matter.

Have a good night.

Jess
804-263-3095

---

**From:** Stokes, Patrick F. <PStokes@gibsondunn.com>
**Sent:** Thursday, February 20, 2020 6:31 PM
**To:** Asonye, Uzo (USAVAE) <UAsonye@usa.doj.gov>
**Cc:** Aber, Jessica D. (USAVAE) <JAber@usa.doj.gov>
**Subject:** RE: Amazon

Uzo, Jess – As we discussed, we're available to meet tomorrow to share additional information and walk through the documents. Would sometime in the 9-1 timeframe work on your end?

Also, Uzo, do you have a few minutes to connect this evening? I'm at my desk (202-955-8504) or on my cell (202-321-3347).

Thanks

CONFIDENTIAL                                                                      AMZ-CVL-056601

**Patrick Stokes**

GIBSON DUNN

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
Tel +1 202.955.8504 ∗ Fax +1 202.530.4214
PStokes@gibsondunn.com ∗ www.gibsondunn.com

---

**From:** Asonye, Uzo (USAVAE) <Uzo.Asonye@usdoj.gov>
**Sent:** Tuesday, February 18, 2020  8:26 PM
**To:** Stokes, Patrick F. <PStokes@gibsondunn.com>
**Cc:** Aber, Jessica D. (USAVAE) <Jessica.D.Aber@usdoj.gov>
**Subject:** Re: Amazon

[External Email]
I can talk tomorrow before 10am.

> On Feb 18, 2020, at 7:40 PM, Stokes, Patrick F. <PStokes@gibsondunn.com> wrote:

> Jess, Uzo –

> There have been some developments on our end.  Do you have time to chat in the morning?  (I can also talk tonight if that's easier, but not essential on our end.)

> Thanks,
> Patrick

> **Patrick Stokes**

> GIBSON DUNN

> Gibson, Dunn & Crutcher LLP
> 1050 Connecticut Avenue, N.W., Washington, DC 20036-5306
> Tel +1 202.955.8504 ∗ Fax +1 202.530.4214
> PStokes@gibsondunn.com ∗ www.gibsondunn.com

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

CONFIDENTIAL

AMZ-CVL-056603

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT D

## UNOPPOSED MOTION TO DISMISS

*United States v. Ramstetter, No. 1:23-cr-27-RDA, and*

*United States v. Kirschner, No. 1:23-cr-36-RDA (E.D. Va.)*

Dkt. 20, filed 10 January 2024

Charges dismissed and guilty pleas vacated

Cited at Part IV

5 pages follow

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KYLE RAMSTETTER; | ) | Case No. 1:23-cr-27-RDA |
| | ) | |
| CHRISTIAN KIRSCHNER; | ) | Case No. 1:23-cr-36-RDA |
| | ) | |
| Defendants. | ) | |

**UNOPPOSED MOTION TO DISMISS**

The United States of America, by and through its attorneys, Jessica D. Aber, United

States Attorney for the Eastern District of Virginia, Russell L. Carlberg, Heidi B. Gesch, and

Kenneth R. Simon, Jr., Assistant United States Attorneys, respectfully move this Honorable

Court pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the criminal

informations filed in these two cases and to vacate the guilty pleas of defendants Christian

Kirschner and Kyle Ramstetter. A proposed order accompanies each motion.

## I.     BACKGROUND

Following allegations of a kickback scheme involving Amazon Web Services employees

and their associates in the Eastern District of Virginia, the government opened an investigation to

assess whether the scheme constituted honest services wire fraud and conspiracy in violation of

18 U.S.C. §§ 1343, 1346, 1349.[1]

---

[1]     Amazon has filed related civil litigation in this Court. *See Amazon.com, Inc. v. WDC Holdings LLC, d/b/a Northstar Commercial Partners, et al.*, Case No. 1:20-cv-484-RDA. This Court subsequently dismissed Amazon's civil claims, Dkt. No. 1376 (Memorandum Order and

As a result of that investigation, on March 8, 2023, the government filed a criminal information against Christian Kirschner, charging him with Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § 1349. *See United States v. Christian Vance Kirschner*, Dkt. No. 8, 1:23-cr-36-RDA. Kirschner pleaded guilty with an accompanying plea agreement and statement of facts before this Court on the same day. Dkt. Nos. 9-11. The Court accepted Kirschner's guilty plea.

On March 8, 2023, the government also filed a criminal information against Kyle Ramstetter, charging him with Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § 1349. *See United States v. Kyle Ramstetter*, Dkt. No. 8, 1:23-cr-27-RDA. Ramstetter pleaded guilty with an accompanying plea agreement and statement of facts before this Court on the same day. Dkt. Nos. 9-11. The Court accepted Ramstetter's guilty plea.

## II.      LEGAL STANDARD

Federal Rule of Criminal Procedure 48 provides, in relevant part, that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). The government may move to dismiss an indictment even after a defendant has entered a guilty plea. *United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995) (reversing denial of government's motion to dismiss where government sought to dismiss indictment against cooperating defendant after his four coconspirators were acquitted at trial); *see United States v. Hector*, 577 F.3d 1099, 1101 (9th Cir. 2009) ("[I]t is well established that the government may move to dismiss even after a complaint has turned into a conviction because of a guilty plea."). A Rule 48 motion is an "an adequate alternative remedy" to a writ of mandamus in the post-guilty plea context. *See In re Flynn*, 973 F.3d 74, 79 (D.C. Circuit 2020) ("Here, Petitioner and

---

Opinion, filed April 6, 2023), and the matter is presently on appeal to the United States Court of Appeals for the Fourth Circuit.

the Government have an adequate alternate means of relief with respect to both the Rule 48(a) motion").

Where a Rule 48 motion is filed, "the trial court has little discretion." *United States v. Perate*, 719 F.2d 706, 710 (4th Cir. 1983). Rather, "[i]t must grant the motion absent a finding of bad faith or disservice to the public interest." *Id. see also United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000). Dismissals under Rule 48(a) are generally without prejudice. *See, e.g., United States v. W.R. Grace*, 429 F.Supp.2d 1207, 1246–47 (D. Mont. 2006) ("Dismissal under Rule 48(a) is without prejudice unless the court finds that the dismissal is sought for some improper purpose."). Even if the dismissal is made under Rule 48(b), dismissal with prejudice is only available where the government's violation of the Court's scheduling orders "caused prejudice to the defendant or posed a substantial threat thereof." *Goodson*, 204 F.3d at 514.

**III.    ARGUMENT**

Prosecution of these cases is not in the best interests of justice. At this time, the government has declined to prosecute other alleged coconspirators in this scheme. Because Ramstetter and Kirschner had comparatively minimal involvement in the larger scheme, dismissing charges against them is in the best interests of justice. Therefore, the government requests leave of Court pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure to dismiss the criminal information in each case and to vacate the guilty pleas in these matters.

**IV.    CONCLUSION**

For the foregoing reasons, we request that the Court grant this Motion, and provide the government leave to dismiss the criminal information in each above-captioned case without prejudice. This position has been communicated to counsel for both defendants; they have no

opposition to the government's motion.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:              /s/              
Russell L. Carlberg
Heidi B. Gesch
Kenneth R. Simon., Jr.
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703)-299-3868
FAX: (703)-299-3980
Email:  Russell.L.Carlberg@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2024, I caused a copy of the foregoing memorandum

to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate

a Notice of Electronic Filing (NEF) to all counsel of record.

A copy has also been sent via email to:

Rachael Meyer
United States Probation Officer
Rachael_Meyer@vaep.uscourts.gov

_____
Russell L. Carlberg
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3868
Facsimile: (703) 299-3980
Email: Russell.L.Carlberg@usdoj.gov

JEWISH JUSTICE REFORM PROJECT

Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT E

## CONTEMPORANEOUS REPORTING

H. Barker, "Prosecutors Move to Toss Criminal Fraud Charges in Amazon Case", Bloomberg Law

11 January 2024

Cited at Part IV

4 pages follow

Bloomberg Law News 2024-01-11T15:35:23595111968-05:00

# Prosecutors Move to Toss Criminal Fraud Charges in Amazon Case

By Holly Barker 2024-01-11T15:29:15000-05:00

- Government has dismissed charges in four criminal matters
- Prosecutions faltered after defendants' victory in civil case

Federal prosecutors have moved to dismiss without prejudice criminal charges against two men accused of participating in an alleged pay-to-play scheme involving hundreds of millions of dollars in Amazon real estate development deals.

Pursuing the cases against Kyle Ramstetter and Christian Kirschner isn't in the "best interests of justice," the motion, filed Wednesday in the US District Court for the Eastern District of Virginia, said.

The government has declined to prosecute other alleged coconspirators, and Ramsetter and Kirschner had "comparatively minimal involvement" in the alleged scheme, according to the motion.

Although Ramsetter and Kirschner each pleaded guilty to one count of conspiracy to commit honest services wire fraud in March 2023, it's not too late for the government to ask to toss the charges. Assuming the court grants the government's motion, the pleas will be vacated.

The alleged kickbacks, which prosecutors claim were disguised as referral fees, were paid by real estate firm Northstar Commercial Partners and its founder Brian Watson to two former real estate transaction managers for Amazon.com—Kirschner's brother, Casey, and Charles Nelson.

