UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------- x

GATEGUARD, INC.,

Plaintiff,

-against- No. 21 Civ. 9321 (JGK)(GWG)

AMAZON.COM, INC., et al.,

Defendants.

-------------------------------------------- x

**DECLARATION OF EDEN P. QUAINTON IN SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

I, Eden P. Quainton, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a member of the bar of this Court and the principal of Quainton Law, PLLC, counsel of record for plaintiff GateGuard, Inc. ("GateGuard") in this action. I submit this declaration in support of GateGuard's motion for a protective order under Rules 26(c) and 30(b)(4) of the Federal Rules of Civil Procedure, and pursuant to the Court's Order of August 6, 2026 (ECF 368). Except where I state that a matter is based on documents or on information supplied to me, I make this declaration from personal knowledge.

2. This declaration authenticates the exhibits submitted with the motion and supplies factual support for the accompanying memorandum of law.

## <u>The parties' conferral</u>

3. Rule 26(c)(1) certification**.** I certify that GateGuard has in good faith conferred with Defendants in an effort to resolve this dispute without court action. The parties addressed the manner of Mr. Ari Teman's deposition in their August 2026 submissions to the Court (ECF 361, ECF 365); I raised the question directly with Defendants' counsel again on August 10, 2026, as

set out below; and counsel for the parties further conferred by telephone on August 17, 2026 concerning the Rule 30(b)(6) examination. The parties have been unable to reach agreement.

4. On August 10, 2026, at 2:51 p.m. Eastern Time, I wrote from my firm mailbox to David P. Salant of Gibson, Dunn & Crutcher LLP, counsel for Defendants, under the subject line "GateGuard v. Amazon -- Depositions of Ari Teman," to convey GateGuard's position and its offer. A true and correct copy of that email is attached as Exhibit D.

5. In that email I stated that GateGuard believes a remote deposition to be the most efficient means of conducting Mr. Teman's deposition, and that Mr. Teman would make himself available either by videoconference or in person in Tel Aviv, at a time of Defendants' choosing, with GateGuard bearing the full cost of the venue, the court reporter, the videographer, and any technical or interpretation support Defendants require, "as well as your own reasonable travel costs and local accommodation." I further stated that Mr. Teman would make himself available for both the individual and the Rule 30(b)(6) examinations for as long as necessary, consistent with the Rules.

6. The offer as conveyed on August 10 thus included GateGuard bearing the reasonable travel and accommodation costs of Defendants' examining attorney for an in-person deposition in Tel Aviv. On behalf of GateGuard I confirm that the offer stands in every respect, and that GateGuard is prepared to perform that undertaking on the Court's order.

7. Mr. Salant wrote to me later the same day, August 10, 2026, at 7:54 p.m. Eastern Time. A true and correct copy of his email is attached as Exhibit E. In it, Defendants consented to a one-week extension of the deadline set by ECF 368, proposed the briefing schedule the parties have since followed, and stated that they would "proceed to notice the Teman depositions for September 29 and 30, 2026, in person at GDC NY." Mr. Salant's email did not accept either alternative

GateGuard had offered and did not address the offer. To date, Defendants have not responded to the August 10 offer in writing.

8. On August 12, 2026, Defendants served Fourth Amended Notices of Deposition setting Mr. Teman's individual deposition for September 29, 2026 and GateGuard's Rule 30(b)(6) deposition for September 30, 2026, both in person at Defendants' counsel's New York offices. True and correct copies are attached as Exhibit F. Defendants have accordingly declined both of the alternatives GateGuard offered.

**Mr. Teman's medical documentation**

9. On August 13, 2026, Mr. Teman was examined at Atid Medical in Israel by Dr. Yisgav Shapira, an otolaryngologist. The clinic letterhead on the consultation summary identifies Dr. Shapira, in English, as an "ENT surgeon" practicing "Otology-Neurotology," and, in Hebrew, as a specialist in ear, nose and throat surgery with a senior sub-specialty in medicine of the ear and hearing rehabilitation; the second page bears the physician's stamp and handwritten signature.

10. Later that day, Mr. Teman transmitted to me by email a copy of the consultation summary generated by the clinic's records system. A true and correct copy of the consultation summary as I received it, together with a certified English translation prepared by an independent professional translator, is attached as Exhibit A.

