UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

GATEGUARD, INC.,
Plaintiff,
-against- No. 21 Civ. 9321 (JGK)(GWG)
AMAZON.COM, INC., et al.,
Defendants.

----------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Eden P. Quainton
QUAINTON LAW, PLLC
2 Park Avenue, 20th Floor
New York, New York 10016
*Attorneys for Plaintiff GateGuard, Inc.*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .......... **1**

**ARGUMENT** .......... **2**

**I. THERE IS GOOD CAUSE FOR A PROTECTIVE ORDER TO ISSUE IN THIS MATTER DIRECTING THAT MR. TEMAN NOT BE FORCED TO UNDERTAKE INTERNATIONAL TRAVEL AGAINST THE ADVICE OF HIS PHYSICIANS** .......... **2**

A. Remote Videoconference Is the Established Norm in This Action .......... 2

B. Imposing an International Travel Requirement on Mr. Teman Would Impose a Substantial, Unnecessary Burden .......... 3

C. GateGuard Made a Good Faith Offer for a Less Burdensome Alternative Than International Travel .......... 5

D. Applicable Law Plainly Supports the Issuance of a Protective Order .......... 5

1. The Governing Standards .......... 5

2. GateGuard's Showing Is Documented and Particularized .......... 6

3. Defendants Can Show No Cognizable Prejudice .......... 9

4. GateGuard's Offer Eliminates Any Burden on Defendants .......... 11

5. Defendants' Insistence Serves No Legitimate Discovery Interest .......... 11

**CONCLUSION** .......... **12**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. Sheridan Square Press, Inc.*,
154 F.R.D. 591 (S.D.N.Y. 1994) ....................8

*Alpha Cap. Anstalt v. Real Goods Solar, Inc.*,
323 F.R.D. 177 (S.D.N.Y. 2017) ....................10

*Cuevas v. Adon Farms Operations LLC*,
2026 WL 1802921 (N.D.N.Y. June 23, 2026)....................9, 10

*Degen v. United States*,
517 U.S. 820 (1996)....................12

*DiRienzo v. Philip Servs. Corp.*,
294 F.3d 21 (2d Cir. 2002)....................10

*Empire Blue Cross & Blue Shield v. Finkelstein*,
111 F.3d 278 (2d Cir. 1997)....................12

*Est. of Gerasimenko v. Cape Wind Trading Co.*,
272 F.R.D. 385 (S.D.N.Y. 2011) ....................6

*Floodbreak LLC v. T. Moriarty & Son, Inc.*,
754 F. Supp. 3d 330 (E.D.N.Y. 2024) ....................7

*Folk v. DeJoy*,
2026 WL 1906588 (E.D.N.Y. July 2, 2026)....................6, 7

*In re Terrorist Attacks on Sept. 11, 2001*,
337 F.R.D. 575 (S.D.N.Y. 2020) ....................9, 10

*Normande v. Grippo*,
2002 WL 59427 (S.D.N.Y. Jan. 16, 2002) ....................6

*Ortega-Rodriguez v. United States*,
507 U.S. 234 (1993)....................12

*PC-41 DOE v. Poly Prep Country Day Sch.*,
2022 WL 420619 (E.D.N.Y. Jan. 20, 2022) ....................7

*Rouviere v. DePuy Orthopaedics, Inc.*,
471 F. Supp. 3d 571 (S.D.N.Y. 2020)....6, 10

*SEC v. Aly*,
320 F.R.D. 116 (S.D.N.Y. 2017)....10

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)....5

*Seuthe v. Renwal Prods., Inc.*,
38 F.R.D. 323 (S.D.N.Y. 1965)....8

*Sinceno v. Riverside Church in the City of New York*,
2020 WL 1302053 (S.D.N.Y. Mar. 18, 2020)....10

*Spiegler v. Mish Mish Inc.*,
719 F. Supp. 3d 374 (S.D.N.Y. 2024)....6, 7, 8, 11

*Stapleton v. Prince Carpentry, Inc.*,
2023 WL 1785547 (E.D.N.Y. Feb. 6, 2023)....7

