UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GATEGUARD, INC.,

Plaintiff,

v.

AMAZON.COM, INC.,
AMAZON.COM SERVICES, INC.,
AMAZON.COM SERVICES, LLC,
AMAZON LOGISTICS, INC.,
RING LLC,

Defendants.

No. 21 Civ. 9321 (JGK) (GWG)

**AMAZON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Logistics Inc., and Ring LLC*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT....1

FACTUAL BACKGROUND....3

I. MR. TEMAN'S EVASION OF HIS DEPOSITIONS IN THIS ACTION....3

II. GATEGUARD'S PROFFERED MEDICAL EVIDENCE DOES NOT SUPPORT ITS POSITION THAT TRAVEL TO NEW YORK WOULD IMPOSE A MEANINGFUL BURDEN ON MR. TEMAN....5

III. A LEADING EAR-NOSE-THROAT SURGEON IS "HIGHLY CONFIDENT" THAT EUSTACHIAN TUBE DYSFUNCTION DOES NOT PROHIBIT MR. TEMAN'S TRAVEL TO NEW YORK....7

IV. GATEGUARD TRIES TO SKIRT NEW YORK DEPOSITIONS BY PROPOSING REMOTE AND TEL AVIV DEPOSITIONS. ....8

V. THE OTHER DEPOSITIONS IN THIS ACTION....9

LEGAL STANDARD....10

ARGUMENT....11

I. GATEGUARD HAS FAILED TO ESTABLISH THAT MR. TEMAN FACES "MEANINGFUL BURDEN."....11

II. MR. TEMAN'S MEDICAL EXCUSES ARE PRETEXTUAL. ....15

III. AMAZON WOULD BE PREJUDICED IF FORCED TO DEPOSE MR. TEMAN REMOTELY OR IN TEL AVIV. ....17

CONCLUSION....20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.I.A. Hldgs., S.A. v. Lehman Bros.*,
2002 WL 538833 (S.D.N.Y. Apr. 10, 2002) ........ 16

*Abdullah v. Sheridan Square Press, Inc.*,
154 F.R.D. 591 (S.D.N.Y. 1994) ........ 10, 13

*Alpha Cap. Anstalt v. Real Goods Solar, Inc.*,
323 F.R.D. 177 (S.D.N.Y. 2017) ........ 11, 18

*Arora v. Standard Chartered Bank*,
2026 WL 810387 (S.D.N.Y. Mar. 23, 2026) ........ 11, 19

*Cuevas v. Adon Farms Operations LLC*,
2026 WL 1802921 (N.D.N.Y. Jun. 23, 2026) ........ 10, 13, 19

*Doe v. Karadzic*,
1997 WL 45515 (S.D.N.Y. Feb. 4, 1997) ........ 17

*Dubai Islamic Bank v. Citibank, N.A.*,
2002 WL 1159699 (S.D.N.Y. May 31, 2002) ........ 16, 19

*Eletson Hldgs., Inc. v. Levona Hldgs., Ltd.*,
2025 WL 1950728 (S.D.N.Y. Jul. 16, 2025) ........ 18, 19

*Est. of Gerasimenko v. Cape Wind Tr. Co.*,
272 F.R.D. 385 (S.D.N.Y. 2011) ........ 10, 13

*Floodbreak LLC v. T. Moriarty & Son, Inc.*,
754 F. Supp. 3d 330 (E.D.N.Y. 2024) ........ 11, 13

*Folk v. DeJoy*,
2026 WL 1906588 (E.D.N.Y. Jul. 2, 2026) ........ 13

*Glasstech, Inc. v. Freund*,
2025 WL 1880874 (S.D.N.Y. Jul. 8, 2025) ........ 10, 11, 12

*Goldmont Realty*
*Corp.*, No. 20 Civ. 1609, ECF No. 216 ........ 17

*Kiss v. Kenny*,
2025 WL 1532744 (S.D.N.Y. May 29, 2025) ........ 12, 18, 19

*Normande v. Grippo*,
2002 WL 59427 (S.D.N.Y. Jan. 16, 2002) ........ 10, 13

*PC-41 DOE v. Poly Prep Country Day Sch.*,
2022 WL 420619 (E.D.N.Y. Jan. 20, 2022) ........ 13

*Qube Films Ltd. v. Padell*,
2015 WL 109628 (S.D.N.Y. Jan. 5, 2015) ........................................ 11

*Rekor Sys., Inc. v. Loughlin*,
2022 WL 488941 (S.D.N.Y. Feb. 17, 2022) ........................................ 11, 12

*Soft Drink, Brewery Workers & Delivery Emps., Indus Emps., Warehousemen, Helpers & Misc. Workers, Greater N.Y. & Vicinity, Loc. Union No. 812 v. Ulrich*,
2021 WL 2227921 (S.D.N.Y. Jun. 1, 2021) ........................................ 14

*Spiegler v. Mish Mish Inc.*,
719 F. Supp. 3d 374 (S.D.N.Y. 2024) ........................................ 10

*Stapleton v. Prince Carpentry, Inc.*,
2023 WL 1785547 (E.D.N.Y. Feb. 6, 2023) ........................................ 13, 19

*In re Terrorist Attacks on Sept. 11, 2001*,
337 F.R.D. 575 (S.D.N.Y. 2020) ........................................ 11

*United States v. M/Y Amadea*,
2024 WL 4799887 (S.D.N.Y. Nov. 15, 2024) ........................................ 18

*United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*,
304 F.R.D. 10 (D.D.C. 2014) ........................................ 11

*United States v. Teman*,
No. 19 Cr. 696, ECF No. 531 (Apr. 17, 2025) ........................................ 14, 16, 17

*United States v. Teman*
No. 19 Cr. 696, ECF No. 575 (Sept. 10, 2025) ........................................ 15

*United States v. Teman*,
No. 24 Cr. 345, ECF No. 84.1 (2d Cir. Oct. 30, 2025) ........................................ 15

*Vringo, Inc. v. ZTE Corp.*,
2015 WL 4743573 (S.D.N.Y. Aug. 12, 2015) ........................................ 17

*Watson v. Long Is. R.R. Co.*,
500 F. Supp. 2d 266 (S.D.N.Y. 2007) ........................................ 10

*Wei Su v. Sotheby's, Inc.*,
2019 WL 4053917 ........................................ 12, 19

*Zito v. Leasecomm Corp.*,
233 F.R.D. 395 (S.D.N.Y. 2006) ........................................ 18

**Rules**

Fed. R. Civ. P. 30(a)(2)(B) ........................................ 4

Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Logistics Inc., and Ring LLC (collectively, "Amazon") respectfully submit this memorandum of law in opposition to Plaintiff GateGuard, Inc.'s Motion for a Protective Order, ECF No. 372.

