UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
GATEGUARD, INC.,
Plaintiff,
-against- No. 21 Civ. 9321 (JGK)(GWG)
AMAZON.COM, INC., et al.,
Defendants.
----------------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Eden P. Quainton
QUAINTON LAW, PLLC
2 Park Avenue, 20th Floor
New York, New York 10016
*Attorneys for Plaintiff*
*GateGuard, Inc.*

# TABLE OF CONTENTS


**PRELIMINARY STATEMENT** .................................................. 1

**ARGUMENT** .................................................. 3

**I. AMAZON ARGUES AGAINST A STANDARD THE COURT DID NOT SET** ................ 3

A. The Order requires a meaningful burden, not a permanent injury ................ 3

B. This Court's decision in *Spiegler* articulates the governing frame, and *Packard* applies it to a plaintiff abroad ................ 4

C. Rule 26(c) does not incorporate Rule 56 ................ 5

**II. THE "UNSWORN" OBJECTION IS NOT THE LAW, IS WAIVED, AND IS CURED.** 5

A. None of Amazon's cases establishes a sworn-statement prerequisite ................ 5

B. Amazon's account of the records is inaccurate in three respects ................ 7

C. Amazon waived the objection by relying on the same records ................ 9

D. Amazon's own physician declaration is unsworn ................ 9

E. The objection is cured ................ 10

**III. THE RECORD ESTABLISHES A MEANINGFUL BURDEN, INCLUDING ON AMAZON'S OWN EVIDENCE** ................ 11

A. Two examining physicians against one non-examining physician ................ 11

B. Amazon's expert forecloses its own "no objective findings" argument ................ 11

C. Amazon asks the Court to require medication or surgery as the price of a deposition. 12

D. Amazon's expert supplies the treatment timeline, not a denial of it ................ 12

E. The record refutes the premise that Mr. Teman sat on his hands ................ 13

F. The back condition ................ 14

**IV. THE PRETEXT AND CHARACTER ARGUMENTS DO NOT ANSWER THE QUESTION THE COURT ASKED** ................ 14

A. ECF No. 368 called for a burden showing, not a fugitivity adjudication ................ 14

B. The prior orders decided different questions on different records ................ 15

C. Amazon's own practice in this case undercuts its prejudice argument ................ 17

**V. THE RELIEF SOUGHT** ................ 19

A. The depositions should proceed by videoconference or in person in Tel Aviv ................ 19

B. There is no request for postponement, and no "end date" is needed ................ 21

**CONCLUSION** ................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Capital Anstalt v. Real Goods Solar, Inc.*,
323 F.R.D. 177 (S.D.N.Y. 2017) ....................5, 17

*Arora v. Standard Chartered Bank*,
2026 WL 810387 (S.D.N.Y. Mar. 23, 2026) ....................17, 18

*Balk v. New York Institute of Technology*,
974 F. Supp. 2d 147 (E.D.N.Y. 2013) ....................18

*Capobianco v. City of New York*,
422 F.3d 47 (2d Cir. 2005)....................7, 9

*Eletson Holdings, Inc. v. Levona Holdings, Ltd.*,
2025 WL 1950728 (S.D.N.Y. July 16, 2025) ....................18, 19

*Estate of Gerasimenko v. Cape Wind Trading Co.*,
272 F.R.D. 385 (S.D.N.Y. 2011) ....................4

*GateGuard, Inc. v. Goldmont Realty Corp.*,
No. 20 Civ. 1609 (VEC), ECF No. 216 (S.D.N.Y. Nov. 17, 2025)....................16

*Glasstech, Inc. v. Freund*,
2025 WL 1880874 (S.D.N.Y. July 8, 2025) ....................5, 6

*Kiss v. Kenny*,
2025 WL 1532744 (S.D.N.Y. May 29, 2025) ....................17, 18

*Normande v. Grippo*,
2002 WL 59427 (S.D.N.Y. Jan. 16, 2002) ....................4

*Packard v. City of New York*,
326 F.R.D. 66 (S.D.N.Y. 2018) .................... passim

*Qube Films Ltd. v. Padell*,
2015 WL 109628 (S.D.N.Y. Jan. 5, 2015) ....................7

*Rekor Systems, Inc. v. Loughlin*,
2022 WL 488941 (S.D.N.Y. Feb. 17, 2022)....................3, 6, 7

*Soft Drink, Brewery Workers & Delivery Employees Local 812 v. Ulrich*,
2021 WL 2227921 (S.D.N.Y. June 1, 2021) ....................21

*Spiegler v. Mish Mish Inc.*,
719 F. Supp. 3d 374 (S.D.N.Y. 2024)....................4, 5

*United States v. Teman*,
No. 19 Cr. 696 (PAE), ECF Nos. 531, 575 (S.D.N.Y. 2025) ....................15

