UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
GATEGUARD, INC. :

: REPORT AND RECOMMENDATION
Plaintiff, 21 Civ. 9321 (JGK) (GWG)
:
-v.-
:

AMAZON.COM INC. et al., :

:
Defendants.
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff GateGuard, Inc., brought this suit against Amazon.com Inc., Amazon.com Services Inc., Amazon.com Services, LLC, Amazon Logistics, Inc., and Ring LLC (collectively "Amazon"), alleging, inter alia, misappropriation of trade secrets, computer fraud, and various claims in tort. Ari Teman now moves to intervene as a plaintiff to protect what he asserts are his personal brand, reputation, and intellectual property rights.[1] He also moves to intervene to assert privilege over the production of certain documents.[2]

---

[1] See Motion to Intervene, filed Mar. 19, 2026 (Docket # 312) ("Mem."); Memorandum of Law in Opposition, filed April 10, 2026 (Docket # 319) ("Opp."); Declaration of David Salant, filed Apr. 10, 2026 (Docket # 320) ("Salant Decl."); Reply Memorandum of Law in Support, filed Apr. 13, 2026 (Docket # 321) ("Reply"); Reply Memorandum of Law in Opposition, filed May 15, 2026 (Docket # 341) ("Surreply"); Reply in Further Support, filed June 10, 2026 (Docket # 344) ("Teman Surreply"); Declaration of Ari Teman, dated Sept. 25, 2026 (Docket # 393-1), annexed as Ex. 1 to Letter from Eden Quainton, filed Sept. 25, 2026 ("Teman Decl.").

[2] See Motion of Non-Party Ari Teman for Protective Order, dated Mar. 18, 2026 (Docket # 311); Letter from David P. Salant, dated Mar. 26, 2026 (Docket # 315); Letter from Ari Teman, dated Mar. 26, 2026 (Docket # 316); Plaintiff-Intervenor's Supplemental Letter in Support, dated Apr. 20, 2026 (Docket # 324); Letter from Ari Teman, dated Apr. 30, 2026 (Docket # 334). We note that Docket # 325 appears to be a duplicate of Docket # 324; Memorandum of Law in Opposition, filed Nov. 3, 2026 (Docket # 406).

For the reasons stated below, both of Teman's motions to intervene should be denied.

## I. BACKGROUND AND RELEVANT PROCEDURAL HISTORY

GateGuard manufactures and sells intercom and access control devices for multifamily residential buildings. Second Amended Complaint, filed Aug. 19, 2025 (Docket # 223) ("Compl.") ¶¶ 4–7. GateGuard alleges that Amazon has engaged in a campaign to tamper with GateGuard's intercom devices and steal its trade secrets. Id. ¶¶ 1–15. As part of Amazon's alleged scheme, Amazon secretly installed its competing product, "Key for Business," at buildings using the GateGuard product and "destroyed, damaged, and interfered with the proper operation of GateGuard's" devices. Id. ¶ 21. GateGuard also alleges that Amazon "illegally acquired" one of its devices to study its technology and improve Amazon's competing product. Id. ¶¶ 12, 140–42.

Ari Teman is GateGuard's founder, majority owner, and current Chief Executive Officer ("CEO"). See Teman Surreply at 2; see also GateGuard v. Goldmont, No. 20. Civ. 1609 (VEC), ECF No. 216, at 2 (S.D.N.Y. Nov. 17, 2025) (Teman "owns over 95% of [GateGuard's] shares."); Teman Decl. ¶ 9. He allegedly developed the intercom devices at issue here. Compl. ¶ 179. Teman attaches to his motion a proposed complaint in which he asserts that "[t]he brand name 'teman' is visibly and unmistakably displayed on both the digital interface and the physical casing of the intercom units." See Proposed Complaint-in-Intervention (Docket # 312 at *8–*22) ("Proposed Compl."), ¶ 14.

On November 10, 2021, GateGuard filed this action against Amazon. See Complaint, filed Nov. 10, 2021 (Docket # 1). Teman has since played an active role in the litigation. He has

submitted multiple declarations in support of GateGuard's motions,[3] conducted document collection and review for GateGuard,[4] and has communicated with Amazon on behalf of GateGuard to discuss settlement and other litigation related issues.[5] See also Opp. at 4–5. GateGuard has described Teman as "the person with the greatest knowledge about GateGuard and the claims brought in this litigation." Declaration of Eden Quainton, dated Mar. 27, 2024 (Docket # 169), ¶ 2. In 2023, Teman was convicted of wire fraud and bank fraud and then incarcerated. Opp. at 1. Following his incarceration, Teman was cited for violating the terms of his supervised release, failed to appear at an arraignment for that violation, and has been declared a fugitive. See Teman v. United States, 2025 WL 1883920, at *1 (S.D.N.Y. July 8, 2025); Opp. at 6.

On March 18, 2026, Teman filed one of the two motions to intervene now before the Court. In the first motion, Teman seeks to intervene in order to assert privilege over documents that were previously ordered to be produced. See Motion of Non-Party Ari Teman for Protective Order, dated Mar. 18, 2026 (Docket # 311) ("Protective Mot."). The factual background for that motion is discussed further below.