The allegedly improper payments were made through a referral fee agreement executed by Kirschner, who was at the time a consultant for Northstar. In a statement of facts accompanying Kirschner's plea, he admitted to serving as an intermediary for the payments.

Amazon ultimately executed leases with Northstar for nine real estate parcels in deals worth approximately $415.5 million, on which Kirschner, Casey, and Nelson allegedly made millions in fees, the statement said.



© 2024 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Ramsetter was the director of development for Northstar and aware of the allegedly unlawful referral scheme, according to a statement of facts that accompanied his plea.

Ramstetter also admitted that he formed an entity called White Peaks Capital, LLC with another Northstar employee, Will Camenson. Together, they purchased a parcel of land in Chantilly, Virginia for around $98.7 million and then flipped it to Amazon for around $116.4 million, cutting Northstar out of the deal.

The statement said they later paid Casey and Nelson $1 million in connection with the transaction. Although Casey was still employed by Amazon at the time, Nelson wasn't.

When Watson learned of the deal, he terminated Ramstetter and Camenson and demanded a portion of the profits.They eventually paid Watson $5 million of the proceeds from the land flip in connection with a non-disclosure agreement, the statement said.

# Civil Proceedings

As the government's criminal investigation was ongoing, Amazon filed its own civil fraud case against Ramstetter and Kirschner's alleged co-conspirators over the alleged kickback scheme. It lost most of its claims on summary judgment in April 2023, but has appealed the decision to the Fourth Circuit.

Ramstetter and Kirschner weren't named as defendants in that civil lawsuit, as they'd entered into settlement agreements with Amazon, in which the company released them from liability for the conduct disclosed in their pleas. In exchange, they agreed to cooperate with Amazon in any related proceedings. They also agreed to refrain from making any disparaging comments about the company.

Two other criminal actions—one against Camenson and another against former Amazon employee Jason Fogle—have also been dismissed on the government's motion after the company's loss in the civil case. In those cases, plea agreements had been in the works but were never entered.

A transcript related to those proceedings indicate that the summery judgment order in the civil case has had a lot to do with the government's decision not to pursue the criminal matters.

Bloomberg Law®

© 2024 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

Counsel for Kirschner and Ramstetter didn't immediately respond to Bloomberg Law's requests for comment.

Kirschner is represented by BrigliaHundley PC and Flood & Flood. Ramstetter is represented by Jeffrey Zimmerman PLLC and Stimson LaBranche Hubbard LLC.

The cases are United States v. Ramstetter , E.D. Va., No. 1:23-cr-00027, 1/10/24 and United States v. Kirschner , E.D. Va., No. 1:23-cr-00036, 1/10/24 .

To contact the reporter on this story: Holly Barker in Washington at hbarker@bloombergindustry.com

To contact the editor responsible for this story: Amy Lee Rosen at arosen@bloombergindustry.com

© 2024 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

# Related Articles

Amazon Seeks to Revive Claims Over Real-Estate Kickback Scheme

# Related Documents

United States v. Kirschner

United States v. Ramstetter

Unopposed Motion to Dismiss

**Bloomberg Law**®

© 2024 Bloomberg Industry Group, Inc. All Rights Reserved. Terms of Service

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT F

## CALL TRANSCRIPT — COOPERATING WITNESS

Email of Amy Sterner Nelson, 2 August 2026, forwarding

certified transcript of telephone call between

Kyle Ramstetter and Amy Nelson, 20 August 2024

Two passages redacted — personal matter, non-party

Cited at Part IV

17 pages follow



## Fwd: Call transcript

1 message

**Amy Sterner Nelson** <amy.sterner@gmail.com>                     Sun, Aug 2, 2026 at 7:15 PM
To: ari@teman.com <ari@teman.com>

Witness who pled. Guilt and had his plea vacated called me and said he was threatened

---------- Forwarded message ---------
From: **Amy Sterner Nelson** <amy.sterner@gmail.com>
Date: Sun, Oct 12, 2025 at 6:34 AM
Subject: Call transcript
To: Steve Nelson <nelson.steve@dorsey.com>


Kyle's call with me.

---

**PDF  Kyle Ramstetter _ Amy Nelson Transcript (2024)_signed (3).pdf**
213 KB

Kyle Ramstetter / Amy Nelson Transcript (2024)

# Kyle Ramstetter / Amy Nelson Transcript (2024)

**amy.sterner@gmail.com**



https://scribie.com/files/13dc590494e8401982f8a3d8777550c8fbd323c3

# Certificate of Authenticity

TO WHOM IT MAY CONCERN

This is to certify that the speech in this audio file has been converted into text manually by our transcribers on Scribie.com to the best of their ability and we can attest that there is no more than one mistake per hundred spoken words.

Signed

Digitally signed by Judith Mogamog
DN: cn=Judith Mogamog, c=US, o=CGBiz
Corporation DBA Scribie, ou=Operations,
email=support@scribie.com   Tel: +1 866
941 4131
Date: 2024.08.19 20:25:02 -07'00'

Judith Mogamog
Operations Manager
CGBiz Corporation DBA Scribie

**0:00:00.4 AN:** Yes.

**0:00:01.4 KR:** How are you?

**0:00:02.3 AN:** Is this Kyle?

**0:00:04.0 KR:** How much weight did Carl lose in the last year, for verification?

**0:00:06.0 AN:** He's lost about 60 pounds.

**0:00:10.9 KR:** No way.

**0:00:11.8 AN:** Yeah.

**0:00:15.6 KR:** Well, I was gonna say more than that.

**0:00:17.5 AN:** No, yeah. Just about 60 pounds in the last year. Yep. He's been working out and just trying to be healthy.

**0:00:25.4 KR:** We need to talk.

**0:00:26.7 AN:** Yeah, I've... Yeah.

**0:00:30.2 KR:** I don't even know where to start. First and foremost, I'm sure... I hope Carl's listening. There's a lot of... Everything was out of my control. So when I'm in depositions and this national attorney is like... And I'm being told what to say, but I didn't fuck... I'm not Danny, I didn't... I'm on your side. I'm just being threatened with fucking everything, every component of my life, which I know you guys were too, which is like, holy shit, I didn't know what to do.

**0:00:56.4 AN:** Did Amazon threaten you?

**0:01:00.0 KR:** Oh, I can... So the reason, this call, like, we need to talk, because your TikToks and everything is like... I can go on and on. I can go on and on.

**0:01:11.1 AN:** I'm sure you can. It's been a long four years.

**0:01:15.5 KR:** It goes without saying for you guys too, losing everything. It's fucking hell. For what?

**0:01:23.2 AN:** Because I... Yeah, I can only share from my perspective. I think it's just a lot of bad actors, you know? It's just... I know I've learned a lot about the criminal legal system and what pressure is and what they can take from you and what they can threaten you with and... Yeah.

**0:01:42.2 KR:** Yeah. It was... The reason I say talk is, from a "cooperating person" being told something else before depositions and everything, it's like, I don't think this is right.

**0:01:56.2 AN:** Yeah.

**0:01:57.7 KR:** I don't. I don't. I'll just say this. I'm sure every attorney can say, "shut up." But it's like, it's just not... Let it be done.

**0:02:06.7 AN:** Yeah. It needs to be done. And I don't know how it becomes undone after all this.

**0:02:14.8 KR:** I had some ideas. My good guy coach with his brother is the right-hand man of Bezos. He's on the PR side. It's not the guy you referenced in TikTok.

**0:02:26.8 AN:** Mm-hmm.

**0:02:27.9 KR:** But he's like on the helicopter, everything of... He's like Bezos' truly right-hand man from a PR standpoint.

**0:02:34.9 AN:** And what does he say?

**0:02:36.6 KR:** I haven't. Just out of embarrassment of just like, God, does he know? 'Cause we're in Colorado, so it's like I've... Short answer, I've never breached that question to him. So, anyways. But...

**0:02:53.4 AN:** Yeah, I know...

**0:02:54.0 KR:** Loud and clear. And I laugh 'cause, again, in person, I can tell you a lot about that.

**0:03:02.3 AN:** Yeah. I just eventually decided that I needed to speak publicly because it was all just so wrong from my perspective.



[REDACTED - personal family matter concerning a non-party]

**0:03:50.9 KR:** So, anyways. But...

**0:03:56.5 AN:** What was your...

**0:03:58.4 KR:** I'm on a fucking war path.

**0:04:00.9 AN:** Yeah.

**0:04:02.4 KR:** I don't know what to do. And my wife, we were in... I just randomly got the TikTok and saw a Glenn Beck or something you did. And was like, "Oh my God, listen to this." And she's like, "Reach out. Reach out to her."

**0:04:18.4 AN:** Yeah, we've been fighting.

**0:04:20.4 KR:** I don't know. I have no purpose of this conversation. I don't... I have... I feel nothing. I'm sure I'm the bad guy, but I... I know I have phone calls recorded. There's always one other side and there's... Again, I don't know how to say this. There's a lot of shit that was out of my control.