11. As set out in Exhibit A, the consultation records an examination and testing performed that day, a diagnosis of right-sided Eustachian tube dysfunction, a referral to Sheba Medical Center for balloon dilation of the Eustachian tube, and the recommendation: "Until recovery — recommends avoiding flying." Exhibit A also records that Mr. Teman is a patient of Dr. Wolfovitch, that a prior workup had identified bilateral Eustachian tube dysfunction, and that treatment with Steronase had not produced significant improvement. The prior workup Exhibit A references is documented in the clinical notes of Dr. Amit Wolfovitz, a specialist in otology-

neurotology, recording visits of April 24 and November 3, 2025. Mr. Teman provided those notes to me; the copy in my possession was previously filed, publicly, on the docket of another matter, and bears that docket's filing stamp of November 3, 2025 — which independently confirms that the notes existed no later than that date. True and correct copies are attached as Exhibit J, together with an informal English rendering; portions of the original are in English on its face, including the physician's handwritten April 24, 2025 notation that Mr. Teman "Should avoid barometric changes (for example: commercial flights, climbing to high places, HBO chamber, etc..)" and that the physician "would schedule visit for inspection before approving traveling abroad," and the notes' own English rendering of the November 3, 2025 entry recommending balloon dilation as the first treatment option.

12. To my knowledge the referred procedure has not been scheduled. Earlier today, August 20, 2026, Mr. Teman forwarded to me confirmations generated by Sheba Medical Center's appointment system, reflecting that upon his referral Sheba assigned him an appointment for an ear, nose and throat physician examination with Dr. Shapira — the earliest date assigned — on July 19, 2027. True and correct copies of those confirmations as I received them are attached as Exhibit I, together with certified English translations; one of the three pages is in English on its face.

13. The August 13 examination was not arranged in response to the Court's August 6 Order. Attached as Exhibit B are true and correct copies of the relevant pages of correspondence between Mr. Teman and Atid Medical from June 2026, which Mr. Teman provided to me. The substance of that correspondence is in English on its face; an informal English rendering of the incidental Hebrew text (the clinic's name, signature block, and message-header lines) accompanies the exhibit for the Court's convenience, and a certified translation will be supplied

by supplement. The correspondence reflects that Mr. Teman was referred to Dr. Shapira by Dr. Wolfovitz's office (the certified translation of Exhibit A renders the name "Wolfovitch"); that on June 8, 2026 he wrote seeking the balloon procedure for Eustachian tube dysfunction; and that on June 28, 2026 the clinic advised him that "[f]or any pre-operative procedure, you must first visit the doctor's clinic," quoting a fee for that visit. The August 13 appointment was booked on that instruction, before the Court's Order issued.

14. For completeness of the medical record before the Court, I note that Mr. Teman has also reported orthopedic complaints. On August 19, 2026, he informed me that, following an intake appointment that day with his health fund, Maccabi Healthcare Services, he had been referred for computed-tomography imaging of the lumbar spine, together with routine laboratory testing. He provided the referral documents to me the same day; they are in Hebrew, with certain entries in English, including the referring physician's diagnosis field, which reads "LOW BACK PAIN." True and correct copies of the referral documents as I received them are attached as Exhibit H, together with a certified English translation.

**The format of depositions in this action**

15. Every deposition taken in this action but one has been conducted remotely, by videoconference**.** The sole exception is addressed in paragraph 20 below. Attached as Exhibit G are true and correct copies of the caption pages and reporters' certificates.

16. Defendants designated four witnesses to testify for them under Rule 30(b)(6) — three employees and an outside consultant — and produced every one of them by remote videoconference.

(a) Alex Aguilar, of Las Vegas, Nevada, was examined on December 19, 2023 over two volumes under a caption reading "DEPOSITION OF 30(b)(6) AND 30(b)(1) WITNESS ON

BEHALF OF AMAZON, ALEX AGUILAR . . . via ZOOM VIDEOCONFERENCING." The transcript records that Mr. Aguilar was "remotely duly sworn."

(b) Dustin Keller, of Las Vegas, Nevada, was examined on January 24, 2024 under a caption reading "Remote Videoconference Deposition of 30(b)(6) witness: DUSTIN KELLER," commencing at "9:07 a.m. Pacific Time," by "Remote Web-based Videoconference," with "[a]ll parties appearing remotely."

(c) Gerald Nievera, of Las Vegas, Nevada, was examined on January 26, 2024 under a caption reading "DEPOSITION BY VIDEOCONFERENCE OF GERALD NIEVERA, INDIVIDUALLY AND AS RULE 30(b)(6) FOR DEFENDANTS." The reporter certifies that the witness "remotely appeared."