*United States v. One Gulfstream G-V Jet Aircraft*,
304 F.R.D. 10 (D.D.C. 2014)....11

*Usov v. Lazar*,
2015 WL 5052497 (S.D.N.Y. Aug. 25, 2015)....10

*Wei Su v. Sotheby's, Inc.*,
2019 WL 4053917 (S.D.N.Y. Aug. 28, 2019)....7

*Zito v. Leasecomm Corp.*,
233 F.R.D. 395 (S.D.N.Y. 2006)....10

**Statutes and Rules**

Fed. R. Civ. P. 26(b)(1)....6, 9

Fed. R. Civ. P. 26(c)....1, 5, 12

Fed. R. Civ. P. 30(b)(4)....5, 6, 10

Fed. R. Civ. P. 30(b)(6)....2, 5, 9

**Other Authorities**

8A Wright, Miller & Marcus, Federal Practice & Procedure § 2112....6

Mayo Clinic, Airplane Ear — Symptoms & Causes....3

Cleveland Clinic, Ear Barotrauma (Airplane Ear); Eustachian Tube Dysfunction .........................3

## PRELIMINARY STATEMENT

There is no dispute that Ari Teman ("Mr. Teman"), the CEO of plaintiff GateGuard, Inc. ("Plaintiff" or "GateGuard"), will sit for his contemplated deposition. He has offered to do so on either of two bases, at Defendants' election: remotely by videoconference, as every deposition in this case but one has proceeded; or in person in Tel Aviv, with GateGuard bearing the entire cost of the examination — the venue, the reporter, the videographer, interpretation, and the reasonable travel and local accommodation costs of Defendants' examining attorney. Mr. Teman simply asks not to be compelled to board a transatlantic flight to New York against the advice of his treating physicians, when the testimony Defendants seek is fully available without it.

Defendants have refused both offers and insist on an in-person deposition in New York, and New York alone. That insistence cannot be explained by any need for the testimony, because Defendants can obtain the identical testimony by videoconference or in Tel Aviv. An in-person New York deposition only serves to impose an unnecessary burden on Mr. Teman that appears almost punitive in the manner it has been pursued, despite Mr. Teman's documented medical condition and his offer of an in-person deposition in Tel Aviv. The Court should not lend the discovery process to that purpose. Good cause exists under Rule 26(c) to order that the deposition proceed remotely, or, at Defendants' option, in Tel Aviv on the terms GateGuard has offered.

By Order dated August 6, 2026 (ECF 368), the Court directed that, in response to Defendants' application (ECF 361) and GateGuard's cross-application (ECF 365), GateGuard's principal appear for deposition in person in this District unless GateGuard, by formal motion, establishes that in-person appearance imposes a meaningful burden. This motion follows, on the schedule the parties jointly proposed and the Court approved.

## ARGUMENT

## I. THERE IS GOOD CAUSE FOR A PROTECTIVE ORDER TO ISSUE IN THIS MATTER DIRECTING THAT MR. TEMAN NOT BE FORCED TO UNDERTAKE INTERNATIONAL TRAVEL AGAINST THE ADVICE OF HIS PHYSICIANS.

### A. Remote Videoconference Is the Established Norm in This Action.

GateGuard accommodated every corporate representative Defendants designated and agreed to remote depositions for all of them, notwithstanding that travel to New York would have imposed a burden on each. Defendants designated four Rule 30(b)(6) witnesses and produced all four remotely: Alex Aguilar; Dustin Keller; Gerald Nievera; and Paul Donovan. Declaration of Eden P. Quainton, dated August 20, 2026 (the "Quainton Decl.") ¶¶ 15–16; Ex. G. Defendants' remaining witness, Christopher Berrett, the corporate representative of ClearHome, and the third parties subject to subpoena — including third parties present in New York — were examined the same way. Quainton Decl. ¶¶ 17–18; Ex. G. GateGuard agreed to that format every time, never asked that any of these witnesses travel to or physically appear in a conference room in New York, and structured the examinations around the three-hour time difference rather than shift the burden to the witnesses. Indeed, one examination ran into the early hours of the morning. Quainton Decl. ¶ 17.