## PRELIMINARY STATEMENT

For more than two and a half years, Amazon has sought the in-person depositions of Ari Teman, GateGuard's owner, CEO, and designated corporate representative, in this District, and GateGuard has asserted a series of dubious medical excuses for why Mr. Teman could not appear. Now GateGuard now asks the Court to shield Mr. Teman from having to appear here, claiming that two new conditions—a blocked right ear and lower back pain—preclude him from flying to New York for the foreseeable future. GateGuard's latest excuses are unevidenced, medically false, and obviously pretextual. GateGuard brought this lawsuit against Amazon in the Southern District of New York. Mr. Teman is the one who made the decision to sue Amazon. He is the sole witness to GateGuard's surviving claims of tortious interference and trade secret misappropriation. Mr. Teman's only reason for refusing to appear here for his deposition, and the 30(b)(6) deposition of GateGuard, is that he is a convicted felon and fugitive from justice. Mr. Teman fled the United States and has refused to return, in defiance of Judge Engelmayer's orders in his criminal case. This situation is of Mr. Teman's own making. The Court should not excuse him from attending live depositions in this District so that he can continue to evade justice.

*First*, GateGuard has not evidenced that traveling to New York for in-person depositions would impose a meaningful burden on Mr. Teman. The Court held that Mr. Teman will be required to appear in person in this District unless GateGuard shows that travel to New York "imposes a meaningful burden." ECF No. 368. GateGuard's claims of medical hardship fail to meet this burden because they are unsworn, conclusory, and fail to specify any serious injury a flight would

cause. The medical statements Mr. Teman obtained are exactly the type of conclusory, nonspecific statements that courts find inadequate.

GateGuard's claim that Mr. Teman cannot fly because of "Eustachian tube dysfunction" is also medically false. Amazon's counsel asked Dr. Darius Kohan, Associate Clinical Professor at NYU Medical School, Director of Otology/Neurotology at a top New York City hospital, and leading ear-nose-throat surgeon who in 36 years of practice has treated tens of thousands of patients with Mr. Teman's claimed condition, to review GateGuard's medical evidence. Dr. Kohan is "highly confident that Mr. Teman could safely fly to New York if he wanted to," and that Mr. Teman "faces no meaningful risk of permanent injury by flying if he takes proper precautions and actions." Kohan Decl. ¶ 3. Dr. Kohan regularly advises patients with Eustachian tube dysfunction that they may fly, addressing symptoms as needed with widely available over-the-counter decongestants, earplugs, and chewing gum. *Id.* ¶¶ 14, 21, 28.

Nor is Mr. Teman acting like a person seeking to resolve a serious medical condition. Rather than proceed with the "balloon dilation" procedure he says he needs for relief—which Dr. Kohan's office can schedule to occur within days, and which GateGuard previously agreed Mr. Teman would complete by October 2026—Mr. Teman has scheduled another "examination that precedes the procedure" for ***July 2027***, rendering himself unavailable for the foreseeable future and belying any immediate medical hardship. ECF No. 376 ("Br.") at 4 (brackets omitted).

*Second*, the real reason Mr. Teman does not wish to travel to New York is not any medical burden, but that he is a fugitive who would risk arrest upon his return to the United States. Mr. Teman's claimed ear issue is the latest in a series of medical excuses he has used to evade his legal responsibilities in the United States. Two Judges in this District—Judge Engelmayer and Judge Caproni—have ruled that Mr. Teman's "claim that air travel is medically risky is pretextual" and

a "pretext he invented to avoid returning to the United States and risking arrest as a fugitive." This Court should hold the same.

*Third*, it would prejudice Amazon to shield Mr. Teman from in-person depositions in this District. Mr. Teman was convicted of bank and wire fraud and has demonstrated a total inability to conduct himself responsibly in this litigation. He is the key factual witness in this case. He must swear his oath in the physical presence of a court reporter, and Amazon has the right to observe him answering questions live to ensure his compliance with the rules for giving testimony. That GateGuard chose to conduct *its* noticed depositions remotely, and that Amazon accommodated one minor witness with a remote deposition, are beside the point. Nor can GateGuard compel Amazon's attorneys to travel to Tel Aviv for the depositions, which would impose undue burden on Amazon's New York-based counsel. And GateGuard's offer to pay the costs of depositions in Israel is a false offer because GateGuard, by its own admission, has no money to pay for these costs.

GateGuard's motion for a protective order should be denied, and Mr. Teman's depositions should proceed on September 29 and 30, 2026, in the Southern District of New York.

## <u>FACTUAL BACKGROUND</u>

### I. MR. TEMAN'S EVASION OF HIS DEPOSITIONS IN THIS ACTION.

For over two-and-a-half years, Amazon has sought to take the in-person depositions of Mr. Teman, GateGuard's founder, owner, and chief executive. In January 2024, the parties agreed that Mr. Teman would sit for two depositions, one in his personal capacity and one as GateGuard's designated Rule 30(b)(6) corporate representative. Declaration of David Salant ("Salant Decl.") ¶¶ 2–3. However, each time Amazon noticed Mr. Teman's depositions, he pulled out or failed to show.