*United States v. Teman*,
No. 24-345, ECF No. 84.1 (2d Cir. Oct. 30, 2025)....................15

*Watson v. Long Island Rail Road Co.*,
500 F. Supp. 2d 266 (S.D.N.Y. 2007)....................1, 7, 9

**Statutes and Rules**

28 U.S.C. § 1746....................2, 9, 10

Fed. R. Civ. P. 26(c) .................... passim

Fed. R. Civ. P. 30(b)(4)....................19

Fed. R. Civ. P. 56....................1, 5, 7

**PRELIMINARY STATEMENT**

The Court's August 6, 2026 Order posed one question: whether requiring Mr. Teman to appear in this District "imposes a meaningful burden." ECF No. 368. Amazon's opposition answers a different one. It argues that flying would not cause Mr. Teman *permanent* injury, that he is a convicted felon and a fugitive, and that he has behaved badly in this litigation. None of that is the question, and on the question actually presented Amazon's own evidence supports GateGuard.[1]

[redacted] A litigant need not prove that travel would maim him to show that travel imposes a meaningful burden.

Amazon's threshold objection is procedural: that GateGuard's medical records are "unsworn." Amazon's Memorandum of Law in Opposition to Plaintiff's Motion for a Protective Order, dated September 3, 2026 (the "Opp."), 1, 5. The objection fails three times over. First, it is not the law: none of the decisions Amazon cites holds that a physician's contemporaneous record *must* be sworn to support a Rule 26(c) motion. The one case that speaks of unsworn physician letters as inadmissible, *Watson*, said so in granting summary judgment, where Rule 56

[1] This memorandum was prepared with assistance from Anthropic's Claude Fable 5.1, but responsibility for the contents, including all citations and case descriptions, is solely that of counsel.

asks whether a party has admissible evidence for trial. A Rule 26(c) motion asks a different question, how discovery should proceed, and every discovery ruling Amazon cites answered it by weighing the physician's letter or note on its content rather than excluding it for want of an oath. Second, even if such a rule did exist, it has been waived: Amazon handed the same records to its own expert and built his opinion on them, Kohan Decl. ¶ 25. Finally, Amazon does not observe its own objection, showing the weakness of its position: the Kohan Declaration, the sole support for Amazon's assertion that GateGuard's showing is "medically false," Opp. 2, is not sworn. It contains no declaration under penalty of perjury and no reference to 28 U.S.C. § 1746. The Declaration of David Salant, dated September 3, 2026 (the "Salant Decl."), filed the same day, invokes § 1746 in its first sentence. Amazon asks the Court to disregard GateGuard's treating physicians for a defect that disqualifies Amazon's own retained one.

In any event, GateGuard submits with this reply the sworn Declaration of Ari Teman, executed September 7, 2026 (the "Teman Decl."), which describes his symptoms from personal knowledge and sets out, with dates, every step he has taken to obtain the treatment both of his physicians recommended. Teman Decl. ¶¶ 2–10.

What remains of the opposition is character evidence. Mr. Teman's conviction, his status in the criminal proceedings, his emails, and his prior scheduling requests are the subject of other applications before other judges. They do not bear on whether a transatlantic flight will cause him pain and hearing loss, and Rule 26(c) does not authorize the denial of protection as a sanction for being disliked.

GateGuard's request is unchanged. It asks that Mr. Teman's individual and Rule 30(b)(6) depositions proceed by videoconference, promptly, on dates of Amazon's choosing, or, at

Amazon's election, in person in Tel Aviv on the terms GateGuard offered in writing on August 10, 2026.

## ARGUMENT

## I. AMAZON ARGUES AGAINST A STANDARD THE COURT DID NOT SET.

### A. The Order requires a meaningful burden, not a permanent injury.

ECF No. 368 directs that Mr. Teman appear in this District "unless the plaintiff can show that conducting the deposition in such manner 'imposes a meaningful burden.'" ECF No. 368 (quoted at Salant Decl. ¶ 21). Amazon's brief substitutes a different test. [redacted]

Burden and injury are not the same inquiry, and the authorities Amazon cites confirm it. *Rekor* asks whether the movant has shown a "clearly defined, specific and serious injury," 2022 WL 488941, at *2, but the injury identified there was that the deponent "would be embarrassed and would become agitated and suffer emotional distress," harm the court found "no different from that experienced in any situation where a person suffering from dementia is required to answer questions." *Id.* [redacted]

**B. This Court's decision in *Spiegler* articulates the governing frame, and *Packard* applies it to a plaintiff abroad.**