On March 19, 2026, Teman filed a second motion to intervene, in which he seeks to intervene as a plaintiff either as of right under Rule 24(a) of the Federal Rules of Civil Procedure

---

[3] See Declaration of Ari Teman in Opposition to Motion to Dismiss, filed May 9, 2022 (Docket # 23-1); Declaration of Ari Teman in Support of Discovery Sanctions, filed June 10, 2024 (Docket # 178); Declaration of Ari Teman in Support of Motion to File Second Amended Complaint, filed June 28, 2024 (Docket # 198); Declaration of Ari Teman in Opposition to Motion to Compel GateGuard, filed Aug. 26, 2024 (Docket # 227).

[4] See Champion Letter, dated Jan. 3, 2024, annexed as Ex. 1 to GateGuard's Letter Motion in Opposition (Docket # 135-1) at 12 ("GateGuard said . . . Teman was doing the document collection and review work.").

[5] See Ari Teman Emails, filed Apr. 10, 2026, annexed as Ex. F to Salant Decl. (Docket # 320-6).

or by permission under Rule 24(b). See Motion to Intervene, filed Mar. 19, 2026 (Docket # 312). This motion annexes a proposed complaint in which Teman incorporates the allegations set forth in GateGuard's complaint, see Proposed Compl. ¶ ¶ 58–60, and additional claims that Amazon has harmed the Teman brand by "physically alter[ing], reverse-engineer[ing], and destroy[ing]" the GateGuard devices that bore Teman's name. Proposed Compl. ¶ 55.

On the same day Teman moved to intervene as a plaintiff, he filed a motion for a preliminary injunction. See (Docket # 313). That motion was denied "without prejudice because his motion to intervene has not been granted." See Order, dated March 20, 2026 (Docket # 314).

## II. LEGAL STANDARDS

Rule 24 of the Federal Rules of Civil Procedure permits a party to intervene in ongoing litigation as of right or by permission of the court. Under Rule 24(a), to intervene as of right an applicant must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." In re N.Y.C. Policing during Summer 2020 Demonstrations, 27 F.4th 792, 799 (2d Cir. 2022) (quoting "R" Best Produce. Inc. v. Shulman-Rabin Mktg. Corp., 467 F.3d 238, 240 (2d Cir. 2006)). "Failure to satisfy any one of these requirements is sufficient grounds to deny the application." Kamdem-Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (quoting Authors Guild v. Google, Inc., 2009 WL 3617732, at *1 (S.D.N.Y. Nov. 4, 2009)).

Under Rule 24(b), "on timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Courts typically consider the same four factors whether a motion for intervention is 'of right' . . . or 'permissive,'" Peterson v. Islamic Republic of Iran, 290 F.R.D.

54, 57 (S.D.N.Y. 2013), but "[t]he principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Ferguson v. Ruane Cuniff & Goldfarb Inc., 2019 WL 1434435, at *5 (S.D.N.Y. Mar. 29, 2019) (quotations and citation omitted). Ultimately, permissive intervention is "wholly discretionary with the trial court." U.S. Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978).

## III. DISCUSSION

### A. Predicate Issues

Before considering the merits as to both of Teman's motions, we address: (1) whether Teman's motion to intervene as a plaintiff should be denied as an attempt to circumvent the corporate representation requirement, (2) whether both motions should be denied under the fugitive disentitlement doctrine, and (3) whether both motions should be denied because they are untimely.

#### 1. Corporate Representation Requirement

Amazon contends that Teman's motion to intervene as a plaintiff should be denied because it is an attempt to circumvent 28 U.S.C. § 1654, the source of the rule that corporations must appear by counsel. See Opp. at 15. As the Second Circuit has explained, intervention may not be used to circumvent "the longstanding rule that a corporation may appear in a federal court only through its lawyer." Jacobs v. Pat. Enf't Fund, Inc., 230 F.3d 565, 569 (2d Cir. 2000). As a result, courts have routinely denied motions to intervene where "the proposed intervenor is closely involved in the corporation's affairs as an officer or principle" because "the connection between them is so intimate that intervention is in effect an effort to enable the corporation to appear without counsel." Rsch. Found. for State Univ. of N.Y. v. Telluric Labs, LLC, 2023 WL

8472911, at *6 (E.D.N.Y. Sept. 18, 2023) (collecting cases) (punctuation and citation omitted), adopted, 2023 WL 7919972 (E.D.N.Y. Nov. 16, 2023). Given how closely involved Teman is with GateGuard, Amazon makes a strong argument that the Court should deny Teman's motion on these grounds. Opp. at 15–16. But circumstances have changed since Amazon's brief was filed. While at the time its motion was filed GateGuard was without counsel, GateGuard has now retained counsel. Accordingly, we cannot find on the current record that the motion will have the effect of avoiding the corporate representation requirement.