**0:04:38.8 AN:** Yeah. What do you... Litigation wise, are you... What happens now for you? Do you know?

**0:04:49.1 KR:** Yeah,in what regard, I'm sorry.

**0:04:51.8 AN:** I guess just because the guilty pleas were vacated, is Amazon... Do you think Amazon will come after you?

**0:05:02.9 KR:** Sorry, the criminal or the civil?

**0:05:05.2 AN:** The civil. As far as my understanding is, to be very clear, right, that the criminal investigation is over and done. It's all over. So.

**0:05:12.9 KR:** Yeah, yeah. I had that, because you can't represent yourself in DC or whatever that district court was. Yeah. But yes, multiple attorneys said it's unheard of how many resources they've deployed, et cetera, et cetera, that yes, the criminal side is done.

**0:05:30.7 AN:** Yeah.

**0:05:32.9 KR:** So, civil, I don't know. Great question. I don't know.

**0:05:38.1 AN:** Yeah, we're... I know that my husband is dealing with an appeal right now. So.

**0:05:52.5 KR:** Never mind. I just, I just... Gonna choose my words carefully. That was fine. Even before, even pre depositions, and there's shit I can help with as long as... I don't even know how to say this.

**0:06:04.9 AN:** No, that's... I think you're saying... And I think... Um. Yeah. I think all I've seen is on the public docket, you know, and that in the public docket, there's an excerpt from your deposition that Amazon prepared you for the deposition, which is very stunning from a legal perspective. I'm a lawyer. I don't practice anymore, but yeah.

**0:06:28.0 KR:** So just stay on that point and let's meet. I will, like... That didn't even scratch the surface. Didn't even scratch the surface.

**0:06:39.6 AN:** Wow. Yeah. I'm sure there's a lot. I mean, what do you hope to... What do you want

to do now?

**0:06:48.0 KR:** Nothing. Oh, sorry. I don't know. I don't... That's a great question. I don't know.

**0:06:54.7 AN:** Yeah.

**0:06:56.6 KR:** Much like you guys, you're celebrating.

**0:06:58.8 AN:** Well, we're still spending tens of...

**0:07:00.0 KR:** Celebrate. I kiss my boys not knowing I'm... Can leave them for four years.

**0:07:06.6 AN:** Yeah.

**0:07:08.3 KR:** So when I say "celebrating," I know that's subjective.

**0:07:11.9 AN:** Yeah. No, I mean...

**0:07:13.2 KR:** I don't know. I'm angry.

**0:07:14.5 AN:** Yeah.

**0:07:16.9 KR:** To be blunt, I want to go after everything humanly possible against Danny. I don't know if there's a legal case there, of just if a whistleblower has free reign to make shit up to get something. But I remember two years ago, three years ago... Sorry, what was it? North Star. Two years prior to that, Danny said, "Hey, do you know if and when something ever happens, you know you can go to the SEC and get 10% of whatever they collect, and you're protected?" Before he even knew anything, because he was in SEC trouble back in Chicago, it's like he... Like, this is so planned out methodical by him.

**0:07:58.8 AN:** Can I ask a question? Do you think that Patricia Watson had anything to do with it?

**0:08:03.6 KR:** Sorry, your phone cut... I'm gonna go back outside again. It was freeze... There's like... Say it again, I'm sorry.

**0:08:08.6 AN:** Do you think Patricia Watson had anything to do with it?

**0:08:13.6 KR:** Also a phenomenal question.

**0:08:18.7 AN:** I just...

**0:08:19.8 KR:** I think it's a phenomenal question.

**0:08:22.5 AN:** Yeah. She's like come onto my TikToks and like called me a liar and threatened me, and I'm like...

**0:08:30.1 KR:** Oh, God...

**0:08:30.2 AN:** I'm not even really... I've never met this woman.

**0:08:32.6 KR:** So I was told by Amaozn, like, all the press in my house and everything is like, "Oh, do you know that's Amy?" I was like, who the fuck's Amy? It's Carl's wife. She's coming after... They're going after your character 'cause you're cooperating, right? Kyle? You're cooperating. They're coming after you. Like, I don't give... I got nothing to hide. Come after me in the articles. I was like, if that's Amy or not. I was like, I don't know Amy, but... But what you just said crossed my mind.

**0:09:00.7 AN:** Well, I haven't... I don't know what you're talking about with your house, but I don't know. But yeah, I mean, everything that I have ever said is on my TikToks, for all public...

**0:09:11.2 KR:** So Brian and Patricia, pre all this, when he was going through election, every component of their divorce, one of them would go to the press first. They knew the press really well.

**0:09:24.4 AN:** That's really interesting.

**0:09:26.8 KR:** So, I don't... To answer your question, great question, I don't know. I don't know. I have my hunch. I know... Actually, what I'm trying to say, I need to be protected by somebody who knows what they're doing, but I can... Even in... like, I was gonna text Carl in my last deposition, saying, you guys are asking me the wrong questions. I have been flown to Chicago ten times. And I can tell you the venues from IPI, I can tell you when and where, the dates, the plane tickets. I can tell you how they were trying to undo Brian before all this shit. I was like, you guys are asking me the wrong questions.

**0:10:07.5 AN:** It's IPI, isn't it?

**0:10:11.3 KR:** A thousand, a thousand fucking percent.

**0:10:14.5 AN:** I know that Gibson Dunn has represented IPI as well as Amazon, and so I've always thought that... My own opinion, and this is not substantiated, is that IPI... Is that Gibson Dunn was behind this legal strategy and that there very much was a legal strategy to incorporate the Department of Justice from the get-go.

**0:10:34.3 KR:** Now, if somebody put me on the stand and said, "Did somebody want to pay you x millions of dollars to come work for them and to take over this Amazon relationship if x and y and z happened?" I would say, "Yes, and here's how it happened... "

**0:10:47.8 AN:** Yeah...

[REDACTED - personal family matter concerning a non-party]

**0:10:58.0 AN:** It's okay. I understand... There's a lot of anger.

**0:11:00.5 KR:** You're asking me the wrong questions.

**0:11:01.4 AN:** Yeah, yeah, no, I get it. I've always believed there was a lot more of IPI involved in this, because there was a reason that IPI didn't sue North Star and Brian, and then Amazon did it.

**0:11:12.9 KR:** They can't. Yeah, because they can't.

**0:11:15.2 AN:** Yeah.

**0:11:16.3 KR:** They can't.

**0:11:17.1 AN:** Yeah. They breached the contract. They breached their joint venture, from my perspective, and so... And the only way they could get out of it was to get Brian in prison. So, you know, it...

**0:11:27.0 KR:** Oh, agreed. He had to and I read through those JV docs, and I think you said it in your TikToks, you have to plead or agree to a felony.

**0:11:36.0 AN:** Yeah. Yep.

**0:11:36.0 KR:** And I'm like, I can give you dates and times and conversations.

**0:11:41.3 AN:** Got it.

**0:11:41.7 KR:** 18 months before that.

**0:11:43.4 AN:** Yeah. Yep.

**0:11:44.9 KR:** So if Carl's attorney is like, "Hey, we should talk. [chuckle] We need you now," then I'll map this whole fucking thing out, of how can I... And I don't know if there's... I mean, the basis of it, but I can tell you when it all started and the vendetta of a billion-dollar Mark Zuckerberg fund was out to get Brian.

**0:12:05.9 AN:** Yeah, that really doesn't... That doesn't want this publicity, I believe, from my perspective, so yeah. Well, I think that's probably a thing to do then, I think, you know. My goal in the world is to end this and, um, make it right. Right? You know, we've lost... I was fired from jobs over this. Like, I. And certainly, Carl lost millions of dollars of real estate development work and our children lost their home. And I know that your family's been through a lot too. Everyone's families have been through a lot at the hands of a lot of billionaires. And...

**0:12:46.4 KR:** Again, I'm biting my tongue like, the shit I know, it's a lot more than that. But I will tell you, your husband did nothing wrong. He lost a lot more. It was...

**0:12:58.0 AN:** Well, there's no hierarchy to this. We all lost our lives, so...

**0:13:02.4 KR:** Yeah.

**0:13:03.1 AN:** And I think there's a lot of paths to getting justice. And, you know, I think I'm not representing anybody in this, and I don't know a lot because I really can only know what's on the

public docket, but I do know that, you know, the defendants that fought worked together. And I think that's the best path forward for people who want that path, choosing my words carefully, that, like...

**0:13:32.1 KR:** For sure.

**0:13:32.8 AN:** I think at this point...

**0:13:32.9 KR:** I just don't know. With nothing to lose now, I don't know how to get on that side. So if you guys, I will tell you from the lady you referenced earlier, there was a lot of fucking people telling me exactly what to do, and if I didn't, there would be... X, Y, and Z would trigger.

**0:13:50.5 AN:** Like what kind of stuff?

**0:13:53.5 KR:** Another day.

**0:13:54.8 AN:** Yeah, no, I get it. I just... Yeah, I mean, it's all very terrifying. It's been terrifying. I still feel physically afraid of the repercussions oftentimes, like that someone will come hurt me or my husband, but...

**0:14:09.0 KR:** You're smarter than that, they're not that dumb.

**0:14:12.7 AN:** Well, because we got real public. I got real public. Carl didn't, 'cause as you know, he's a very private person. But I wasn't, and so... But, yeah.