(d) Paul Donovan, of San Ramon, California, the principal of Paul Donovan Consulting, Inc., an outside consulting firm Defendants engaged in connection with the device at issue, was deposed on December 15, 2023. I examined Mr. Donovan. His examination was conducted in Rule 30(b)(1) and Rule 30(b)(6) portions, and Defendants presented him as their corporate representative as to certain topics concerning the workings of their device. The transcript recites "[t]he remote deposition of PAUL DONOVAN," before a California Certified Shorthand Reporter.

17. Defendants' remaining witness was examined the same way. Christopher Berrett, of Las Vegas, Nevada, was deposed on January 17, 2024 under a caption reading "VIDEOCONFERENCE DEPOSITION OF CHRISTOPHER BERRETT." GateGuard agreed to the remote format in every instance and never asked that any of these witnesses travel to New York. GateGuard structured the examinations around the three-hour time difference rather than shift it onto the witnesses; one examination continued into the early hours of the morning.

18. Remote examination was not reserved for distant witnesses. Three non-party witnesses located in New York City were nonetheless deposed remotely:

(a) Odalis Tiburcio and Ramon Rodriguez were each deposed on January 30, 2024 by "VIDEO DEPOSITION . . . Via Zoom Video Communications."

(b) Tara Dexter was deposed on May 14, 2024 by "Videoconference EXAMINATION BEFORE TRIAL." The parties stipulated on the record, under CPLR § 3113(d), that "the court reporter, all counsel, and the witness are all in separate remote locations and participating via videoconference (LegalView/Zoom)." Counsel for both sides appeared by videoconference.

(c) Paul Southam, founder and President of ClearHome — Amazon's largest channel partner — was deposed on January 18, 2024, commencing at 8:30 a.m. Mountain Standard Time, before a Certified Shorthand Reporter of Magna Legal Services. That deposition was likewise conducted remotely. Defendants' own counsel has described the transcript as the "certified transcript of the deposition of Paul Southam, founder and President of ClearHome, taken on January 18, 2024." [ECF 124 (Salant Decl.) ¶ 10 & Ex. I.

Each of the New York witnesses was in the very district where this action is pending and where Defendants now insist Mr. Teman must appear in person. Neither party asked them to travel to a conference room, and Defendants raised no objection to examining them by video.

19. Defendants applied the same format to a GateGuard witness located in Israel, first by notice, then in fact.

(a) Attached as Exhibit C is a true and correct copy of an Amended Notice of Deposition served by Defendants, dated January 23, 2024 and signed by counsel for Defendants, stating that Defendants "will take the remote deposition of David Teman on February 6, 2024 at 7:00 a.m.

ET, via videoconference." Its caption bears the "(JGK)(VF)" designation in use before this case was referred to Your Honor.

(b) The deposition proceeded on that basis. The transcript is captioned "REMOTE/ORAL/WEB VIDEOCONFERENCE VIDEOTAPED DEPOSITION OF DAVID TEMAN," taken Tuesday, February 6, 2024, and records the time of commencement as "7:10 a.m. (EST) / 3:34 p.m. (IST)" — Israel Standard Time. The transcript recites that it was "held via Zoom Web Videoconference," and the reporter certifies that the witness "was duly sworn, via remote/oral/web videoconference." The dual time stamp is a contemporaneous record that the witness was examined while physically in Israel.

20. The one witness in this action deposed in person — the sole exception among the eleven — was GateGuard's former chief executive, David Taxman. Defendants noticed that deposition for their own offices and insisted on that format, and GateGuard agreed. The caption for the transcript, included in Exhibit G, records the "Videotaped Deposition of DAVID TAXMAN, taken by Defendants, pursuant to Notice, held at the offices of Gibson Dunn & Crutcher LLP, 200 Park Avenue, New York, New York," on January 19, 2024. Mr. Taxman resides in Florida, was frequently in New York, and was in the same time zone as the examining attorneys. His appearance in this District involved a short domestic trip and did not present any medical obstacle.

**Prejudice and cost**

21. GateGuard has offered Defendants a format that imposes no cost on them, and an alternative in which GateGuard bears the entire cost of an in-person examination. I am not aware of any respect in which either alternative would deprive Defendants of testimony they could obtain in New York, and Defendants have identified none. To the best of my recollection, the only material objections Defendants have raised are to the mechanics of presenting voluminous

documents to a witness remotely, a burden Plaintiff undertook to accommodate Amazon's witnesses, and the desire to assess Mr. Teman's credibility in person, which GateGuard's offer of a deposition in Tel Aviv addresses.

22. Attached as Exhibits A through J are true and correct copies of the documents described above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 20, 2026
New York, New York

Eden P. Quainton

EDEN P. QUAINTON