Defendants applied the same format to a GateGuard witness in Israel. They served an Amended Notice of Deposition dated January 23, 2024, stating that they "will take the remote deposition of David Teman . . . via videoconference." Quainton Decl. ¶ 19(a); Ex. C. David Teman was in Israel at the time of the videoconference, and Defendants never suggested that the format impaired their ability to obtain his testimony. On the contrary, they themselves noticed the deposition to be taken remotely, presumably for reasons of their own convenience, and GateGuard accommodated Defendants' request. Quainton Decl. ¶ 19(b); Ex. G. The sole witness

examined in person in this entire action was GateGuard's former chief executive, David Taxman, at Defendants' insistence and at their own offices. Quainton Decl. ¶ 20; Ex. G. Mr. Taxman resides in Florida, was frequently in New York, sat in the same time zone as the examining attorneys, and faced no medical obstacle of any kind; for him, appearing in this District was a short and routine domestic trip. Mr. Taxman's deposition illustrates only that where there is no burden to the corporate witness, GateGuard has not sought to interfere with Defendants' choice of examination mode. Defendants now demand that Mr. Teman — the one witness whose treating physicians have advised against travel — bear the substantial burden of an in-person deposition in New York, even though GateGuard has already offered to defray Defendants' costs for an in-person deposition in Tel Aviv.

**B. Imposing an International Travel Requirement on Mr. Teman Would Impose a Substantial, Unnecessary Burden.**

Mr. Teman resides in Israel, as Defendants' own application acknowledges. *See* ECF 361. On August 13, 2026, Mr. Teman was evaluated at Atid Medical by Dr. Yisgav Shapira, an otolaryngologist whose clinic letterhead identifies him as an ENT surgeon sub-specializing in otology-neurotology. Quainton Decl. ¶¶ 9–11; Ex. A. The consultation summary generated by the clinic's system that day records an examination and testing, a diagnosis of right-sided Eustachian tube dysfunction,[1] a referral to Sheba Medical Center for balloon dilation of the Eustachian tube, and the physician's recommendation: "Until recovery — recommends avoiding

[1] The Eustachian tube is the canal that equalizes air pressure between the middle ear and the outside environment; its opening and closing is what allows the ear to adjust to pressure changes. In Eustachian tube dysfunction, that mechanism is impaired. Rapid ambient pressure changes — the defining feature of aircraft ascent and descent — are the circumstance in which the impairment matters most: a blocked or poorly functioning Eustachian tube elevates the risk of ear barotrauma, whose consequences range from severe ear pain to, in serious cases, eardrum rupture, lasting hearing loss, chronic tinnitus, and vertigo. *See* Mayo Clinic, *Airplane Ear — Symptoms & Causes*, https://www.mayoclinic.org/diseases-conditions/airplane-ear/symptoms-causes/syc-20351701; Cleveland Clinic, *Ear Barotrauma (Airplane Ear)*, https://my.clevelandclinic.org/health/diseases/17929-airplane-ear; Cleveland Clinic, *Eustachian Tube Dysfunction*, https://my.clevelandclinic.org/health/diseases/22527-eustachian-tube-dysfunction. This is the risk both treating specialists addressed: Dr. Wolfovitz's April 2025 instruction to avoid "barometric changes (for example: commercial flights . . .)" (Ex. J), and Dr. Shapira's August 2026 recommendation that Mr. Teman avoid flying until recovery (Ex. A).

flying." Quainton Decl. Ex. A. The summary further records that Mr. Teman is a patient of Dr. Wolfovitch, that a prior workup had identified bilateral Eustachian tube dysfunction, and that treatment with Steronase had not produced significant improvement. Quainton Decl. ¶ 11; Ex. A. Mr. Teman had been referred to Dr. Shapira by the office of Dr. Amit Wolfovitz (rendered "Wolfovitch" in Exhibit A's translation), a specialist in otology-neurotology who found Eustachian tube dysfunction in both of Mr. Teman's ears in April 2025, noted in writing that Mr. Teman "[s]hould avoid barometric changes (for example: commercial flights, climbing to high places, HBO chamber, etc..)," and on November 3, 2025 recommended balloon dilation (tuboplasty) of the Eustachian tube as the first treatment option, with insertion of a ventilation tube as the alternative. Quainton Decl. ¶ 11; Ex. J.