On December 5, 2023, the Court granted leave for Amazon to depose Mr. Teman at FCI Miami, where he was incarcerated at the time. ECF No. 81; *see* Fed. R. Civ. P. 30(a)(2)(B). The parties agreed Mr. Teman would be deposed there during the week of March 11, 2024. ECF No. 139 at 2. However, on March 1, 2024, GateGuard canceled the depositions, asserting that Mr. Teman had "[o]rchalgia" (testicular pain), "severe pain," and "severe allergies." Salant Decl. ¶ 5 & Ex. A.

On July 1, 2024, Amazon noticed Mr. Teman's depositions for July 9 and 10, 2024 in New York City. Salant Decl. ¶ 6. Mr. Teman obtained authorization from the Probation Department to travel outside of the Southern District of Florida, where he was subject to supervised release, to attend these depositions. *Id.* On July 5, 2024, however, GateGuard canceled Mr. Teman's July 9 and 10 depositions, stating that Mr. Teman had [redacted]. *Id.* ¶ 7 & Ex. B.

On February 27, 2026, the parties stipulated, and the Court ordered, that Mr. Teman's depositions would be completed by July 17, 2026. ECF No. 307 at 2. On April 3, Amazon noticed the depositions for June 23 and 24 in New York City. Salant Decl. ¶ 11. Mr. Teman failed to appear for either deposition, and Amazon moved for discovery sanctions. ECF No. 356 at 2–3. By Order dated July 17, 2026, the Court declined to impose sanctions and instructed the parties to attempt to reschedule the depositions. ECF No. 360. The Court said that "if no agreement can be reached, either party may apply to the Court to set the deadline." *Id.*

Following a series of unsuccessful meet-and-confers, on July 31, 2026, Amazon asked the Court to set a deadline of September 30, 2026 for Mr. Teman's depositions. ECF No. 361. GateGuard opposed. ECF No. 365.

By Order dated August 6, 2026, the Court said it "intends to exercise its discretion to require that the plaintiff (including its principal) appear in person for the deposition in the Southern

District of New York, where plaintiff brought suit, unless the plaintiff can show that conducting the deposition in such manner 'imposes a meaningful burden.'" ECF No. 368 (citation omitted). The Court "require[d] plaintiff to present the issue of burden to the Court through formal pleading." *Id.* It therefore granted GateGuard "leave to file a motion for a protective order addressing burden," and cautioned that, "[i]f the Court does not grant the protective order, the deposition shall take place in person in the Southern District of New York by September 30, 2026." *Id.*

To hold this date, on August 12, 2026, Amazon noticed the depositions of GateGuard and Mr. Teman for September 29 and 30, 2026, in New York City. ECF Nos. 374-6, 374-7.

## II. GATEGUARD'S PROFFERED MEDICAL EVIDENCE DOES NOT SUPPORT ITS POSITION THAT TRAVEL TO NEW YORK WOULD IMPOSE A MEANINGFUL BURDEN ON MR. TEMAN.

GateGuard's motion papers rely upon three unsworn, Hebrew-language documents concerning Mr. Teman's medical condition, as provided by Mr. Teman to GateGuard's counsel. ECF No. 374 ¶¶ 9–14. None of these documents support Mr. Teman's position that he cannot travel to New York for an in-person deposition.

*First*, GateGuard submits unsworn "clinical notes of Dr. Amit Wolfovitz," as informally translated by GateGuard. Br. 4; ECF No. 374-11. Dr. Wolfovitz examined Mr. Teman on April 24, 2025, and found no observable issues with Mr. Teman's ears, eardrums, or hearing, including a tympanometry result of "A/A," or fully normal. ECF No. 374-11; *see* Kohan Decl. ¶ 27. Based on Mr. Teman's reported symptoms, Dr. Wolfovitz recommended that Mr. Teman "avoid flying for 3 months" (or until July 2025), use a nasal spray, and "schedule a visit for inspection before approving travel abroad." ECF No. 374-11 at 2 (GateGuard's brackets omitted).

Dr. Wolfovitz examined Mr. Teman again on November 3, 2025, and again found no issues with Mr. Teman's ears, eardrums, or hearing. *Id.* Dr. Wolfovitz noted that Mr. Teman's condition

had improved. *See id.* ("Mainly seeks relief of low-frequency noise/discomfort; no pain. No difficulty compared to pressure changes (flights and the like) previously." (GateGuard's brackets omitted)). Nonetheless, based on Mr. Teman's reported "continue[d]" symptoms "mainly on the right side," Dr. Wolfovitz discussed treatment options and recommended "catheterization (balloon dilation) of the Eustachian tube." *Id.* Dr. Wolfovitz made no recommendation against flying.

*Second*, GateGuard submits an unsworn, unsigned "consultation summary generated by the clinic's system," Br. 3, reflecting an August 13, 2026 examination of Mr. Teman by Dr. Yisgav Shapira. ECF No. 373-1. Mr. Teman reported [redacted]. *Id.* at 2. Dr. Shapira [redacted] *Id.* However, [redacted] *Id.* Dr. Shapira referred Mr. Teman to a medical center for the balloon dilation procedure and, "[u]ntil recovery – recommend[ed] avoiding flying." *Id.* Dr. Shapira did not specify any risk of harm incident to flying nor explain his recommendation to avoid flying.

GateGuard now says Mr. Teman has scheduled an "examination that precedes the procedure" for "July 19, 2027": approximately one year from now. Br. 4 (citing ECF Nos. 374 ¶ 12 & 374-10) (GateGuard's brackets omitted). GateGuard does not claim, and its exhibits do not show, that Mr. Teman has scheduled or even attempted to schedule the balloon dilation procedure itself in the nine months since Dr. Wolfovitz's November 2025 recommendation.

*Third*, GateGuard submits a "referral to imaging center" stating that Mr. Teman reported "low back pain" and referring him for a scan of his back. ECF No. 374-9. GateGuard submits no

corroborating evidence concerning Mr. Teman's back pain or reason why this condition would preclude him from traveling to his depositions.