Amazon relegates to a footnote its answer to GateGuard's forum-choice authorities, arguing that they involve defendants or third parties "rather than the plaintiff who chose to sue there." Opp. 11 n.2. Amazon's own brief cites *Spiegler v. Mish Mish Inc.*, 719 F. Supp. 3d 374 (S.D.N.Y. 2024), Opp. 10, which is this Court's decision and which concerned the location of a plaintiff's deposition. The Court there set out the analysis that governs here: the "general rule" that a plaintiff who selects the forum will be examined there is "not adhered to if plaintiff can show good cause for not being required to come to the district where the action is pending," *id.* at 376 (quoting *Normande v. Grippo*, 2002 WL 59427, at *1 (S.D.N.Y. Jan. 16, 2002)); "there is no absolute rule as to the location of the deposition of a nonresident plaintiff," *id.*; and the Court must "strive to achieve a balance between claims of prejudice and those of hardship," *id.* (quoting *Estate of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 387 (S.D.N.Y. 2011)). Rather than order a live deposition on the letters before it, the Court in *Spiegler* directed further factual development, *Spiegler*, 719 F. Supp. 3d at 376, which is the course the Court took here in ECF No. 368.

*Packard v. City of New York*, 326 F.R.D. 66 (S.D.N.Y. 2018), applies that frame to facts close to these. The plaintiff there had sued in this District while a New York resident and later moved to Taiwan; the City moved to compel his in-person deposition in New York, and he cross-moved for a protective order permitting a videoconference deposition from Taiwan. *Id.* at 67. Judge Aaron found that the plaintiff "ha[d] established that it would be somewhat of a burden for him to travel to New York," that "[a]ny prejudice to the City of holding a deposition by videoconference seems to the Court to be minimal, since the City will be able to observe [his] demeanor through the video connection," and that a videoconference deposition is "frequently a

preferred solution to mitigate the burden of a deposition location inconvenient to one or both sides." *Id.* at 68 (quoting *Alpha Capital Anstalt v. Real Goods Solar, Inc.*, 323 F.R.D. 177, 179 (S.D.N.Y. 2017)). The court gave the plaintiff the option of a videoconference deposition, on condition that he arrange compliance with the Federal Rules and bear the additional expense. *Id.* The burden shown in *Packard* was financial and occupational. The burden shown here is physical, which Amazon's own expert has acknowledged.

**C. Rule 26(c) does not incorporate Rule 56.**

Amazon's demand for evidence admissible at trial has no basis in the rule it invokes. Rule 26(c) conditions relief on "good cause," and courts in this District resolve deposition-location disputes on letters, attorney declarations, and medical records. *Spiegler* was to be decided on a letter application combined with the plaintiff's sworn statement, which is what Mr. Teman has provided here. *See Spiegler*, 719 F. Supp. 3d at 376. *Packard* was decided on letter-motions and a party declaration. 326 F.R.D. at 67. This evidentiary showing is different in kind and degree from the showing required at summary judgment, where the Court is asked to determine whether any material disputed factual issues remain for the jury. Amazon's attempt to impose a summary judgment standard is misguided and the Court should decline to follow it.

## II. <u>THE "UNSWORN" OBJECTION IS NOT THE LAW, IS WAIVED, AND IS CURED.</u>

**A. None of Amazon's cases establishes a sworn-statement prerequisite.**

Amazon relies on *Glasstech, Inc. v. Freund*, 2025 WL 1880874 (S.D.N.Y. July 8, 2025), Opp. 10–12, for the proposition that physician statements must be "sworn" by the physicians themselves. Opp. 10 (citing *Glasstech* at *5). *Glasstech* announces no such rule. That case was a Rule 37 sanctions decision against a deponent who, after his motion for a protective order was

denied, failed to appear for his court-ordered *remote* deposition, after attempting to avoid the deposition altogether, and offered two one-page doctor's letters, one of them submitted *ex parte*, in support of his position. *Glasstech*, 2025 WL 1880874, at *2–*3, *4–*5. The page Amazon cites says of the second letter only that it "is unsworn, unsupported by any medical records, and it provides a conclusory opinion." *Id.* at *5. The first letter failed for the same cluster of reasons, of which the absence of an oath was one item in a list: it was "unsworn, conclusory, and unsupported by any contemporaneous medical records demonstrating that there had been an examination, specific diagnosis, or treatment at any particular time." *Id.* at *2 (quoted at Opp. 12). Every one of those deficiencies is absent here. GateGuard's records are the contemporaneous clinical records of two examinations, seventeen months apart, by two otolaryngologists. [redacted] Nor did *Glasstech* concern travel. On the contrary, the deponent there attempted first to avoid a deposition altogether and then to excuse his failure to appear for a remote deposition. The deponent lived in Switzerland; the deposition he was sanctioned for missing was a remote one, to be taken two hours a day "from the comfort of his home." 2025 WL 1880874, at *2, *5. Amazon's lead authority on the medical standard enforced the format GateGuard proposes.