2. Fugitive Disentitlement Doctrine

The fugitive disentitlement doctrine is an equitable doctrine that gives courts discretion to bar fugitives from judicial relief. There are four independent justifications for disentitlement: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 281 (2d Cir. 1997) (citing Bar-Levy v. U.S. Dep't of Justice, 990 F.2d 33, 35 (2d Cir. 1993)). The Supreme Court has "clarified the scope of the disentitlement doctrine by expressly requiring a nexus between fugitivity and the [current] proceedings." Empire Blue Cross & Blue Shield, 111 F.3d at 280–81 (citing Ortega-Rodriguez, 507 U.S. 234, 242–48 (1993)). The Eleventh Circuit has distilled a three-part test for the application of the doctrine, which we find useful here. As it stated in Magluta v. Samples, 162 F.3d 662 (11th Cir. 1998), "the dismissal of a civil action on fugitive disentitlement grounds requires that (1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court . . . is

necessary to effectuate the concerns underlying the fugitive disentitlement doctrine." Id. at 664 (citing Degen v. U.S., 517 U.S. 820, 829 (1996)).

Here, Teman is a "fugitive." United States v. Teman, 2025 WL 4671324, at *1 (2d Cir. Oct. 6, 2025) (summary order). On that basis alone, Amazon contends that Teman "cannot fairly ask for this Court's consideration and discretion when he has absconded from the justice of this District." Opp. at 8. But the Supreme Court in Ortega-Rodriguez, rejected this broad argument; explaining that to deny a party relief based solely on their status as a fugitive rests on the "faulty premise that any act of judicial defiance, whether or not it affects the appellate process, is punishable." 507 U.S. at 250. Instead, Ortega-Rodriguez emphasized that "the justifications we have advanced for allowing [a court] to dismiss" a proceeding (in the case of Ortega-Rodriguez, an appeal) "all assume some connection between a defendant's fugitive status and the [court] process," and that connection must be sufficient to make the dismissal or other sanction "a reasonable response." Id. at 244.

Such a connection is what has impelled other courts in this district to rely on the fugitive disentitlement doctrine to dismiss or stay actions brought by Teman. See, e.g., Teman v. Biale, 2025 WL 2968035, at *1 (S.D.N.Y. Oct. 21, 2025) (action was stayed because Teman "is a fugitive from justice in the relevant criminal case from which his claims in this case allegedly arise"); GateGuard v. Goldmont, No. 20. Civ. 1609 (VEC), ECF No. 216, at 2 (S.D.N.Y. Nov. 17, 2025) (action dismissed because Teman chose to remain a fugitive at large rather than appearing in the U.S. for his scheduled arbitration); Teman v. U.S. Prob. Serv., 2025 WL 1883841, at *1 (S.D.N.Y. July 8, 2025) (staying Teman's Section 1983 and Bivens actions where his claim for relief was based on "conduct of the Justice Department and the Probation Department in connection with his term of supervised release"). Here, no such nexus currently exists as

Teman's fugitive status concerns an unrelated fraud conviction and has yet to cause Teman to violate orders from this Court.

Accordingly, Teman's motion will not be denied on the basis of his fugitive status at this time.

3. Timeliness of Motion to Intervene as Plaintiff

Under both Rule 24(a) and Rule 24(b), "the threshold inquiry is whether the application for intervention is timely." Kamdem-Ouaffo, 314 F.R.D. at 134. When assessing timeliness under Rule 24, courts consider: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." In re Bank of N.Y. Derivative Litig., 320 F.3d 291, 300 (2d Cir. 2003) (quoting United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)). Ultimately, "'[t]he length of time the applicant knew or should have known of his interest before making the motion' is '[a]mong the most important factors' to be considered in determining timeliness." Kamdem-Ouaffo, 314 F.R.D. at 134 (quoting Catanzano ex rel. Catanzano v. Wing, 103 F.3d 223, 233 (2d Cir. 1996)).

Teman contends that his interest in intervening and filing his proposed complaint derives from the need to protect the "Teman brand" and related intellectual property rights. Reply 3–4. But these interests have been apparent since this litigation began on November 10, 2021, more than four years before he filed the instant motion to intervene. At the time the litigation began, Ari Teman was Chief Executive Officer of GateGuard, see Teman Decl. ¶ 3, and obviously had notice of litigation he himself authorized. Furthermore, as already described, he has actively participated in this litigation by filing sworn statements and responding to discovery. The delay

of more than four years that has occurred here is well beyond what this Circuit has considered timely. See, e.g., In re Holocaust Victim Assets Litig., 225 F.3d 191, 198–99 (2d Cir. 2000) (eight-month delay was untimely); Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 182–83 (2d Cir. 2001) (thirteen month delay was untimely); MasterCard Int'l Inc., 471 F.3d at 390–91 (five month delay was untimely).