**0:14:25.0 KR:** My thing is, are whistleblowers freely, truly, freely to make shit up?

**0:14:31.1 AN:** No, whistle... No.

**0:14:31.1 KR:** Their off in the wind?

**0:14:32.3 AN:** It's a federal crime to lie to federal law enforcement, it's a federal crime to... Danny is not a whistleblower in the classic sense. Like emailing Amazon, a company, is not whistleblowing. Amazon called it whistleblowing. It's just like accusing someone of a crime. If you choose... Danny, as far as I understand it, never sought federal whistleblower protection, which is when you go to a federal agency and say there's a federal crime. He didn't do that. My understanding from the docket is that he emailed Amazon and asked for a job in exchange for information.

**0:15:01.9 KR:** Yeah, we all, we all saw that email.

**0:15:04.0 AN:** Yeah. And so we didn't know it was Danny for years, because... [chuckle]

**0:15:10.1 KR:** Oh, my God. I didn't either. I thought... I was like... I mean, everybody, right? I got deposed the first time, I was like, "You guys think it's me?" And I'm like... It's like, hold on, I thought it was Casey or I thought it was Christian who's mad at Brian. Like, every... Nobody knew.

**0:15:26.2 AN:** Yeah, yeah. It was... Yeah. So, no, Dan, I don't... My understanding, emailing a

company is not like a whistleblower. And so yeah, I mean I think... I will tell you from what I know from the Internet now, and this is just from the Internet, that Danny lives in Calabasas, California, in a gated community and sends his child to a $50,000-a-year private school.

**0:15:49.3 KR:** So, here's what... I'm at... And Will, like Will texts me, reached out to me, called me. Danny reached out, and I was like, "What is going on?" And then Jamie, my attorney, called. And then the press hit. I'm like, "What is going on?" And they're just like, "Oh, all charges dropped," because I never replied to Danny. But it's like, I told Will, I was like, "You know I don't forget anything and I don't delete anything. I just have nothing to hide." But I have texts and emails from Danny at Northstar explaining what he's doing. And again, I'm in this deposition and Brian's asking me certain questions about Patricia and everything. I'm like, "God, you fuckers. You're asking the wrong questions."

**0:16:30.2 AN:** And Dan...

**0:16:32.1 KR:** Lead me to water.

**0:16:32.9 AN:** Well, it's interesting 'cause like, I mean... Well, just a lot about that is interesting. Yeah, anyway. Um, God. And how's Will doing? Is he okay?

**0:16:46.0 KR:** I have no idea. I don't care, he gave... I don't know how Carl and Casey are, but Will just gave up and I'm on my own. Yeah, I don't... I have no idea. Great... I don't know.

**0:16:58.8 AN:** Yeah.

**0:17:03.2 KR:** So Danny lives in California?

**0:17:05.1 AN:** That's what the Internet tells me, [laughter] so... Yeah. And Calabasas is a very, very wealthy community, so it's...

**0:17:11.8 KR:** Oh, is it?

**0:17:12.5 AN:** Yeah. It's just interesting to me that he has all this money now.

**0:17:15.5 KR:** Oh, he has a shit ton of money now.

**0:17:17.4 AN:** How? Just from his company?

**0:17:21.3 KR:** Yeah, I would assume... I mean, I don't know, but I know when he was at Northstar, he started that company, Dacia... Dossier or Dossie, whatever it's called.

**0:17:31.1 AN:** Yeah, yeah, yeah. I just...

**0:17:38.9 KR:** Yeah, I'll join that fight. I might even start that fight.

**0:17:41.9 AN:** Yeah. Well, um, it's good to hear from you. Thank you for reaching out. I thought it wasn't you because a lot of people reach out to me on TikTok.

**0:17:50.2 KR:** Well, you asked me a question, it was like, God, it's been four years, does she want the VAD? Like, the VADATA? I was like, I think it's a 144, then we went to Quail Ridge and Manassas. Like, oh, shit. So I'm like... Then I'm like, oh, I forgot to reply, but yeah, no.

**0:18:06.8 AN:** Well, I think it's the alligator. I remember getting the alligator.

**0:18:09.4 KR:** I know Carl hates me. Like the recordings and everything, it wasn't even supposed to get this big. It was just like, get Casey off my fucking back.

**0:18:16.3 AN:** Yeah, I get it. It is what it is.

**0:18:20.3 KR:** So I have to ask you a question, and I don't even think I want to know the answer, knowing how happy they were. Was Casey the guy you referenced that got a divorce?

**0:18:31.7 AN:** No, Casey did not get a divorce.

**0:18:34.1 KR:** Okay. His family's good?

**0:18:35.9 AN:** Yeah, Casey's good.

**0:18:37.5 KR:** Okay. Okay.

**0:18:40.4 AN:** His boys all play ice hockey and...

**0:18:42.5 KR:** I was gonna say, I hope they're destroying kids playing hockey. Okay.

**0:18:46.4 AN:** Yeah. [chuckle] They're all playing hockey. And yeah, who did I reference that got a divorce? Who did I reference that got a divorce?

**0:18:55.4 KR:** Anyways, I know you're smart. I know this is recorded. If there's anything you need from me, I'd love to help you fight.

**0:19:03.2 AN:** So... Oh, well, there was one... In Brian's deposition, there was a divorce... He almost got divorced, I guess. There was a divorce filing or something in one of Brian's depositions, but I don't think... He didn't end up getting divorced.

**0:19:18.6 KR:** Gotcha.

**0:19:20.0 AN:** But... Well, so did IPI talk to you after all this started?

**0:19:27.2 KR:** After what? What...

**0:19:28.9 AN:** After April of 2020, did IPI ever talk to you again?

**0:19:32.1 KR:** No.

**0:19:32.8 AN:** So it was all before that?

**0:19:34.8 KR:** Yep.

**0:19:35.7 AN:** And they wanted to get Brian out of the deals, because the testimony that IPI gave was that Brian wanted to get out of the deals?

**0:19:43.7 KR:** I forget. I forget the dates or who... Who and when started it. I do.

**0:19:47.6 AN:** So, well, yeah, but so I'm just saying after the FBI came, did you ever talk to Brian or to IPI again?

**0:19:56.2 KR:** Not outside of those deals or in regards to Brian's situation, only pursuant to their witness statement.

**0:20:06.6 AN:** Uh-huh. And I'm just trying... I don't even know what to ask you, Kyle. It's 'cause there's a lot of the stuff that I don't know. So what did you... Since when did you... I have a question.

**0:20:24.5 KR:** Amy... Amy, stop. We're both smarter than this. I will answer everything and give you everything you want.

**0:20:30.9 AN:** Well, when did you plead guilty?

**0:20:32.8 KR:** Let's just be upfront.

**0:20:35.7 AN:** When did you plead guilty?

**0:20:35.7 KR:** What do you mean?

**0:20:36.4 AN:** Like, when did you tell the government you would plead guilty?

**0:20:42.3 KR:** Define "when." Like, piece of paper or when I flew in person?

**0:20:45.5 AN:** I guess when you flew in person to... Well, no, piece of paper, when you were like, "I'm pleading guilty."

**0:20:50.7 KR:** Yeah, I don't recall the date that I signed.

**0:20:52.3 AN:** But was it 2020? Way back then?

**0:20:58.9 KR:** I'm trying to remember. Yeah, I don't recall specifics, but it was a while before I was in DC.

**0:21:06.4 AN:** And when did you start... Did Amazon...

**0:21:11.5 KR:** Amy, Amy, Amy, stop. [chuckle] Go ahead, keep going.

**0:21:17.7 AN:** Well, did Amazon tell you they wouldn't sue you if you pled guilty?

**0:21:24.1 KR:** Come on, you're better than this. Have Carl's attorney reach out if you want questions answered.

**0:21:35.2 AN:** Okay. Yeah. Is Jamie still representing you, or should he just reach out to you directly?

**0:21:42.4 KR:** Jamie still represents me.

**0:21:43.9 AN:** Okay. All right, well, I'm glad the investigation's over.

**0:21:52.5 KR:** Yeah. See, you switched, right? Like...

**0:21:56.2 AN:** What?

**0:21:57.7 KR:** We've all been through a lot. We're good.

**0:21:58.9 AN:** Well, I know. I just switched because you said I'm better than this, "stop asking questions, have the lawyer reach out." So I'm going to. I don't know...

**0:22:05.7 KR:** I can hear the beeps in the background and I told you, I know you're recording this...

**0:22:08.2 AN:** No, I'm getting text messages on my phone.

**0:22:14.2 KR:** I told you, I'm on... I would love to fight. I would love to, but yeah, I don't... Dates and everything, I don't want to get anyone... Meaning, if you want to do this, do it right. Be dialed in. I will write down... Document the specific date.

**0:22:32.0 AN:** All right. It's not like... That stuff doesn't even matter. I don't think any of that matters. I was just curious, personally, because I just...

**0:22:41.5 KR:** Does it matter if IPI or Amazon contacted me after a federal fucking charge? Yeah, it matters to me.

**0:22:46.6 AN:** Yeah. Oh, no, that stuff...

**0:22:48.3 KR:** We're all smarter than that. Come on.

**0:22:49.8 AN:** Yeah, well, I just... Yeah, well, yeah, it's a whole interesting mess, so yeah. But are you able to work now?