The August 13 examination was the product of a scheduling process Mr. Teman began months earlier — not a response to the Court's August 6 Order. On June 8, 2026, Mr. Teman contacted Atid Medical, Dr. Shapira's private clinic, seeking to schedule the balloon procedure at his own private expense. Quainton Decl. ¶ 13; Ex. B. On June 28, 2026, the clinic advised him that "[f]or any pre-operative procedure, you must first visit the doctor's clinic," and Mr. Teman booked the earliest consultation the clinic offered: the August 13, 2026 appointment described above. Quainton Decl. ¶ 13; Ex. B.

On August 20, 2026, following the referral, Sheba Medical Center's appointment system assigned Mr. Teman the earliest available date for the ear, nose and throat examination that precedes the procedure: July 19, 2027. Quainton Decl. ¶ 12; Ex. I.

In addition, Mr. Teman's physician has ordered computed-tomography imaging of his lumbar spine, with a diagnosis field reading "LOW BACK PAIN." Quainton Decl. ¶ 14; Ex. H. This diagnosis would also likely add to the unnecessary burden of international air travel.

**C. GateGuard Made a Good Faith Offer for a Less Burdensome Alternative Than International Travel.**

On August 10, 2026, GateGuard offered, through counsel, to make Mr. Teman available for deposition either by videoconference or in person in Tel Aviv at a time of Defendants' choosing, with GateGuard bearing the full cost of an in-person Tel Aviv examination — the venue, the court reporter, the videographer, and any technical or interpretation support Defendants require, "as well as [counsel's] own reasonable travel costs and local accommodation." Quainton Decl. ¶¶ 4–6; Ex. D. GateGuard offered to produce Mr. Teman for both the individual and the Rule 30(b)(6) examinations, for as long as the Rules permit. Ex. D. Defendants' only communication of the same date — an email consenting to the extension schedule — did not accept either alternative and did not address the offer, and Defendants have not responded to the offer in writing since. Quainton Decl. ¶ 7; Ex. E. On August 12, 2026, Defendants served Fourth Amended Notices setting both depositions in person at their New York offices on September 29 and 30, 2026. Quainton Decl. ¶ 8; Ex. F.

**D. Applicable Law Plainly Supports the Issuance of a Protective Order.**

**1. The Governing Standards.**

Rule 26(c)(1) authorizes the Court, "for good cause," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "prescribing a discovery method other than the one selected by the party seeking discovery" and designating "the time and place or the allocation of expenses" for a deposition. Fed. R. Civ. P. 26(c)(1)(B), (D). The Rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Rule 30(b)(4) provides that "the court may on motion order . . . that a deposition be taken by telephone or other remote means." Because Rule 30(b)(4)

specifies no standard, "the decision to grant or deny such an application is left to the discretion of the Court, which must balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts." *Folk v. DeJoy*, 2026 WL 1906588, at *1 (E.D.N.Y. July 2, 2026) (quoting *Rouviere v. DePuy Orthopaedics, Inc.*, 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020)). All discovery, in turn, must be "proportional to the needs of the case," and the Court may limit it where "the burden or expense . . . outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1);

There is "no absolute rule as to the location of the deposition of a nonresident plaintiff": the expectation that a plaintiff will appear for deposition in the forum it chose "is at best a general rule, and is not adhered to if plaintiff can show good cause for not being required to come to the district where the action is pending." *Normande v. Grippo*, 2002 WL 59427, at *1 (S.D.N.Y. Jan. 16, 2002) (quoting 8A Wright, Miller & Marcus, Federal Practice & Procedure § 2112); accord *Est. of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 389 (S.D.N.Y. 2011) (ordering that the deposition of a plaintiff residing abroad be taken by telephone in the first instance).