## III. A LEADING EAR-NOSE-THROAT SURGEON IS "HIGHLY CONFIDENT" THAT EUSTACHIAN TUBE DYSFUNCTION DOES NOT PROHIBIT MR. TEMAN'S TRAVEL TO NEW YORK.

To assess Mr. Teman's claim of medical hardship, Amazon sought the opinion of Dr. Darius Kohan, Associate Clinical Professor of Otolaryngology at NYU School of Medicine, Director of Otology/Neurotology at Lenox Hill Hospital and Manhattan Eye, Ear, and Throat Hospital, and a practicing physician and surgeon who has treated tens of thousands of patients with Eustachian tube dysfunction over 36 years of practice. Kohan Decl. ¶ 2. Having reviewed GateGuard's proffered medical evidence, Dr. Kohan is "highly confident that Mr. Teman could safely fly to New York if he wanted to" and that Mr. Teman "faces no meaningful risk of permanent injury by flying if he takes proper precautions and actions." *Id.* ¶ 3.

As Dr. Kohan explains, Eustachian tube dysfunction is extremely common, and "[p]atients with Eustachian tube dysfunction fly on commercial airplanes all the time." Kohan Decl. ¶¶ 11, 20. Dr. Kohan regularly helps patients suffering from Eustachian tube dysfunction to take commercial flights, and his office has on hand a typewritten handout with instructions for doing so. Kohan Decl. ¶ 20 & Ex. B. Specifically, Dr. Kohan uses an escalating series of treatments: beginning with over-the-counter decongestants, specialized earplugs, and chewing gum, proceeding to stronger prescription medications, and, in serious cases, a myringotomy procedure (tiny puncture of the eardrum) to equalize pressure, which may be held open using tiny hollow microtubes, and, finally, a balloon dilation of the Eustachian tube. *Id.* ¶¶ 21–23, 28. Myringotomy and balloon dilation are in-office procedures that take minutes to complete. *Id.* ¶¶ 17, 19, 29.

For a patient such as Mr. Teman who reports symptoms of Eustachian tube dysfunction, shows fully normal anatomy and hearing, and needs to fly to an important meeting, Dr. Kohan advises taking over-the-counter decongestant drugs before and during the flight at particular time intervals. Kohan Decl. ¶¶ 21, 28. The most serious risks Mr. Teman would face if the drugs were unsuccessful are pain in his ear during ascent and descent and a temporary loss of hearing that would resolve after the flight. *Id.* ¶ 24. In that case, for his next flight, Dr. Kohan would proceed to the next step of trying a stronger prescription drug, before turning to surgical procedures. *Id.* ¶¶ 22, 28. If Mr. Teman wished to eliminate all risk of ear pain on the flight, Dr. Kohan would suggest a myringotomy: puncturing a tiny hole in the eardrum to equalize any pressure difference. *Id*. ¶¶ 15, 22. This is an in-office procedure that takes approximately one minute to complete. *Id.* ¶ 15. Because a tiny eardrum puncture takes approximately seven to ten days to heal, Mr. Teman would have instant relief and more than a week to attend his depositions and return. *Id*.

Dr. Kohan does not recommend a balloon dilation procedure as a first choice because it requires more anesthetics, takes weeks to deliver relief, is disfavored by medical insurers, and is not 100 percent effective. Kohan Decl. ¶¶ 19, 23, 30. In fact, United States health insurers would likely refuse to cover Mr. Teman's balloon dilation procedure as medically unnecessary because Mr. Teman scored a fully normal "A/A" on his tympanometry test. *Id.* ¶¶ 27, 30. But even this procedure takes approximately 30 minutes to complete and can be scheduled to occur within days. *Id.* ¶¶ 19, 31.

## IV. GATEGUARD TRIES TO SKIRT NEW YORK DEPOSITIONS BY PROPOSING REMOTE AND TEL AVIV DEPOSITIONS.

On August 10, in response to the Court's August 6 ruling that it was inclined to require Mr. Teman be deposed in-person in New York, GateGuard asked that the depositions be held remotely or in-person in Tel Aviv, Israel, and offered to "bear[ ] the full cost of the venue, the court reporter,

the videographer, any technical or interpretation support Amazon requires, as well as [Amazon's counsel's] own reasonable travel costs and local accommodation." ECF No. 374-4.

During a telephonic meet and confer on August 17, Amazon rejected GateGuard's proposal to take the depositions remotely and questioned GateGuard about its offer to pay the costs of live depositions in Tel Aviv. Salant Decl. ¶ 23. Amazon noted that flying attorneys to Tel Aviv would be extremely burdensome. *Id*.

Amazon also asked if GateGuard was truly able to make the payments it offered—for airfare, conference rooms in Israel, stenographer and videographer bookings, accommodations for two attorneys, and other expected deposition costs—which Amazon estimated to total approximately $20,000 to $40,000—given that GateGuard had recently told Amazon that it "has no money" and could not pay approximately $2,000 to cover the stenographer and videographer bookings of the June 2026 depositions that Mr. Teman and his counsel did not show up to and that were not canceled in time. Salant Decl. ¶ 23. GateGuard's counsel responded that he believed Mr. Teman had not thought through the true costs of this offer and did not realize how expensive it would be to conduct depositions in Tel Aviv. *Id.* ¶ 24. GateGuard never followed up to stand by its offer or prove its financial ability to pay the estimated costs. *Id*.

## V. THE OTHER DEPOSITIONS IN THIS ACTION.

GateGuard has taken ten depositions in this action, including five depositions of Amazon personnel in their individual capacities and one Rule 30(b)(6) deposition of Amazon. ECF No. 374-8 at 1–30. GateGuard's counsel chose to depose all of these witnesses remotely via Zoom. *Id.* Nonetheless, Amazon's counsel traveled to Las Vegas, NV, and Salt Lake City, UT, and sat with most of these witnesses in-person during their depositions.