*Rekor Systems, Inc. v. Loughlin*, 2022 WL 488941 (S.D.N.Y. Feb. 17, 2022) proves the point from the other direction. The physician there submitted a *declaration*, and it still failed, not for want of an oath but because it "d[id] not identify the progress of the disease, how impaired

[the deponent] is, or any harm other than embarrassment and emotional distress." *Rekor*, 2022 WL 488941, at *2. Swearing a conclusory statement does not save it, and a specific, contemporaneous clinical record is not disqualified by the absence of a jurat. *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015), asks the same question: whether the showing rests on "specific examples or articulated reasoning" rather than "broad allegations of harm." Nowhere did the court indicate that the presence or absence of a sworn statement was the critical consideration.

The only remaining authority Amazon offers for a categorical rule is *Watson v. Long Island Rail Road Co.*, 500 F. Supp. 2d 266 (S.D.N.Y. 2007). But *Watson* was a FELA case decided on summary judgment, again a different context from the one at issue here. Moreover, the sentence Amazon quotes cuts off just before the clause that confines it to summary judgment. The sentence reads in full: "unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment." *Id.* at 272 (quoting *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005)); *see* Opp. 10. The statement is an application of Rule 56's requirement that the non-movant come forward with admissible evidence. Amazon offers no authority importing that requirement into Rule 26(c), and there is none. There is no basis for jumping from the observation that an unsworn statement cannot create a triable issue of fact to the conclusion that the Court may not give such a record the weight it deems appropriate in striving "to achieve a balance between claims of prejudice and those of hardship." *See supra* Point I.B.

**B. Amazon's account of the records is inaccurate in three respects.**

*First*, Amazon describes GateGuard's exhibits as "three unsworn, Hebrew-language documents … as provided by Mr. Teman to GateGuard's counsel," and says the Wolfovitz notes

were "informally translated by GateGuard." Opp. 5. Exhibits A, H, and I were each translated by a professional translator with twenty-one years' experience, whose certification of accuracy, counter-certified by the translation agency, was filed with the motion on August 20. Quainton Decl. Ex. A at 2; Ex. H at 4; Ex. I at 5. Amazon received those certifications and does not mention them. The "informal translation" charge is accurate only as to Exhibit J, which was filed with a working translation and a statement on its face that a certified translation would follow, Ex. J at 4, and even there most of what Amazon quotes is in English on the face of the original: the April 24, 2025 recommendation is in Dr. Wolfovitz's own handwriting, in English, and the November 3, 2025 summary carries the clinic's own English translation. *Id.* at 3.

[redacted] No such approval was ever given. When Mr. Teman returned on November 3, 2025, [redacted] Opp. 6, 13, appears in the patient-history section of the same visit, Ex.

[redacted] Teman Decl. ¶ 3.

*Third*, Amazon calls Dr. Shapira's consultation summary "unsigned." Opp. 6. The summary bears Dr. Shapira's round stamp, with his license number, and his handwritten signature. Quainton Decl. Ex. A at 4 (certified translation of the signature page), 6 (original). The document was generated by the clinic's system in the ordinary course, which is what makes it a record rather than a letter written for litigation.

**C. Amazon waived the objection by relying on the same records.**

*Watson* also supplies the answer to Amazon's own use of Dr. Shapira's summary. In *Watson*, the court declined to exclude a physician's note because the party attacking it had itself submitted the note; by relying on it, the railroad "waived any objections to the admissibility" of the note. *Watson*, 500 F. Supp. 2d at 269 n.5 (citing *Capobianco*, 422 F.3d at 55). Amazon has done exactly that. Its counsel gave Dr. Kohan ECF Nos. 373-1 and 374-11 and asked him to review them, Kohan Decl. ¶ 25. His opinion rests on those records and on nothing else, because he has never examined Mr. Teman. *Id.* [redacted] 3. Amazon cannot build its rebuttal on these records and simultaneously ask the Court to disregard them.

**D. Amazon's own physician declaration is unsworn.**

The objection is one Amazon does not observe. Mr. Salant's declaration begins: "I, David Salant, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct." Salant Decl. introductory paragraph. The Kohan Declaration contains no such statement. It opens: "My name is Darius Kohan. I am over 18 years of age, of sound mind,

and capable of making this declaration. I make this declaration based on personal knowledge and personal experience. If called and sworn as a witness, I could and would testify competently to the facts stated in this declaration." Kohan Decl. ¶ 1. It closes: "Executed on September 3, 2026 in New York, New York." *Id.* at 11. The words "penalty of perjury" appear nowhere in its eleven pages.