Teman asserts that his motion is timely because he filed it "promptly upon learning, through recent discussions with newly engaged counsel for GateGuard, that his personal intellectual property and reputational interests had been placed at issue in the litigation." Mem. at 4. One relevant circumstance "for determining timeliness is when the intervenor became aware that its interest would no longer be adequately protected by the parties." Chen-Oster v. Goldman, Sachs & Co., 2015 WL 4619663, at *6 (S.D.N.Y. Aug. 3, 2015) (quoting Legal Aid Society of Alameda County v. Dunlop, 618 F.2d 48, 50 (9th Cir. 1980)). Teman identifies various "relevant triggers" including "discovery revealing Defendants' treatment of 'Teman' devices," and Amazon's "escalation of personal attacks." Reply at 6.[6]

But these "triggers" fail to explain what has occurred since this litigation began over four years ago that has created an interest relevant to the claims in Teman's proposed complaint that he was not already aware of. No amount of discovery was necessary for Teman to recognize that his brand and intellectual property would be placed at issue in a litigation that revolved around a device he created and affixed with his brand's name. Meanwhile, Amazon's personal attacks have no relationship to the interests that Teman asserts with respect to the relief sought in his

[6] Teman also references as triggers "the realization that prior counsel failed to protect rights," and "the disclosure and use of privileged materials." Reply at 6. Given the lack of further explanation, we view these as bearing on the issue of Teman's interest in intervening to seek a protective order to prevent disclosure of materials he asserts a personal privilege over. That motion to intervene is discussed in the next section.

proposed complaint. Thus, Teman fails to provide any justification for his decision to wait until these "triggers" occurred before intervening.

As to prejudice, Amazon contends that Teman's delay in seeking to intervene will substantially prejudice it. Opp. at 10, 14. In support, Amazon explains that permitting Teman to intervene will result in "significant costs and time delay required to move to dismiss Teman's complaint-in-intervention, respond to Teman's fact discovery requests, issue fact discovery requests to Teman, prepare Amazon's witnesses for new or repeated depositions, depose Teman's witnesses, and engage in additional expert discovery." Opp. at 14 n.5. Teman fails to provide a substantive response to Amazon's concerns. Instead, Teman dismisses them outright, claiming that Amazon "identifies no prejudice whatsoever." Teman Surreply at 2. But the specific prejudices Amazon identifies in its brief are significant and, given the lack of showing by Teman as to why they should not be considered, weigh in Amazon's favor. Moreover, Amazon's concerns are well-founded given that this case has been ongoing for over four years and discovery has already closed with the exception of Teman's deposition. Permitting an intervenor at this late stage would therefore cause substantial disruption, expense, and delay. See, e.g., John Wiley & Sons, Inc. v. Book Dog Books, LLC, 315 F.R.D. 169, 173 (S.D.N.Y. 2016) ("[W]here a grant of a motion to intervene would require further discovery, a court may properly deny the motion" for prejudicing the existing parties.) (citation omitted); E.E.O.C. v. Birchez Assocs., LLC, 2021 WL 1115513, at *2 (N.D.N.Y. Mar. 24, 2021) (permitting new claims and parties eighteen months after case commenced would "substantially broaden this litigation" and "necessarily delay discovery," thus causing "substantial prejudice to defendants").

Teman does little to show that he will be prejudiced if intervention is denied. Teman contends that without intervention "no party will be left to defend the Teman brand,"

"defendant's alleged conduct will never be adjudicated," and his "rights will be lost through procedural collapse." Reply at 6. These are mere generalities, however, and in the absence of any specifics carry no weight.

Lastly, no unusual circumstances justify excusing Teman's delay. To the extent Teman believes that his delay should be excused because he "was incarcerated during key periods," Reply at 7, this does not justify his belated attempt to intervene. As already discussed, Teman was on notice of his interest in this litigation before GateGuard filed its complaint in November 2021. But Teman was not incarcerated until October 10, 2023, see United States v. Teman, 2025 WL 296330, at *1 (S.D.N.Y. Jan. 24, 2025) — more than two years later. Also, almost two years elapsed between the time Teman was released from prison on May 14, 2024 (according to Teman, see Docket # 393-1 ¶ 4) and the date he filed the instant motion to intervene on March 19, 2026.

In the end, every factor weighs in favor of finding that Teman's motion to intervene should be denied on the ground that it is untimely.

4. Timeliness of Motion to Intervene to Protect Privilege

a. Factual Background

The parties began discussing the proper scope of Amazon's document production requests in June 2023 at the latest. See Letter from David Salant, filed July 14, 2023 (Docket # 55) at 1 n.1; see also Letter from Eden P. Quainton, filed July 16, 2023 (Docket # 56) at 1. Ultimately, the parties agreed on search terms for the document requests, and as Quainton later explained, "Amazon's ESI search terms" — apparently referring to search terms the parties had agreed to — "had swept up privileged documents from Ari Teman's criminal case, as well as two separate civil cases." Motion for Reconsideration, dated Mar. 18, 2024 (Docket # 163) at 5. In

November and December 2023, GateGuard produced documents to Amazon, including the personal emails that were purportedly privileged, although GateGuard failed to provide a corresponding privilege log. See Order, dated Mar. 5, 2024 (Docket # 155) ("Privilege Order") at 1. As a result, Amazon requested a ruling that privilege had been waived. See Letter from David Salant, filed Jan. 16, 2024 (Docket # 91). In opposition to this request, GateGuard produced a limited "Clawback list" — addressing the Teman emails it had inadvertently produced to Amazon but was seeking to claw back — and explained that given the sheer volume of documents, it was still working on a full privilege log. See Letter from Eden P. Quainton, filed Feb. 23, 2024 (Docket ## 128; 128-2) ("Feb. 23 Letter"). Every item on the Clawback list consisted of communications with Ari Teman over which attorney-client privilege was asserted. See Clawback list, filed Feb. 23, 2024, annexed as Ex. B to Feb. 23 Letter (Docket # 128-2 at 4).