**0:23:04.3 KR:** I'm, I'm good. Carl?

**0:23:06.8 AN:** He's working, yeah, so that's good. And I'm working too.

**0:23:11.9 KR:** You guys still in Ohio?

**0:23:13.2 AN:** Yep, we're still in Ohio. We live in a... We're renting a house in Ohio.

**0:23:18.2 KR:** Well, I will be in Columbus February 16th through the 18th.

**0:23:22.3 AN:** You will?

**0:23:23.3 KR:** Yeah.

**0:23:23.9 AN:** What for?

**0:23:25.7 KR:** I have a junior friend, family friend who's going to Ohio State and he's begging me to go out before he graduates, so I'm going out for.. . but I'm going out for a Ohio state basketball game.

**0:23:38.3 AN:** Could we, could we see you? Is that an awkward thing? It would just be interesting...

**0:23:41.9 KR:** I'm fine. You just switched to formality and we're all smarter than this. When people start asking formal questions back to back to back, I know...

**0:23:50.9 AN:** I just thought you told me...

**0:23:52.7 KR:** What's that?

**0:23:53.6 AN:** All right, whatever. I'm sorry, I don't even really have any... I have curious questions about, like, my...

**0:23:58.0 KR:** You have a ton of questions, which is fine. Let's all throw a swimsuit on and jump in a pool.

**0:24:04.1 AN:** Yeah. [chuckle] I have a lot of...

**0:24:07.3 KR:** And I can answer them all. My attorney's like, you're free...

**0:24:08.9 AN:** You're free. Yeah, I know. That's why I was like... When you asked to talk, I was like, I don't know if I can talk to you. And then I was like, I think I can, because, like, I'm not a litigant and...

**0:24:19.5 KR:** Nor am I anyway.

**0:24:20.3 AN:** Yeah. Right. So it's just...

**0:24:24.1 KR:** So I fly into Columbus the 16th.

**0:24:26.3 AN:** Okay. Well, I will text you and we can...

**0:24:28.8 KR:** And I'm staying at the Marriott on Ohio State's campus.

**0:24:32.7 AN:** That's it. That's one of our nicer hotels here in Columbus, Ohio, Kyle.

**0:24:37.2 KR:** Oh my God.

**0:24:38.3 AN:** So, [laughter] not a lot here.

**0:24:39.0 KR:** I tried to buy the Radisson in Cleveland, and I was like, I can't even... I can't do this. I don't want to come here again.

**0:24:45.9 AN:** Yeah. Yeah.

**0:24:47.5 KR:** So how do you want to arrange that? But yes, short answer, I would like to meet you guys.

**0:24:52.3 AN:** Yeah, no, Carl can come. Why don't we just pick a place? And if you want me to do it right when you get... Whatever is good for you, since you're coming to visit someone. We can just be flexible. We're here, so...

**0:25:07.3 KR:** Text your number?

**0:25:09.4 AN:** Yeah, just text my number and we can... Yeah, we can...

**0:25:13.4 KR:** And I say this knowing how hard it was, so I genuinely mean this. Tell him to grab a Coors Light and smile...

**0:25:19.0 AN:** He doesn't drink beer anymore.

**0:25:21.0 KR:** Cause he's losing weight.

**0:25:22.0 AN:** He doesn't drink beer anymore. He'll have a vodka soda...

**0:25:25.6 KR:** I know, you said that, 'cause I knew he wasn't. You can't lose weight if you're still drinking beer.

**0:25:27.3 AN:** That's right. He'll have a vodka, but he's not... He doesn't drink beer. He quit beer a long time ago, so...

**0:25:31.7 KR:** Okay. Yeah, I'll send... Yeah, so I think... Yes. Okay, I'll text you, I guess, when I have time. I land, I think, 16th, at like 1:00, so I have that entire night.

**0:25:44.1 AN:** Great. Let's plan on it.

**0:25:45.9 KR:** Okay. Thank you, Amy.

**0:25:47.3 AN:** Thank you, Kyle. It was... Yeah, thanks for reaching out. Okay, bye.

**0:25:51.5 KR:** Bye.

Kyle Ramstetter / Amy Nelson Transcript (2024)

**Thank you for choosing Scribie.com**

Cross-check this transcript against the audio quickly and efficiently using our online Integrated Editor. Please visit the following link and click the Check & Download button to start.

https://scribie.com/files/13dc590494e8401982f8a3d8777550c8fbd323c3

JEWISH JUSTICE REFORM PROJECT

Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT G

## LETTER OF COUNSEL TO OPPOSING COUNSEL

Patrick F. Stokes, Gibson Dunn, to Adam Smart, Esq.,

Burr & Forman LLP, 15 February 2023

Copied to the firm's General Counsel

Attachment not reproduced

Cited at Part I

3 pages follow

# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5306
Tel 202.955.8500
www.gibsondunn.com

Patrick F. Stokes
Direct: +1 202.955.8504
Fax: +1 202.530.4214
PStokes@gibsondunn.com

February 15, 2023

<u>VIA E-MAIL</u>

Adam Smart, Esq.
Burr & Forman LLP
50 North Laura Street, Suite 3000
Jacksonville, FL 32202

Re:     Witness Harassment by Amy and Carl Nelson

Dear Mr. Smart:

On Friday, February 10, 2023, Burr & Forman's client, Amy Nelson, posted a video on the social media website TikTok concerning Chris Vonderhaar.  Mr. Vonderhaar is an Amazon employee and a witness in *Amazon.com, Inc. v. WDC Holdings*, No. 1:20-cv-484 (E.D. Va.) (the "Virginia Action").   In the video, Ms. Nelson posted screenshots of Mr. Vonderhaar's home address, pictures of his home, and a screenshot taken from LinkedIn showing Mr. Vonderhaar's personal appearance (*see* Attachment A; address redacted).

Ms. Nelson's post is known as "doxing."  Doxing is the "releas[e of] someone's personal details," including "full legal names [and] residential addresses," "onto the Internet in an easily accessible form" to "defam[e] and harass[]" or "intimidate, threaten, or punish the identified individual." *Lord v. Smith*, 2022 WL 17668707, at *4 n.4 (N.D. Ill. Dec. 14, 2022) (quoting David M. Douglas, Doxing: A Conceptual Analysis, 18 Ethics Info. Tech. 199, 199 (2016)).  Ms. Nelson made clear that her post was no innocent mistake when she responded to a commentator who accused her of "doxing" by claiming she was justified in disclosing Mr. Vonderhaar's personal information because it could be obtained from other public sources.

Doxing Mr. Vonderhaar is an escalation of Ms. Nelson's broader campaign in which she has falsely accused Amazon of "hunting" her family and has called on her social media followers to take action against the Amazon employees and attorneys she perceives to be responsible for the Virginia Action. The purpose of her campaign, and in particular her disclosure of Mr. Vonderhaar's photograph and home address, is to incite her followers to harass and intimidate those employees and attorneys until they abandon the Virginia Action. Ms. Nelson's efforts have already resulted in numerous followers harassing Amazon employees through social media, and an incident in which someone she claims as a friend attempted to confront an Amazon executive while he was dining at a restaurant.  We can only presume that Ms. Nelson is carrying out this campaign in concert with Mr. Nelson.

Abu Dhabi · Beijing · Brussels · Century City · Dallas · Denver · Dubai · Frankfurt · Hong Kong · Houston · London · Los Angeles
Munich · New York · Orange County · Palo Alto · Paris · San Francisco · Singapore · Washington, D.C.

**GIBSON DUNN**

Adam Smart, Esq.
Burr & Forman LLP
February 15, 2023
Page 2

Ms. Nelson's "doxing" of Mr. Vonderhaar is unlawful because it was clearly intended to "have a chilling effect on potential witnesses" in the Virginia Action. *In re Kwok*, 2023 WL 186964, *20 (Bankr. D. Conn. Jan. 13, 2023); *see also* 18 U.S.C. § 1512 (criminalizing "intentional[] harass[ment]" that "dissuades any person" from "testifying in an official proceeding").

Mr. Nelson has also contacted a potential witness and Amazon employee on LinkedIn and harassed her by, among other things, stating that he is "not going away – ever."

We presume that you and Ms. Nelson (who is also an attorney) are aware that counsel have an obligation to "protect a tribunal against criminal or fraudulent conduct that undermines the integrity of the adjudicative process," such as "intimidating or otherwise unlawfully communicating with a witness" or "other participant in the proceeding." ABA Model Rule 3.3, cmt. And we presume you are aware that this and other ethical rules that govern your participation in the Virginia Action require you to "take reasonable remedial measures, including disclosure if necessary," when a client "intends to engage, is engaging, or has engaged in criminal or fraudulent conduct related to the proceeding." *Id*. We similarly presume you and Ms. Nelson are aware of your obligation not to "use means that have no substantial purpose other than to embarrass, delay, or burden a third person." ABA Model Rule 4.4.