This Court has applied general framework to the choice presented here — an in-person versus a video deposition — directing the party seeking relief to submit "a sworn statement . . . explaining the hardship" of appearing in person and requiring the opposing party to give "a clear explanation of any claim of prejudice," so that the Court may undertake the "careful weighing of the relevant facts" Rule 30(b)(4) demands. *Spiegler v. Mish Mish Inc.*, 719 F. Supp. 3d 374, 376 (S.D.N.Y. 2024) (Gorenstein, M.J.) (quoting *Gerasimenko*, 272 F.R.D. at 387). GateGuard supplies precisely that showing here.

**2. GateGuard's Showing Is Documented and Particularized.**

The burden here is not conclusory, and it is not mere inconvenience. Mr. Teman has a diagnosed medical condition, documented by the treating specialist who examined him, and the

specialist recommends against the very act — transatlantic air travel — that an in-person New York deposition would require. That is the kind of concrete, documented showing that distinguishes the cases granting relief from those denying it.

The line the courts draw is a line about documentation. Relief is denied where a party asserts a health concern without evidentiary support. *See Folk*, 2026 WL 1906588, at *2 (denying remote deposition where the plaintiff "does not provide medical records or other documentation to substantiate her claim"); *Stapleton v. Prince Carpentry, Inc.*, 2023 WL 1785547, at *1 (E.D.N.Y. Feb. 6, 2023) (denying relief where the motion was "not supported by evidence"). Relief is granted where the party comes forward with "specific articulated facts" about the risk. *PC-41 DOE v. Poly Prep Country Day Sch.*, 2022 WL 420619, at *3 (E.D.N.Y. Jan. 20, 2022); see *Floodbreak LLC v. T. Moriarty & Son, Inc.*, 754 F. Supp. 3d 330, 332–33 (E.D.N.Y. 2024) (ordering a remote deposition where the deponent's documented medical circumstances — recent treatment for malignant melanoma, and care for a spouse with Stage 4 cancer — together with his inability to afford travel, established a specific burden). GateGuard is on the *Floodbreak* and *PC-41 DOE* side of that line: it has produced the treating otolaryngologist's contemporaneous evaluation, diagnosis, and recommendation against air travel. Ex. A. That is the "sworn statement . . . explaining the hardship" this Court called for in *Spiegler*, 719 F. Supp. 3d at 376 — the documentation whose absence defeated the plaintiffs in *Folk* and *Stapleton*. Even *Wei Su v. Sotheby's, Inc.*, No. 17-CV-4577 (VEC), 2019 WL 4053917 (S.D.N.Y. Aug. 28, 2019), on which Defendants have relied, recognizes that "medical reasons can sometimes constitute good cause." *Id.* at *2. Relief was denied there because the showing was hollow: a note from a "Massage Hospital" that provided no "details as to Su's symptoms," was "not accompanied by any pre-litigation medical history or diagnosis," and was contradicted by the plaintiff's own proposal to be deposed in Shanghai, "more than 10 hours away" by car. *Id.*

The contrast with this record — two treating specialists, objective testing, a written instruction to avoid "commercial flights" before this deposition dispute arose and an offer to be examined in person in the city where Mr. Teman lives — could not be sharper.

The presumption that a plaintiff appears in its chosen forum adds little on these facts, because its factual premise is attenuated. Mr. Teman had no choice but to bring his claim in New York, which is where the alleged conduct of Amazon impermissibly installing its Key for Business inside the GateGuard Intercom was concentrated. In those circumstances, Courts give little weight to the Plaintiff's choice of forum in adjudicating disputes over the location of a deposition. *See Spiegler v. Mish Mish Inc.*, 719 F. Supp. 3d at 376. Moreover, Mr. Teman is not seeking to shift the inconvenience of his forum choice onto Defendants; he has offered to appear in person, and GateGuard has offered to pay the cost of Defendants examining him in person, in Tel Aviv. His objection is not to being deposed but to a medically contraindicated mode of having the deposition taken.