Amazon has taken two depositions in this action. On January 19, 2024, Amazon deposed David Taxman, GateGuard's interim CEO while Ari Teman was incarcerated. ECF No. 374-8 at 35. Amazon insisted on an in-person deposition in New York City, and Mr. Taxman traveled from Florida to New York to appear for his testimony. *See* ECF No. 320-2 at 2. On February 6, 2024, Amazon deposed David Teman, Ari Teman's father and alleged former consultant to GateGuard, who lives in Israel. ECF No. 374-8 at 32. Amazon took this deposition remotely, starting the examination at 7:10 a.m. Eastern Time. *Id.*

## LEGAL STANDARD

The Court has already ruled that it will "require that the plaintiff (including its principal) appear in person for the deposition in the Southern District of New York, where plaintiff brought suit, unless the plaintiff can show that conducting the deposition in such manner 'imposes a meaningful burden.'" ECF No. 368 (citation omitted).[1] A party claiming that a "medical condition prevent[s] him from appearing for an in-person deposition" in the district where he sued faces a "high burden." *Glasstech, Inc. v. Freund*, 2025 WL 1880874, at *4 (S.D.N.Y. Jul. 8, 2025). Supporting physician letters or medical records must be "sworn" by the physicians themselves, *id.* at *5, and "unsworn letters from physicians generally are inadmissible hearsay," *Watson v. Long Is. R.R. Co.*, 500 F. Supp. 2d 266, 271–72 (S.D.N.Y. 2007) (citation omitted).

[1] GateGuard argues Mr. Teman should be exempted from this default rule because he "had no choice but to bring his claim in New York." Br. 8. But Mr. Teman does not lack connection to this forum. He lived in this District and operated his business here during the time of the alleged injury. The reason he is now in a far-flung location is because he fled there, in the middle of the litigation, and refused to return to the S.D.N.Y. in defiance of a federal court order. In contrast, the deponents in GateGuard's cited cases were located abroad from the beginning of the litigation. *See Cuevas v. Adon Farms Oper'ns. LLC*, 2026 WL 1802921, at *1 (N.D.N.Y. Jun. 23, 2026) (Mexico); *Spiegler v. Mish Mish Inc.*, 719 F. Supp. 3d 374, 376 (S.D.N.Y. 2024) (Gorenstein, M.J.) (Israel); *Est. of Gerasimenko v. Cape Wind Tr. Co.*, 272 F.R.D. 385, 388 (S.D.N.Y. 2011) (Latvia); *Normande v. Grippo*, 2002 WL 59427, at *1 (S.D.N.Y. Jan. 16, 2002) (Brazil); *Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591, 592–94 (S.D.N.Y. 1994) (U.K.).

Physicians' sworn statements must "establish a 'clearly defined, specific and serious injury' that would befall [the deponent] if compelled to appear for a deposition." *Rekor Sys., Inc. v. Loughlin*, 2022 WL 488941, at *2 (S.D.N.Y. Feb. 17, 2022). "[P]rotective orders are generally not granted where the contentions of a treating physician are conclusory or speculative in nature." *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015). At bottom, GateGuard must show "'compelling circumstances' that call for a remote deposition instead of the presumed in-person deposition in New York." *Arora v. Standard Chartered Bank*, 2026 WL 810387, at *2 (S.D.N.Y. Mar. 23, 2026) (citation omitted).[2] GateGuard fails to meet this burden.

## ARGUMENT

### I. GATEGUARD HAS FAILED TO ESTABLISH THAT MR. TEMAN FACES "MEANINGFUL BURDEN."

GateGuard's motion fails to show that travel to New York for depositions would impose undue medical hardship on Mr. Teman.

***First*, GateGuard's proffered medical records are unsworn, inadmissible hearsay.** None of GateGuard's three medical documents is sworn by a physician, and the principal document on which GateGuard relies, in which an Israeli doctor "recommend[ed] avoiding flying," is an unsigned "consultation summary generated by the clinic's system." Br. 3; ECF No. 374-1. For this basic reason, GateGuard has failed to establish medical hardship. *See Glasstech, Inc.*, 2025 WL 1880874, at *4 (rejecting "unsworn" doctor's note).

[2] GateGuard's attempts to reduce its burden of proof rely on cases involving a *defendant or third party* seeking to avoid travel to an in-person deposition, rather than the plaintiff who chose to sue there. *See Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, 323 F.R.D. 177, 178–79 (S.D.N.Y. 2017) (defendant); *United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 19 (D.D.C. 2014) (foreign claimant); *Floodbreak LLC v. T. Moriarty & Son, Inc.*, 754 F. Supp. 3d 330, 331–32 (E.D.N.Y. 2024) (non-party witness); *In re Terrorist Attacks on Sept. 11, 2001*, 337 F.R.D. 575, 578 (S.D.N.Y. 2020) (third-party witnesses).

***Second*, GateGuard's medical evidence is conclusory and unspecific.** A physician's naked recommendation is inadequate to show medical hardship excusing travel to a live deposition in this District. For example, in *Wei Su v. Sotheby's, Inc.*, Judge Caproni held that a doctor's note stating that a Chinese deponent had been diagnosed with "a disc herniation and arteriosclerosis" and was "not suited to travel by air," yet "d[id] not provide any details as to [the deponent's] symptoms" and "[wa]s not accompanied by any pre-litigation medical history or diagnosis," was inadequate to show good cause for a protective order to avoid a live deposition in New York. 2019 WL 4053917, at *2 (S.D.N.Y. Aug. 28, 2019) (cleaned up). Similarly, in *Glasstech, Inc. v. Freund*, Magistrate Judge Ricardo rejected a physician's letter as insufficient to excuse a deponent from deposition testimony because it was "unsworn, conclusory, and unsupported by any contemporaneous medical records demonstrating that there had been an examination, specific diagnosis, or treatment at any particular time." 2025 WL 1880874, at *2. And in *Rekor Sys., Inc. v. Loughlin*, Judge Liman held a physician's declaration that a deponent was "suffering from dementia resulting from Alzheimer's disease" inadequate to show good cause for a protective order because it "d[id] not identify the progress of the disease, how impaired [the deponent] is, or any harm other than . . . emotional distress." 2022 WL 488941, at *2.