Section 1746 gives an unsworn declaration the force of an affidavit only if it is "subscribed by [the declarant], as true under penalty of perjury," in substantially the statutory form. 28 U.S.C. § 1746. The Kohan Declaration is not in the required form. If Amazon's rule were the law, its own expert submission would be the first casualty, and with it the entire premise that GateGuard's showing is "medically false," Opp. 2, which rests on Dr. Kohan and no one else. GateGuard does not ask the Court to disregard Dr. Kohan on that ground. It asks the Court to apply one standard to both sides. Under any single standard, contemporaneous clinical records from two examining physicians are entitled to at least the weight of a retained non-examiner's unsworn opinion. And the records from the examining physician should carry far greater weight than the views of a second physician who has examined only the examiner's records.

**E. The objection is cured.**

Submitted with this reply is the declaration of Ari Teman under 28 U.S.C. § 1746. It describes his symptoms from personal knowledge, Teman Decl. ¶ 2; the two examinations and the recommendations that followed them, *id.* ¶¶ 3–4, 7; and every step in the scheduling history that Amazon calls delay, *id.* ¶¶ 5–6, 8–9. Mr. Teman's sworn account was not before the Court on the opening motion. It is before the Court now, and it answers the factual premises on which Amazon's pretext argument depends.

## III. THE RECORD ESTABLISHES A MEANINGFUL BURDEN, INCLUDING ON AMAZON'S OWN EVIDENCE.

**A. Two examining physicians against one non-examining physician.**

Dr. Amit Wolfovitz examined Mr. Teman on April 24, 2025 and again on November 3, 2025. Ex. J. Dr. Yisgav Shapira examined him on August 13, 2026. Ex. A. Both are otologists: Dr. Shapira's letterhead identifies him as an ENT surgeon specializing in otology-neurotology, Ex. A at 3, and Dr. Wolfovitz's identifies him as a specialist and surgeon in ear, nose and throat and head-and-neck surgery and a specialist in otology-neurotology, Ex. J at 2, 4. [redacted]

The limits of his opinion are stated in the declaration itself. His central conclusion is conditioned on an examination he did not conduct: [redacted]

**B. Amazon's expert forecloses its own "no objective findings" argument.**

[redacted]

[redacted]

**C. Amazon asks the Court to require medication or surgery as the price of a deposition.**

[redacted] That is Amazon's proposal for how a plaintiff should prepare for a deposition. [redacted] The absence of authority is itself the answer: the burden Amazon proposes to impose is a meaningful one by any measure.

**D. Amazon's expert supplies the treatment timeline, not a denial of it.**

[redacted]

Two features of Dr. Kohan's account are local to New York. [redacted] *Id.* ¶ 30. Mr. Teman is treated in Israel under his Israeli health fund. Teman Decl. ¶¶ 5, 8. [redacted] describes his Manhattan practice, not the public hospital treating Mr. Teman. Mr. Teman did not choose July 19, 2027. [redacted] Teman Decl. ¶ 9. Amazon is correct that the date is for an examination rather than for the procedure, Opp. 6, but draws the wrong inference. A patient assigned the first available slot in a public hospital system has not "render[ed] himself unavailable for the foreseeable future," Opp. 2; he has been placed in a queue he does not control.

**E. The record refutes the premise that Mr. Teman sat on his hands.**

Amazon's argument that Mr. Teman's "delay in seeking treatment shows he is not really facing imminent medical hardship," Opp. 14, fails in light of the Teman Decl. submitted herewith. As Mr. Teman explains, an Israeli national identity number is required to enroll in a health fund and receive non-emergency care in the public system. Teman Decl. ¶ 5. Mr. Teman received his identity card on or about June 24, 2026. *Id.* But even before he had received the card, he took proactive steps to schedule the procedure at issue here. [redacted] The clinic told him that Dr. Shapira sees patients on limited days and that the earliest appointments were weeks out, and on or about June 28 advised him that any pre-operative procedure required a prior clinic visit. *Id.* He booked the earliest consultation offered,

confirmed on or about July 1 for August 13, and paid the clinic's 1,200 NIS private fee. *Id.*; Quainton Decl. Ex. B at 2, 4. He completed the health-fund intake required before he could see a specialist under his coverage on or about August 19, and submitted Dr. Shapira's referral to Sheba. Teman Decl. ¶ 8; Quainton Decl. Ex. H. Sheba assigned the July 19, 2027 examination the next day. Teman Decl. ¶ 9; Quainton Decl. Ex. I. The change of treating physician has an equally ordinary explanation: Dr. Wolfovitz left Israel, and his office referred Mr. Teman to Dr. Shapira. Teman Decl. ¶ 4.

Dr. Kohan undercuts the delay theory from the other side. [redacted]

**F. [redacted]**

[redacted]. But as part of its overall balancing the Court can consider the pain Mr. Teman would unnecessarily suffer if he is forced to undergo international travel for an in-person deposition whose costs GateGuard has offered to cover.