At a subsequent conference in front of Judge Figueredo, GateGuard committed to producing a privilege log by March 1, 2024. See Order, dated Feb. 28, 2024 (Docket # 140) at 1. After GateGuard missed this deadline without good cause, Judge Figueredo ruled that GateGuard's failure to timely produce a privilege log constituted a waiver of the privilege. See Privilege Order at 2. In a subsequent order, Judge Figueredo ruled that GateGuard was required to "produce responsive documents withheld [from the November and December 2023 production] based on an assertion that the documents are protected by the attorney-client privilege." See Order, dated July 16, 2024 (Docket # 210) at 2.

In GateGuard's papers in support of its unsuccessful motion for reconsideration of Judge Figueredo's March 1 order, GateGuard indicated that it had produced the full privilege log on March 6, 2024. See Motion for Reconsideration, filed Mar. 18, 2024 (Docket # 163) at 2. The privilege log shows that the withheld documents concern a vast amount of allegedly privileged

communications involving Ari Teman. See Privilege Log, filed Mar. 18, 2024, annexed as Ex. B to Declaration of Eden P. Quainton, filed March 19, 2024 (Docket # 165-1).

In July 2024, the parties stipulated to a stay of discovery, though the stay did not apply to "GateGuard's anticipated objection to the Court's privilege waiver rulings." See Stipulation and Order, dated July 24, 2024 (Docket # 213), ¶¶ 1, 3. After the stay ended, Judge Figueredo ruled on February 11, 2026, that GateGuard had until March 30, 2026, to "produce the previously withheld documents over which the Court concluded [in its March 5, 2024, order] that GateGuard had waived any assertion of privilege." See Order, dated Feb. 11, 2026 (Docket # 304). On March 18, 2026, Teman filed the instant motion to intervene for the purpose of asserting his personal privilege over the documents GateGuard had already produced and was now ordered to produce. See Protective Mot. Because at that time counsel for GateGuard was seeking to be relieved, the Court ultimately ordered the privileged documents to be filed on the docket in sealed form. See Order, dated Apr. 24, 2026 (Docket # 326). The documents now appear in sealed form at Docket ## 349–54.

b. Discussion

GateGuard is the source of the production of all the documents at issue. It is thus clear that GateGuard, a corporation with an independent legal existence from Teman, had in its possession and control the emails that Teman claims are personal. Indeed, GateGuard has in its possession purportedly privileged emails of Teman's going as far back as 2017. (Docket #165-1 at 4, 8). These facts raise serious concerns about waiver. See generally In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973) ("disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed")

(citation omitted); accord In re Allergan plc Securities Litig., 2021 WL 4121300, at *5 (S.D.N.Y. Sept. 9, 2021).

Nonetheless, we put the waiver issue aside to address the issue of timeliness. The fact that Teman's emails were produced by GateGuard reflects a circumstance critical to the determination of the timeliness issue: namely, that GateGuard had possession and control over Teman's personal emails presumably from the time the emails were created --- but certainly by the time the parties were discussing Amazon's document request in June 2023. More to the point, Teman had to have been personally aware as soon as the emails were created that his own emails were in the possession and control of GateGuard. To the extent Teman wanted to intervene personally to protect the privilege over the documents he put into GateGuard's possession, he should have done so as soon as a document request was submitted to GateGuard, as that is the moment when Teman's own documents were potentially subject to production. See Fed. R. Civ. P. 34(a)(1) (party served with request for documents must produce all documents in its "possession, custody, or control"). This would have been, at the latest, June 2023 when it was clear document requests had been made and GateGuard was actively opposing them. See Docket ## 55, 56. Yet Teman made no effort to protect his rights by intervening to assert his personal privilege over the emails until March 18, 2026 — about three years after the requests were first made.

Teman contends that his motion is timely because "at the time production occurred [he] was incarcerated and unable to participate in the document review process." Protective Mot. at 2; see also Reply Letter, dated Mar. 26, 2026 (Docket # 316) at 1–2; Supplemental Letter in Support, dated Apr. 20, 2026 (Docket # 324) at 1. As noted, Teman was incarcerated on October 10, 2023. Teman's argument, however, fails to address the fact that the document requests

preceded the document production and, more fundamentally, that Teman was necessarily aware, long before he was incarcerated, that his personal emails were in the possession of GateGuard. See generally Declaration of Eden Quainton, dated Mar. 27, 2024 (Docket # 169) at ¶ 2 (in March 2024, Teman was "the person with the greatest knowledge about GateGuard"). Moreover, one of the principal disputes between the parties with respect to Amazon's initial document request was that GateGuard refused to engage an e-discovery vendor in July 2023, months before Teman was incarcerated. Instead, GateGuard "insisted on a 'self-collection' of the documents" because "Mr. Teman wishe[d] to instead collect his own documents." See Amazon's Letter, dated July 10, 2023, annexed as Ex. A to Letter from David Salant (Docket # 55-1) at 1. Accordingly, well before Teman began his term of incarceration he was not only aware that his emails were in GateGuard's possession but actively sought to control their production to Amazon. These facts alone show an unexplained delay beginning in July 2023 at the latest.