We write to demand that:

- Mr. and Ms. Nelson cease disclosing (through social media or other means) any personal information, including names, photographs, home addresses, phone numbers, and home photographs, of Amazon employees, counsel, or potential witnesses in the Virginia Action;

- Mr. and Ms. Nelson cease any further communications with Amazon employees or potential witnesses in or about the Virginia Action except communications made by and through the parties' respective counsel; and

- Mr. and Ms. Nelson refrain from engaging in any other acts of witness harassment or intimidation going forward.

Please confirm by 5 p.m. ET on February 17, 2023 that your clients will abide by the requests in this letter. If they will not, Amazon intends to seek the Court's assistance to stop your clients' unlawful harassment of Amazon witnesses and attorneys in the Virginia Action. Amazon further reserves all rights and remedies.

**GIBSON DUNN**

Adam Smart, Esq.
Burr & Forman LLP
February 15, 2023
Page 3

Sincerely,

Patrick F. Stokes

cc:    Alex Little
       Michael L. Lucas, Burr & Forman General Counsel

Attachment

**GIBSON DUNN**

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT H

## LETTER OF PROF. LAWRENCE LESSIG

Harvard Law School, 12 November 2020

To the President, the Attorney General and

the Deputy Attorney General

*United States v. Teman — Dkt. 350-3, filed 16 April 2023*

Cited at Part V

2 pages follow



# HARVARD LAW SCHOOL

LAWRENCE LESSIG
ROY L. FURMAN PROFESSOR OF LAW AND LEADERSHIP
1563 MASSACHUSETTS AVE
CAMBRIDGE · MASSACHUSETTS · 02138
TEL. (617) 496-8853
LESSIG@LAW.HARVARD.EDU

November 12, 2020

President Donald J. Trump
1600 Pennsylvania Avenue
Washington, DC 20500

The Honorable William Barr Attorney General

The Honorable Jeffrey Rosen
Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, DC, 20530

Re: Ari Teman

I have reviewed, *pro bono*, the case involving Ari Teman. Ari was convicted for acts that certainly do not establish a crime nor evince any criminal intent. I urge the Justice Department to dismiss the case or the President to pardon Mr. Teman.

The facts underlying this case involve a business dispute between Mr. Teman's company, GateGuard, and some of its clients. Those clients had failed to pay for the services GateGuard had provided. Pursuant to the terms agreed to by the clients and GateGuard, Mr. Teman effected a transfer of funds from the clients' bank accounts to GateGuard. The clients had contractually authorized GateGuard to collect overdue fees in this way. The contract that authorized this was not crafted by Mr. Teman, but by his lawyers. They had patterned the agreement on other well known companies (such as AirBnB). The lawyers' work obviously cannot be the foundation for a finding of Mr. Teman's fraudulent intent.

Whether GateGuard's contract should be enforceable in a civil court is an interesting question for academics to consider. GateGuard's customers acknowledged they received the contracts; they claimed they hadn't read it. Again, that poses an interesting question for a contracts exam. It doesn't evince fraudulent intent by

1

Mr. Teman. Indeed, the reality of online commerce is that agreements like this are the norm. The judge in this case suggested that the terms authorizing the transfer of funds were buried in the contract. GateGuard's contract is actually quite concise relative to many online agreements. The suggestion that a surprising term in an online agreement constitutes an intent to defraud would render most banks and credit card companies guilty of fraud. Nothing in GateGuard's terms of service is extreme or unusual.

The judge in this case, writing to uphold a jury verdict, was constrained to justify the jury's verdict. He was therefore persuaded that the fees charged were unreasonable. And he was skeptical that the terms authorizing a transfer were in fact present at the time the clients agreed to the contract.

But the fees were charged as many contracts — cell phones contracts for example — provide today: a low monthly fee that is accelerated if a contract is terminated early, or not kept current. And the evidence in this case demonstrates conclusively that the term authorizing transfers from the clients' accounts was both part of the original agreements and expressly acknowledged by at least some of the clients.

What explains this prosecution is not the law, nor the justice within this commercial dispute. What explains it, apparently, is the relative inexperience of the front line prosecutors. Those prosecutors were new to the U.S. Attorney's office. They allowed their inexperience to guide their intuitions. And once it was clear that they had uncovered not a criminal commercial enterprise but ordinary online commerce, rather than acknowledging their error, and the injustice in prosecuting a commercial dispute as a crime, they continued to press the prosecution against Mr. Teman.

This behavior is surprising and troubling to those like me who have high regard for United States Attorneys. Yet it is clear that sometimes, winning becomes more important than justice. The prosecution of Mr. Teman is not justice. It is not a credit to the work of the Department. I urge you to take whatever steps are possible to stop this prosecution before Mr. Teman is sentenced to prison.

Sincerely,



Lawrence Lessig

2

JEWISH JUSTICE REFORM PROJECT

Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT I

## EMAIL TO PRO SE INTAKE UNIT

A. Teman to Temporary_Pro_Se_Filing@nysd.uscourts.gov

27 October 2021, 7.46 pm, with attachment

Cited at Part V

1 page follows

Exhibit I

 Gmail

Ari Teman <ari@teman.com>

**Help docketing a letter for Pro Se party in (1:20-cv-01609**

1 message

**Ari B. Teman** <ari@teman.com>
To: Temporary_Pro_Se_Filing@nysd.uscourts.gov

Wed, Oct 27, 2021 at 7:46 PM

Hi,

I need to please docket the attached Letter in *GateGuard, Inc. v. Goldmont Realty Corp.* (1:20-cv-01609), before Judge Nathan.  I am filing the letter as a *pro se* 3rd party *individual* not represented by counsel. Thank you.

Please let me know how I can be helpful.

Ari
781-718-3375

📄 **LETTER_RE_SDNY_Prosecutorial_Misconduct_GateGuard v Goldmont_TEMAN-Judge_Nathan-2021-10-21 (1) (1).pdf**
1819K

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT J

## ACKNOWLEDGMENT OF RECEIPT

Pro Se Intake Unit, S.D.N.Y., to A. Teman

27 October 2021, 7.47 pm

With notification to chambers of Judge Gorenstein

and Judge Nathan, 3 November 2021

Cited at Part V

1 page follows

Exhibit J

 Gmail

Ari Teman <ari@teman.com>

## Acknowledgment of Receipt
2 messages

**Temporary Pro Se Filing NYSD** <temporary_pro_se_filing@nysd.uscourts.gov>     Wed, Oct 27, 2021 at 7:47 PM
To: "Ari B. Teman" <ari@teman.com>

Your email has been received by the Pro Se Intake Unit of the United States District Court for the Southern District of New York.  (This is not the United States Bankruptcy Court.)

Documents from pro se litigants that meet the required standards for electronic filing will be filed and will appear on the ECF docket within two business days of receipt (see required standards below).  If you send your document by email and it is accepted for filing, you should not deliver a hard copy version to the court.

Required Standards for Filing by Email:

- Documents must be attached to the email in PDF format, no larger than 10 megabytes;

- The email and attached document must contain the case number, filer's name, address, and telephone number;

- Documents must be signed by the filing party by either

    - (a) signing by hand and then scanning the document;

    - (b) signing electronically using a digital signature; or

    - (c) by typing: "s/Filer's Name;"

- Any additional comments, questions, or other messages in the email will be disregarded;

- Any additional correspondence included in the email will be disregarded.

If your document does not appear on the ECF docket within two business days, it has not met the required standards for electronic filing.  If so, you must submit your document to the court in paper form by (a) sending your document by mail, or overnight delivery service, to the appropriate courthouse listed below; or (b) delivering your document in-person to the appropriate courthouse listed below between the hours of 11:00 AM to 2:00 PM; or (c) depositing your document after hours in the court's night depository box at the 500 Pearl Street, NY, NY courthouse.

United States Courthouse

Pro Se Intake Unit

500 Pearl Street

New York, NY 10007


or


United States Courthouse

Pro Se Intake Unit

300 Quarropas Street

White Plains, NY 10601


For more information on the Standards for Filing by Email go to: https://nysd.uscourts.gov/sites/default/files/pdf/covid-19/Notice%20-%20Pro%20Se%20Email.pdf.


You can receive notifications by email of activity in your case by consenting to receive documents electronically.  To do so, complete and mail the form found at https://nysd.uscourts.gov/forms/consent-electronic-service-pro-se-cases.


**You may make an appointment with the NYLAG Legal Clinic for Pro Se Litigants to receive free legal advice by completing the clinic's intake form on your computer or smartphone. Alternatively, leave a message with 212-659-6190.**

**Ari B. Teman** <ari@teman.com>     Wed, Nov 3, 2021 at 3:41 PM

To: GorensteinSettlement@nysd.uscourts.gov, NathanNYSDChambers@nysd.uscourts.gov
Cc: Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, damian.williams@usdoj.gov, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>, David Teman <dteman@gmail.com>

Judge Gorenstein and Judge Nathan,

The letter was submitted to be filed to the docket via the Pro Se intake office on October 27. Therefore, please consider the letter filed to the docket. Thank you.

Please let me know how I can be helpful.

Ari

**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo:
NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.
Terms apply to each service. Each service is a different entity.
Terms cannot be changed via email or oral agreement.