Where the constraint on travel is real, this Court has excused in-forum appearance altogether. In *Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591 (S.D.N.Y. 1994), the plaintiff resided in England and could not leave without forfeiting his pending asylum application; the court directed that his deposition be taken in England, with each side bearing its own travel and lodging costs in the first instance. The court recognized that although "[o]rdinarily, a defendant is entitled to examine a plaintiff in the forum where plaintiff has chosen to sue," "special circumstances" displace the ordinary rule. *Id.* at 592 (quoting *Seuthe v. Renwal Prods., Inc.*, 38 F.R.D. 323, 324 (S.D.N.Y. 1965)). *See also*, *Spiegler*, 719 F. Supp at 376. Mr. Teman's position is stronger than the *Abdullah* plaintiff's: he does not ask Defendants to absorb the cost of examining him abroad — GateGuard has offered to pay Defendants' costs in full, or to eliminate travel entirely by videoconference.

**3. Defendants Can Show No Cognizable Prejudice.**

Whatever marginal advantage Defendants might prefer from an in-person examination does not outweigh the burden just described, and it is not the kind of prejudice that defeats a remote deposition. Fed. R. Civ. P. 26(b)(1). Remote depositions are now routine, and the objections Defendants are likely to raise have been considered and rejected.

The most telling evidence of that comes from Defendants themselves. Defendants presented their own Rule 30(b)(6) corporate designees for examination by videoconference, and every other witness in this action but one was examined the same way — with GateGuard's agreement each time. Quainton Decl. ¶¶ 15–18; Ex. G. Defendants have therefore already taken the position, by their conduct in this very case, that a videoconference examination is an adequate means of obtaining testimony from a witness for whom travel across the country would be burdensome — and GateGuard, rather than insisting on its chosen forum, accommodated them. Defendants then chose that same format for a GateGuard witness in Israel, and took his deposition while he sat there. Ex. C; Ex. G. A party that has obtained the benefit of remote examination for its own corporate designees, and conferred it on an opposing witness abroad, is poorly positioned to argue that the identical format would deprive it of anything material when the shoe is on the other foot. Whatever prejudice Defendants now assert, they did not think it disqualifying when it was their designees who would otherwise have had to fly.

Defendants may say they wish to observe Mr. Teman's demeanor and to guard against off-camera coaching. Neither concern justifies compelled travel. "[R]emote video technology now permits parties to observe witnesses in real time and has become a common feature of federal litigation." *Cuevas v. Adon Farms Operations LLC*, 2026 WL 1802921, at *1 (N.D.N.Y. June 23, 2026). A video deposition "allows the party 'to view [the witness's] demeanor during questioning.'" *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 578 (S.D.N.Y. 2020)

(quoting *Usov v. Lazar*, 2015 WL 5052497, at *2 (S.D.N.Y. Aug. 25, 2015)); see *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) ("videotaped depositions . . . could afford the jury an opportunity to assess the credibility of [foreign] witnesses"); *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 398 (S.D.N.Y. 2006) (permitting videoconference examination where a party wishes to observe demeanor). Concerns about off-camera communication or coaching "remain hypothetical," "plausibly arise during all remote depositions," and do not defeat a format that is "presumptively valid under the Federal Rules." *In re Terrorist Attacks*, 337 F.R.D. at 578–79; accord *Cuevas*, 2026 WL 1802921, at *1 (such concerns are "addressable through appropriate safeguards"). And "[i]f the lack of being physically present with the witness were enough prejudice to defeat the holding of a remote deposition, then Rule 30(b)(4) would be rendered meaningless." *Cuevas*, 2026 WL 1802921, at *1 (quoting *Rouviere*, 471 F. Supp. 3d at 574–76). Videoconference deposition "is frequently a preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides." *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 323 F.R.D. 177, 179 (S.D.N.Y. 2017) (quoting *SEC v. Aly*, 320 F.R.D. 116, 119 (S.D.N.Y. 2017)).

Nor is remote examination a pandemic-era artifact or a disfavored accommodation. Courts in this District have authorized entire actions to proceed by remote deposition. See *Sinceno v. Riverside Church in the City of New York*, No. 18-cv-2156 (LJL), 2020 WL 1302053, at *1 (S.D.N.Y. Mar. 18, 2020) (authorizing all depositions in the action to be taken "via telephone, videoconference, or other remote means" under Rule 30(b)(4)). And courts have declined to compel even a foreign claimant in a federal forfeiture action to enter the United States for his deposition, directing instead that he be deposed in his home country "through written interrogatories, telephone, videoconference, or in person, with videoconference likely

being the most efficient method for all parties." *United States v. One Gulfstream G-V Jet Aircraft*, 304 F.R.D. 10, 12 (D.D.C. 2014).