GateGuard's medical showing here is even thinner. The August 13, 2026 clinic visit summary reflects Mr. Teman's anatomy, hearing, and tympanometry were all perfectly normal. Kohan Decl. ¶ 27. Dr. Shapira "recommend[ed] avoiding flying" on the basis of Mr. Teman's self-reported symptoms, ECF No. 374-1 at 2, but this recommendation is unreasoned and "silent regarding . . . any possible harm [Teman] would sustain from attending an in-person deposition," *Kiss v. Kenny*, 2025 WL 1532744, at *1 (S.D.N.Y. May 29, 2025) (rejecting medical excuse of "depression and generalized anxiety disorder" and requiring plaintiff to attend in-person

deposition). The 2025 notes from Dr. Wolfovitz are equally conclusory, and out of date: the April 24, 2025 "recommendation[ ]" to "[a]void flying for 3 months"—or until July 2025—has long elapsed.[3] ECF No. 374-11 at 3.

The claimed risks of injury to Mr. Teman from travel are all supplied by counsel in GateGuard's legal briefing, not by any doctor. Br. 3 n.1. GateGuard cites no case in which such a similarly supported showing established good cause for a protective order.[4]

***Third*, GateGuard's argument that patients with Eustachian tube dysfunction cannot fly is medically false.** Dr. Kohan, a preeminent ear-nose-throat surgeon who has treated tens of thousands of patients with Eustachian tube dysfunction over 36 years of practice, is "highly confident that Mr. Teman could safely fly to New York if he wanted to." Kohan Decl. ¶ 3. For all the reasons stated in Dr. Kohan's declaration, Mr. Teman has numerous treatment options to get himself through a flight, and the risks he faces are short-term pain or reduction of hearing. *Id.* ¶ 24. There is no medical reason to wait for Mr. Teman to obtain and recover from a balloon dilation procedure, for which Mr. Teman is a poor candidate and would not obtain medical insurance coverage, because of his fully normal "A/A" eardrum test results. *Id.* ¶ 30.

---

[3] The document also contains a more recent note dated November 3, 2025, saying that Mr. Teman's condition had improved and not recommending that Mr. Teman avoid flying. *See* ECF No. 374-11 at 3 ("Mainly seeks relief of low-frequency noise/discomfort; no pain. No difficulty compared to pressure changes (flights and the like) previously." (GateGuard's brackets omitted)).

[4] GateGuard's cited authorities either support Amazon's position or are distinguishable. Br. 7–8; *see Folk v. DeJoy*, 2026 WL 1906588, at *2 (E.D.N.Y. Jul. 2, 2026) (finding plaintiff "failed to substantiate her claim of undue medical burden" and permitting remote deposition for a different reason); *Stapleton v. Prince Carpentry, Inc.*, 2023 WL 1785547, at *1 (E.D.N.Y. Feb. 6, 2023) (compelling in-person deposition where the asserted medical issue was "not supported by evidence"); *Floodbreak LLC*, 754 F. Supp. 3d at 332–33 (allowing remote deposition where movant already voluntarily deposed the same witness by Zoom multiple times); *PC-41 DOE v. Poly Prep Country Day Sch.*, 2022 WL 420619, at *3 (E.D.N.Y. Jan. 20, 2022) (allowing remote depositions during COVID-19 pandemic after plaintiff established "specific articulated facts" concerning the risks to him and his family from an in-person deposition); *Abdullah*, 154 F.R.D. at 592–94 (appearance in U.S. would forfeit asylum application and bar witness's return home); *Cuevas*, 2026 WL 1802921, at *1 (foreign plaintiff would need to obtain visa to enter the country and face significant financial hardship from costs of travel); *Est. of Gerasimenko*, 272 F.R.D. at 388 (unemployed widow established "her tenuous financial position" and inability to travel to New York); *Normande*, 2002 WL 59427, at *1 (*pro se* plaintiff living in Brazil was primary caretaker of infant child).

***Fourth*, Mr. Teman's excessive delay in seeking treatment shows he is not really facing imminent medical hardship but rather looking for an excuse not to appear in New York.** GateGuard says Mr. Teman requires a "balloon dilation" procedure to resolve his Eustachian tube dysfunction. Br. 4. This is a minimally invasive, in-office procedure that takes approximately 30 minutes to complete, and in New York City can be scheduled within days. Kohan Decl. ¶¶ 19, 31. Mr. Teman has apparently been aware of the balloon dilation procedure since at least November 2025, ECF No. 374-11, giving him ten months to schedule the procedure. Indeed, as late as July 22, 2026, GateGuard represented to Amazon that Mr. Teman could obtain the procedure, recover, and appear for depositions in New York by October 31, 2026. Salant Decl. ¶ 14 & Ex. C. Yet Mr. Teman has now scheduled another "examination that precedes the procedure"—not even the balloon dilation procedure itself—for July 19, 2027. Br. 4 (citing ECF Nos. 374 ¶ 12, 374-10) (GateGuard's brackets omitted). Mr. Teman's years-long delay in seeking treatment and lack of any particular end date belie his claims of serious medical hardship and are an independent reason to deny GateGuard's motion. *See Soft Drink, Brewery Workers & Delivery Emps., Indus Emps., Warehousemen, Helpers & Misc. Workers, Greater N.Y. & Vicinity, Loc. Union No. 812 v. Ulrich*, 2021 WL 2227921 (S.D.N.Y. Jun. 1, 2021) (denying *sine die* postponement of party deposition given vague submission referring to longstanding medical condition without specified end date).

***Fifth*, air travel is not the only way to travel to New York.** GateGuard offers no reason why Mr. Teman could not travel to his depositions by ship, as Judge Engelmayer suggested in his criminal case. *See United States v. Teman*, No. 19 Cr. 696, ECF No. 531 at 8 (Apr. 17, 2025) ("Teman is at liberty to arrange return travel to the United States by boat.").