## IV. <u>THE PRETEXT AND CHARACTER ARGUMENTS DO NOT ANSWER THE QUESTION THE COURT ASKED.</u>

### A. ECF No. 368 called for a burden showing, not a fugitivity adjudication.

Much of Amazon's opposition is devoted to Mr. Teman's criminal case, his citizenship application, his prior scheduling requests, and a catalogue of conduct Amazon considers offensive. Opp. 3–4, 15–20. But Amazon misses the mark with this focus. The Court's Order

asked whether travel imposes a meaningful burden. A finding that Mr. Teman is a fugitive in a criminal case before another judge would not make the flight less painful, and Amazon does not argue that it would. Its pretext theory is an invitation to deny relief on grounds of character.

**B. The prior orders decided different questions on different records.**

Amazon relies on four rulings. Opp. 14–15, 17. None decided the question before this Court, and none had before it the medical record that is before this Court now. Judge Engelmayer's April 17, 2025 order fixed a deadline for Mr. Teman to return to the United States as a condition of supervised release. *United States v. Teman*, No. 19 Cr. 696, ECF No. 531 (S.D.N.Y. Apr. 17, 2025). The order did call the medical claim then before it pretextual, *id.* at 7, and Amazon quotes that passage. Opp. 16–17. But the order also records what that claim rested on: an internist's letter and other paperwork that, in the Court's words, "did not include any assessment by a relevant specialist, like an otolaryngologist," and that the independent medical expert retained in that proceeding found "does not allow a definitive answer as to whether Mr. Teman can fly safely at this time." ECF No. 531 at 6–7. [redacted]

The September 10, 2025 order stayed consideration of a pro se motion under the fugitive disentitlement doctrine because Mr. Teman had not returned as ordered, ECF No. 575 at 1–2, and the Second Circuit dismissed the criminal appeal on the same doctrine. *United States v. Teman*, No. 24-345, ECF No. 84.1 at 1–2 (2d Cir. Oct. 6, 2025) (mandate issued Oct. 30, 2025).

The Second Circuit's order states that the panel "agree[d] with the district court" that the medical reason offered for not returning was pretextual; it identifies no medical evidence and makes no finding of its own about Mr. Teman's condition. *Id.* at 2. Judge Caproni's November 17, 2025 endorsement, entered on a letter submitting declarations in an action dismissed that day for failure to prosecute, described Mr. Teman's representation about his illness as one that "Judge Engelmayer and the Second Circuit have already dismissed as a pretext," and called it "yet another fabrication." *GateGuard, Inc. v. Goldmont Realty Corp.*, No. 20 Civ. 1609, ECF No. 216 at 2 (S.D.N.Y. Nov. 17, 2025). The endorsement cites no medical record. Its sole citation is to ECF No. 579 in the criminal case, which is the Second Circuit's mandate, at the page on which the panel stated its agreement with the district court. On their face, then, the later rulings adopt the April 2025 assessment rather than make an independent one, and the April 2025 assessment was made on a record that lacked a specialist. None of the four discusses Dr. Wolfovitz's April 2025 examination, none could have considered Dr. Shapira's, which had not occurred, and none asked whether a civil deposition could be taken by videoconference or in person in Tel Aviv. The question under Rule 26(c) is not whether Mr. Teman has complied with the conditions of his supervised release. It is whether requiring him to fly to New York, when his testimony can be taken now by other means, imposes a meaningful burden.

The "by boat" suggestion, which Amazon repeats, Opp. 14, illustrates the point. Whether Mr. Teman could cross the Atlantic by ship to satisfy a return condition in his criminal case is not the question under Rule 26(c). The question is whether requiring him to travel to New York for a deposition that can be taken by videoconference or in person in Tel Aviv imposes a meaningful burden. A two-week sea voyage each way imposes one.

**C. Amazon's own practice in this case undercuts its prejudice argument.**

Amazon argues that only a live deposition can serve its need to assess credibility. Opp. 17–19. Its practice in this action has been otherwise. Amazon noticed and took the deposition of David Teman, GateGuard's witness located in Israel, by videoconference, beginning at 7:10 a.m. Eastern Time to accommodate the time difference. Quainton Decl. Ex. G, tab G-9; Ex. C; Opp. 10 ("Amazon took this deposition remotely, starting the examination at 7:10 a.m. Eastern Time."). Amazon now describes that witness as "minor" and the accommodation as one made "for the convenience of counsel and the witnesses." Opp. 19. Amazon's own Rule 30(b)(6) designee was examined by videoconference. Ex. G, tab G-1. The one deposition in this action taken in person was that of GateGuard's former chief executive, a Florida resident with no medical obstacle, at Amazon's insistence. Ex. G, tab G-10; Opp. 10. GateGuard did not object, because there was no burden to object to.