But that is not all. Teman was released from incarceration on May 14, 2024 (Docket # 393-1 ¶ 4) and yet still took no action for nearly two years to protect his personal emails. Given his relationship to GateGuard, once Teman was released from prison it is impossible to believe that he was not aware of the status of the document production in this litigation. Only a couple of months before his release, in March 2024, Judge Figueredo had made a ruling regarding the production of documents and wavier of privilege over some of the very emails at issue now. See Privilege Order. And Teman began inserting himself into this litigation immediately after his release from prison by filing declarations with the Court. In a declaration filed in June 2024, he stated under oath that he was GateGuard's CEO. See Docket # 198, ¶ 1.[7]

[7] Teman was likely CEO even before this declaration was filed in June 2024. After the instant motion was briefed, the Court required GateGuard to file a sworn statement identifying who was the CEO of GateGuard for the entire period of this litigation. See Docket # 392. Teman's sworn

An earlier declaration on June 10, 2024, concerned discovery-related issues in this case. See Docket # 178. Moreover, as CEO and majority owner of GateGuard he had every resource available to him to become aware of the dispute regarding his privileged communications. See Docket # 198; see also Docket # 344 at 2; GateGuard v. Goldmont Realty Corp., No. 20 Civ. 1609 (VEC), ECF No. 216, at 2 (S.D.N.Y. Nov. 17, 2025). The Court therefore rejects Teman's contention that he only recently uncovered the issues concerning his privileged communications. See Protective Mot. at 3.

But even if we credited Teman's contention that he was unaware of the document production issues (and we do not), "[d]elay is not measured solely subjectively because, if that were the test, a putative intervenor could always claim it did not know it needed to intervene until the eve of its motion." Butler, Fitzgerald & Potter, 250 F.3d at 182 (citation omitted). Instead, the Court looks to when Teman "should have known" of his interest. Id. (quotations and citation omitted); accord Kamdem-Ouaffo, 314 F.R.D. at 134–35. And here, with the exercise of any reasonable diligence, Teman should have recognized that his privileged communications were at risk from the moment the document requests were being disputed in June 2023. He also should have known about the specific privilege ruling when he was released from prison in May 2024 and certainly by the time Judge Figurerdo denied GateGuard's motion for reconsideration on the issue in July 2024. See Order, dated July 16, 2024 (Docket # 210). As noted, Teman was actively involved in this litigation in June 2024 through his filing of multiple declarations,

---

statement in response (Docket # 393-1) claimed that an individual named "David Taxman" became CEO on October 6, 2023. Teman's statement, however, conspicuously fails to indicate when Taxman's status as CEO ended. Teman states that another individual took over as CEO on September 12, 2025, but Teman's statement asserts that Teman took over as "acting, interim" CEO at some point before September 12, 2025. Oddly, the statement fails to specify the date this occurred.

including a declaration which directly addressed discovery issues. (Docket ## 178, 198). Of course, Teman also completely controlled GateGuard as its CEO and majority owner as of June 2024. See Docket # 198; see also GateGuard v. Goldmont Realty Corp., No. 20 Civ. 1609 (VEC), ECF No. 216, at 2 (S.D.N.Y. Nov. 17, 2025). Moreover, GateGuard argued in March 2024 that this very discovery dispute was an attempt to "embarrass" Teman personally, further emphasizing the close connection between GateGuard and Teman. (Docket # 128 at 3). Given these circumstances, Teman "should have known" of the need to intervene in the privilege dispute years ago.

The Second Circuit has emphasized that "the length of delay is an important factor . . . [and] failure to act promptly weighs against [the applicant] in the timeliness calculus." Butler, Fitzgerald & Potter, 250 F.3d at 182 (citation omitted); see also Catanzano, 103 F.3d at 232 ("Among the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest before making the motion.") (quotations and citation omitted). Here Teman's delay goes well beyond what is considered to be timely. See In re Holocaust Victim Assets Litig., 225 at 198–99 (eight-month delay was untimely); MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 390–91 (2d Cir. 2006) (five-month delay was untimely); CWCapital Cobalt Vr Ltd. v. Bank Nat'l Ass'n, 790 F. App'x 260, 263 (2d Cir. 2019) (delay between summer of 2017 and March of 2018 was untimely). Teman's dilatory conduct, especially in light of his prior diligent efforts to assert GateGuard's interests in this litigation, more than outweighs the prejudice he faces — the production of allegedly privileged emails that will be subject to a protective order if appropriate — were intervention to be denied. See, e.g., In re Chevron Corp., 749 F. Supp. 2d 170, 186–87 (S.D.N.Y. 2010) (finding months long delay in intervening to assert privilege to be untimely); United States v. Brit. Am. Tobacco Australia

Servs., Ltd., 437 F.3d 1235, 1239 (D.C. Cir. 2006) (finding six-month delay in intervening to assert privilege to be untimely). Amazon, by contrast, will be prejudiced if it is forced to await an adjudication of Teman's newly-found privilege claim as discovery is nearly complete in this case. The case should not be delayed any further.