[Quoted text hidden]

JEWISH JUSTICE REFORM PROJECT
Letter to the Hon. John G. Koeltl — No. 21 Civ. 9321 (JGK)

# EXHIBIT K

## EMAIL CHAIN

*GateGuard, Inc. v. Goldmont Realty Corp.,*

No. 1:20-cv-01609-VEC-GWG (S.D.N.Y.)

21 October 2021 – 1 September 2022

Filed as Docket No. 230-1

Cited at Part V

8 pages follow

Case 1:20-cv-09800-VEK-GWG    Document 360-1   Filed 08/08/2026   Page 671 of 674



                                                                      Ari Teman <ari@teman.com>

## Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor

11 messages

**Ari B. Teman** <ari@teman.com>                                Thu, Oct 21, 2021 at 9:14 PM
To: NathanNYSDChambers@nysd.uscourts.gov
Cc: damian.williams@usdoj.gov, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, Lois Weiss <lois@betweenthebricks.com>,
Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones
<coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Simcha Schonfeld <sds@kandsllp.com>, Ron Kampeas
<rkampeas@jta.org>

Dear Judge Nathan,

I respectfully submit the attached letter to inform you of willful disclosure violations in violation of Your Honor's orders to
the US Attorney's Office (USAO, SDNY) in *US v Pizzaro* and *US v Nejad,* by the USAO, in collusion with counsel and
officers of Goldmont (and other witnesses), which have resulted in documents and evidence relevant to this matter,
*GateGuard, Inc. v. Goldmont Realty Corp.* (1:20-cv-01609, which is before Your Honor) being withheld, and of course to
beg Your Honor's action in restoring justice.

I respectfully request that the Clerk file the attached letter to the Docket in *GateGuard, Inc. v. Goldmont Realty Corp.
(1:20-cv-01609)* and submit that it may be filed because I am also writing from my capacity and role as a pro se defendant
in  *United States v. Teman (1:19-cr-00696)*

As Your Honor will understand from the details in the attached letter, I am in desperate need of help, my life, my health,
and my company GateGuard, have been decimated by SDNY misconduct, which continues relentlessly, and so I beg Your
Honor to please act as You did in *US v Nejad* and to do so as swiftly as Your Honor is capable.

Please let me know how I can be helpful.

Ari

p.s. I respectfully copy members of the press who have covered this misconduct in an effort to maintain transparency, out
of fear of retaliation from SDNY

**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo:
NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.

Terms apply to each service. Each service is a different entity.

Terms cannot be changed via email or oral agreement.

---

📄 **LETTER_RE_SDNY_Prosecutorial_Misconduct_GateGuard v Goldmont_TEMAN-Judge_Nathan-2021-10-
21.pdf**
1819K

---

**Simcha Schonfeld** <sds@kandsllp.com>                          Thu, Oct 21, 2021 at 9:18 PM
To: "Ari B. Teman" <ari@teman.com>, NathanNYSDChambers@nysd.uscourts.gov
Cc: damian.williams@usdoj.gov, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, Lois Weiss <lois@betweenthebricks.com>,
Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones

<coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>

Judge Nathan – it is unclear to me as to why a party, represented by counsel, is communicating directly with the court instead of via his counsel. I would ask that his counsel be directed to state whether this submission is joined by him or made by the litigant, pro se, without the consent and approval of his counsel.

**SIMCHA D. SCHONFELD, ESQ.** | KOSS & SCHONFELD LLP
90 John Street | Suite 503 | New York, New York 10038
O: 212-796-8916 | F: 212-401-4757 | Email: sds@kandsllp.com

www.kandsllp.com

*Please note that any and all contracts and transaction-related documents transmitted in this email remain subject to the review and approval of my client, unless stated otherwise.*

This e-mail and any Document(s) accompanying this transmittal contains information from Koss & Schonfeld, LLP that is confidential and /or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance upon the contents of this transmittal is strictly prohibited and the document(s) should be returned to this firm immediately. If you have received this transmittal in error, please notify this firm immediately by return e-mail.

[Quoted text hidden]

---

**Ari B. Teman** <ari@teman.com>                  Wed, Nov 3, 2021 at 9:32 AM
To: GorensteinSettlement@nysd.uscourts.gov, NathanNYSDChambers@nysd.uscourts.gov
Cc: Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, damian.williams@usdoj.gov, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>, David Teman <dteman@gmail.com>

Judge Gorenstein,

My life is being destroyed by the willful collusion between SDNY and Simcha Schonfeld and his clients to hide evidence from a federal criminal trial. I write to you as an UNREPRESENTED pro se individual and ask that this letter be docketed and addressed. Your Honor, Judge Nathan, has gone after SDNY for exactly this kind of cheating in US v Nejad and US v Pizzaro (and it's the same AUSA Graham involved). Here, SDNY hid their communications with Schonfeld from the defense in US v Teman and collaborated with his clients Joseph Soleimani and Abi Goldenberg (Goldmont) to hide exculpatory evidence and these clients intentionally delayed production of discovery in this matter *GateGuard v Goldmont* to prevent the proof of subpoena violations and brady violations from coming to light in US v Teman until after sentencing. That is, Simcha Schonfeld participated in intentional obstruction of justice *through a case before Your Honors*, to cheat me into prison.

Please. Enough of the leniency in allowing them to lie and cheat and delay discovery in case we filed long before trial in US v Teman.This matter belongs before the Court, not in arbitration, because the abuse of the system by Schonfeld and his clients extends far beyond simply entering contracts they have no intention of honoring. I have lost a child, I have been torn from my family for years, and my life is destroyed... Schonfeld is the ringleader of this with his clients and I ask the court to take this matter seriously and hold a hearing, bringing in the participating AUSAs and demanding sworn statements with specificity as to the allegations and *proof* provided in the attached letter.

Please.

Thank you,

4/30/26, 5:11 PM    12 ...business woman letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01…

Case 1:20-cv-09800-VEC-GWG    Document 360-1    Filed 08/08/2026    Page 693 of 74

Ari

---------- Forwarded message ---------
From: **Simcha Schonfeld** <sds@kandsllp.com>
Date: Thu, Oct 21, 2021 at 2:18 PM
Subject: RE: Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor
To: Ari B. Teman <ari@teman.com>, <NathanNYSDChambers@nysd.uscourts.gov>
Cc: <damian.williams@usdoj.gov>, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>


Judge Nathan – it is unclear to me as to why a party, represented by counsel, is communicating directly with the court instead of via his counsel. I would ask that his counsel be directed to state whether this submission is joined by him or made by the litigant, pro se, without the consent and approval of his counsel.


**SIMCHA D. SCHONFELD, ESQ.** | KOSS & SCHONFELD LLP
90 John Street | Suite 503 | New York, New York 10038
O: 212-796-8916 | F: 212-401-4757 | Email: sds@kandsllp.com

www.kandsllp.com


*Please note that any and all contracts and transaction-related documents transmitted in this email remain subject to the review and approval of my client, unless stated otherwise.*


This e-mail and any Document(s) accompanying this transmittal contains information from Koss & Schonfeld, LLP that is confidential and /or legally privileged. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or taking of any action in reliance upon the contents of this transmittal is strictly prohibited and the document(s) should be returned to this firm immediately. If you have received this transmittal in error, please notify this firm immediately by return e-mail.

---

**From:** Ari B. Teman <ari@teman.com>
**Sent:** Thursday, October 21, 2021 2:15 PM
**To:** NathanNYSDChambers@nysd.uscourts.gov
**Cc:** damian.williams@usdoj.gov; Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>; Lois Weiss <lois@betweenthebricks.com>; Bob Van Voris <rvanvoris@bloomberg.net>; Joseph Palazzolo <joe.palazzolo@wsj.com>; Coulter Jones <coulter.jones@wsj.com>; Ben Weiser <Weiser@nytimes.com>; Simcha Schonfeld <sds@kandsllp.com>; Ron Kampeas <rkampeas@jta.org>
**Subject:** Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor


Dear Judge Nathan,


I respectfully submit the attached letter to inform you of willful disclosure violations in violation of Your Honor's orders to the US Attorney's Office (USAO, SDNY) in *US v Pizzaro* and *US v Nejad,* by the USAO, in collusion with counsel and officers of Goldmont (and other witnesses), which have resulted in documents and evidence relevant to this matter,

4/30/26, 5:11 PM Gmail - Courtesy Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01…

Case 1:20-cv-09399-VEC-GWG Document 350-1 Filed 02/28/26 Page 70 of 73

*GateGuard, Inc. v. Goldmont Realty Corp.* (1:20-cv-01609, which is before Your Honor) being withheld, and of course to beg Your Honor's action in restoring justice.

I respectfully request that the Clerk file the attached letter to the Docket in *GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609)* and submit that it may be filed because I am also writing from my capacity and role as a pro se defendant in *United States v. Teman (1:19-cr-00696)*

As Your Honor will understand from the details in the attached letter, I am in desperate need of help, my life, my health, and my company GateGuard, have been decimated by SDNY misconduct, which continues relentlessly, and so I beg Your Honor to please act as You did in *US v Nejad* and to do so as swiftly as Your Honor is capable.

Please let me know how I can be helpful.