**4. GateGuard's Offer Eliminates Any Burden on Defendants.**

GateGuard's offer distinguishes this case from every decision in which a party resisted a deposition format to spare itself cost or inconvenience. GateGuard has offered to bear the entire expense of an in-person Tel Aviv deposition, including the travel and lodging of Defendants' examining attorney. Ex. D. Whatever burden an in-person examination might otherwise impose on Defendants, GateGuard has offered to absorb it. That offer mirrors the very resolution this Court proposed in *Spiegler* — that "defendants may take the deposition of plaintiff by video at plaintiff's expense." 719 F. Supp. 3d at 376. The proportionality balance is therefore one-sided: Mr. Teman bears a documented medical burden from the only format Defendants will accept, while Defendants bear no cost or prejudice from the formats GateGuard offers.

The dispositive point follows from the offer. If Defendants' aim were Mr. Teman's testimony, they would have it — by videoconference, or in Tel Aviv at GateGuard's expense, on dates of their choosing. A litigant that genuinely wanted the deposition would take it. Defendants' refusal of a deposition they could conduct in Tel Aviv at no cost to themselves shows that their objective is not the testimony but Mr. Teman's compelled physical presence in the United States.

**5. Defendants' Insistence Serves No Legitimate Discovery Interest.**

That objective is not a legitimate discovery interest. Defendants have repeatedly characterized Mr. Teman as a fugitive and have urged that status against him in this civil action. ECF 361. Compelling his appearance in the United States would serve that end — exposing him to consequences unrelated to this litigation and manufacturing a predicate for a failure-to-appear or disentitlement argument. What Defendants seek is a procedural disposition in place of

adjudication on the merits. The discovery rules do not exist to secure that advantage, and Rule 26(c) exists precisely to prevent discovery from being turned to "annoyance" or "oppression." Fed. R. Civ. P. 26(c)(1).

To the extent Defendants invoke Mr. Teman's status as a basis for compelling his presence, the doctrine of fugitive disentitlement does not reach this dispute. Disentitlement is a discretionary doctrine of limited scope; it does not authorize a court to strip a civil litigant of ordinary procedural rights absent a real connection between the party's status and the civil proceeding. *See Degen v. United States*, 517 U.S. 820, 828 (1996); *Empire Blue Cross & Blue Shield v. Finkelstein*, 111 F.3d 278, 280–81 (2d Cir. 1997) ("[a]bsent some connection between . . . fugitive status and [the fugitive's] appeal . . . the justifications advanced for dismissal of fugitives' pending appeals generally will not apply" (quoting *Ortega-Rodriguez v. United States*, 507 U.S. 234, 249 (1993))). No such nexus exists between Mr. Teman's separate criminal matter and GateGuard's antitrust and trade-secret claims against Amazon. The question before the Court is not whether Mr. Teman may prosecute this action — he may — but only the manner of a single deposition, which GateGuard has offered to provide in two different ways. Fugitive-disentitlement is a distraction. The reality is that Mr. Teman presents a genuine medical hardship, was compelled to bring his action in New York where Amazon's conduct primarily occurred, and has made a good faith offer to address any legitimate discovery concern raised by Defendants. Under such circumstances, there is clearly good cause for the entry of a protective order as sought.

## CONCLUSION

For the foregoing reasons, GateGuard respectfully requests that the Court enter a protective order providing that the deposition of Mr. Teman proceed by remote videoconference,

or, at Defendants' election, in person in Tel Aviv on the terms GateGuard has offered, and granting such other relief as the Court deems just.

Dated: New York, New York
August 20, 2026

QUAINTON LAW, PLLC
*By: /s/ Eden P. Quainton*
Eden P. Quainton, Esq.
2 Park Avenue, 20th Floor
New York, New York 10016
Attorneys for Plaintiff GateGuard, Inc.