***Finally*, Mr. Teman's latest complaint of "low back pain" is unsupported and fails to establish medical hardship.** Br. 4; ECF No. 374-9. This latest complaint only underscores Mr.

Teman's penchant for exaggerated, never-ending medical excuses. *See, e.g.*, ECF Nos. 153 at 2, 169 at 2, 216 at 4. Many people, including undersigned counsel, experience lower back pain and travel as needed for work commitments.

## II. MR. TEMAN'S MEDICAL EXCUSES ARE PRETEXTUAL.

The real reason Mr. Teman does not wish to travel to a deposition in New York is because he is a fugitive and would risk arrest upon entering the United States. Mr. Teman's fugitivity is not a permitted basis on which to grant him a protective order. Because Mr. Teman's medical excuses are pretextual, they cannot be accepted as the basis for any burden, let alone a meaningful burden.

***First*, Mr. Teman is a fugitive who is plainly avoiding return to the United States.** Following his conviction by a jury and incarceration for wire and bank fraud against GateGuard customers, Mr. Teman traveled to Israel and failed to return to the United States to face arraignment for violations of his terms of supervised release. Judge Engelmayer held that Mr. Teman "is a fugitive." *Teman*, No. 19 Cr. 696, ECF No. 575 at 1 (Sept. 10, 2025). The Court of Appeals agreed. *United States v. Teman*, No. 24-345, ECF No. 84.1 at 2 (2d Cir. Oct. 30, 2025) ("We conclude that Teman is a fugitive."). Mr. Teman is apparently [redacted] and thus appears to intend to remain in Israel and flout U.S. justice permanently. ECF No. 373-2 at 3. This, not an ear condition, is the obvious reason why GateGuard is seeking this protective order. GateGuard obliquely acknowledged as much when it argued in its motion that depositions in New York would be "punitive" because "Mr. Teman's appearance in the United States would . . . expos[e] him to consequences unrelated to this litigation." Br. 1, 11.

***Second*, the timing of Mr. Teman's proffered medical records indicates pretext.** Mr. Teman's April 24, 2025 examination by Dr. Wolfovitz, and his August 13, 2026 examination by

Dr. Shapira, each closely followed court orders either casting doubt on Mr. Teman's medical condition or requiring that he show a real, meaningful burden. *See Teman*, No. 19 Cr. 696, ECF No. 531 (Apr. 17, 2025) (April 17, 2025 Order of Judge Engelmayer calling Teman's medical claims "pretextual"); ECF No. 368 (August 6, 2026 Order from this Court requiring GateGuard to demonstrate meaningful burden). And Mr. Teman's scheduling of further follow-up was initiated days before GateGuard filed its motion. ECF Nos. 374-9 (August 19, 2026 imaging referral); 374-10 (August 20, 2026 email). This timing suggests that Mr. Teman was generating a litigation record, not tending to a serious medical issue. And Mr. Teman appears to have developed his inability to fly only shortly after fleeing from the United States to Israel—by airplane.

***Third*, many other aspects of GateGuard's submission are suspicious.** Mr. Teman's claimed medical problems here are the latest of a variety of medical conditions, including "extreme testicular pain," "severe food allergies," "extreme sleep disorder," [redacted], and an unidentified "neurological condition" with a "risk of imminent injury or death," that Mr. Teman has used to avoid his depositions or obtain extensions of court deadlines. *See, e.g.*, ECF Nos. 153 at 2, 169 at 2, 216 at 4; Salant Decl. ¶ 7 & Ex. B. GateGuard did not raise the ear issue contemporaneously, either when Amazon noticed Mr. Teman's in-person deposition on April 3, 2026, when Mr. Teman failed to appear for his depositions in June 2026, or during the parties' years-long correspondence about Mr. Teman's depositions. GateGuard cannot invoke a medical condition that "could have been raised at any time in the past year" but was "never until now even suggested, despite extensive communication" with the Court and Amazon. *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699, at *14 (S.D.N.Y. May 31, 2002); *see also A.I.A. Hldgs., S.A. v. Lehman Bros.*, 2002 WL 538833, at *5 (S.D.N.Y. Apr. 10, 2002) (denying protective orders due to failure to raise preexisting medical conditions before depositions were noticed).

**If GateGuard's claim of medical burden is pretextual, its motion must be denied.** Two Judges of this Court and the U.S. Government have already found Mr. Teman's health claims to be pretextual. Judge Engelmayer held: "the Court's firm conclusion—along with the Government—is that Teman's claim that air travel is medically risky is pretextual. Numerous data points support that Teman invoked this in late February [2025] as a last-ditch excuse to avoid returning to the United States." *Teman*, No. 19 Cr. 696, ECF No. 531 at 7 (S.D.N.Y. Apr. 17, 2025). And Judge Caproni ruled that Mr. Teman's purported health issues are a "pretext he invented to avoid returning to the United States and risking arrest as a fugitive." *GateGuard v. Goldmont Realty Corp.*, No. 20 Civ. 1609, ECF No. 216 at 2 (S.D.N.Y. Nov. 17, 2025).

This Court should hold the same, and if it does, GateGuard's motion must be denied. "[T]he possibility or reality of a criminal indictment is irrelevant to a court's decision as to whether a civil deposition of an accused or potential accused should occur here." *Vringo, Inc. v. ZTE Corp.*, 2015 WL 4743573, at *10 (S.D.N.Y. Aug. 12, 2015) (rejecting application for remote deposition). "Any other result would place this Court in the inappropriate role of assisting [the deponent] in his efforts to evade apprehension." *Doe v. Karadzic*, 1997 WL 45515, at *5 (S.D.N.Y. Feb. 4, 1997).

## III. AMAZON WOULD BE PREJUDICED IF FORCED TO DEPOSE MR. TEMAN REMOTELY OR IN TEL AVIV.

Amazon has both the right and good reason to require in-person depositions of Mr. Teman in the Southern District of New York, and GateGuard is wrong that such depositions would serve "no[ ] legitimate discovery interest." Br. 11.