Amazon's footnote makes GateGuard's point. It argues from *Alpha Capital* that "the party taking the deposition may choose remote means." Opp. 18 n.5. *Alpha Capital* concerns the noticing party's convenience; it has nothing to say once the deponent has shown a meaningful burden, and *Packard* applied *Alpha Capital* to grant the deponent's cross-motion for a remote deposition over the noticing party's objection. *Packard*, 326 F.R.D. at 68.

Nor does Amazon explain what it could learn about Mr. Teman's credibility in a Gibson Dunn conference room in New York that it cannot learn on a screen with a court reporter, a videographer, and counsel present, or in a conference room in Tel Aviv. The cases it cites for the proposition that credibility "necessitates an in-person deposition," Opp. 18–19, *Kiss v. Kenny*, 2025 WL 1532744 (S.D.N.Y. May 29, 2025), and *Arora v. Standard Chartered Bank*, 2026 WL 810387 (S.D.N.Y. Mar. 23, 2026), involved no showing of physical burden comparable to the

one here. In *Kiss*, the plaintiff's psychiatric records were "silent regarding Plaintiff's alleged need for a remote deposition or any possible harm he would sustain from attending an in-person deposition." *Kiss*, 2025 WL 1532744, at *1. Indeed, in *Arora*, the defendants asserted that they were open to an in-person deposition, which the plaintiff rejected. *Arora*, 2026 WL 810387, at *2. *Eletson Hldgs., Inc. v. Levona Hldgs., Ltd.*, 2025 WL 1950728 (S.D.N.Y. July 16, 2025), also cited by Amazon, Opp. 18, provides no support for Amazon's minimization of Mr. Teman's documented medical condition or for its rejection of his offer of a standard video deposition or an in-person deposition in Tel Aviv. In *Eletson*, the deponents "offered no good cause" of any kind for a remote deposition from Greece, and all three had appeared in person in New York for the arbitration and the related bankruptcy proceedings. *Eletson*, 2025 WL 1950728, at *2 (citing *Balk v. New York Institute of Technology*, 974 F. Supp. 2d 147, 157–58 (E.D.N.Y. 2013) (key witness could be compelled to appear in the United States for a deposition because, *inter alia*, he had recently appeared in the United States for other litigation-related reasons)).

With respect to the remote deposition, the court was concerned with a deponent who "logs into a remote deposition without counsel or a court reporter physically present in the same room." *Id.* at *2. GateGuard has no objection to any protocol that addresses the concern raised in *Eletson*: a court reporter and videographer physically present with Mr. Teman, a live camera during breaks, screen-shared exhibits, and the administration of the oath by an officer in the room. Those are conditions the Court can impose, as it did in *Packard*, 326 F.R.D. at 68.

With respect to in-person depositions in Greece, the court was concerned with the logistics of managing three separate depositions of intervenors who had voluntarily inserted themselves into the New York proceedings to defend an arbitration award but then sought to avoid appearing in New York on the motion to vacate it. *Id.* at *3. [redacted]

[redacted] Moreover, managing a single witness by videoconference would not impose the kind of logistical burden involved in overseeing depositions of three separate witnesses that concerned the court in *Eletson*.

## V. <u>THE RELIEF SOUGHT.</u>

GateGuard's motion is not a request to excuse Mr. Teman from testifying. He has offered to testify, and he offers again. Teman Decl. ¶ 10. The dispute is over the manner and place of the examination.

### A. The depositions should proceed by videoconference or in person in Tel Aviv.

1. <u>Videoconference</u>. Rule 30(b)(4) authorizes the Court to order that a deposition "be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). A videoconference deposition is the accommodation this Court's cases prefer where the deponent has shown burden, *Packard*, 326 F.R.D. at 68; it is the mode Amazon itself chose for the other Israel-based witness in this action, Ex. G, tab G-9; and it imposes no cost on Amazon that an in-person deposition would not. GateGuard will bear the cost of the videoconference platform and of a court reporter and videographer present with Mr. Teman in Tel Aviv, and will make him available for the individual and Rule 30(b)(6) depositions on any dates Amazon selects. Teman Decl. ¶ 10.

2. <u>Tel Aviv</u>. On August 10, 2026, GateGuard offered, in writing, to make Mr. Teman available in person in Tel Aviv with GateGuard bearing the cost of the venue, the court reporter, the videographer, technical support, and Amazon's counsel's reasonable travel and accommodation. Quainton Decl. ¶¶ 4–6; Ex. D. Amazon did not accept that offer, did not counter it, and on August 17 told GateGuard that it rejected a remote deposition and questioned

whether GateGuard could pay for one in Tel Aviv. Salant Decl. ¶¶ 22–24. Amazon now calls the offer "false." Opp. 3, 19.