Accordingly, Teman's motion to intervene for the limited purpose of asserting his personal privilege should be denied.

* * *

For the above reasons, both motions to intervene should be denied. While it is not necessary to discuss Teman's applications further, in the next section we give an alternative basis for ruling that the motion to intervene as a party plaintiff should be denied. We address first the argument that Teman is entitled to intervention as of right and next the argument that Teman should be granted permissive intervention.

C. Intervention-As-of-Right Claim With Respect to Motion to Intervene as Plaintiff

As noted, if timeliness is shown, a party seeking to intervene must also "(2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." In re N.Y.C. Policing during Summer 2020 Demonstrations, 27 F.4th at 799 (quotations and citation omitted). For an interest to be cognizable under Rule 24(a)(2) it must "relat[e] to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2).

Teman first asserts that he has an interest in this litigation to protect his personal reputation. Mem. at 3, 14. He notes that Amazon has "repeatedly referenced Ari Teman personally throughout the course of this litigation, making his personal background and credibility a central focus of their defense," id. at 14, and argues that therefore "the disposition of

this case may impair Mr. Teman's ability to protect his . . . reputational interests," id. at 3. However, we reject this claimed interest as it does not amount to an interest relating to the "property or transaction" that is the subject of this action. Fed. R. Civ. P. 24(a)(2). "Courts consistently have held that generalized assertions of an interest in reputation are not sufficiently direct, substantial or legally protectible to give rise to a right to intervene." Florence v. 72andSunny Partners, LLC, 2026 WL 787843, at *2 (S.D.N.Y. Mar. 20, 2026) (collecting cases); see also Sierra Club v. U.S. Army Corps of Engineers, 709 F.2d 175, 176 (2d Cir. 1983).

Teman also asserts that he has an interest because he has turned his name into the "Teman brand" and GateGuard has a licensing arrangement with him that allows it to use the brand name. Mem. at 2. Teman contends that because the GateGuard devices bear the Teman name and rely on Teman's intellectual property, this litigation directly implicates the Teman brand's intellectual property rights and goodwill. Id. at 1–3. While we have reason to doubt some of these contentions,[8] we will assume, arguendo, that he has met the third element and that disposition of this action could somehow impair that interest.

Even so, Teman's effort to intervene founders on the remaining element because he has not shown that GateGuard's representation of his purported interests is inadequate. While in some instances a proposed intervenor's burden to demonstrate inadequacy of representation is "minimal," Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972), the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," Butler, Fitzgerald & Potter, 250

---

[8] Amazon disputes the existence of both the Teman brand and the licensing agreement. Opp. at 11–12. According to Amazon, neither exists because no "Teman" trademark appears in the federal trademark registry, and no evidence shows a licensing agreement between Teman and GateGuard. Id.

F.3d at 179 (citation omitted). For purposes of pursuing the claims in this lawsuit, Teman and GateGuard share precisely the same objective: to protect GateGuard's property rights in the intercom devices and to ensure Amazon is held accountable for allegedly tampering with and misappropriating GateGuard's devices. Teman's own proposed complaint reinforces this conclusion since it either reiterates GateGuard's claims or asserts claims that rest on the same factual predicates. Compare Proposed Compl. ¶¶ 48–81 with Compl. ¶¶ 152–95; see, e.g., United States v. Yale University, 337 F.R.D. 35, 39 (D. Conn. 2021) (intervenor's interests were adequately represented because "the claims and requested relief in these two pleadings are essentially the same"). Indeed, as a logical matter, GateGuard and Teman's interests are inextricably tied as Teman is GateGuard's founder, developed the product at issue, and has his purported personal brand affixed to the side of the product. See Proposed Compl. ¶¶ 2, 10; Compl. ¶ 179. Thus, GateGuard has every incentive to protect the intellectual property that underlies its product and the brand that is the face of its product. Moreover, we do not see how their interests could ever diverge given that Teman is in control of GateGuard as a 95% owner and its current CEO. Teman Surreply at 2; GateGuard v. Goldmont, No. 20. Civ. 1609 (VEC), ECF No. 216, at 2 (S.D.N.Y. Nov. 17, 2025). As Amazon's counsel explains, without refutation from GateGuard or Teman, "[e]very time I have spoken with GateGuard's counsel, I have understood that Mr. Teman is the decisionmaker," and that "GateGuard's counsel would frequently say . . . that they would take an issue 'back to Ari.'" Salant Decl. ¶ 4. Additionally, Teman has been actively communicating with Amazon on behalf of GateGuard. Opp. at 5; Emails filed as Exhibit F to Salant Decl. (emails from Teman directly to Amazon employees and counsel relating to the instant litigation). In light of this evidence, GateGuard and Teman plainly share the same objective. See, e.g., M2 Technology, Inc. v. M2 Software, Inc., 589 F. App'x 671,

675 (5th Cir. 2014) (intervenor necessarily has the same "ultimate objective" as plaintiff corporation where he "has exclusive control over it").