Ari

p.s. I respectfully copy members of the press who have covered this misconduct in an effort to maintain transparency, out of fear of retaliation from SDNY

**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo:
NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.

Terms apply to each service. Each service is a different entity.

Terms cannot be changed via email or oral agreement.

---

📄 LETTER_RE_SDNY_Prosecutorial_Misconduct_GateGuard v Goldmont_TEMAN-Judge_Nathan-2021-10-21 (2).pdf
1819K

---

**Gorenstein NYSD Chambers** <GorensteinNYSDChambers@nysd.uscourts.gov>       Wed, Nov 3, 2021 at 3:34 PM
To: "Ari B. Teman" <ari@teman.com>, Nathan NYSD Chambers <NathanNYSDChambers@nysd.uscourts.gov>
Cc: Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, "damian.williams@usdoj.gov" <damian.williams@usdoj.gov>, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>, David Teman <dteman@gmail.com>

You are being sent this email in reply to an email that was sent to the Chambers email inbox.

Judge Gorenstein does not accept communications by email unless permission has been given for a specific submission. Any application to Judge Gorenstein may be made by a letter filed on the docket.

Your communication has not been considered by Judge Gorenstein.  Please do not reply to this email.

---

**From:** Ari B. Teman <ari@teman.com>
**Sent:** Wednesday, November 03, 2021 3:32 AM
**To:** Gorenstein NYSD Chambers <GorensteinNYSDChambers@nysd.uscourts.gov>; Nathan NYSD Chambers <NathanNYSDChambers@nysd.uscourts.gov>
**Cc:** Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>; damian.williams@usdoj.gov; Lois Weiss <lois@betweenthebricks.com>; Bob Van Voris <rvanvoris@bloomberg.net>; Joseph Palazzolo <joe.palazzolo@wsj.com>; Coulter Jones <coulter.jones@wsj.com>; Ben Weiser <Weiser@nytimes.com>; Ron Kampeas <rkampeas@jta.org>; Jacob Schindelheim <jjs@kandsllp.com>; Shira Goldman Moyal <shira@kandsllp.com>; David Teman <dteman@gmail.com>
**Subject:** Fwd: Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor

**CAUTION - EXTERNAL:**

[Quoted text hidden]

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

---

**Ari B. Teman** <ari@teman.com>                                    Wed, Nov 3, 2021 at 3:45 PM
To: Gorenstein NYSD Chambers <GorensteinNYSDChambers@nysd.uscourts.gov>
Cc: Nathan NYSD Chambers <NathanNYSDChambers@nysd.uscourts.gov>, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, "damian.williams@usdoj.gov" <damian.williams@usdoj.gov>, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>, David Teman <dteman@gmail.com>

Respectfully, Your Honor, the letter was acknowledged for being submitted to the docket via the Pro Se office on October 27th via the temporary intake email. Perhaps there is a technical glitch. I have forwarded proof of the acknowledgement from that office. As I am pro se and representing myself as an individual (not as a representative of GateGuard Inc), I do not have ECF permissions in this case and so I cannot file the letter to the docket via ECF. If Your Honor prefers to order the Clerk to grant such permission, I would be happy to re-submit the letter via ECF. My username is "ariteman".

Thank you.

Please let me know how I can be helpful.

Case 1:20-cv-09800-VEC-GWG    Document 350-1  Filed 03/04/2026   Page 72 of 74

Ari

**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo:
NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.

Terms apply to each service. Each service is a different entity.

Terms cannot be changed via email or oral agreement.


[Quoted text hidden]

---

**Ari B. Teman** <ari@teman.com>                                    Thu, Jan 27, 2022 at 5:59 PM
To: David Teman <dteman@gmail.com>


Please let me know how I can be helpful.

Ari

**Ari Teman | Founder | teman™**
We make Real Estate proactive with Artificial Intelligence
212-203-3714 | teman.com | ari@teman.com

Featured in:
ABC, NBC, PIX, FOX, Pando, Curbed, Observer, The Real Deal, Cooperator, BISNOW,

Visit us for a demo:
NYC: Herald Square
Miami: Lincoln Road

All conversations are off-the-record. Social Media, too.

Terms apply to each service. Each service is a different entity.

Terms cannot be changed via email or oral agreement.



---------- Forwarded message ---------
From: **Ari B. Teman** <ari@teman.com>
Date: Thu, Oct 21, 2021 at 2:14 PM
Subject: Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor
To: <NathanNYSDChambers@nysd.uscourts.gov>
Cc: <damian.williams@usdoj.gov>, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Simcha Schonfeld <sds@kandsllp.com>, Ron Kampeas <rkampeas@jta.org>


Dear Judge Nathan,

I respectfully submit the attached letter to inform you of willful disclosure violations in violation of Your Honor's orders to the US Attorney's Office (USAO, SDNY) in *US v Pizzaro* and *US v Nejad,* by the USAO, in collusion with counsel and officers of Goldmont (and other witnesses), which have resulted in documents and evidence relevant to this matter, *GateGuard, Inc. v. Goldmont Realty Corp.* (1:20-cv-01609, which is before Your Honor) being withheld, and of course to beg Your Honor's action in restoring justice.

I respectfully request that the Clerk file the attached letter to the Docket in *GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609)* and submit that it may be filed because I am also writing from my capacity and role as a pro se defendant in *United States v. Teman (1:19-cr-00696)*

As Your Honor will understand from the details in the attached letter, I am in desperate need of help, my life, my health, and my company GateGuard, have been decimated by SDNY misconduct, which continues relentlessly, and so I beg Your Honor to please act as You did in *US v Nejad* and to do so as swiftly as Your Honor is capable.

[Quoted text hidden]

📄 **LETTER_RE_SDNY_Prosecutorial_Misconduct_GateGuard v Goldmont_TEMAN-Judge_Nathan-2021-10-21.pdf**
1819K

---

**Ari B. Teman** <ari@teman.com>                                        Tue, Jul 19, 2022 at 7:26 PM
To: Eden Quainton <equainton@gmail.com>

---------- Forwarded message ---------
From: **Ari B. Teman** <ari@teman.com>
Date: Thu, Oct 21, 2021, 2:14 PM
Subject: Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor
To: <NathanNYSDChambers@nysd.uscourts.gov>
Cc: <damian.williams@usdoj.gov>, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Simcha Schonfeld <sds@kandsllp.com>, Ron Kampeas <rkampeas@jta.org>

[Quoted text hidden]

📄 **LETTER_RE_SDNY_Prosecutorial_Misconduct_GateGuard v Goldmont_TEMAN-Judge_Nathan-2021-10-21.pdf**
1819K

---

**Ari B. Teman** <ari@teman.com>                                        Tue, Jul 19, 2022 at 7:26 PM
To: Eden Quainton <equainton@gmail.com>

Best to file directly to docket and to Nathan.
[Quoted text hidden]

---

**2 attachments**

**~WRD000.jpg**
1K

**~WRD000.jpg**
1K

---

**Eden Quainton** <equainton@gmail.com>                                 Wed, Jul 20, 2022 at 12:53 AM

Case 1:20-cv-09809-VEC-GWG     Document 360-1   Filed 08/08/26   Page 74 of 74

To: "Ari B. Teman" <ari@teman.com>

Nothing attached.

[Quoted text hidden]

--
Eden P. Quainton
Quainton Law, PLLC
2 Park Avenue, 20th Floor
New York, NY 10016
Tel: 212.419.0575
Fax: 212.376.5699.
Cell: 202.360.6296

245 Nassau St.
Princeton, NJ 08540
Tel: 609-356-0526
Cell: 202-360-6296
https://quaintonlaw.net

---

**Ari B. Teman** <ari@teman.com>            Wed, Jul 20, 2022 at 1:55 AM
To: Eden Quainton <equainton@gmail.com>

[Quoted text hidden]

---

📄   **LETTER_RE_SDNY_Prosecutorial_Misconduct_GateGuard v Goldmont_TEMAN-Judge_Nathan-2021-10-21.pdf**
1819K

---

**Ari B. Teman** <ari@teman.com>            Thu, Sep 1, 2022 at 8:09 PM
To: Eden Quainton <equainton@gmail.com>

---------- Forwarded message ---------
From: **Simcha Schonfeld** <sds@kandsllp.com>
Date: Thu, Oct 21, 2021, 2:18 PM
Subject: RE: Letter regarding grave prosecutorial misconduct affecting GateGuard, Inc. v. Goldmont Realty Corp. (1:20-cv-01609), which is before Your Honor
To: Ari B. Teman <ari@teman.com>, <NathanNYSDChambers@nysd.uscourts.gov>
Cc: <damian.williams@usdoj.gov>, Ariel Reinitz <Ariel.Reinitz@fisherbroyles.com>, Lois Weiss <lois@betweenthebricks.com>, Bob Van Voris <rvanvoris@bloomberg.net>, Joseph Palazzolo <joe.palazzolo@wsj.com>, Coulter Jones <coulter.jones@wsj.com>, Ben Weiser <Weiser@nytimes.com>, Ron Kampeas <rkampeas@jta.org>, Jacob Schindelheim <jjs@kandsllp.com>, Shira Goldman Moyal <shira@kandsllp.com>

[Quoted text hidden]