***First*, remote depositions of Mr. Teman are out of the question.** "[D]istrict courts have continued to recognize that there is nothing extraordinary or inappropriate about seeking to take a deposition in person, particularly for a key witness." *United States v. M/Y Amadea*, 2024 WL 4799887, at *5 (S.D.N.Y. Nov. 15, 2024) (collecting cases and requiring in person deposition of

"the key witness" with whom "[t]here is an exceedingly high level of distrust among all parties"). Separate and apart from his felony conviction for wire and bank fraud, Mr. Teman has a history of improper behavior in this action, ranging from secretly recording his conversation with Amazon employees, to bigoted emails sent directly to Amazon employees and other third parties, to making a "criminal referral" of Amazon and its personnel to the FBI and DOJ. *See* ECF Nos. 320-6, 356-3. Amazon must observe Mr. Teman giving the oath, testifying, and conducting himself with the documents and information to be shared with him, including during breaks in the deposition, to ensure that he is complying with the rules for sworn testimony. "The opportunity for mischief arises when a deponent logs into a remote deposition without counsel or a court reporter physically present in the same room." *Eletson Hldgs., Inc. v. Levona Hldgs., Ltd.*, 2025 WL 1950728, at *2 (S.D.N.Y. Jul. 16, 2025) (citation omitted). And "[a]n oath administered in the physical presence of the designated officer has an immediacy and gravity that may not be felt over the internet." *Id.* Amazon's request has been consistent throughout: it must see Mr. Teman in person.

***Second*, Mr. Teman is a key witness whose "credibility is a matter of critical importance," which "necessitates an in-person deposition."** *Kiss*, 2025 WL 1532744, at *2 (denying plaintiff's request for remote deposition). Mr. Teman is GateGuard's sole witness to its claims of tortious interference, trade secret misappropriation, and damages in this case. The issue is not limited to Amazon's desire to "observe [his] demeanor."[5] Br. 9. "[I]n terms of the truth-seeking function of a deposition, a remote video deposition is not a substitute for the in-person,

---

[5] In *Zito v. Leasecomm Corp.*, the court permitted remote depositions of certain, less relevant plaintiffs, and distinguished between these plaintiffs and those for whom demeanor and credibility were more essential. 233 F.R.D. 395, 397–98 (S.D.N.Y. 2006). The court in *Alpha Cap. Anstalt v. Real Goods Solar, Inc.*, explains that *the party taking the deposition* may choose remote means. 323 F.R.D. 177, 179 (S.D.N.Y. 2017). And in *Cuevas v. Adon Farms Ops., LLC*, the court permitted a remote deposition of the foreign plaintiff who struggled to obtain a visa to enter the country, 2026 WL 1802921, at *1—an issue not faced by Mr. Teman, who has flouted judicial orders to return to the United States.

face-to-face confrontation between adversaries." *Eletson Hldgs.*, 2025 WL 1950728, at *2 (ordering depositions of plaintiff's "key witnesses" located in Greece to take place in New York); *see also Arora*, 2026 WL 810387, at *2 (agreeing that defendants' "ability to assess the credibility of Plaintiff—an obvious key witness in this case—'necessitates an in person deposition'").[6]

***Third*, the history of depositions taken in this case supports Amazon's position.** GateGuard chose to take all of its 10 depositions remotely, as was its right. Amazon's counsel nonetheless traveled to Las Vegas and Salt Lake City to sit with witnesses in person. Amazon agreed to take one remote deposition of a minor witness located in Israel, for the convenience of counsel and the witnesses. Yet Amazon insisted, and GateGuard agreed, that the deposition of GateGuard's interim CEO (while Mr. Teman was incarcerated) must be taken in-person in New York. Amazon has taken a consistent approach: favoring face-to-face interactions with witnesses, respecting the mode of deposition selected by the noticing party, and insisting on in-person depositions in New York for GateGuard's key witnesses.

***Fourth*, GateGuard's offer to "bear[ ] the full cost of an in-person Tel Aviv deposition" is a false offer that does not actually "Eliminate[ ] Any Burden on" Amazon.** Br. 5, 11. GateGuard's offer to pay certain expenses of the depositions if held in Tel Aviv does not defray the full economic and family costs to Amazon and its counsel. Travel to Israel is extremely burdensome and would require a significant number of hours that counsel should be using to other ends. Furthermore, GateGuard admitted that it does not have the money to cover

[6] This rule applies equally to plaintiffs seeking a remote deposition on the basis of a claimed medical issue. *See, e.g.*, *Kiss*, 2025 WL 1532744, at *2 (requiring in person deposition of plaintiff despite claimed "depression and generalized anxiety disorder"); *Wei Su*, 2019 WL 4053917, at *2–3 (same, despite claimed "disc herniation and arteriosclerosis"); *Stapleton*, 2023 WL 1785547, at *1–2 (same, despite claimed concerns of contracting COVID-19); *Dubai Islamic Bank*, 2002 WL 1159699, at *14 (requiring in-person depositions of key witnesses despite claimed "slightly raised blood pressure," "recent[ ] eye surgery," and "blood pressure problem").

even the costs it offered to pay—airfare and accommodations for two lawyers, booking of Israeli conference rooms, stenographer and videographers appointments, shipping boxes of documents, and other costs—which Amazon estimated to total $20,000 to $40,000. Salant Decl. ¶¶ 23–24. Amazon should not be forced to bear a costly international deposition when Mr. Teman fled to Israel voluntarily and unlawfully.

## CONCLUSION

The Court should deny GateGuard's motion for a protective order.

Dated: New York, New York
September 3, 2026

By: */s/ Christopher D. Belelieu*
Christopher D. Belelieu

GIBSON, DUNN & CRUTCHER LLP
Christopher D. Belelieu
David P. Salant
Rachel Katzin

200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
CBelelieu@gibsondunn.com
DSalant@gibsondunn.com
RKatzin@gibsondunn.com

*Attorneys for Defendants Amazon.com, Inc., Amazon.com Services LLC, Amazon Logistics Inc., and Ring LLC*