GateGuard reaffirms that offer. Amazon's estimate that a Tel Aviv deposition would cost $20,000 to $40,000 is counsel's own, Salant Decl. ¶ 23. It is supported by no quotation, invoice, or vendor declaration, and it prices a different trip from the one GateGuard offered: two attorneys rather than the one examining attorney whose travel GateGuard undertook to pay, shipped boxes of exhibits that electronic exhibits make unnecessary, and two days of stenographer and videographer at New York rates. Ex. D. GateGuard's offer covered the venue, the court reporter, the videographer, technical and interpretation support, and the reasonable travel and accommodation of Amazon's examining counsel, and GateGuard stands ready to bear those costs. Amazon's response is to quote a remark that GateGuard "has no money." Opp. 3, 9, 19–20; Salant Decl. ¶¶ 20, 23. By Amazon's own account, that remark was made on a July 22, 2026 call about Amazon's request that GateGuard pay the stenographer and videographer costs of the June 2026 depositions Mr. Teman missed, Salant Decl. ¶¶ 18–20, nearly three weeks before any Tel Aviv proposal existed. It was not a statement about the offer GateGuard made on August 10. Amazon did not accept the offer, did not counter it, and put forward an estimate of $20,000 to $40,000, unsupported by any quotation or invoice, for a trip it asserts, on the same footing, GateGuard cannot afford. Here again the double standard Amazon would have the Court apply is striking: Amazon demands sworn support for GateGuard's medical showing while offering nothing beyond counsel's own estimate for its assertion about the cost of two depositions in Tel Aviv.

**B. There is no request for postponement, and no "end date" is needed.**

Amazon argues that GateGuard seeks relief "without specified end date," citing *Soft Drink, Brewery Workers & Delivery Employees Local 812 v. Ulrich*, 2021 WL 2227921 (S.D.N.Y. June 1, 2021), Opp. 14. The deponent there, a pro se litigant recovering from a concussion, asked for "indefinite relief" from sitting for a deposition at all. *Soft Drink*, 2021 WL 2227921, at *2, *4. The court denied the indefinite postponement, set dates certain, and ordered that the deposition "proceed by video," from the deponent's home, with reduced hours and "frequent and, if necessary, extended breaks," "in light of his medical conditions." *Id.* at *4. The comparison fails at the first step. GateGuard does not ask that Mr. Teman's depositions be postponed at all, to any date. It asks that they proceed now, by videoconference or in person in Tel Aviv, on dates Amazon selects. Teman Decl. ¶ 10. *Soft Drink Workers* did not deny a remote deposition. It ordered one.

Amazon's account of the July 2026 discussions does not change that analysis. Salant Decl. ¶¶ 14–15. [redacted] *Id.* ¶¶ 13–14; Ex. A. The stipulation was never executed or filed, and within a week the parties were before the Court on Amazon's letter seeking in-person depositions. ECF Nos. 361, 365, 368. [redacted] A date proposed before the medical facts were known is not a concession that the medical facts do not exist.

GateGuard does not ask the Court to hold the depositions open until Mr. Teman's treatment is complete. It asks the Court to let them proceed while it is pending. Only if the Court

is unwilling to grant Mr. Teman the reasonable accommodation he has proposed, should the Court defer the deposition until a reasonable date after Mr. Teman's surgery has been performed. Indeed, in asserting that Mr. Teman is asking for open-ended relief when he has clearly indicated his willingness and ability to be deposed immediately, Amazon reveals its true strategy: impose an undue burden on Mr. Teman and when he cannot safely overcome the burden, move to dismiss the case. That strategy is not consonant with the need to balance prejudice and hardship; it tips the scales unnecessarily in favor of the stronger party. GateGuard submits the Court should take a more reasonable, balanced approach and permit the depositions to proceed by videoconference or in person in Tel Aviv, now, without further delay.

## **CONCLUSION**

For the foregoing reasons, GateGuard respectfully requests that the Court grant its motion and direct that the depositions of Mr. Teman, individually and as GateGuard's Rule 30(b)(6) designee, proceed by videoconference on dates to be selected by Defendants, with a court reporter and videographer present with the witness and such further conditions as the Court deems appropriate, or, at Defendants' election, in person in Tel Aviv on the terms set forth in Exhibit D to the Quainton Decl. and ¶ 10 of the Teman Decl., and grant such other relief as the Court deems just.

Dated: New York, New York
September 8, 2026

QUAINTON LAW, PLLC

By: */s/ Eden P. Quainton*
Eden P. Quainton, Esq.
2 Park Avenue, 20th Floor
New York, New York 10016

*Attorneys for Plaintiff GateGuard, Inc.*