Where parties have identical interests with respect to the litigation at issue, the movant "must rebut the presumption of adequate representation by the party already in the action." Butler, Fitzgerald & Potter, 250 F.3d at 179–80 (citing at Brennan, 579 F.2d at 191). Such a rebuttal may be accomplished by showing "evidence of collusion, adversity of interest, nonfeasance, or incompetence." Id. at 180 (citation omitted). There has been no such showing here.

Teman argues that his interests are not adequately represented because GateGuard's counsel owes a duty to GateGuard, the corporation, and not to Teman personally. Reply at 5–6. He therefore believes that a conflict is not hypothetical but "inherent." Id. Yet, to show this "inherent" conflict, he offers a hypothetical scenario in which GateGuard would have to accept a settlement if it were in its own best interest but required "abandoning or rebranding the 'Teman' name." Id. at 6. But as the majority owner of GateGuard, Teman provides no scenario under which GateGuard would ever settle this case in a manner that impaired his interests. Even if it were theoretically possible that this would occur in the future, "speculative concerns are insufficient to rebut the presumption that the existing part[y] will adequately represent [his] interest." Allco Fin Ltd. v. Etsy, 300 F.R.D. 83, 87–88 (D. Conn. 2014) (citing Washington Elec. Coop, Inc., v. Mass. Mun. Wholesale Elec. Co., 922 F.2d 92, 98 (2d Cir. 1990)). Second, it is not the case that a conflict is "inherent" merely because plaintiff's counsel owes a duty to GateGuard. Instead, "so long as the representative party will vigorously litigate, a difference in motive does not preclude adequate representation." Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc., 1996 WL 346352, at *3 (S.D.N.Y. June 25, 1996) (citation omitted); accord Bldg.

& Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York, 2020 WL 5667181, at *5 (S.D.N.Y. Sept. 23, 2020). Thus, Teman has not shown that GateGuard's pursuit of this litigation fails to adequately protect him. See, e.g., Great Atl. & Pac. Tea Co. v. Town of E. Hampton, 178 F.R.D. 39, 45 (E.D.N.Y. 1998) (finding interests adequately represented because the existing party and proposed intervenor had "identical" interests, "both [sought] the same ultimate outcome," and the existing party "appear[ed] ready, willing[,] and able to vigorously defend the validity of the [law at issue]").

Accordingly, Teman's motion to intervene as of right as a plaintiff under Rule 24(a) should be denied.

D. Permissive Intervention as to Motion to Intervene as Plaintiff

Teman moves in the alternative for permissive intervention under Rule 24(b). Mem. at 5. As explained earlier, the Court has discretion under Rule 24(b) to permit a party to intervene that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b); see AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561 (2d Cir. 2005) (district courts have "broad discretion . . . when considering permissive intervention"). In exercising its discretion, the "principal guide in deciding whether to grant permissive intervention is whether the intervention will unduly delay or prejudice the adjudication of the rights of the parties." Ferguson, 2019 WL 1434435, at *5 (quotations and citation omitted). Ultimately, "[t]he court considers substantially the same factors whether the claim for intervention is 'of right' . . . or 'permissive.'" "R" Best Produce, 467 F.3d at 240 (citing In re Bank of N.Y. Derivative Litig., 320 F.3d at 300 n.5).

For the reasons already discussed, the Court should not exercise its discretion to grant Teman permission to intervene. First, the same factors leading this Court to deny Teman

intervention as of right also justify denial of permissive intervention. Second, as explained above, Teman's intervention would require re-opening discovery, further delaying proceedings that have been progressing for over four years. Teman contends that because his "claims arise from the same underlying events . . . [p]ermitting intervention would therefore promote judicial efficiency by allowing related claims to be addressed in a single proceeding." Mem. at 5. Efficiency, however, is not to be pursued at all costs. Instead, courts are to "[balance] efficiently administering legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged on the other hand." United States v. Pitney Bowers, Inc., 25 F.3d at 69 (citing United States v. Texas E. Transmission Corp., 923 F.2d 410, 412 (5th Cir. 1991)). So, while Teman is correct that his claims share similarities with GateGuard, they also create a significant risk of extending the duration of this litigation by re-opening discovery, thereby making this litigation unnecessarily complex and unwieldy.

Accordingly, for all the reasons stated above, Teman's request for permission to intervene should be denied.

CONCLUSION

For the reasons set forth above, Teman's motions to intervene both as a plaintiff (Docket # 312) and for the purpose of protecting his personal privilege over documents produced by GateGuard (Docket # 311) should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rules of Civil Procedure 72(b), the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), 6(b), 6(d). A party may

respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge Koeltl. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b), 6(d), 72; Thomas v. Arn, 474 U.S. 140, 155 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: November 16, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge